MAS-20041213
holllave

Case 1:05-cv-10118-GAO   Document 13   Filed 02/18/2005   Page 1 of 3

Commonwealth of Massachusetts
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

01/27/2005
01:49 PM

## MICV2004-02661
### Passatempo, Trustee On Behalf Of The Samuel Pietropaolo et al v McMenimen III et al

| | | | | | |
|---|---|---|---|---|---|
| File Date | 07/01/2004 | Status | Disposed: transferred to other court (dtrans) | | |
| Status Date | 01/26/2005 | Session | F - Cv F (10A Cambridge) | | |
| Origin | 1 | Case Type | A01 - Services, labor, materials | | |
| Lead Case | | Track | F | | |

| | | | | | |
|---|---|---|---|---|---|
| Service | 01/29/2005 | Answer | 02/16/2005 | Rule12/19/20 | 02/16/2005 |
| Rule 15 | 02/16/2005 | Discovery | 04/27/2005 | Rule 56 | 05/27/2005 |
| Final PTC | 06/26/2005 | Disposition | 08/25/2005 | Jury Trial | Yes |

### PARTIES

**Plaintiff**
Ronald P. Passatempo, Trustee On Behalf Of The
Samuel Pietropaolo
23 Forest Street
Suite 105
Medford, MA 02155
Phone: 781-395-7678
Irrevocable Trust
Active 07/01/2004

**Private Counsel 543842**
Howard M Cooper
Todd & Weld
28 State Street
31st floor
Boston, MA 02109
Phone: 617-720-2626
Fax: 617-227-5777
Active 12/13/2004 Notify

**Plaintiff**
Samuel Pietropaolo. Grantor To The Samuel
Pietropaolo Irrevocable Trust
45 Thurlow Avenue
Revere, MA 02151
Phone: 781-289-4191
(Family Trust)
Active 07/01/2004

*** See Attorney Information Above ***

**Plaintiff**
Patricia D. Pietropaolo, Grantor's Spouse And
Beneficiary To Family Trust
45 Thurlow Avenue
Revere, MA 02151
Phone: 781-289-4191
Active 07/01/2004

*** See Attorney Information Above ***

**Defendant**
Frederick V. McMenimen III
215 Newbury Street
Peabody, MA 01960
Served: 12/29/2004
Served (answr pending) 01/14/2005

**Private Counsel 561201**
William P Corbett Jr
The Corbett Law Firm, P.C.
85 Exchange St. Suite 326
Lynn, MA 01901-1429
Phone: 781-596-9300
Fax:
Active 01/12/2005 Notify

Commonwealth of Massachusetts
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

### MICV2004-02661
### Passatempo, Trustee On Behalf Of The Samuel Pietropaolo et al v McMenimen III et al

| | |
|---|---|
| **Defendant**<br>New England Advisory Group, LLC<br>35 Farm Street<br>Medfield, MA 02052<br>Served: 12/28/2004<br>Served (answr pending) 01/14/2005 | |
| **Defendant**<br>Barry G. Armstrong<br>356 Farm Street<br>Medfield, MA 02052<br>Served: 12/29/2004<br>Served (answr pending) 01/14/2005 | |
| **Defendant**<br>Nationwide Provident f/k/a Provident Mutual Life Ins.<br>Co.<br>1 Nationwide Plaza<br>Served: 01/05/2005<br>Served (answr pending) 01/14/2005 | |
| **Defendant**<br>1717 Capital Management Company<br>Served: 12/28/2004<br>Served (answr pending) 01/14/2005 | |
| **Defendant**<br>Nationwide Financial Services, Inc.<br>Served: 12/28/2004<br>Served (answr pending) 01/14/2005 | |

| Date | Paper | Text |
|---|---|---|
| 07/01/2004 | 1.0 | Complaint & civil action cover sheet filed |
| 07/01/2004 | | Origin 1, Type A01, Track F. |
| 09/23/2004 | 2.0 | Plaintiff's Motion to Extend Tracking Order |
| 09/23/2004 | | MOTION (P#2) Motion filed in court and ALLOWED Dated: September 23, 2004  (Raymond J. Brassard, Justice) Notices mailed September 24, 2004 |
| 12/13/2004 | 3.0 | Plaintiff 's emergency MOTION to extend service date under tracking order for thirty (30) day extension of time for service of the |

## MIDDLESEX SUPERIOR COURT
### Case Summary
### Civil Docket

# MICV2004-02661
## Passatempo, Trustee On Behalf Of The Samuel Pietropaolo et al v McMenimen III et al

| Date | Paper | Text |
|------|-------|------|
|  | 3.0 | complaint and motion allowed. (Brassard, J.) NN |
| 12/23/2004 | 4.0 | Plffs' Amended complaint adding 1717 Capital Management Company, & Nationwide Financial Services, Inc. as party defts (Jury Demand) |
| 12/27/2004 | 5.0 | Plaintiffs' MOTION for appointment of special process server Disinterested Parties, Inc.; Filed in Court and Allowed.  By the Court, Neel, J.  Copies mailed on 12/28/04 |
| 01/12/2005 | 6.0 | Emergency Motion of Defendant Frederick V. MCMenimen III for enlargement of time to responde to first amended complaint, |
| 01/14/2005 | 7.0 | SERVICE RETURNED:  Nationwide Provident f/k/a Provident Mutual Life Ins Co (Defendant), cm/rr, MGL c 223A, 100  Chesterbrook Blvd, Berwin, PA, on 01/05/05 |
| 01/14/2005 | 8.0 | SERVICE RETURNED:  Nationwide Financial Services, Inc (Defendant), in hd, agent at CT Corp, Boston, MA, on 12/28/04 |
| 01/14/2005 | 9.0 | SERVICE RETURNED:  1717 Capital Management Company (Defendant), in hd, agent, 84 State St, Boston, MA, on  12/28/04 |
| 01/14/2005 | 10.0 | SERVICE RETURNED:  New England Advisory Group, LLC (Defendant), in hd, Anne Reeves, agent, 75 Wells Ave, Newton, MA, on 12/28/04 |
| 01/14/2005 | 11.0 | SERVICE RETURNED: Barry G Armstrong (Defendant), l&u,  35 Farm St, Medfield, MA, on 12/29/04 |
| 01/14/2005 | 12.0 | SERVICE RETURNED: Frederick V McMenimen, III (Defendant),  in hd, 6 Pumpkin Cir, Exeter, NH, on 12/28/04 |
| 01/18/2005 | 13.0 | Assented to MOTION to Enlarge Time to Answer Plaintiffs' First Amended Complaint, Assented to. |
| 01/19/2005 |  | MOTION (P#13) After review, ALLOWED. Dated: January 19, 2005  (Bonnie H. MacLeod, Justice) Notices mailed January 19, 2005 |
| 01/19/2005 |  | MOTION (P#6) ALLOWED. Dated: January 18, 2005  (Bonnie H. MacLeod, Justice) Notices mailed January 19, 2005 |
| 01/21/2005 |  | Pleading, Letter requesting Removal, returned to William P Corbett Jr, Esq.: Please file proper Removal paperwork. |
| 01/26/2005 | 14.0 | Case REMOVED this date to US District Court of Massachusetts |
| 01/27/2005 |  | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT. |

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) **04-2661** | Trial Court of Massachusetts Superior Court Department County: |
|---|---|---|

PLAINTIFF(S) ① Ronald Passatempo, Trustee on behalf of Samuel Pietropaolo Irrevocable Trust ② Samuel Pietropaolo, Grantor ③ Patricia Pietropaolo

DEFENDANT(S) ① Frederick V. McMenimum III ② New England Advisory Group ③ Barry P. Armstrong ④ Nationwide Provident

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE

Board of Bar Overseers number:

ATTORNEY (if known)

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Contract | (F) | (✓) Yes   ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . .
   2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . .
   3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . .
   4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . .
   5. Total other expenses (describe) . . . . . . . . . . . . . . . . . Subtotal $ . . . . . . . . .

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
MIDDLESEX
JUL 0 1 2004
CLERK

B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . $ . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . $ . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . .
F. Other documented items of damages (describe)

$ . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$ . . . . . . . . .
TOTAL $ . . . . . . . . . . . .

## CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): Defendants misrepresented services and ~~continued~~ Defrauded Plaintiffs into entering into a contract that did not provide the promised services.

TOTAL $. 500,000.00

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _Ronald Passatempo_   DATE: 7-1-04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2004-02661

I, Mary Rosa, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 26th day of January, in the year of our Lord, Two Thousand Five.

In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 26th day of January, in the year of our Lord, Two Thousand Five.

Mary E. Rosa
_____
Deputy Assistant Clerk



TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

# COMMONWEALTH OF MASSACHUSETTS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

.............. MIDDLESEX .............. , ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, On behalf of the
Samuel Pietropaolo Irrevocable Trust, SAMUEL
PIETROPAOLO, GRANTOR to the Samuel.........., Plaintiff(s)
Pietropaolo Irrevocable Trust, and PATRICIA D.
PIETROPAOLO, BENEFICIARY of the Samuel Pietropaolo
Irrevocable Trust                                    v.

FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG, Defendant(s)
NEW ENGLAND ADVISORY GROUP, LLC, 1717 CAPITAL
MANAGEMENT COMPANY, NATIONWIDE PROVIDENT (a/k/a
Provident Mutual Life Insurance Company), and
NATIONWIDE FINANCIAL SERVICES, INC.

## SUMMONS

To the above-named Defendant:   1717 Capital Management Company

You are hereby summoned and required to serve upon ...... David M. Burkoff ..............................

.................................................. plaintiff's attorney, whose address is ...... Todd & Weld LLP ..............

..28 State Street, Boston, MA  02109.............., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ..Cambridge................

........................................................ either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ......... Cambridge...................................................
Barbara J. Rouse

the .......23rd......................................... day of ....December...............................

...................., in the year of our Lord ...two thousand and four.

Edward J Sullivan

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

Bernardo Montanez

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ....December 28th............................................
20.0.4..., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

By Delivering in Hand To Bernardo Montanez of Corporations
Service Company, as Registered Agent, for Said Corp. at Her
had Thus usual Place of Employ, To wit, 84 State Street, Boston, Mass

Dated: ...12-28 Th 2004

**THOMAS L. SAVAGE**
Special Process Server

## N.B.  TO PROCESS SERVER:
   PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
   ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

(                                    )
(           12-28-2004           )
(                                    )

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
JAN 1 4 2005
Edward J. Sullivan
CLERK

**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX .....ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, et al., Pltf.

v.

FREDERICK V. McMENIMEN III, et al., Deft.

**SUMMONS**
(Mass. R. Civ. P. 4)

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

.......... MIDDLESEX .......... , ss
[seal]

*10*

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, On behalf of the
Samuel Pietropaolo Irrevocable Trust, SAMUEL
PIETROPAOLO, GRANTOR to the Samuel Pietropaolo
Irrevocable Trust, and PATRICIA D. PIETROPAOLO,
BENFICIARY of the Samuel Pietropaolo Irrevocable
Trust                                          v.
..... Plaintiff(s)

FREDERICK V. McMENIMEN II, BARRY G. ARMSTRONG,
NEW ENGLAND ADVISORY GROUP, LLC, 1717 , Defendant(s)
CAPITAL MANAGEMENT COMPANY, NATIONWIDE PROVIDENT
(f/k/a Provident Mutual Life Insurance Company),
and NATIONWIDE FINANCIAL SERVICES, INC.
### SUMMONS

To the above-named Defendant:    New England Advisory Group, LLC

You are hereby summoned and required to serve upon ..... David M. Burkoff .....................

........................................ plaintiff's attorney, whose address is ..... Todd & Weld LLP .....

28 State Street, Boston, MA  02109 ........................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ..Cambridge.................

............................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Su**Barbara J. Rouse**o, Esquire, at .....Cambridge................................................

the ..... 23rd ...................................... day of .....December................................

....................., in the year of our Lord ..two thousand and four.

*Edward J Sullivan*
**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

FORM NO. SUP. — 001

*Anne Reeves*
*Patriot Finan. Corp*

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ...December 28th.........................................................
20.0.4..., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

By Delivering in Hand to Anne Reeves of Patriot Financial
Group, Succesor To N.E Advisory Group LLC, at Her hail and
Usual Place of Employ That 95 Wells Ave Newton, Mass

Dated: 12-28-2004

**THOMAS L. SAVAGE**
*Special Process Server*

## N.B.  TO PROCESS SERVER:
       **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
       ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

(........................................................ )
(........... 12-28-2004..........., ......... )
(........................................................ )

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

JAN 1 4 2005

**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX ......... ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, et al. Plff.

v.

FREDERICK V. McMENIMEN III, et al. Deft.

SUMMONS
(Mass. R. Civ. P. 4)

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

.........MIDDLESEX.......... , ss
[seal]

RONALD P. PASSATEMPO, TRUSTEE, On behalf of the
Samuel Pietropaolo Irrevocable Trust, SAMUEL
PIETROPAOLO, GRANTOR to the Samuel Pietropaolo
Irrevocable Trust, and PATRICIA D. PIETROPAOLO,
BENEFICIARY of the Samuel Pietropaolo Irrevocable
Trust                                    v.                            Plaintiff(s)

FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG,
NEW ENGLAND ADVISORY GROUP, LLC, 1717 , Defendant(s)
CAPITAL MANAGEMENT COMPANY, NATIONWIDE PROVIDENT
(f/k/a Provident Mutual Life Insurance Company),
and NATIONWIDE FINANCIAL SERVICES, INC.

### SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:    Nationwide Provident

You are hereby summoned and required to serve upon ...David M. Burkoff...................................

........................................................ plaintiff's attorney, whose address is ...Todd & Weld LLP..........

...28 State Street, Boston, MA  02109.............., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .....Cambridge...............

................................................................ either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ........Cambridge.................................................

the .........23rd.................................... day of ..........December................................

..................., in the year of our Lord ...two thousand and four

**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on .....January 5......................................................................................
20.05....., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)): by mailing a copy of

the Summons and Amended Complaint certified mail, return receipt
requested, to Nationwide Provident, 100 Chesterbrook Boulevard, Berwin,
PA 19312, Attn: Florence Delaney. Such service was made pursuant to the
terms of Massachusetts General Laws, Chapter 223A.

David M. Burkoff

Dated: ..1/13/05............................................................................................

**N.B. TO PROCESS SERVER:**
    **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX**
    **ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( ____ ____ ____ ____ ____ ____ ____ ____ )

( .................................................., .......... )

( ____ ____ ____ ____ ____ ____ ____ ____ )

FILED
IN THE OFFICE OF THE
CLERK OF THE ____
FOR ____

JAN 1 4 2005

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

MIDDLESEX ...... ss.

RONALD P. PASSATEMPO, TRUSTEE, et al.,
.....Plff.

v.

FREDERICK V. McMENIMEN III, et al.,
.....Deft.

SUMMONS
(Mass. R. Civ. P. 4)

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

.......... MIDDLESEX .......... , ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, On behalf of the
Samuel Pietropaolo Irrevocable Trust, SAMUEL
PIETROPAOLO, GRANTOR to the Samuel Pietropaolo
Irrevocable Trust, and PATRICIA D. PIETROPAOLO, .......... Plaintiff(s)
BENEFICIARY of the Samuel Pietropaolo Irrevocable
Trust
                                                        v.

FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG,
NEW ENGLAND ADVISORY GROUP, LLC, 1717 .......... , Defendant(s)
CAPITAL MANAGEMENT COMPANY, NATIONWIDE PROVIDENT
(f/k/a Provident Mutual Life Insurance Company),
and NATIONWIDE FINANCIAL SERVICES, INC.

### SUMMONS

To the above-named Defendant:    Nationwide Financial Services, Inc.

You are hereby summoned and required to serve upon .... David M. Burkoff ..........................................

.................................................. plaintiff's attorney, whose address is ...... Todd & Weld LLP ..........

.. 28 State Street, Boston, MA  02109 .................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .. Cambridge ..............

............................................................. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ...... Cambridge ..........................................

the ...... 23rd .......... day of ...... December ..........................................

...................., in the year of our Lord .. two thousand and four ..

*Edward J. Sullivan*
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on .....December.... 28.ᵗʰ.......................................................

20.0.4....., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

By Delivering In Hand to Christine Bonney or C-T Corp as Registory Agents For Nationwise Financial Services Inc, at Her last know Place of Employ, To Wit, 101 Federal St, Boston, Mass

Dated: .....12-28-2004..............................                    THOMAS L SAVAGE
                                                                         Special Process Server

## N.B.  TO PROCESS SERVER:
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

( _____ )

( ...........12-28-2004...., ......... )

( _____ )

FILED
IN THE OFFICE OF THE
CLERK OF _____ OURTS
FOR _____
JAN 1 4 2005
Edmund J. Sullivan
CLERK

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX , ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, et al., Plff.

v.

FREDERICK V. McMENIMEN III, et al., Deft.

SUMMONS
(Mass. R. Civ. P. 4)

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

............ MIDDLESEX ............ , ss

[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, On behalf of
the Samuel Pietropaolo Irrevocable Trust,
SAMUEL PIETROPAOLO, GRANTOR to the Samuel Plaintiff(s)
Pietropaolo Irrevocable Trust, and PATRICIA D.
PIETROPAOLO, BENEFICIARY of the Samuel Pietropaolo
Irrevocable Trust                                   v.

FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG, NEW
ENGLAND ADVISORY GROUP, LLC, 1717 , Defendant(s)
CAPITAL MANAGEMENT COMPANY, NATIONWIDE PROVIDENT
(f/k/a Provident Mutual Life Insurance Company),
and NATIONWIDE FINANCIAL SERVICES, INC.

### SUMMONS

To the above-named Defendant: Frederick V. McMenimen III

You are hereby summoned and required to serve upon ... David M. Burkoff ......................................

.................................................. plaintiff's attorney, whose address is ... Todd & Weld LLP ..........

28 State Street, Boston, MA  02109 ..................... an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ... Cambridge ..............

.............................................................. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ........... Cambridge ..................................................
                        Barbara J. Rouse
the ...... 23rd ............................. day of ...... December ..................................................

....................., in the year of our Lord .. two thousand and four

Clerk

NOTE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

## Rockingham County Sheriff's Office
### CERTIFICATE OF SERVICE

MASS Middlesex (Massachusetts) Court
County of Rockingham State of New Hampshire

Ronald P Passatempo

vs.

Frederick V McMenimen, III

Docket Number: 04-2661
Sheriff File Number: 04013051

```
        F I L E D
  IN THE OFFICE OF THE
 CLERK OF THE COURTS
 FOR THE COUNTY OF MIDDLESEX

     JAN 1 4 2005

     David J Sullivan
```

I, Deputy Sheriff Chris Stone, Badge # 43 of the Rockingham County Sheriff's Department, Rockingham County, New Hampshire, certify and affirm that on 12/28/2004 at approximately 04:30 pm, at 6 Pumpkin Circle, Exeter, NH 03833 served the within OOS Summons&Complaint upon Frederick V McMenimen, III , the defendant named herein, in the following manner.

PERSONAL SERVICE

By delivering to and leaving with Frederick V McMenimen, III  personally a true copy thereof, said person being known or identified to me as the person mentioned and described therein

Dated:  December 29, 2004

_(notary seal: SUSAN J. HOWARD, MY COMMISSION EXPIRES JULY 28, 2009, NOTARY PUBLIC NEW HAMPSHIRE)_

Chris Stone
Deputy Sheriff

43
Badge Number

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX .................... , ss
        [seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, On behalf of the
Samuel Pietropaolo Irrevocable Trust, SAMUEL
PIETROPAOLO, GRANTOR to the Samuel ......... , Plaintiff(s)
Pietropaolo Irrevocable Trust, and PATRICIA D.
PIETROPAOLO, BENEFICIARY of the Samuel Pietropaolo
Irrevocable Trust
                                            v.

FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG, NEW
ENGLAND ADVISORY GROUP, LLC, 1717 CAPITAL MANAGEMENT Defendant(s)
COMPANY, NATIONWIDE PROVIDENT (f/k/a Provident Mutual
Life Insurance Company), and NATIONWIDE FINANCIAL
SERVICES, INC.

## SUMMONS

To the above-named Defendant:    Barry G. Armstrong

You are hereby summoned and required to serve upon ................... David M. Burkoff ...................................

...................................... plaintiff's attorney, whose address is .. Todd & Weld LLP ...........

28 State Street, Boston, MA 02109 .............., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ...... Cambridge ..............

....................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Susanne V. DeVecchio, Esquire, at ...... Cambridge ...........................................
Barbara J. Rouse

the ......... 23rd ........................................... day of ............ December .......................................

...................., in the year of our Lord .. two thousand and four .

*Edward J Sullivan*

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on December 29th

200.4..., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

By leaving at His Last and usual Place of Abode, To Wit,
35 Farm Street, Medfield, Mass

Dated: 12-29-2004

**THOMAS L. SAVAGE**
Special Process Server

**N.B.  TO PROCESS SERVER:**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )
( 12-29-2004, _____ )
( _____ )

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR
JAN 1 4 2005

**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX ......ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, et al. Pltf.

v.

FREDERICK V. McMENIMEN III, et al. Deft.

SUMMONS
(Mass. R. Civ. P. 4)

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: MICV2004-02661

RONALD PASSATEMPO, TRUSTEE, on behalf )
Of the Samuel Pietropaolo Irrevocable Trust, )
And )
SAMUEL F. PIETROPAOLO, GRANTOR to the )
the Samuel Pietropaolo Irrevocable Trust) )
("Family Trust") )
And )
PATRICIA D. PIETROPAOLO, )
Grantor's Spouse and Beneficiary to Family Trust )
Plaintiffs )
)
v. )
)
FREDERICK V. MCMENIMEN III, )
NEW ENGLAND ADVISORY GROUP, )
BARRY G. ARMSTRONG, and )
NATIONWIDE PROVIDENT )
Defendants )

**PLAINTIFF'S MOTION TO
EXTEND TRACKING
ORDER**

     The plaintiff in the above captioned matter moves to extend the Tracking Order. The Plaintiffs have not served any of the Defendants to date and therefore there is no prejudice to the Defendants. Plaintiffs filed their Complaint on July 1, 2004 in order to preserve their rights and shall be Amending their Complaint based upon newly obtained facts.

     Wherefore, Plaintiff requests this Court to extend the Tracking Order for ninety days.

Ronald P. Passatempo

Ronald P. Passatempo
BBO# 6632508
23 Forest Street, Suite 105
Medford, MA 02155
(781) 395-7678

1

Samuel Pietropaolo

Samuel Pietropaolo, Pro Se
45 Thurlow Avenue
Revere, MA 02151
781/289-4191


Patricia D. Pietropaolo

Patricia D. Pietropaolo, Pro Se
45 Thurlow Avenue
Revere, MA 02151
781/289-4191

Dated: September 17, 2004

LAW OFFICES OF
# RONALD P. PASSATEMPO
ATTORNEY AT LAW

RONALD P. PASSATEMPO JD MBA
MEMBER MASSACHUSETTS BAR

MARTHA J. RICHARDSON
OFFICE MANAGER

23 Forest Street, Suite 105
Medford, Massachusetts 02155

Telephone (781) 395-7678
Facsimile  (781) 395-7732

September 16, 2004

Middlesex Superior Court
Civil Clerk's Office/Mr. Arthur Sutherland/Courtroom 10A
40 Thorndike Street
Cambridge, MA 02141

    RE: <u>Passatempo, Trustee on Behalf of the Pietropaolo et al v. McMenimen III et al</u>
        C.V.A. No.: MICV2004-02661-F

Dear Mr. Sutherland:

Pursuant to our telephone conversation, enclosed please find the following:

    1.    MOTION TO EXTEND TRACKING ORDER.

As discussed, none of the defendants have been served to date, therefore shall be no prejudice to the defendants. Kindly allow the enclosed Motion to extend time for service for an additional 90 days.

If you should have any questions, please do not hesitate to call.

Very truly yours,

Ronald Passatempo

RPP/ace

Enclosure

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT
C.A. NO. 04-2661

)
RONALD P. PASSATEMPO, TRUSTEE,          )
On behalf of the Samuel Pietropaolo Irrevocable)
Trust, SAMUEL PIETROPAOLO, GRANTOR )
to the Samuel Pietropaolo Irrevocable Trust,    )
and PATRICIA D. PIETROPAOLO,            )
BENEFICIARY of the Samuel Pietropaolo    )
Irrevocable Trust,                       )
                                          )
          Plaintiffs,                     )
                                          )
vs.                                       )
                                          )
FREDERICK V. MCMENIMEN III,              )
NEW ENGLAND ADVISORY GROUP,           )
BARRY G. ARMSTRONG, and                 )
NATIONWIDE PROVIDENT,                   )
                                          )
          Defendants.                     )
                                          )

*Dec 13, 2004*
*Motion allowed*
*Brassard, J*
*atta[?]*
*ass't Clerk*

*NW*

## PLAINTIFFS' EMERGENCY MOTION
## TO EXTEND SERVICE DATE UNDER TRACKING ORDER

Plaintiffs Ronald P. Passatempo, Samuel Pietropaolo and Patricia D. Pietropaolo

("Plaintiffs") hereby move to extend the time for service of the Complaint in this action. As

grounds for their motion, Plaintiffs state:

1.     Plaintiffs filed their Complaint, *pro se*, on July 1, 2004.

2.     By order dated September 23, 2004, the Court allowed Plaintiffs' first Motion to

Extend Tracking Order, extending the date for service of the Complaint to December 29, 2004.

DEC 1 3 2004

3.    Since the Complaint was filed, Plaintiff Samuel Pietropaolo has suffered from a serious illness and has been intermittently hospitalized.

4.    Plaintiffs have recently retained the law firm of Todd & Weld LLP to serve as their counsel in connection with this matter.  Plaintiffs had not previously retained counsel and had continued to act on a *pro se* basis.

5.    In order to provide the attorneys at Todd & Weld LLP with sufficient time to familiarize themselves with the case, and to determine whether it will be necessary to amend the Complaint, Plaintiffs request an additional thirty (30) day extension of time for service of the Complaint.

WHEREFORE, Plaintiffs respectfully move for a thirty (30) day extension of time for service of the Complaint in this action.

RONALD P. PASSATEMPO, TRUSTEE,
On behalf of the Samuel Pietropaolo Irrevocable
Trust, SAMUEL PIETROPAOLO, GRANTOR
to the Samuel Pietropaolo Irrevocable Trust,
and PATRICIA D. PIETROPAOLO,
BENEFICIARY of the Samuel
Pietropaolo Irrevocable Trust,

By their attorneys,

Howard M. Cooper (BBO# 543842)
David M. Burkoff (BBO# 657447)
Todd & Weld LLP
28 State Street
Boston, Massachusetts 02109
(617) 720-2626

December 3, 2004

6

F

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                              SUPERIOR COURT

```
                                    )
RONALD P. PASSATEMPO, ET AL.,       )
                                    )
        Plaintiffs,                 )
                                    )
            v.                      )        Civil Action No. 04-2661-F
                                    )
FREDERICK V. MCMENIMEN III, ET AL., )
                                    )
        Defendants.                 )
                                    )
```

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

JAN 12 2005

CLERK

**EMERGENCY MOTION OF DEFENDANT FREDERICK V. MCMENIMEN III FOR ENLARGEMENT OF TIME TO RESPOND TO FIRST AMENDED COMPLAINT**

Pursuant to Superior Court Rule 9A(e)(1) (as amended effective November 1, 2004) and Rule 12(a)(1) of the Massachusetts Rules of Civil Procedure, defendant Frederick V. McMenimen III ("Mr. McMenimen") respectfully requests that the Court enlarge until February 16, 2005 the period of time in which he may serve a pleading responsive to the plaintiffs' First Amended Complaint ("Complaint") and/or a motion, pursuant to Rule 12 of the Massachusetts Rules of Civil Procedure, to dismiss some or all of the claims asserted against him. In support of this motion, Mr. McMenimen states the following:

1.      Mr. McMenimen was served with copies of the summons and Complaint on December 28, 2004. In the ordinary course, his response to the Complaint would be due on or before January 17, 2005. MASS. R. CIV. P. 12(a)(1). However, Mr. McMenimen may respond later if "otherwise directed by order of the court." *Id.*

1/18/05 Allowed Hr  J.

2.      The plaintiffs have purported to assert ten causes of action against Mr. McMenimen in their 25-page Complaint, which contains 141 numbered paragraphs, more than 3 pages of text set forth in un-numbered paragraphs, and nine appended exhibits.

3.      The Complaint appears to warrant motion practice under Rule 12, counterclaims, cross-claims, and the impleader of at least one third party, in addition to the requisite answer.  Because of the seriousness of the allegations and anticipated counter- and cross-allegations, coupled with the fact that this is an intra-family dispute in which Mr. McMenimen desires to proceed with special sensitivity, it is impracticable to craft such motions and pleadings satisfactorily within 20 days after service of the Complaint.  *See* MASS. R. CIV. P. 11(a) ("The signature of an attorney to a pleading constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information and belief there is a good ground to support it; and that it is not interposed for delay.")

4.      The plaintiffs should not be prejudiced by the allowance of this motion, given that they waited until December 28, 2004 – a full 180 days after they commenced this action – to serve Mr. McMenimen with a summons and a copy of their operative pleading.[1]

---

[1] "Insufficiency of service of process" is one of the bases for Mr. McMenimen's anticipated motion to dismiss the Complaint.  *See* MASS. R. CIV. P. 12(b)(5) (allowing motion to dismiss on this basis).  However, having knowledge that service was not made within the requisite 90 days, and absent any showing of "good cause" (at least in either document that was served upon Mr. McMenimen) by the plaintiffs, the Court should dismiss the case *sua sponte*.  *See* MASS. R. CIV. P. 4(j) ("If service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action **SHALL** be dismissed as to that defendant without prejudice **UPON THE COURT'S OWN INITIATIVE** with notice to such party or upon motion.") (**EMPHASIS** added).

5.     Because the current deadline for responding to the Complaint will expire within ten days after service of this motion, it would be impossible to obtain the necessary extension if this motion were filed in the manner provided by Superior Court Rule 9A(b)(2). It is for this reason that the instant motion is styled and filed as an "emergency."

WHEREFORE, Mr. McMenimen respectfully requests that the Court grant this motion and allow him until February 16, 2005 to serve and file his response to the Complaint.

Respectfully submitted,

FREDERICK V. MCMENIMEN, III

By his attorney,

William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
  *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  January 11, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this eleventh day of January, 2005, I caused a true copy of the foregoing document to be served by first class mail upon the plaintiffs' attorney of record and upon each other defendant in the captioned action.

William P. Corbett, Jr.

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          SUPERIOR COURT DEPARTMENT
                                        OF THE TRIAL COURT

|  |  |
|---|---|
| RONALD P. PASSATEMPO, TRUSTEE, ) On behalf of the Samuel Pietropaolo ) Irrevocable Trust, SAMUEL PIETROPAOLO, ) GRANTOR to the Samuel Pietropaolo ) Irrevocable Trust, and PATRICIA D. ) PIETROPAOLO, BENEFICIARY of the ) Samuel Pietropaolo Irrevocable Trust, ) ) Plaintiffs, ) ) v. ) ) FREDERICK V. McMENIMEN III, BARRY ) G. ARMSTRONG, NEW ENGLAND ) ADVISORY GROUP, LLC, 1717 CAPITAL ) MANAGEMENT COMPANY, NATIONWIDE) PROVIDENT (f/k/a Provident Mutual Life ) Insurance Company), and NATIONWIDE ) FINANCIAL SERVICES, INC., ) ) Defendants. ) | Civil Action No. 04-2661 |

## PLAINTIFFS' MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, Plaintiffs move that

the Court appoint Disinterested Parties, Inc. as special process server for the purpose of serving

Defendants in this action.

*2004 Dec. 27*

*Filed in Court and allowed*

*By the Court*

*Need J*   *Michael F. Query*
           *assistant Clerk*

Respectfully submitted,

Plaintiffs RONALD P. PASSATEMPO,
TRUSTEE, On behalf of the Samuel
Pietropaolo Irrevocable Trust, SAMUEL
PIETROPAOLO, GRANTOR to the Samuel
Pietropaolo Irrevocable Trust, and
PATRICIA D. PIETROPAOLO,
BENEFICIARY of the Samuel Pietropaolo
Irrevocable Trust,

By their counsel:

_____
Howard M. Cooper (BBO # 543842)
David M. Burkoff (BBO # 657447)
Todd & Weld LLP
28 State Street
Boston, MA  02109
(617) 720-2626

Dated: December 27, 2004

2

COMMONWEALTH OF MASSACHUSETTS



MIDDLESEX, ss

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT
C.A. NO. _____

04-2661

RONALD P. PASSATEMPO, TRUSTEE, on behalf )
Of the Samuel Pietropaolo Irrevocable Trust, )
And )
SAMUEL PIETROPAOLO, GRANTOR to the )
Samuel Pietropaolo Irrevocable Trust )
("Family Trust") )
And )
PATRICIA D. PIETROPAOLO, )
Grantor's Spouse and Beneficiary to Family Trust )
          Plaintiffs )
 )
vs. )
 )
FREDERICK V. MCMENIMEN III, )
NEW ENGLAND ADVISORY GROUP, )
BARRY G. ARMSTRONG, and )
NATIONWIDE PROVIDENT, )
          Defendants )

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR                    SEX

JUL 0 1 2004

CLERK

**VERIFIED COMPLAINT**
**AND JURY DEMAND**

07/01/04 16:01#0000 8962 CLERK E
CIVIL        240.00
SURCHARGE     15.00
SUMMONS       20.00
SECC          20.00
042661 #
SUBTTL       295.00
TOTAL 295.00
CHECK        295.00

**INTRODUCTION**

This is a complaint seeks legal and equitable redress from the above captioned

Defendants for the Plaintiffs' losses and damages suffered as a result of the Defendants' joint

and several breach of contract, negligence, fraud, and intentional misrepresentations as well as

certain violations under consumer protection laws, insurance regulations, and Massachusetts

Securities and Federal Securities laws and regulations all relating to the purported sale of a

Nationwide Provident Flexible Premium Variable Life Insurance No. 9,074,484 ("Insurance

Policy") policy which contained an insurance component and investment component. Such

policies are considered securities.

The Plaintiffs in the above captioned complaint are Samuel Pietropaolo ("Mr.

Pietropaolo"), a retired school administrator for whom the insurance policy was underwritten and

who placed the policy into trust for his family; Patricia D. Pietropaolo ("Mrs. Pietropaolo"), his

wife and beneficiary to the trust as well as beneficiary to Mr. Pietropaolo's retirement pension plan; and, Ronald P. Passatempo ("Mr. Passatempo"), the trustee of the Samuel Pietropaolo Irrevocable Trust ("Family Trust"), which is the current owner of an insurance policy on the life of Mr. Pietropaolo issued by Defendant Nationwide.

Mr. Pietropaolo retired from the Revere Public School System in 1997. For important and unique reasons the Plaintiffs required an insurance policy with a guaranteed death benefit of not less than $500,000. As a result of the Defendants' repeated acts, omissions, and misrepresentations the Plaintiffs' insurance policy is less than $500,000 resulting in the Plaintiffs suffering economic harm and distress. The Plaintiffs hereby seek appropriate remedies through this Court.

### PARTIES

1.  The plaintiff, Ronald P. Passatempo, Esquire, ("Mr. Passatempo"), is the trustee of the Samuel Pietropaolo Irrevocable Trust ("Family Trust") and owner of the Insurance Policy. Mr. Passatempo has a business address of 23 Forest St., Suite 105, Medford, Middlessex County, MA.

2.  The plaintiff, Samuel Pietropaolo ("Mr. Pietropaolo"), is the grantor to the Family Trust. Mr. Pietropaolo was the original applicant for insurance and life under which the Insurance Policy was written. Mr. Pietropaolo resides in, Revere, Suffolk County, MA.

3.  The plaintiff, Patricia D. Pietropaolo ("Mrs. Pietropaolo"), is the Family Trust primary beneficiary as well as the beneficiary to the surviving spouse annuity in Mr. Pietropaolo's retirement plan. Mrs. Pietropaolo resides in, Revere, Suffolk County, MA.

4.  The defendant, Frederick V. McMenimen III ("McMenimen"), is a financial advisor who is or was an agent for Defendant New England Advisory Group and Defendant Nationwide Provident. McMenimen has a current business address of 215 Newbury St., Peabody, MA 01960.

2

5. The defendant, New England Advisory Group, LLC ("NEAG") is a Massachusetts domestic limited liability company selling insurance and investment products to the public with a manager's address of 35 Farm Street, Medfield, MA 02052 (and a business address of 75 Wells St., Newton, Middlesex County, MA 02159).

6. The defendant, Barry G. Armstrong ("Armstrong"), is an investment advisor and principal of NEAG who worked with McMenimen on the Insurance Policy for the Plaintiffs. Armstrong has an address of 35 Farm Street, Medfield, Middlesex County, MA 02052.

7. The defendant, Nationwide Provident ("Nationwide"), is a member of the Nationwide Financial Services, Inc. companies, which has an address of 1 Nationwide Plaza, Columbus, OH 43215. Nationwide sold insurance and investment products through its agents NEAG, Armstrong, and McMenimen to the Plaintiffs. Nationwide operates as a foreign corporation in Massachusetts under the name of Nationwide Securities, Inc. with a resident agent address at CT Corporation, 101 Federal St., Boston, MA 02110.

## FACTS

8. The Plaintiffs restate and reallege their allegations contained in the above-numbered paragraphs.

9. Mr. Pietropaolo was the Director of Special Education for the City of Revere, Massachusetts and worked for the city for over thirty-two (32) years.

10. In June 1997, at age 68, Mr. Pietropaolo retired from work.

11. As a long time municipal employee, Mr. Pietropaolo was eligible for retirement benefits, including three pension payment options from the Massachusetts Teachers Retirement Board ("MTRB").

12. Mr. Pietropaolo had to choose between the three pension payment options, a copy of which is attached hereto as Exhibit A.

3

23. McMenimen represented that he was experienced in analyzing and advising individuals in pension maximization situations.

24. McMenimen was aware of the limited financial resources of Mr. Pietropaolo and his wife.

25. McMenimen was aware of the limited financial planning and investing experience of Mr. Pietropaolo.

26. McMenimen was aware that Mr. Pietropaolo did not want to risk having less than $500,000 in insurance for his wife.

27. McMenimen was aware that the primary asset for both Mr. Pietropaolo and his wife was the MTRB pension.

28. McMenimen was aware that once Mr. Pietropaolo selected his pension option (Option A or B or C) that payment election from the MTRB was irrevocable.

29. McMenimen reviewed Mr. Pietropaolo's three pension options.

30. McMenimen was aware that once Mr. Pietropaolo elected Option A, his spouse would be forfeiting her right to a guaranteed spousal survivor payment.

31. Under the pension plan, Mrs. Pietropaolo as a spouse to a plan member, was required to "sign-off" on Mr. Pietropaolo's election to forgo guaranteed survivor payment to her.

32. McMenimen analyzed Mr. Pietropaolo's situation.

33. McMenimen had Mr. Pietropaolo apply for several insurance policies of varying amounts.

34. McMenimen discussed with Sam P. that a minimum policy amount of $500,000 would provide Mr. Pietropaolo's wife with monthly income equal or better than what she would be entitled under Option C and make available a lump sum upon his death of at least $500,000 for her benefit.

5

35. McMenimen knew Mr. Pietropaolo had an existing whole life policy worth approximately $150,000 with John Hancock.

36. McMenimen knew Mr. Pietropaolo was paying less than $500/month for this guaranteed policy.

37. McMenimen had Mr. Pietropaolo cancel a $150,000 policy which cost approximately $487 per month and roll it into a new policy through McMenimen.

38. McMenimen took Mr. Pietropaolo's insurance application and shopped around for various policy types, levels, and rates.

39. McMenimen applied for $500,000 policy from Nationwide.

40. Nationwide declined to insure Mr. Pietropaolo on or about May 8, 1998.

41. McMenimen stated to Sam P. that the Nationwide underwriting decision was a mistake and he would take care of things.

42. Mr. Pietropaolo's application for insurance was approved by several companies including Mutual of New York ("MONY").

43. McMenimen had underwriting approvals from other insurance companies but directed Mr. Pietropaolo not to take those policies and to go with a Nationwide product.

44. Nationwide subsequently approved Mr. Pietropaolo for life insurance.

45. McMenimen explained that to make the policy more affordable he would structure it to have a small face value under one type of policy with a rider or second policy under another type of policy – however the policy aggregate would NOT be less than $500,000 at anytime.

46. McMenimen was aware that Mr. Pietropaolo did not want any risk of insurance being below the $500,000 target as originally applied.

47. McMenimen assured Sam P. that the insurance policy would always be maintained at least $500,000.

48. McMenimen made numerous verbal representations that the policy would grow well beyond $500,000.

49. McMenimen selected a Flexible Variable Premium Life Insurance Policy for Mr. Pietropaolo.

50. McMenimen explained to Sam P. that a portion of Mr. Pietropaolo's premiums would be used to pay for the insurance death benefit while another portion would be invested to build a fund which over time would allow the policy to be "self funding" thus relieving Mr. Pietropaolo from making further premium payments during his lifetime.

51. McMenimen discussed a number of investment situations to demonstrate how the investment portion of the policy would grow to reach a "self-funding" state.

52. McMenimen never explained or told Plaintiffs that the death benefit would be variable or unguaranteed.

53. Mr. Pietropaolo and Mrs. Pietropaolo each relied on the representations and advice of McMenimen in making the irrevocable pension payment Option.

54. The Plaintiffs relied on the representations of McMenimen in deciding to purchase an insurance policy as advised by McMenimen.

55. As a result of such reasonable reliance of and instruction from McMenimen, Mr. Pietropaolo forfeited his other pension options.

56. As a result of such reasonable reliance of and instruction from McMenimen, Mr. Pietropaolo left his wife without a spousal survivor income under the pension options.

57. As a result of such reasonable reliance of and instruction from McMenimen, Mrs. Pietropaolo signed away her spousal survivor income under the pension options.

58. As a result of such reasonable reliance of and instruction from McMenimen, Mr. Pietropaolo cancelled his existing insurance policy with John Hancock.

7

59. As a result of such reasonable reliance of and instruction from McMenimen, Mr. Pietropaolo cancelled insurance applications from MONY and Guardian which had also approved him for insurance.

60. Mr. Pietropaolo and Mrs. Pietropaolo each relied on the representations and advice of McMenimen in deciding to purchase a $500,000 insurance policy from Nationwide.

61. The monthly premium payment for the Insurance Policy is $1,592.25.

62. The final policy and its terms were never delivered to the Plaintiffs.  See attached Exhibit B.

63. On numerous occasions, Sam P. requested the final policy from McMenimen.

64. Upon each and every request, McMenimen assured Sam P. that everything was in order and not to worry.

65. Plaintiffs have never received a final policy.

66. The Plaintiffs believed to have a minimum $500,000 death benefit.

67. McMenimen has produced a $500,000 Policy Schedule from Nationwide a copy of which is attached hereto as Exhibit C.

68. Nationwide has produced a $200,000 Policy Schedule a copy of which is attached hereto as Exhibit D.

69. According to Nationwide records, McMenimen never requested or purchased additional amounts of insurance.

70. Due to the familial relationship, McMenimen forwarded "blank" forms to Mr. Pietropaolo and Passatempo to execute.

71. McMenimen then filled out all investment selections and certain other policy information without discussing selections with Plaintiffs.

72. McMenimen advised the Plaintiffs that the blank forms would allow him to expedite matters once he finalized things with Nationwide.

8

73. Sam P., Passatempo, and Mr. Pietropaolo trusted and relied on the advice of McMenimen and acquiesced to his request.

74. McMenimen did not deliver the final policy to Passatempo.

75. McMenimen did not deliver the final policy to Mr. Pietropaolo.

76. McMenimen was an agent of NEAG at the time Mr. Pietropaolo was sold a policy by McMenimen.

77. McMenimen was an agent of Nationwide at the time Mr. Pietropaolo was sold a policy by McMenimen.

78. NEAG was an agent of Nationwide at the time Mr. Pietropaolo was sold a policy by McMenimen.

79. Mr. Pietropaolo has been gifting money to the Family Trust to support the insurance policy with Nationwide.

80. The Trust has made all required premium payments towards an insurance policy in the amount of $1,592.25 per month ($19,107 annually) for more than six (6) years.

81. Between July 1998 and the present, the Trust has made premium payments aggregating approximately $114,642.

82. McMenimen instructed Passatempo and Sam P. to have all premium payments sent to his office.

83. McMenimen led Passatempo and Sam P. to believe and understand that McMenimen had continuing involvement in managing and monitoring this policy, thus his instruction to make payments to his office for processing to Nationwide.

84. Policy Statements issued by Nationwide indicated $200,000 "face value" with Net Death Benefit of $200,000.

85. McMenimen explained to Plaintiffs that the policy structure would include riders or additional insurance to maintain a $500,000 death benefit.

9

86. The Plaintiffs relied upon McMenimen's continuous management and oversight of the policy and portfolio relative to having a $500,000 death benefit.

87. On or about April 2003, Mr. Pietropaolo received a call from another NEAG agent, Jesse McPhail ("McPhail").

88. McPhail was instructed by Mr. Pietropaolo to speak with Sam P.

89. McPhail informed Sam P. that Mr. Pietropaolo's policy had been "orphaned" and that McMenimen was no longer the agent and no longer affiliated with NEAG.

90. McPhail researched the Trust's policy and advised Sam P. that the policy was reported as only for $200,000, that no additional riders or insurance were purchased; and, that the insurance portion of the policy was becoming more expensive each year thus leaving less of the remaining premium to go towards self funding piece of the policy.

91. Sam P. advised Passatempo that he would speak to his cousin, McMenimen about this matter.

92. Between April 2003 and July 2003, McMenimen and Sam P. had many conversations surrounding the "orphaned" policy.

93. McMenimen told Sam P.: (i) he was still the agent and that everything will be taken care of; and, (ii) not to have McPhail call about this account any more.

94. Sam P. complied with McMenimen's instructions.

95. McMenimen admitted to Sam P. that he "took his eye off the ball" and had failed to monitor and manage the policy which resulted in the policy losing its value over that past few years based upon McMenimen's investment selections and that is why the policy fell below $500,000.  See attached Exhibit E.

96. McMenimen assured Sam P. that he would correct the situation and secure the $500,000 policy value.

10

97. In June 2003, McMenimen informed Sam P. that he was having the policy re-underwritten which would result in additional $289,412 being added immediately to the reported $200,000 policy. See attached Exhibit F.

98. Again, McMenimen produced blank forms for the Plaintiffs to sign to "expedite" his efforts to correct policy mistakes.

99. Sam P. expressed disappointment in the continued shortfall from the original $500,000 policy target.

100. McMenimen stated it was the best he could do and that the investment portion of the policy would continue to grow and was already at $30,000+ which if added to the new $489,412 value would have Mr. Pietropaolo's policy in excess of $500,000.

101. Sam P. inquired repeatedly from McMenimen for the new policy to review with Mr. Pietropaolo.

102. McMenimen made numerous assurances that everything was taken care of and he would get the paperwork to Sam P. shortly.

103. Between July 2003 and December 2003, despite repeated requests for the new proposed policy values, McMenimen delivered none.

104. Nationwide's policy statement did not reflect any changes to the policy between July 2003 and December 2003.

105. In January 2004, after reviewing the 2003 year end policy statement from Nationwide, Sam P. again confronted McMenimen regarding the policy errors and lack of corrections.

106. McMenimen again assured Sam P. everything would be taken care of.

107. McMenimen got back to Sam P. in March 2004 alleging mistakes by Nationwide and NEAG in failing to process his July 2003 paperwork.

11

108.    On April 1, 2004, McMenimen met with Sam P. in Billerica, MA and provided McMenimen's paperwork having requested changes to the policy in July 2003.

109.    On April 1, 2004, McMenimen presented Sam P. with two (2) e-mails which McMenimen alleges came from NEAG confirming the changes to the policy.  These e-mails were suspiciously dated July 1, 2004 and August 21, 2004 – since this was only April 2004. A copy of the emails is attached hereto as Exhibit G.

110.    Furthermore, McMenimen produced copies of correspondences between McMenimen and Barry Armstrong of NEAG whereby Armstrong indicated the "complex" structure he developed for Mr. Pietropaolo's policy in order to get the business.  See attached Exhibit H.

111.    In determining what product to sell to Plaintiffs, Armstrong stated to McMenimen that "we really want and need this business…" placing personal interests ahead of Plaintiff's objectives.  See attached Exhibit H.

112.    The Armstrong e-mails in Exhibit H also state that any illustrations were manipulated by back-dating to spin a solution to the Plaintiffs.

113.    Between April 2004 and June 2004, Passatempo and Sam P. have attempted to get clarification from McMenimen and Nationwide regarding this policy matter.

114.    McMenimen stated on several occasions to Sam P. that NEAG and Nationwide wronged Mr. Pietropaolo. See attached e-mails.

115.    McMenimen claimed the Nationwide scheduled a meeting on May 7, 2004 to meet with McMenimen and Sam P. to resolve this matter.

116.    Nationwide has denied that such a meeting was ever scheduled.

117.    Since May 2003, McMenimen claims that he has been working with Nationwide for months and had forwarded all file materials to Nationwide for review.

## COUNT II

### Fraud, Deceit, and Misrepresentation

128.   The plaintiffs restate and reallege their allegations contained in the above-numbered paragraphs.

129.   The Defendants, through their agent, McMenimen, lied, deceived, and misled the Plaintiffs.

130.   The Defendants, through their agent, McMenimen, knowingly lied, deceived, and misled the Plaintiffs.

131.   The Defendants knew or should have known that its conduct, acts, omissions, and misrepresentations ("Acts") would and did induce the Plaintiffs to act in reliance of Defendants' Acts.

132.   The Plaintiffs reasonably relied on McMenimen Acts based upon his familial ties, representations of industry experience, and the agency relationships with the other Defendants which he touted.

133.   As a result of such fraud, deceit, and misrepresentation, the Plaintiffs have suffered grievous harm.

## COUNT III

### Unsuitability and Violations of State and Federal Securities Laws

134.   The plaintiffs restate and reallege their allegations contained in the above-numbered paragraphs.

135.   The Defendants, through their agent, McMenimen, sold the Plaintiffs an insurance/investment policy which did not meet the Plaintiffs' investment objective.

14

136.    The Defendants, through their agent, McMenimen, took investment risk not suitable for the Plaintiffs' risk tolerance, investment experience, and needs.

137.    The Defendants, through their agent, McMenimen, invested a 69 year old man's money in 100% equity funds with no diversification and without marking the investments to market conditions or client objectives.

138.    Defendants, through their agent, McMenimen, placed a 69 year old man's into an unguranteed life insurance policy.

139.    The Defendants have violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78(j)(b), S.E.C. Rule 10b-5, 17 C.F.R. § 240.10(b)-5, and § 410(a) of the Massachusetts Uniform Securities Act, Mass. Gen. Laws Ann. ch. 110A, § 410(a)(2), because the quality of the securities and investments within the securities were each inappropriate in light of the Plaintiff's investment objectives.

140.    McMenimen knew the Plaintiffs were risk averse, yet placed Plaintiffs into an unguaranteed security and insurance policy.

### COUNT IV

### Churning

141.    The plaintiffs restate and reallege their allegations contained in the above-numbered paragraphs.

142.    The Defendants, through their agent, McMenimen, advised and coerced Plaintiffs to terminate Mr. Pietropaolo's existing guaranteed life insurance policy and roll its "cash out" value into the new policy for which McMenimen would be paid.

143.    As a result of the Defendants' acts and omissions, the Plaintiffs have suffered grievous harm.

## COUNT V

### Breach of Contract

144.    The plaintiffs restate and reallege their allegations contained in the above-numbered paragraphs.

145.    Plaintiffs entered into an agreement to acquire an insurance policy for an aggregate death benefit of not less than $500,000.

146.    Plaintiffs paid all obligations for the benefit of a $500,000 policy.

147.    Plaintiffs never received the benefit of their bargain that being an insurance policy with a death benefit of at least $500,000.

148.    The Defendants, through their agent, McMenimen, did not deliver a $500,000 insurance policy to the Plaintiffs.

149.    As a result of such breach by the Defendants, the Plaintiffs have suffered grievous harm.

### RELIEF REQUESTED

WHEREFORE, the plaintiffs respectfully request that this Court:

1.    Determine and award damages appropriate to compensate the plaintiffs for the harm of which they complain.

2.    Award the plaintiffs' costs and reasonable attorneys' fees.

16

3.     Grant such other and further relief as justice requires.

## JURY DEMAND

The plaintiffs demand a trial by jury on all claims so triable.

Ronald P. Passatempo

Ronald P. Passatempo, Trustee, *Pro Se*
Samuel Pietropaolo Family Trust
23 Forest St., Suite 105
Medford, MA 02155
(781) 395-7678

Samuel Pietropaolo

Samuel Pietropaolo, *Pro Se*
45 Thurlow Ave.
Revere, MA 02151
(781) 289-4191

Patricia D. Pietropaolo

Patricia D. Pietropaolo, *Pro Se*
45 Thurlow Ave.
Revere, MA 02151
(781) 289-4191

Dated: July _1_, 2004

## VERIFICATION

We, the undersigned Plaintiffs, each hereby certify that: (1) we have read above

17

Complaint and state that all factual allegations are true to the best of our knowledge and that, as to facts alleged on information and belief, we believe them to be true.

Ronald P. Passatempo

Ronald P. Passatempo, Trustee, *Pro Se*
Samuel Pietropaolo Family Trust
23 Forest St., Suite 105
Medford, MA 02155
(781) 395-7678

Samuel Pietropaolo

Samuel Pietropaolo, *Pro Se*
45 Thurlow Ave.
Revere, MA 02151
(781) 289-4191

Patricia D. Pietropaolo

Patricia D. Pietropaolo, *Pro Se*
45 Thurlow Ave.
Revere, MA 02151
(781) 289-4191

Dated: July ____, 2004

18

# Exhibit A



**MASSACHUSETTS TEACHERS' RETIREMENT BOARD**

*Boston Office*
69 Canal Street
Boston, MA 02114-2006
(617) 727-3661
Fax (617) 727-6797

*Western Regional Office*
60 Macek Drive
Chicopee, MA 01013-3304
(413) 592-4771
Fax (413) 784-1707

*Retiring from the MTRS*
## Option Selection Form

**INSTRUCTIONS:** Please verify the information in Section 1; review Sections 2 and 3; analyze your benefit options in Section 4 in light of your particular situation; complete Sections 5 and 6 (on back); make a copy of this form for your records and return this original form to us.

SAMUEL PIETROPAOLO

45 THURLOW STREET
REVERE MA 02151

### 1 MEMBER DATA

| | |
|---|---|
| School District | REVERE PUBLIC SCHOOLS |
| Social Security No. | REDACTED 4826 |
| Date of Retirement | 06/30/1997 |
| Veteran Status | VETERAN |
| Date of Birth | REDACTED /1929 |

### 3 ANNUITY ACCOUNT STATUS

This information is included for your reference in calculating your income tax after retirement. Refer to your *Retirement Information Booklet* or consult with your tax advisor for additional information. *All figures below are estimated.*

| | |
|---|---|
| After-tax contributions (for Simplified General Rule) | $26,428.14 |
| Pre-tax contributions (after 1/1/88) | $29,365.63 |
| Pre-tax interest (all interest is pre-tax) | $43,531.57 |
| Annuity savings account balance | $99,325.34 |

### 2 RETIREMENT BENEFIT CALCULATION COMPONENTS

| | |
|---|---|
| Age and age factor | 68 / .0250 |
| Creditable service | 32.6000 YRS |
| Salary average | $66,208.18 |
| % of salary average | 80.45 |
| Option C factor | .7100 |

### 4 ESTIMATED ALLOWANCES BY OPTION (NOTE THAT THESE ARE SUBJECT TO CHANGE)

| Option | Benefit | Monthly | Annually |
|---|---|---|---|
| **A** | Amount paid to member for life | $4,438.88 | $53,266.56 |
| **B** | Amount paid to member for life | $4,228.31 | $50,739.72 |
| | Annual reduction from member's MTRS annuity savings account | | $8,164.56 |
| **C** | Amount paid to member for life* | $3,151.62 | $37,819.44 |
| | Amount paid to Option C beneficiary (named below) upon member's death, for life*  PATRICIA PIETROPAOLO | $2,101.08 | $25,212.96 |

*Estimated figures will appear here ONLY if you completed Part 4 of your Application for Retirement and submitted your beneficiary's certified birth record and marriage certificate, if applicable, along with your Application. If you choose Option C and your beneficiary predeceases you, please contact the MTRB and request an Option C Reversion Claim Form.*

### 5 MEMBER'S RETIREMENT OPTION SELECTION, STATEMENT AND SIGNATURE

I, the undersigned, having applied for retirement from the Massachusetts Teachers' Retirement System, hereby elect to receive my retirement allowance under the option selected below *(check one)*:

| Date sent (8/19/) | Date due |
|---|---|
| 8-22-97 | 9-22-97 |

☒ **Option A**
(No survivor benefits)

☐ **Option B**
(Remainder of annuity savings account paid to named beneficiary in lump sum)

☐ **Option C**
(Monthly benefit paid to named beneficiary)

*Your signed Option Selection Form must be received in the Office of the MTRB by 9/22/97 (30 days from date of mailing), or your retirement allowance benefits will be paid under Option "B"*

I also understand that: I cannot change my option selection after my date of retirement; and, if I do not return this *Option Selection Form* by my date of retirement, the MTRB will retire me under Option B.

Member's signature _Samuel Pietropaolo_    Date _9/22/97_

Form RCS-F004-OSF-0597

**IMPORTANT: COMPLETE SECTION 6 ON THE BACK** - - - - - - - - - - - - - - - →

**MTRB**
**MASSACHUSETTS TEACHERS' RETIREMENT BOARD**

Boston Office
69 Canal Street
Boston, MA 02114-2006
(617) 727-3661
Fax (617) 727-6797

Western Regional Office
60 Macek Drive
Chicopee, MA 01013-3304
(413) 592-4771
Fax (413) 784-1707

*Option Selection Form (back)*

# Spousal Acknowledgment

## INSTRUCTIONS TO RETIRING MEMBER

The law requiring this Spousal Acknowledgment (Chapter 306, § 18 of the Acts of 1996) became effective on November 7, 1996. As a member who is retiring from the Massachusetts Teachers' Retirement System and who files his or her *Option Selection Form* on or after November 7, 1996, you need to complete this *Spousal Acknowledgment*.

You must complete Section 6 and then, if applicable, your spouse must complete Section 7. If your spouse's whereabouts are unknown, you must complete a notarized affidavit, including your spouse's last known address. If your spouse is medically unable to sign the acknowledgment, you will need to submit a letter from the attending physician attesting to that fact. (Special affidavits for these situations are available from the MTRB.) You must also provide the Board with a copy of an executed durable power of attorney if one is available.

MTRB USE ONLY

RECEIVED
SEP 2 2 1997
MASSACHUSETTS TEACHERS
RETIREMENT BOARD

## 6    MEMBER'S STATEMENT AND SIGNATURE

Member's name (please print)    Last PIETROPAOLO    First SAMUEL    Middle

Member's Social Security number    REDACTED    REDACTED 4826

I, the undersigned, having applied for retirement from the Massachusetts Teachers' Retirement System, have elected to receive my retirement allowance under the option selected in Section 5 of this *Option Selection Form*. I hereby certify that (check one):

[✓] I am now married or expect to be married as of the date of retirement stated in Section 1 of this *Option Selection Form*. Please sign and date Section 6, below, then give this form to your spouse for completion of Section 7.

[ ] I am currently divorced and it is my understanding that there
[ ] is    [ ] is not    [ ] don't know
a Domestic Relations Order on file with the Massachusetts Teachers' Retirement Board. Please sign and date Section 6, below, then return this form to the MTRB.

[ ] I am NOT currently married and do not expect to be married as of the date of retirement stated in Section 1 of this *Option Selection Form*. Please sign and date Section 6, below, then return this form to the MTRB.

I subscribe under the penalties of perjury that the information I have supplied in this form is true, complete and correct to the best of my knowledge.

Signature *Samuel Pietropaolo*    Date 9/22/97

## INSTRUCTIONS TO SPOUSE

As the spouse of a member who is retiring from the Massachusetts Teachers' Retirement System on or after November 7, 1996, you are entitled to both notification and explanation of the retirement option selected by the member. The member must complete Section 6 and then, if applicable, you must complete Section 7. You must sign Section 7 before one witness; the member named in Section 6, above, cannot be your witness. The witness must sign and date the form on the same day that you do; it is not necessary that your witness be a Notary Public.

Before completing this section, please see which retirement option your spouse has chosen in Section 5 on the front of this form and then read the explanations of the available retirement options as provided in the *MTRB Retirement Information Booklet* provided with your spouse's *Option Selection Form*. Please be sure that you have read and understand the various provisions of the option selected by your spouse, specifically, the benefits to which you may or may not be entitled to upon his or her death. If you have any questions, do not hesitate to contact the MTRB for an explanation.

If you fail to sign the *Spousal Acknowledgment*, the Board will notify you within fifteen (15) days by registered mail of the option selected by your spouse and your right to sign and return the spousal acknowledgment within thirty (30) days. Failure to sign and return the *Spousal Acknowledgment* to the Massachusetts Teachers' Retirement Board within 30 days will result in your spouse's selection becoming effective without your signature.

## 7    SPOUSAL ACKNOWLEDGMENT

Spouse's name (please print)    Last PIETROPAOLO    First PATRICIA    Middle D

Spouse's Social Security number    REDACTED    REDACTED 0524

I, the undersigned, am the spouse of the member named in Section 6, above, who has applied for retirement from the Massachusetts Teachers' Retirement System. I hereby certify that:

▶ I have read and understand the information on Options A, B and C provided in the *MTRB Retirement Information Booklet (The Three Options: An Overview)*;

▶ I have reviewed Section 5 of this *Option Selection Form*; and,

▶ I am aware of the option selected by the member and understand the provisions of that option.

I subscribe under the penalties of perjury that the information I have supplied in this form is true, complete and correct to the best of my knowledge.

Signature *Patricia Pietropaolo*    Date 9/22/97

SPOUSE'S SIGNATURE WITNESSED BY

Signature *Mary McKenna Guanci*    Date 9/22/97

Name (please print) Mary McKenna Guanci    Address 25 Spy Pond Parkway, Arlington, MA.

# Exhibit B



**PROVIDENT MUTUAL**



RECEIVED
AUG - 5 1998

## POLICY DELIVERY RECEIPT

| AGENT<br>MEMENIMEN III, FREDERICK V | AGENCY<br>001-01 |
|---|---|

| INSURED<br>SAMUEL PIETROPAOLO | POLICY NO.<br>REDACTED 4,484 |
|---|---|

| OWNER (IF OTHER THAN INSURED) |
|---|

| 1. ☐<br>PERSONAL<br>DELIVERY | I hereby certify that the above-referenced policy was personally delivered to me on _____ by the Agent signing below. | |
|---|---|---|
| | OWNER SIGNATURE | DATE |
| | AGENT SIGNATURE | DATE |
| 2. ☐<br>MAILING | I hereby certify that the above-referenced policy was mailed to the Owner on _____. | |
| | AGENT SIGNATURE | DATE |
| | MANAGER OR OFFICE MANAGER SIGNATURE | DATE |

**FOR PENSION ADMINISTRATORS ONLY**

| 3. ☐ | I hereby certify that the above-referenced policy is being retained by me pursuant to an authorization signed by the above-referenced Owner dated _____, a copy of which is attached. | |
|---|---|---|
| | AGENT SIGNATURE | DATE |

THIS FORM IS TO BE RETAINED IN THE AGENCY OR REGIONAL

OFFICE'S CENTRALIZED POLICY RECEIPT FILE.

DO NOT RETURN TO THE HOME OFFICE

S15251   5.95                                                    MC: 001M-L001 -0

# Exhibit C

# POLICY SCHEDULE

| | | |
|---|---|---|
| **INSURED** | SAMUEL PIETROPAOLO | |
| **POLICY NUMBER** | REDACTED / REDACTED 4,484 | 07/28/1998 **POLICY ISSUE DATE** |
| **FACE AMOUNT** | $500,000.00 | 69,MALE **ISSUE AGE AND SEX** |
| **DEATH BENEFIT** | OPTION | 07/05/1998 **POLICY DATE** |
| **PREMIUM CLASS** | WITH EXTRA RATING | 07/05/2029 **FINAL POLICY DATE** |

*(handwritten: MAY Amount correct)*

## BENEFITS

FLEXIBLE PREMIUM VARIABLE LIFE INS~~~~
    INITIAL FACE AMOUNT     $500,000.00

This Policy provides life insurance coverage on the Insured until the final policy date, provided the Net Cash Surrender Value is sufficient to cover the deductions for the cost to that date of the benefits of this Policy and of any riders. You may have to pay more than the premiums shown below to keep this Policy and coverage in force to that date, and to keep any additional riders in force.

MINIMUM INITIAL PREMIUM —     $3,145.00

PLANNED PERIODIC PREMIUM —     $1,525.92 PAYABLE MONTHLY

MINIMUM ANNUAL PREMIUM —     $18,870.00

# Exhibit D

# POLICY SCHEDULE

INSURED   SAMUEL PIETROPAOLO

POLICY NUMBER   REDACTED REDACTED 4,484          07/28/1998   POLICY ISSUE DATE

FACE AMOUNT   $200,000.00          69,MALE   ISSUE AGE AND SEX

DEATH BENEFIT   OPTION A          07/05/1998   POLICY DATE

PREMIUM CLASS   WITH EXTRA RATING          07/05/2029   FINAL POLICY DATE

## BENEFITS

FLEX BLE PREMIUM VARIABLE LIFE INSURANCE
    INITIAL FACE AMOUNT       $200,000.00

This Policy provides life insurance coverage on the insured until the final policy date, provided the Net Cash Surrender Value is sufficient to cover the deductions for the cost to that date of the benefits of this Policy and of any riders. You may have to pay more than the premiums shown below to keep this Policy and coverage in force to that date, and to keep any additional riders in force.

MINIMUM INITIAL PREMIUM –          $3,145.00

PLANNED PERIODIC PREMIUM –          $1,525.92 PAYABLE MONTHLY

MINIMUM ANNUAL PREMIUM –          $18,870.00

MINIMUM FACE AMOUNT –          $100,000.00   AFTER 10TH POLICY YEAR

MINIMUM PAYMENT –   $25.00

PARTIAL WITHDRAWAL – MINIMUM AMOUNT          $1,500.00

TRANSFERS – MINIMUM AMOUNT          $500.00

POLICY LOAN – FIXED          6.00% POLICY LOAN INTEREST RATE

          MINIMUM LOAN AMOUNT –   $500.00

# Exhibit E

## Pietropaolo, Sam

| | |
|---|---|
| **From:** | COACHMCM@aol.com |
| **Sent:** | Friday, April 16, 2004 8:38 AM |
| **To:** | Pietropaolo_Sam@emc.com |

**Subject:** Follow up

I have asked for something earlier if possible. That was my mistake. I gave you bad dates for when I passed them to you. They are not coming to Massachusetts until the 5th or 6th. I looked at the wrong week. I have asked for something Thursday or Friday that week.

When I get my original NEAG file I will pass it right along. I am in the process of typing out my notes and a time line to pass to you with all that I have. I am going to storage this weekend to find my old files and see if anything is present.

I want to again apologize for this. I along with you thought based on the emails and forms that it was all set. I am very frustrated and angry that I was presented with something that someone else did not follow up. I want to insure you that your dad should not worry. IT WILL be handled properly and I would NEVER let you , your mom or dad be harmed by this in any way. I think its best said that family takes care of family and this will be settled right away. I am not going to let NEAG and their actions or lack of actions have a negative impact on family. I feel sick about it. I will push as hard as I can on this. I will be away over vacation but I think when everyone meets and sits down it will be handled quickly. I dont think we should make more of it than it is at this time. If we push to hard then I think it will take longer and if more people get involved it will bog down. They are willing to listen and then if we dont get immediate results we should push. I truly feel we will get a quick resolution. It will get resolved and I am sorry. I will write back as soon as I hear back from them today!

# Exhibit F

Application for Policy Change                                    PC 0104

# NATIONWIDE LIFE INSURANCE COMPANY OF AMERICA
### Berwyn, Pennsylvania 19312-1181

(Policy(ies) must be sent to the Company with this application)

| 1. First—middle initial—last name of Insured | 2. Date of birth | 3. Policy Number |
|---|---|---|
| Samuel Pietropaolo | Month  Day  Year REDACTED 29 | REDACTED 4484 |

The undersigned request the Company to make in the above policy the change(s) indicated below. If a change under A2, A3 or, if policy numbered under 2,000,000, A4 is requested, any beneficiary designation or election of method of settlement heretofore made under the original policy is revoked as to said policy. Usual attachment requirements (see Form A48) for supplementary benefits not included in the original policy.

**A. 1. CONVERSION OF TERM AGREEMENT**

☐ Convert $_____ of the supplementary term insurance agreement into a new policy as described in (B) below. Convert as of:
☐ Attained age   ☐ Original age.

☐ Convert $_____ of the supplementary term insurance agreement and in conjunction with a new application dated _____ issue a new policy as described in (B) below.

☒ Balance of $ 289,412 to continue under supplementary agreement attached to the original policy.

☐ Balance to lapse.

**A. 3.** ☐ Change or exchange the original policy into a new policy as described in (B) below.

**A. 2. CONVERSION OF TERM POLICY**

☐ Convert $_____ of the original term policy into a new policy as described in (B) below. Convert as of:
☐ Attained age   ☐ Original age.

☐ Convert $_____ of the original term policy and in conjunction with a new application dated _____ issue a new policy as described in (B) below.

☐ Balance of $_____ to continue under a new policy of the same number, date and plan as the original policy.

☐ Balance to lapse.

**A. 4.** ☐ Cancel supplementary agreement for_____ attached to the original policy.

**B. PROVISIONS OF NEW POLICY**

1. a) Amount and plan of policy applied for:

   b) Additional benefits:*
   ☐ Disability-waiver of premium
   ☐ Guaranteed purchase option — amount $_____
   ☐ Accidental death $_____  ☐
   ☐ Protected premium agreement
   ☐ Paid-up additions agreement $_____ Year(s)
   ☐ Paid-up additions agreement $_____ single premium
   c) ☐ Insurance exchange agreement  ☐
   d) ☐ Term dividend option-balance of dividends applied as in B3
   e) Automatic premium loan ☒ Yes ☐ No
   f) Policy Loan Interest Rate: ☐ Variable unless ☒ Fixed is selected.

2. Premium frequency:  Yrly ☐ H-Yrly ☐ Qtly ☐ Mthly ☒ APP ☐
   1st prem. pd.? ☒ Yes ☐ No

3. Dividends: ☐ Paid-up additions  ☐ Reduce premium
   ☐ Accumulations   balance of dividends to:
   ☐ Pay in cash   ☐ Paid-up additions
                   ☒ Accumulations
                   ☐ Pay in cash

4. Beneficiary:  (Name)  (Relationship)

   SAME (TRUST)  Other-wise

   Insured's executors or administrators, unless otherwise specified in remarks (Joint beneficiaries receive equally or survivor, unless other-wise specified.)

5. Owner — All rights belong to insured unless specified in remarks.

6. Policy date desired?

7. Have you used any tobacco product or product containing tobacco or nicotine in the last 12 months? ☒ Yes ☐ No

8. Social Security No. of Insured   REDACTED 4826

9. S.S. or Tax I.D. No. of Owner

**REMARKS**

In consideration for the change of policy herein provided, the undersigned acknowledge receipt of any sums payable as set forth in the Authorization and Statement of Account on the reverse side hereof and direct payment of such sums in the manner therein set forth.

It is hereby declared and agreed that all the statements contained herein and in the application for the original policy are complete and true and are hereby made the basis for the new policy and that the original policy (if a change is made under A2, A3 or, if policy numbered under 2,000,000, or the original supplementary agreement (if a change is made under A1 or A4) is hereby released and surrendered to the Company.

Any reference in this instrument to a beneficiary living or surviving will, unless otherwise provided, mean living at the Insured's death.

I (we) hereby certify, under penalties of perjury, that the social security number or taxpayer identification number I am (we are) providing is correct and I am (we are) neither currently subject to backup withholding, nor have been so notified by the Internal Revenue Service.

Signed at (City and State) Revere MASS

On (Date) JULY 5 2003
(Month Day Year)

Signature of Agent _____

If policy is owned by or assigned to a corporation we must have signature of one officer (other than insured) with name and title clearly indicated on this form.

Insured or Owner _____

All others having any interest in the policy  Samuel Pietropaolo

A49  7.88                                              (Rev. 6.02)

**AUTHORIZATION AND STATEMENT OF ACCOUNT**

To NATIONWIDE LIFE INSURANCE COMPANY OF AMERICA _____ July 5 2003
(Month, Day, Year)

The undersigned hereby receipt for and approve and direct the application of the following moneys, as indicated below, originating from the change of the original policy number _____9074484_____. All of the following items, unless indicated otherwise, refer to the original policy.

In full consideration for the change of policy provided herein:

| | |
|---|---|
| Total conversion credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 289,412 |
| Fractional dividend—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5903   ) $ | |
| Full release of dividends and interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5773   ) $ | |
| Allowance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5503120) $ | |
| Cash value of $_____paid-up additions . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5503120) $ | |
| Reserve allowance—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5503120) $ | |
| Return premium—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 2003130) $ | |
| Return premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 1900030) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (           ) $ | |
| **Total** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | |

To be disbursed as follows:

Pay loan on policy_____in full ·········· (Cr. 0322010) $ _____
                                        on account

Pay interest on loan_____(Cr. 3322110) $ _____
   The balance of such loan(s), $_____, shall constitute a loan on the
   new policy, which loan shall be represented by the original loan agreement(s).

| | |
|---|---|
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (           ) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (           ) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (           ) $ | |
| Deposit to Premium Deposit Fund (A/C#            ) . . . . . . . . . . . . . . . . . . . . . . (Cr. 1290130) $ | |
| Pay_____premium due_____ on policy_____(Cr. 1900030) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (           ) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (           ) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (           ) $ | |
| Pay cost of change . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1900030) $ | |

Pay the balance by check
   To the order of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1920040) Amount $ _____
   Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   To the order of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1920040) Amount $ _____
   Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Total paid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

Signed at _____Reare MASS_____        Insured or x _Ronald Thransfergs_
                    (City and State)        owner
Date signed __7/5/03__                 All others
              (Month, Day, Year)       having any xx _Samuel Billingsack_
                                       interest in
                                       the policy _____

| AGENT(S) OF CREDIT—PRINT FIRST 2 INITIALS—LAST NAME | % | F.E. | CODE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**Special Instructions or Remarks**

A49 7.89                                                    (Rev. 6.02)

☐ Nationwide Life Insurance Company of America
　Service and Technology Center, P.O. Box 15750, Wilmington, DE  19850-5750, (800) 688-5177
☐ Nationwide Life and Annuity Company of America
　Service and Technology Center, P.O. Box 15750, Wilmington, DE  19850-5750, (800) 688-5177

**Nationwide®**
Provident
a Nationwide® Financial company

PC 0702

## Fund Transfer/Allocation Change for Options Elite

| Insured's Name (please print) SAMUEL PIETROPAOLO | Policy No. ☒ REDACTED 4484 |
| Policy Owner's Name (please print) TRUST | Daytime Phone |

Please select all that apply: (If your allocation is different for each selection, use more than one form.)

☒ **Transfer of Current Account Value:** I elect to transfer my current account value into the following funds to the specified "end result." (Note: This will not change the allocation of future premium payments nor your election of asset rebalancing. To change those, check the box below.)

☐ **Allocation Changes for Future Premium Payments:** I wish to change the premium allocation percentages as specified. (Note: This will also affect Automatic Asset Rebalancing transfers, if previously elected.)

☐ **Allocation Changes for Monthly Deductions:** I wish to change the monthly deduction allocations as specified.(Not applicable to **Options** modified premium variable life policies.)

☒ **Allocation of Unscheduled Premium Payment:** $ 4200% premium is enclosed. Allocate premium as specified. (Applies to this payment ONLY....will not affect future allocations).

| | Transfer/ Allocation Change (whole % only) | Deduction Allocation (whole % only) |
|---|---|---|
| **AMERICAN CENTURY VARIABLE PORTFOLIOS, INC.** | | |
| American Century VP Ultra Fund:  Class I | ___ % | ___ % |
| American Century VP Income & Growth Fund:  Class I | 25 % | ___ % |
| **DREYFUS INVESTMENT PORTFOLIOS** | | |
| Small Cap Stock Index Portfolio | ___ % | ___ % |
| **DREYFUS VARIABLE INVESTMENT FUND** | | |
| Appreciation Portfolio:  Initial Shares | ___ % | ___ % |
| **FEDERATED INSURANCE SERIES** | | |
| Federated Quality Bond Fund II:  Primary Shares | ___ % | ___ % |
| **FIDELITY VARIABLE INSURANCE PRODUCTS** | | |
| Fidelity Investment Grade Bond Portfolio:  Service Class | 25 % | ___ % |
| Fidelity Equity-Income Portfolio:  Service Class | 25 % | ___ % |
| Fidelity Growth Portfolio:  Service Class | ___ % | ___ % |
| Fidelity Overseas Portfolio:  Service Class | ___ % | ___ % |
| **GARTMORE VARIABLE INSURANCE TRUST** | | |
| Gartmore GVIT Government Bond Fund | ___ % | ___ % |
| Gartmore GVIT Investor Destinations Aggressive Fund | ___ % | ___ % |
| Gartmore GVIT Investor Destinations Conservative Fund | ___ % | ___ % |
| Gartmore GVIT Investor Destinations Moderate Fund | ___ % | ___ % |
| Gartmore GVIT Investor Destinations Moderately Aggressive Fund | ___ % | ___ % |
| Gartmore GVIT Investor Destinations Moderately Conservative Fund | ___ % | ___ % |
| **JANUS ASPEN SERIES** | | |
| Capital Appreciation Portfolio:  Service Shares | ___ % | ___ % |
| **THE MARKET STREET FUND** | | |
| Equity 500 Index Portfolio | ___ % | ___ % |
| Money Market Portfolio | ___ % | ___ % |
| **OPPENHEIMER VARIABLE ACCOUNT FUNDS** | | |
| Capital Appreciation/VA:  Initial Class | ___ % | ___ % |
| Global Securities Fund/VA:  Initial Class | ___ % | ___ % |
| **VANGUARD VARIABLE INSURANCE FUND** | | |
| Equity Income Portfolio | ___ % | ___ % |
| Total Bond Market Index Portfolio | ___ % | ___ % |
| High Yield Bond Portfolio | ___ % | ___ % |
| Mid-Cap Index Portfolio | ___ % | ___ % |
| **GUARANTEED ACCOUNT*** | 25 % | ___ % |
| *Transfers from the Guaranteed Account may only be made within 30 days of a Policy Anniversary and are limited to 25% of the total account assets. | 100% | 100% |

**Or Request Specific Dollar Amount Transfers:**

☐ **Subaccount Transfer:** I elect to transfer the following dollar amounts from and to the specified funds. (Existing policy values only; does not affect allocation of future premium payments or asset rebalancing, if applicable)

| FROM Fund | Dollar Amount  TOTAL | TO Fund |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Confirmation of request will follow and should be reviewed for accuracy.  Discrepancies must be brought to the attention of the Service Center immediately.  Please contact your Agent or our Service Center at (800) 688-5177 for additional assistance.

| _Ronald _____ (signature)_ | _Samuel Pietropaolo (signature)_ | 7/5/03 |
| Signature of Policy Owner(s) | Signature of Authorized Third Party | Date |
| | Instructed to Request this Transfer/Change by the Owner | |

16171  1.03                                Page 2 of 2

# Exhibit G

| Subj: | **(no subject)** |
| Date: | 7/01/2004 5:47:58 PM Eastern Standard Time |
| From: | Paul Tomassini |
| To: | CUSTOMLLC |

Hi Rick,

Per our conversation I have received the forms that you had signed by the trustee and I will submit them. Effective July 5, which is the anniversary date the policy face amount will be changed via a change in death benefit options to 489,512. We will change the investment options as directed effective the same day. As discussed the policy may MEC out and if so lets discuss the options.

Your Uncle will receive the updates in his next statement. I will forward a copy to you. I am sorry about the confusion and the underwriter. I will take the heat for you if needed. Its our fault here and not yours. If we have any other issues I will call you.

Paul

Subj:    **(no subject)**
Date:    8/21/2004 3:16:42 PM Eastern Standard Time
From:

        Paul Tomassini
To:

        CUSTOMLLC

Rick,

This is to confirm our conversation yesterday. I did send in the paperwork and the death benefit as of today is $489,512. I will forward a statement to you at the end of September. The underwriter did me a favor on this one. Please do not call I do not want to put her in an awkward situation again. Thanks for the sox tickets as well. We had fun. Lets catch up soon.

# Exhibit H

MEMORY TRANSMISSION REPORT

TIME        : SEP 03 '98  02:43
TEL NUMBER  : 6179648431
NAME        : NEAG NEWTON

| NBR | FILE | DATE | TIME | DURATION | PGS | TO | DEPT NBR | MODE | STATUS |
|-----|------|------|------|----------|-----|----|---------|------|--------|
| 084 | 35 | SEP.03 | 02:42 | 00/31 | 1 | 6037750603 | | EC | M | OK |



July 27, 1998

Rick,

Per the phone conversation regarding your uncle I have worked with underwriting to get the policy issued as a favor to me.  It is rated however I have come up with an illustration that will start with a DB of  326,563 and grow with the investment well above your 500000 target.  This will be with a good portfolio strategy which I will forward.  This will allow you to cancel the MONY policy ( or non take) and the Guardian.  We really want and need this business and this will help.  I realize its family and you have done a good job with us so I was able to get this done. It's a bit confusing but I will explain when you come in.  Lets get it issued and placed then work through the modifications.

Barry

```
MEMORY TRANSMISSION REPORT

                              TIME       : SEP 10 '98  23:19
                              TEL NUMBER : 6179648431
                              NAME       : NEAG NEWTON


NBR  FILE   DATE    TIME   DURATION  PGS   TO                    DEPT NBR  MODE        STATUS

209   06   SEP.10  23:19   00/32    1    F.V. M MENIMEN III              G3      M    OK
```



July 16, 1998

As discussed heres the new illustration.  It has been backdated to April 29.
Please sign the illustration forms and we will fax to underwriters


Barry

# Exhibit I

**LAW OFFICES OF**
# RONALD P. PASSATEMPO
**ATTORNEY AT LAW**

RONALD P. PASSATEMPO JD MBA
MEMBER MASSACHUSETTS BAR

23 Farr st Street, Suite 105
Medfo d, Massachusetts 02155

Telephone (781) 395-7678
Facs m ile  (781) 395-7732

July 1, 2004                    VIA CERTIFIED MAIL



Frederick V. McMenimen III
Custom Financial LLC
215 Newbury St.
Peabody, MA 01960

New England Advisory Group LLC
C/O Barry G. Armstrong
35 Farm St.
Medfield, MA 02052

Barry G. Armstrong
35 Farm St.
Medfield, MA 02052

Nationwide Provident
ATTN: James W. DuBois
300 Continental Drive
Newark, DE 19713-4399

RE:   **POLICY** *REDACTED*
      **Insured: Samuel Pietropaolo**
      **Owner – Ronald Passatempo, Trustee, Samuel Pietropaolo Fam l y Trust**

Dear Mr. McMenimen et al.:

Under the provisions of Massachusetts General Laws, Chapter 93A, Section 9, I hereby
make written demand for relief as outlined in that statute.

On or about July 5, 2003, the following unfair or deceptive act occurred:

On or about April 2003, Mr. Pietropaolo received a phone call from an agent of New
England Advisory Group ("NEAG") named Jesse McPhail ("McPhail") sta i ng that the
above referenced policy had been "orphaned" and he was the new agent on t ie account.
Frederick McMenimen ("McMenimen") was no longer the account represer y ative.

Upon further inquiry we learned that McMenimen was no longer associated with NEAG and Nationwide Provident; however, McMenimen continued to direct us to make all payments to Nationwide through is office. Further, we learned through McPha l that the policy was for a limited value of $200,000.

We contacted McMenimen who stated and assured that he was still the agent a id that while the policy showed $200,000 it was a mistake and he would correct the error.

In July 2003, McMenimen stated he executed documents to have policy cash value converted into $289,412 of permanent insurance which would raise the policy death benefit to guaranteed 489,412. Although still below the original $500,000 minimum; McMenimen promised continued growth in the investment portion of the policy as he also changed the policies investment strategy (which had been overlooked for years by McMenimen).

To date, no changes have been effectuated and the policy sits with a value below what was originally sold.

The insured, Mr. Pietropaolo, originally engaged McMenimen to discuss "pension maximization" for his state teachers' retirement pension. Based upon review of Mr. Pietropaolo's pension options, it was determined that the minimum insurance to make it worth doing pension maximization was $500,000.

McMenimen did not place Mr. Pietropaolo into a guaranteed $500,000 policy. Despite numerous representations that the policy would never be at risk to go below $500,000. He did explain that a portion of the premium would go to a mutual fund to build cash in order to one day make the policy "self-funding".

In structuring the transaction, McMenimen had Mr. Pietropaolo cancel and cash out an existing policy with John Hancock.

Mr. and Mrs. Pietropaolo made irrevocable elections regarding the pension maximization advice from McMenimen.

McMenimen has placed Mr. Pietropaolo in an inappropriate policy with unsuitable investment strategy. Mr. Pietropaolo placed the policy in trust for the benefit of his wife.

McMenimen was an agent of NEAG and Nationwide Provident.

McMenimen and NEAG earned commissions off of selling a policy to Mr. Pietropaolo.

The Trustee has made all required premium payments to date on this policy.

Mr. Pietropaolo and the trustee have been trying for over a year to get this matter corrected.

McMenimen, NEAG, and Nationwide, jointly and severally, through their collective acts and omissions have misled, intentionally misrepresented, and deceived Mr. Pietropaolo, Mrs. Pietropaolo, and Mr. Passatempo for which seek equitable and legal redress.

This unfair or deceptive act or practice is, in my opinion, declared unlawful by Section 2 of Chapter 93A, which in part reads as follows:

> "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

As a result of this unfair or deceptive act or practice, I suffered injury or loss of money as follows:

1. Policy value is more than $300,000 less than originally sold.
2. We have paid approximately $115,000 in premiums without benefit of receiving a $500,000 policy.
3. Mr. and Mrs. Pietropaolo forfeited certain guaranteed payment options through Mr. Pietropaolo's retirement benefits.
4. Attorney's fees.

Therefore, I hereby demand the following relief:

1. *Immediate confirmation of a fully paid insurance policy with a guaranteed death benefit of not less than $800,000 (based upon the $500,000 original expected policy plus the approximate $290,000 of converted cash value in the policy as of 7/5/03) documentation of such acceptable to the Trust and Mr. and Mrs. Pietropaolo.*
2. *Immediate return of all previously paid premiums and costs with 6% per annum interest*
3. *Confirmation that death benefit guaranteed with no further premiums costs, or other obligations due or owing now or in the future for the policy*
4. *Indemnification against any adverse financial or tax implications to the Trust or Mr. and Mrs. Pietropaolo as a result of this settlement.*
5. *Payment of all attorneys fees relatives since January 2003 to the present relative to this matter*

Chapter 93A gives you the opportunity to make a good-faith response to this letter within thirty (30) days. Your failure to do so could subject you to triple damages, attorney's fees and costs if I decide to institute legal action.

Sincerely,

Ronald P. Passatempo, Trustee
Samuel Pietropaolo Irrevocable Trust

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT



|  |  |
|---|---|
| RONALD P. PASSATEMPO, TRUSTEE, On behalf of the Samuel Pietropaolo Irrevocable Trust, SAMUEL PIETROPAOLO, GRANTOR to the Samuel Pietropaolo Irrevocable Trust, and PATRICIA D. PIETROPAOLO, BENEFICIARY of the Samuel Pietropaolo Irrevocable Trust, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG, NEW ENGLAND ADVISORY GROUP, LLC, 1717 CAPITAL MANAGEMENT COMPANY, NATIONWIDE PROVIDENT (f/k/a Provident Mutual Life Insurance Company), and NATIONWIDE FINANCIAL SERVICES, INC., | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 04-2661

## FIRST AMENDED COMPLAINT AND JURY DEMAND

### i. Introduction

This Complaint seeks redress from the above-captioned Defendants for losses and

damages suffered as a result of their joint and several negligence; fraud, deceit and

misrepresentation; negligent misrepresentation; breach of fiduciary duty; intentional infliction of

emotional distress; negligent infliction of emotional distress; violations of Massachusetts and

federal securities laws; churning; breach of contract; and violations of consumer protection

laws—all relating to Nationwide Provident Flexible Premium Variable Life Insurance Policy No.

9,074,484 (the "Policy"). Variable life insurance policies contain both an insurance component and an investment component, and are therefore considered securities.

The Plaintiffs in this action are Samuel Pietropaolo, a retired school administrator on whose life the Policy was underwritten and who created the Samuel Pietropaolo Irrevocable Trust ("Family Trust") for his wife; Patricia D. Pietropaolo, the beneficiary of the Family Trust; and Ronald P. Passatempo, the trustee of the Family Trust, which is the current owner of the Policy (together, the "Plaintiffs").

Mr. Pietropaolo retired from the Revere Public School System in 1997. Upon his retirement, he sought to ensure that he would receive a monthly income sufficient to provide for himself and his family for the remainder of his life, plus a death benefit sufficient to provide for Mrs. Pietropaolo after his death. Mr. Pietropaolo had two existing life insurance policies, together worth approximately $150,000. Also, as a retiring school administrator, Mr. Pietropaolo had a pension with the Massachusetts Teachers' Retirement Board, and he was obligated at retirement to make an irrevocable choice between three pension payment options. However, none of these options provided adequate levels of lifetime monthly income and surviving spousal income to suit Mr. Pietropaolo's retirement needs. Thus, he sought the advice of his nephew, Defendant Frederick V. McMenimen, an insurance agent and financial advisor, who recommended a "pension maximization" plan.

Mr. McMenimen – in conjunction with Defendant Barry G. Armstrong, and as agent of Defendants New England Advisory Group, 1717 Capital Management Company, Nationwide Provident (f/k/a Provident Mutual Life Insurance Company) and Nationwide Financial Services, Inc. (together, the "Defendants") -- advised Mr. Pietropaolo to cancel his two existing life insurance policies and to choose the pension option that would pay the most monthly income to

2

Mr. Pietropaolo for life, but which included no surviving spousal annuity for Mrs. Pietropaolo upon his death. Then, Mr. McMenimen advised Mr. Pietropaolo to use the proceeds from his existing policies to purchase a variable insurance product with a death benefit of at least $500,000, and with an investment component that would, within a few years' time, become "self-funding" and therefore relieve him of the obligation of making future premium payments.

Mr. Pietropaolo relied upon and accepted Mr. McMenimen's advice in full, and Mr. McMenimen agreed to obtain for him the type of policy he (Mr. McMenimen) had recommended. Inexplicably, however, Mr. McMenimen instead obtained a policy with a $200,000 death benefit, while representing to the Plaintiffs that the policy included a $500,000 death benefit. Meanwhile, with Mrs. Pietropaolo's written consent (based upon her reliance on Mr. McMenimen's representations), Mr. Pietropaolo made the irrevocable pension choice recommended by Mr. McMenimen, forgoing any surviving spousal income to Mrs. Pietropaolo, and he cancelled his existing insurance policies. As a result, per the Defendants' designs, Mrs. Pietropaolo's only source of income after Mr. Pietropaolo's death will be the death benefit of the Policy arranged for the Plaintiffs by Mr. McMenimen.

At Mr. McMenimen's insistence, the Plaintiffs sent the Policy premium payments to Mr. McMenimen directly. Believing that Mr. McMenimen obtained for them the $500,000 policy they had discussed, the Plaintiffs have made all required premium payments from July 1998 to the present, totaling approximately $100,000. In or around April 2003, the Plaintiffs finally learned that the Policy was worth far less than the policy for which they had bargained. Despite his purported continued involvement, Mr. McMenimen had never described to the Plaintiffs the true nature of the Policy. The Plaintiffs made repeated requests for a copy of the Policy, but Mr. McMenimen never delivered one; thus, they never had the opportunity to review, consent to or

"non-take" the policy. Further, as detailed below, once the truth came to light, Mr. McMenimen apparently went so far as to forge certain e-mails in an effort to show that he was addressing the problem. From 1998 until 2003, Mr. McMenimen maintained that the Policy included a $500,000 death benefit and that it would become "self-funding." Once it became clear that the Policy was worth much less, Mr. McMenimen apologized repeatedly and said that he would make amends. He never did.

As a result of the Defendants' repeated and willful misrepresentations, omissions and obfuscations in connection with the Policy, the Plaintiffs have suffered significant economic harm and emotional distress. By this Complaint, they seek appropriate remedies through this Court.

### Parties

1. Plaintiff Ronald P. Passatempo, Esq. ("Mr. Passatempo") is the trustee of the Family Trust, which is the owner of the Policy. Mr. Passatempo has a business address of 23 Forest Street, Suite 105, Medford, Middlessex County, Massachusetts.

2. Plaintiff Samuel Pietropaolo ("Mr. Pietropaolo") is the grantor to the Family Trust. The Policy was underwritten on the life of Mr. Pietropaolo and purchased by the Family Trust for the benefit of Mr. Pietropaolo's wife, Plaintiff Patricia D. Pietropaolo. Mr. Pietropaolo resides in Revere, Suffolk County, Massachusetts.

3. Plaintiff Patricia D. Pietropaolo ("Mrs. Pietropaolo") is the beneficiary of the Family Trust, which is the owner of the Policy. Mrs. Pietropaolo resides in Revere, Suffolk County, Massachusetts.

4. Defendant Frederick V. McMenimen III ("Mr. McMenimen") is an insurance agent and financial advisor who is or was an agent of Defendant New England Advisory Group, LLC

4

and Defendant Nationwide Provident. Mr. McMenimen has a current business address of 215 Newbury Street, Peabody, Massachusetts 01960, and a residential address of 6 Pumpkin Circle, Exeter, New Hampshire 03833.

5. Defendant Barry G. Armstrong ("Mr. Armstrong") is an investment advisor and former principal of Defendant New England Advisory Group, LLC who worked with Mr. McMenimen on the Policy for the Plaintiffs. Mr. Armstrong has an address of 35 Farm Street, Medfield, Middlesex County, Massachusetts 02052.

6. Defendant New England Advisory Group, LLC ("NEAG") is or was a Massachusetts limited liability company that sells insurance and investment products. Its manager's address is 35 Farm Street, Medfield, Massachusetts 02052 and its business address is 75 Wells Avenue, Newton, Middlesex County, Massachusetts 02459.

7. Defendant 1717 Capital Management Company ("1717 CMC"), a subsidiary of Defendant Nationwide Provident, is the broker-dealer and registered investment advisor through which Nationwide Provident offers securities and advisory services. 1717 CMC has a business mailing address at P.O. Box 15626, Wilmington, Delaware 15626 and operates as a foreign corporation in Massachusetts with a registered agent address of Corporation Service Company, 84 State Street, Boston, Massachusetts 02109.

8. Defendant Nationwide Provident ("Nationwide") is a member of the Nationwide Financial Services, Inc. companies, which have an address of 1 Nationwide Plaza, Columbus, Ohio 43215. Nationwide sold the Policy to the Plaintiffs through its agents 1717 CMC, NEAG, Mr. Armstrong and Mr. McMenimen. Nationwide is the successor to Provident Mutual Life Insurance Company and operates as a foreign corporation in Massachusetts under the name of

5

Nationwide Securities, Inc. with a resident agent address at CT Corporation System, 101 Federal Street, Boston, Massachusetts 02110.

9.  Defendant Nationwide Financial Services, Inc. ("NFS") is the parent company of Nationwide and a provider of insurance and financial services.  NFS has an address of 1 Nationwide Plaza, Columbus, Ohio 43215 and operates as a foreign corporation in Massachusetts with a registered agent address at CT Corporation System, 101 Federal Street, Boston, Massachusetts 02110.

### Facts

10. The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

11. Mr. Pietropaolo was the Director of Special Education for the City of Revere, Massachusetts and worked for the City for over thirty-two years.

12. In June 1997, Mr. Pietropaolo retired at age sixty-eight.

13. As a long-time municipal employee, Mr. Pietropaolo was eligible for certain retirement benefits, including one of three pension payment options from the Massachusetts Teachers Retirement Board ("MTRB").  A description of these options is attached hereto as Exhibit A.

14. Option A would provide a monthly retirement payment of $4,438.88 with no surviving spousal support upon Mr. Pietropaolo's death.  Mrs. Pietropaolo, as Mr. Pietropaolo's spouse, would be required to "sign off" on his election of Option A.

15. Option B would provide a monthly retirement payment of $4,228.31 with a limited amount of surviving spousal support upon Mr. Pietropaolo's death.

6

16. Option C would provide a monthly retirement payment of $3,151.62 with a surviving spousal support payment of $2,101.08 per month to Mrs. Pietropaolo upon Mr. Pietropaolo's death.

17. Mr. Pietropaolo discussed the three MTRB options with Mrs. Pietropaolo, and with his son, Samuel F. Pietropaolo ("Sam P.").

18. Mr. Pietropaolo wanted to secure for Mrs. Pietropaolo, upon his death, a steady stream of income and/or a lump sum payment to provide for her health and welfare needs. In this regard, he concluded that the fixed monthly income stream under MTRB Option C would not be satisfactory.

19. Sam P. recalled that Mr. McMenimen, who is his cousin and Mr. and Mrs. Pietropaolo's nephew, had told him in the past that he had experience working with municipal retirees and comparing their pension options with insurance options in order to maximize their retirement income. Mr. McMenimen had described such analyses to Sam P. as "pension maximization."

20. Mr. Pietropaolo and Sam P. decided to engage Mr. McMenimen to determine if Mr. Pietropaolo could afford an insurance policy the proceeds of which would (i) yield at least as much monthly income to Mrs. Pietropaolo as the "spousal survivor pension payments" under MTRB Option C ($2,101.08), or (ii) provide a lump sum payment to Mrs. Pietropaolo, through the Family Trust, sufficient to cover the cost of owning a home (she and Mr. Pietropaolo currently share a two-family home with Mr. Pietropaolo's sister) and/or any advanced medical care she might require after Mr. Pietropaolo's death.

21. In providing advice and ultimately obtaining a Policy for the Plaintiffs, Mr. McMenimen worked in conjunction with Mr. Armstrong. Mr. McMenimen was then an agent of

7

NEAG, and Mr. Armstrong was the principal thereof. As discussed below, however, the

Plaintiffs were unaware of Mr. Armstrong's involvement until April 2004.

22. Mr. McMenimen analyzed Mr. Pietropaolo's situation in light of his goal of providing

sufficient income to Mrs. Pietropaolo upon his death.

23. Mr. McMenimen represented to Mr. Pietropaolo and Sam P. that he was an

experienced licensed insurance agent and financial advisor. He again represented that he had

experience advising individuals in "pension maximization" situations.

24. Mr. McMenimen advised Sam P. that Mr. Pietropaolo would need an insurance

policy worth at least $500,000 in order to "maximize" his pension.

25. Mr. McMenimen was aware of the limited financial resources of Mr. and Mrs.

Pietropaolo, and he was aware of their limited financial planning and investing experience.

26. Mr. McMenimen was aware that Mr. Pietropaolo, on Mr. McMenimen's own advice,

did not want to risk having less than $500,000 in guaranteed insurance for the benefit of Mrs.

Pietropaolo.

27. Mr. McMenimen was aware that Mr. and Mrs. Pietropaolo's primary asset was the

MTRB pension, and he was aware that once Mr. Pietropaolo chose between MTRB pension

Options A, B and C, that choice would be irrevocable.

28. Mr. McMenimen reviewed Mr. Pietropaolo's three MTRB pension payment options.

29. Mr. McMenimen was aware that once Mr. Pietropaolo elected Option A, he would be

forfeiting any guaranteed spousal survivor payment to Mrs. Pietropaolo upon his death.

30. Mr. McMenimen discussed with Sam P. that a policy worth at least $500,000 would,

upon Mr. Pietropaolo's death, provide Mrs. Pietropaolo with monthly income equal to or greater

than the income she would receive under MTRB Option C, or alternatively would provide a lump sum for her benefit of at least $500,000 for her care and welfare.

31. Mr. and Mrs. Pietropaolo relied on the representations and advice of Mr. McMenimen in making the irrevocable choice between MTRB pension payment options. As a result of such reliance, Mrs. Pietropaolo will receive no surviving spousal income from Mr. Pietropaolo's MTRB pension.

32. Mr. McMenimen knew that Mr. Pietropaolo had two existing life insurance policies with John Hancock (the "John Hancock Policies") which had a combined guaranteed death benefit of approximately $150,000.

33. Mr. McMenimen knew that Mr. Pietropaolo was paying less than $500 per month for the John Hancock Policies.

34. Mr. McMenimen had Mr. Pietropaolo cancel the John Hancock policies in order to fund a new policy that Mr. McMenimen would obtain for Mr. Pietropaolo. Mr. Pietropaolo relied on the representations and advice of Mr. McMenimen in deciding to cancel the John Hancock Policies.

35. Mr. McMenimen had Mr. Pietropaolo apply for several insurance policies of varying types and amounts, and with various rates. At Mr. McMenimen's instruction, the Plaintiffs signed certain blank forms and returned them to Mr. McMenimen, whereupon Mr. McMenimen subsequently filled in the application details.

36. Mr. McMenimen applied for a $500,000 policy from Nationwide for Mr. Pietropaolo. Mr. McMenimen filled out the investment selections and certain other policy information on the Nationwide application without discussing these selections with the Plaintiffs.

9

37. Nationwide declined to insure Mr. Pietropaolo on or about May 8, 1998. Mr. McMenimen told Sam P. that Nationwide's decision was a mistake and that he would correct it.

38. Several of Mr. Pietropaolo's other insurance applications were approved, including applications for policies with Mutual of New York and Guardian. Mr. McMenimen directed Mr. Pietropaolo to instead purchase a policy from Nationwide. Mr. Pietropaolo relied on the representations and advice of Mr. McMenimen in deciding to cancel his applications for insurance with Mutual of New York and Guardian.

39. Nationwide subsequently approved Mr. Pietropaolo's insurance application.

40. Mr. McMenimen explained to Mr. Pietropaolo and Sam P. that to make the insurance more affordable, he would obtain a policy with two components; one component would have a face value of less than $500,000, but with the second component (a rider or a second policy), the aggregate value of Mr. Pietropaolo's insurance would never be less than $500,000.

41. Mr. McMenimen was aware of Mr. Pietropaolo's limited financial planning and investing experience, and he knew that Mr. Pietropaolo did not want any risk that the value of his insurance would fall below $500,000.

42. Mr. McMenimen assured the Plaintiffs that the insurance would always be worth at least $500,000. Mr. McMenimen also made numerous representations that the value of the insurance would grow *beyond* $500,000 and would become "self-funding."

43. Sam P. expressed to Mr. McMenimen that the Plaintiffs' primary concern was securing the $500,000 death benefit.

44. In July 1998, Mr. McMenimen obtained Nationwide Flexible Premium Variable Life Insurance Policy No. REDACTED 4,484 for Mr. Pietropaolo (the "Policy"). The Plaintiffs relied on the

10

representations and advice of Mr. McMenimen in deciding to purchase the Policy from Nationwide.

45. Mr. McMenimen, in coordination with Mr. Armstrong and NEAG, sold the Policy to the Plaintiffs through Defendants 1717 CMC, Nationwide and NFS. 1717 CMC is a subsidiary of Nationwide, and Nationwide is owned by NFS. Nationwide is the successor to Provident Mutual Life Insurance Company. The Defendants are all related by common ownership, control and/or contract, and are responsible for one another's acts and omissions in connection with the Policy.

46. The monthly premium payment for the Policy is $1,592.25. Since July 1998, Mr. Pietropaolo has paid the premium amounts to the Family Trust, and the Family Trust has sent the premium payments to Mr. McMenimen directly, at his instruction. The Family Trust has now paid approximately $100,000 in premium payments.

47. Mr. McMenimen led the Plaintiffs to believe that he would have continuing involvement in managing and monitoring the Policy, hence his instruction that the Plaintiffs send the premium payments to him directly.

48. Mr. McMenimen explained to Sam P. that a portion of the premiums would pay for the Policy's death benefits, while another portion would be invested to build a fund, which over time would allow the $500,000 policy to become "self-funding," relieving Mr. Pietropaolo from the obligation of making any further premium payments and allowing him to enjoy all of his Option A pension payments during his lifetime.

49. Mr. McMenimen described a number of investment scenarios to demonstrate how the investment portion of the Policy would eventually reach a "self-funding" state.

11

50. McMenimen never explained to Sam P. or the Plaintiffs that the death benefit would be variable or unguaranteed.

51. The final Policy and its terms were never delivered to the Plaintiffs, as indicated by the unsigned "Policy Delivery Receipt" attached hereto as Exhibit B.

52. On numerous occasions, Sam P. asked Mr. McMenimen for a copy of the Policy for Mr. Pietropaolo. Upon each and every request, Mr. McMenimen assured Sam P. that everything was in order and not to worry. None of the Plaintiffs ever received a copy of the Policy from Mr. McMenimen or from any other Defendant.

53. The Plaintiffs believed the Policy included a minimum $500,000 death benefit. The Plaintiffs relied upon McMenimen's purported continued oversight of the Policy and his insistence that it included a guaranteed $500,000 total death benefit.

54. Indeed, on or about May 4, 2004, Mr. McMenimen produced documents to Sam P. including a $500,000 Policy Schedule from Nationwide, a copy of which is attached hereto as Exhibit C. Curiously, however, Mr. McMenimen also produced a $200,000 Policy Schedule, a copy of which is attached hereto as Exhibit D. Both Schedules include the identical policy number, issue date and premium amount.

55. According to Nationwide's records, Mr. McMenimen never requested or purchased more than $200,000 of insurance for the Plaintiffs.

56. On or about April 2003, Mr. Pietropaolo received a call from another NEAG agent, Jesse McPhail ("Mr. McPhail"). Mr. Pietropaolo asked Mr. McPhail to speak with Sam P.

57. McPhail informed Sam P. that the Policy was worth $200,000 and had been "orphaned," that Mr. McMenimen was no longer the agent assigned to the Policy, and, further, that Mr. McMenimen was no longer affiliated with NEAG.

12

58. In response, Sam P. suggested that Mr. McPhail was misinformed, since the Policy as Mr. McMenimen had represented it to the Plaintiffs was worth $500,000 rather than $200,000. Sam P. asked Mr. McPhail to research the Policy to find out whether there were any riders or other components of the Policy that would raise its value to at least $500,000.

59. After investigating, Mr. McPhail advised Sam P. that the Policy was valued at just $200,000; that no additional riders or insurance had been purchased; and that the insurance portion of the Policy was becoming more expensive each year, thus leaving an increasingly smaller percentage of the premiums to be applied to the investment, "self-funding" portion of the Policy.

60. Sam P. advised the Plaintiffs that he would speak to Mr. McMenimen about this matter.  Between April 2003 and July 2003, Sam P. and Mr. McMenimen had many conversations concerning the "orphaned" Policy.

61. Mr. McMenimen told Sam P. that he *was* still the agent responsible for the Policy. Further, he advised Sam P. that he would address the apparent problem and that Sam P. should not ask Mr. McPhail to perform any further investigation.

62. Sam P. complied with Mr. McMenimen's instructions.

63. Mr. McMenimen admitted to Sam P. that he "took his eye off the ball" by failing to monitor and manage the Policy, which resulted in its loss of value to less than $500,000.  At the same time, Mr. McMenimen also tried to shift the blame, writing to Sam P. at one point that "someone else did not follow up."  See the April 16, 2004 e-mail attached hereto as Exhibit E.

64. Mr. McMenimen assured Sam P. that he would correct the situation and secure the Policy's value at a minimum of $500,000.

65. To that end, Mr. McMenimen informed Sam P. in June 2003 that he was having the Policy re-underwritten, which would result in an additional $289,412 being added immediately to the existing $200,000. See the "Application for Policy Change" attached hereto as <u>Exhibit F</u>. Again, Mr. McMenimen produced blank forms for the Plaintiffs to sign in order to "expedite" his efforts to correct the Policy mistakes.

66. When Sam P. expressed his and the Plaintiffs' disappointment that Mr. McMenimen's proposed solution would fail to secure the entire $500,000 as originally promised, Mr. McMenimen said it was the best that he could do and that the investment portion of the Policy would continue to grow and was already worth more than $30,000. Added to the new $489,412 value of the Policy, Mr. McMenimen said, the $30,000 would push the Policy's value over the $500,000 target.

67. Between July and December of 2003, Sam P. repeatedly asked Mr. McMenimen for a copy of the amended Policy to review with the Plaintiffs. In response, Mr. McMenimen provided assurances that everything would be taken care of and that he would get the paperwork to Sam P. shortly. This he did not do.

68. When the year-end Policy Statement from Nationwide did not reflect any changes to the Policy between July and December 2003, Sam P. again confronted Mr. McMenimen regarding the Policy errors and lack of any corrections. Mr. McMenimen once again assured Sam P. that everything would be taken care of.

69. In March 2004, Mr. McMenimen finally responded substantively to Sam P., alleging mistakes by NEAG and Nationwide in failing to process the July 2003 Application for Policy Change and related paperwork.

14

70. On April 1, 2004, Mr. McMenimen met with Sam P. in Billerica, Massachusetts and provided various documents to Sam P. relating to his alleged July 2003 efforts to change the Policy. Among these documents are two e-mails that Mr. McMenimen claimed he had received from NEAG. Suspiciously, these e-mails are dated July 1, 2004 and August 21, 2004, months *after* the date Mr. McMenimen provided them to Sam P – *i.e.* months *after* April 1, 2004. Copies of the e-mails are attached hereto as Exhibit G.

71. Further, at his April 1, 2004 meeting with Sam P., Mr. McMenimen also produced copies of certain correspondence with Mr. Armstrong in which Mr. Armstrong described the Policy as "confusing" and wrote that "[w]e really want and need this business." In addition, Mr. Armstrong indicated that illustrations used to sell the Policy to the Plaintiffs were back-dated. See faxes dated July 16, 2004 and July 27, 2004, attached hereto as Exhibit H.

72. Mr. McMenimen told Sam P. for the first time that Mr. Armstrong had reviewed and worked on Mr. Pietropaolo's insurance applications with Mr. McMenimen. He said that Mr. Armstrong was instrumental in developing the strategy and the presentations made by Mr. McMenimen to the Plaintiffs.

73. Mr. Armstrong became the lead agent responsible for the Policy after Mr. McMenimen left NEAG. Mr. Armstrong never contacted the Plaintiffs, either during or after Mr. McMenimen's tenure at NEAG. Like Mr. McMenimen, Mr. Armstrong was only concerned with his expected commissions, and not with the stated investment objectives and risk tolerance of the Plaintiffs.

74. Indeed, Mr. McMenimen, Mr. Armstrong and/or NEAG have received (and continue to receive) commissions in connection with the Policy.

15

75. Since about April 2003, Sam P. and the Plaintiffs have attempted to obtain clarification from the Defendants regarding the Policy and any attempted changes thereto.

76. Mr. McMenimen told Sam P. that Nationwide representatives scheduled a meeting with the two of them for May 7, 2004 to discuss a potential resolution. Mr. McMenimen also told Sam P. that he had forwarded his files relating to the Policy to Nationwide for their review.

77. Nationwide has denied that any meeting was ever scheduled. According to Nationwide, no requests for any changes to the original $200,000 Policy were ever received from Mr. McMenimen, NEAG or any other entity or person.

78. On or about July 2, 2004, the Plaintiffs sent the Defendants a written demand for relief pursuant to Massachusetts General Law c. 93A, identifying themselves and the unfair acts and practices upon which they relied, and describing their resultant injuries. A copy of this letter is attached hereto as <u>Exhibit I</u>.

79. As of the date of this First Amended Complaint and Jury Demand, the Defendants have not made a reasonable offer of relief to the Plaintiffs and, in particular, Defendants McMenimen and NEAG have yet to respond.

## Count I

### (Negligence)

80. The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

81. Mr. McMenimen used his position as a relative of Mr. and Mrs. Pietropaolo to garner their trust and gain their business.

82. Mr. McMenimen and the other Defendants, as financial advisors to the Plaintiffs in connection with the Policy, jointly and severally owed a duty to the Plaintiffs.

83. The Defendants, through their agent Defendant McMenimen, represented to the Plaintiffs that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for. In this regard, the Defendants, through Defendant McMenimen, showed the Plaintiffs misleading analyses, reports and illustrations.

84. Once the truth arose, in or around April 2003, Defendant McMenimen falsely represented to the Plaintiffs that he was working on adjusting the Policy to reflect what they had originally bargained for.

85. The Defendants, by their acts and omissions in connection with the Policy, have jointly and severally breached their duty to the Plaintiffs.

86. As a result of the Defendants' acts and omissions, the Plaintiffs have suffered grievous harm.

## Count II

### (Fraud, Deceit and Misrepresentation)

87. The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

88. The Defendants, through their agent Defendant McMenimen, knowingly lied, deceived and misled the Plaintiffs by representing to them that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.

89. Defendant McMenimen represented that he would obtain an insurance policy for the Plaintiffs with a guaranteed $500,000 death benefit and which would likely become "self-funding" within several years.

90. Defendant McMenimen showed the Plaintiffs misleading analyses, reports and illustrations in order to convince them that such a policy suited their stated investment goals, experience and desired risk.

17

91. Defendant McMenimen represented to the Plaintiffs that he had obtained such a policy.

92. Once the Plaintiffs learned, in or around April 2003, that no such policy had been obtained, Defendant McMenimen represented to them that he was working on adjusting the Policy to reflect what they had originally bargained for.

93. Each of the above representations was false when made and known to be false.

94. The Defendants knew or reasonably should have known that their representations, acts and omissions would and did induce reasonable reliance on the part of the Plaintiffs in connection with the Policy.

95. The Plaintiffs reasonably relied on the Defendants' representations, acts and omissions in connection with the Policy.

96. As a result of the Defendants' fraud, deceit and misrepresentations, the Plaintiffs have suffered grievous harm.

## Count III

### (Negligent Misrepresentation)

97. The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

98. The Defendants, through their agent Defendant McMenimen, failed to exercise reasonable care in their dealings with the Plaintiffs by representing to them that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.

99. Defendant McMenimen represented that he would obtain an insurance policy for the Plaintiffs with a guaranteed $500,000 death benefit and which would likely become "self-funding" within several years.

18

100.    Defendant McMenimen showed the Plaintiffs misleading analyses, reports and illustrations in order to convince them that such a policy suited their stated investment goals, experience and desired risk.

101.    Defendant McMenimen represented to the Plaintiffs that he had obtained such a policy.

102.    Once the Plaintiffs learned, in or around April 2003, that no such policy had been obtained, Defendant McMenimen represented to them that he was working on adjusting the Policy to reflect what they had originally bargained for.

103.    The Plaintiffs reasonably relied on the Defendants' acts and omissions in connection with the Policy.

104.    As a result of the Defendants' failure to exercise reasonable care with respect to their acts and omissions in connection with the Policy, the Plaintiffs have suffered grievous harm.

## Count IV

### (Breach of Fiduciary Duty)

105.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

106.    The Defendants, through their agent Defendant McMenimen, were financial advisors to the Plaintiffs in connection with the Policy.

107.    Defendant McMenimen is a relative of Plaintiffs Mr. and Mrs. Pietropaolo.

108.    Defendant McMenimen represented to the Plaintiffs that he had experience working with municipal retirees in "pension maximization" situations.

19

109.    Defendant McMenimen instructed the Plaintiffs to send their premium payments for the Policy directly to him.

110.    The Defendants owed fiduciary duties to the Plaintiffs.

111.    The Defendants, through Defendant McMenimen, breached their fiduciary duties by representing to the Plaintiffs that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for. In this regard, the Defendants, through Defendant McMenimen, showed the Plaintiffs misleading analyses, reports and illustrations.

112.    Once the truth arose, in or around April 2003, Defendant McMenimen breached his fiduciary duty by falsely representing to the Plaintiffs that he was working on adjusting the Policy to reflect what they had originally bargained for.

113.    As a result of the Defendants' breaches of fiduciary duty, the Plaintiffs have suffered grievous harm.

## Count V

### (Intentional Infliction of Emotional Distress)

114.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

115.    By representing to the Plaintiffs, through Defendant McMenimen, that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for, the Defendants knew or reasonably should have known that they were likely to cause emotional distress on the part of the Plaintiffs.

116.    Once the truth arose, in or around April 2003, by falsely representing to the Plaintiffs that he was working on adjusting the Policy to reflect what they had originally

20

bargained for, Defendant McMenimen knew or reasonably should have known that he was likely to cause emotional distress on the part of the Plaintiffs.

117.     The Defendants' acts and omissions in this regard were extreme and outrageous.

118.     As a result of these acts and omissions, Plaintiff Samuel Pietropaolo has been deeply concerned with his wife's potential welfare after his passing. He has suffered from repeated episodes of anxiety and restlessness, leading to sleep deprivation, loss of appetite and increased frequency of smoking.

**Count VI**

**(Negligent Infliction of Emotional Distress)**

119.     The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

120.     The Defendants, through their agent Defendant McMenimen, failed to exercise reasonable care in their dealings with the Plaintiffs by representing to them that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.

121.     Once the truth arose, in or around April 2003, Defendant McMenimen failed to exercise reasonable care in his dealings with the Plaintiffs by falsely representing to them that he was working on adjusting the Policy to reflect what they had originally bargained for.

122.     The Defendants' acts and omissions in this regard were extreme and outrageous.

123.     As a result of these acts and omissions, Plaintiff Samuel Pietropaolo has been deeply concerned with his wife's potential welfare after his passing. He has suffered from repeated episodes of anxiety and restlessness, leading to sleep deprivation, loss of appetite and increased frequency of smoking.

## Count VII

### (Unsuitability and Violations of Massachusetts and Federal Securities Laws)

124.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

125.    The Defendants obtained for the Plaintiffs a variable life insurance policy (the "Policy") that did not meet the Plaintiffs' stated investment objectives, experience and tolerance of risk.

126.    The Defendants invested 100% of the investment component of the Policy in the Fidelity Income Fund, with no diversification and without regard to market conditions, Plaintiff Samuel Pietropaolo's advanced age, the Plaintiffs' stated investment objectives and/or their tolerance of risk.

127.    The Defendants, through Defendant McMenimen, represented to the Plaintiffs that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.  In this regard, the Defendants, through Defendant McMenimen, showed the Plaintiffs misleading analyses, reports and illustrations.

128.    By these acts and omissions, the Defendants violated Massachusetts and federal securities laws, including but not limited to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b); S.E.C. Rule 10b-5, 17 C.F.R. § 240.10(b)-5; and sections 101, 102 and 410(a) of the Massachusetts Uniform Securities Act, Mass. Gen. Laws c. 110A, §§ 101, 102, 410(a)(2).

**Count VIII**

**(Churning)**

129.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

130.    In advising the Plaintiffs to cancel Mr. Pietropaolo's existing insurance policies and to use the proceeds to purchase the Policy, the Defendants were primarily motivated by their desire to receive commissions on the Policy and not by the Plaintiffs' stated investment needs, experience and tolerance of risk.

131.    As a result of the Defendants' acts and omissions in this regard, the Plaintiffs have suffered grievous harm.

**Count IX**

**(Breach of Contract)**

132.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

133.    The Plaintiffs entered into an agreement with the Defendants, through Defendant McMenimen, to obtain an insurance policy with an aggregate death benefit of not less than $500,000, and which would likely become "self-funding" within several years.

134.    Since July 1998, when they purchased the Policy, the Plaintiffs have paid $19,107 annually as consideration for an insurance policy described by the Defendants as having an aggregate death benefit of not less than $500,000, and which would likely become "self-funding" within several years.

135.    The Defendants instead obtained a $200,000 insurance policy for the Plaintiffs that costs approximately three times as much, per month, as the John Hancock Policies (worth

approximately $150,000) they advised Plaintiff Samuel Pietropaolo to cancel in order to fund the purchase of the Policy.

136.    As a result of these acts and omissions by the Defendants, the Plaintiffs have not received the benefit of their bargain and have suffered grievous harm.

## Count X

### (Violation of Consumer Protection Laws)

137.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

138.    The Defendants, through their agent Defendant McMenimen, represented to the Plaintiffs that the Policy they received was worth more than its actual value and was the Policy they bargained for.  In this regard, the Defendants, through Defendant McMenimen, showed the Plaintiffs misleading analyses, reports and illustrations.

139.    Once the truth arose, in or around April 2003, Defendant McMenimen falsely represented to the Plaintiffs that he was working on adjusting the Policy to reflect what they had originally bargained for.

140.    By these unfair and deceptive trade practices, the Defendants have violated Massachusetts consumer protection laws, including but not limited to Massachusetts General Law chapters 93A and 176D.

141.    As a result of these practices on the part of the Defendants, the Plaintiffs have suffered grievous harm.

24

**Prayer for Relief**

WHEREFORE, the Plaintiffs respectfully request that this Court:

1.      Determine and award damages appropriate to compensate the Plaintiffs for the

        harm of which they complain;

2.      Award treble damages pursuant to Massachusetts General Law chapter 93A

        section 9(3);

3.      Award the Plaintiffs' costs, expenses, interest and reasonable attorneys' fees; and

4.      Grant such other relief as justice may require.

**Jury Demand**

THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

                                Respectfully submitted,

                                Plaintiffs RONALD P. PASSATEMPO,
                                TRUSTEE, On behalf of the Samuel
                                Pietropaolo Irrevocable Trust, SAMUEL
                                PIETROPAOLO, GRANTOR to the Samuel
                                Pietropaolo Irrevocable Trust, and
                                PATRICIA D. PIETROPAOLO,
                                BENEFICIARY of the Samuel Pietropaolo
                                Irrevocable Trust,

                                By their counsel:


                                Howard M. Cooper (BBO # 543842)
                                David M. Burkoff (BBO # 657447)
                                Todd & Weld LLP
                                28 State Street
                                Boston, MA  02109
                                (617) 720-2626

Dated: December  23, 2004

25

# Exhibit A



**MASSACHUSETTS TEACHERS' RETIREMENT BOARD**

*Boston Office*
69 Canal Street
Boston, MA 02114-2006
(617) 727-3661
Fax (617) 727-6797

*Western Regional Office*
60 Macek Drive
Chicopee, MA 01013-3304
(413) 592-4771
Fax (413) 784-1707

*Retiring from the MTRS*
# Option Selection Form

**INSTRUCTIONS:** Please verify the information in Section 1; review Sections 2 and 3; analyze your benefit options in Section 4 in light of your particular situation; complete Sections 5 and 6 (on back); make a copy of this form for your records and return this original form to us.

SAMUEL PIETROPAOLO

45 THURLOW STREET
REVERE MA 02151

### 1  MEMBER DATA

| | |
|---|---|
| School District | REVERE PUBLIC SCHOOLS |
| Social Security No. | REDACTED 4826 |
| Date of Retirement | 06/30/1997 |
| Veteran Status | VETERAN |
| Date of Birth | REDACTED /1929 |

### 3  ANNUITY ACCOUNT STATUS

This information is included for your reference in calculating your income tax after retirement. Refer to your *Retirement Information Booklet* or consult with your tax advisor for additional information. *All figures below are estimated.*

| | |
|---|---|
| After-tax contributions (for Simplified General Rule) | $26,428.14 |
| Pre-tax contributions (after 1/1/88) | $29,365.63 |
| Pre-tax interest (all interest is pre-tax) | $43,531.57 |
| Annuity savings account balance | $99,325.34 |

### 2  RETIREMENT BENEFIT CALCULATION COMPONENTS

| | |
|---|---|
| Age and age factor | 68 /.0250 |
| Creditable service | 32.6000 YRS |
| Salary average | $66,208.18 |
| % of salary average | 80.45 |
| Option C factor | .7100 |

### 4  ESTIMATED ALLOWANCES BY OPTION (NOTE THAT THESE ARE SUBJECT TO CHANGE)

| Option | Benefit | Monthly | Annually |
|---|---|---|---|
| **A** | Amount paid to member for life | $4,438.88 | $53,266.56 |
| **B** | Amount paid to member for life | $4,228.31 | $50,739.72 |
| | Annual reduction from member's MTRS annuity savings account | | $8,164.56 |
| **C** | Amount paid to member for life* | $3,151.62 | $37,819.44 |
| | Amount paid to Option C beneficiary (named below) upon member's death, for life* PATRICIA PIETROPAOLO | $2,101.08 | $25,212.96 |

*\* Estimated figures will appear here ONLY if you completed Part 4 of your Application for Retirement and submitted your beneficiary's certified birth record and marriage certificate, if applicable, along with your Application. If you choose Option C and your beneficiary predeceases you, please contact the MTRB and request an Option C Reversion Claim Form.*

### 5  MEMBER'S RETIREMENT OPTION SELECTION, STATEMENT AND SIGNATURE

I, the undersigned, having applied for retirement from the Massachusetts Teachers' Retirement System, hereby elect to receive my retirement allowance under the option selected below *(check one)*:

| Date sent (8-19-) | Date due |
|---|---|
| 8-22-97 | 9-22-97 |

☒ **Option A**
(No survivor benefits)

☐ **Option B**
(Remainder of annuity savings account paid to named beneficiary in lump sum)

☐ **Option C**
(Monthly benefit paid to named beneficiary)

*Your signed Option Selection Form must be received in the Office of the MTRB by 9/22/97. (30 days from date of mailing), or your retirement allowance benefits will be paid under Option "B"*

I also understand that: I cannot change my option selection after my date of retirement; and, if I do not return this *Option Selection Form* by my date of retirement, the MTRB will retire me under Option B.

Member's signature _Samuel Pietropaolo_    Date 9/22/97

MASSACHUSETTS
TEACHERS'
RETIREMENT
BOARD

Boston Office
69 Canal Street
Boston, MA 02114-2006
(617) 727-3661
Fax (617) 727-6797

Western Regional Office
60 Macek Drive
Chicopee, MA 01013-3304
(413) 592-4771
Fax (413) 784-1707

*Option Selection Form* (back)

# Spousal Acknowledgment

MTRB USE ONLY

### RECEIVED
### SEP 2 2 1997
MASSACHUSETTS TEACHERS
RETIREMENT BOARD

## INSTRUCTIONS TO RETIRING MEMBER

The law requiring this Spousal Acknowledgment (Chapter 306, § 18 of the Acts of 1996) became effective on November 7, 1996. As a member who is retiring from the Massachusetts Teachers' Retirement System and who files his or her *Option Selection Form* on or after November 7, 1996, you need to complete this *Spousal Acknowledgment.*

You must complete Section 6 and then, if applicable, your spouse must complete Section 7. If your spouse's whereabouts are unknown, you must complete a notarized affidavit, including your spouse's last known address. If your spouse is medically unable to sign the acknowledgment, you will need to submit a letter from the attending physician attesting to that fact. (Special affidavits for these situations are available from the MTRB.) You must also provide the Board with a copy of an executed durable power of attorney if one is available.

## 6    MEMBER'S STATEMENT AND SIGNATURE

Member's name *(please print)*   Last PIETROPAOLO   First SAMUEL   Middle

Member's Social Security number   REDACTED   REDACTED 4826

I, the undersigned, having applied for retirement from the Massachusetts Teachers' Retirement System, have elected to receive my retirement allowance under the option selected in Section 5 of this *Option Selection Form.* I hereby certify that *(check one):*

[✓] I am now married or expect to be married as of the date of retirement stated in Section 1 of this *Option Selection Form.* Please sign and date Section 6, below, then give this form to your spouse for completion of Section 7.

[ ] I am currently divorced and it is my understanding that there
[ ] is    [ ] is not    [ ] don't know
a Domestic Relations Order on file with the Massachusetts Teachers' Retirement Board. Please sign and date Section 6, below, then return this form to the MTRB.

[ ] I am NOT currently married and do not expect to be married as of the date of retirement stated in Section 1 of this *Option Selection Form.* Please sign and date Section 6, below, then return this form to the MTRB.

I subscribe under the penalties of perjury that the information I have supplied in this form is true, complete and correct to the best of my knowledge.

Signature *Samuel Pietropaolo*   Date 9/22/97

## INSTRUCTIONS TO SPOUSE

As the spouse of a member who is retiring from the Massachusetts Teachers' Retirement System on or after November 7, 1996, you are entitled to both notification and explanation of the retirement option selected by the member. The member must complete Section 6 and then, if applicable, you must complete Section 7. You must sign Section 7 before one witness; the member named in Section 6, above, cannot be your witness. The witness must sign and date the form on the same day that you do; it is not necessary that your witness be a Notary Public.

Before completing this section, please see which retirement option your spouse has chosen in Section 5 on the front of this form and then read the explanations of the available retirement options as provided in the *MTRB Retirement Information Booklet* provided with your spouse's *Option Selection Form.* Please be sure that you have read and understand the various provisions of the option selected by your spouse, specifically, the benefits to which you may or may not be entitled to upon his or her death. If you have any questions, do not hesitate to contact the MTRB for an explanation.

If you fail to sign the *Spousal Acknowledgment,* the Board will notify you within fifteen (15) days by registered mail of the option selected by your spouse and your right to sign and return the spousal acknowledgment within thirty (30) days. Failure to sign and return the *Spousal Acknowledgment* to the Massachusetts Teachers' Retirement Board within 30 days will result in your spouse's selection becoming effective without your signature.

## 7    SPOUSAL ACKNOWLEDGMENT

Spouse's name *(please print)*   Last PIETROPAOLO   First PATRICIA   Middle D

Spouse's Social Security number   REDACTED   REDACTED 0524

I, the undersigned, am the spouse of the member named in Section 6, above, who has applied for retirement from the Massachusetts Teachers' Retirement System. I hereby certify that

▶ I have read and understand the information on Options A, B and C provided in the *MTRB Retirement Information Booklet (The Three Options: An Overview);*

▶ I have reviewed Section 5 of this *Option Selection Form;* and,

▶ I am aware of the option selected by the member and understand the provisions of that option.

I subscribe under the penalties of perjury that the information I have supplied in this form is true, complete and correct to the best of my knowledge.

Signature *Patricia Pietropaolo*   Date 9/22/97

### SPOUSE'S SIGNATURE WITNESSED BY

Signature *Mary McKenna Guanci*   Date 9/22/97

Name *(please print)* Mary McKenna Guanci   Address 25 Spy Pond Parkway, Arlington, MA.

# Exhibit B



## PROVIDENT MUTUAL



RECEIVED
AUG - 5 1998

## POLICY DELIVERY RECEIPT

| AGENT<br>MEMENIMEN III, FREDERICK V | AGENCY<br>001-01 |
|---|---|
| INSURED<br>SAMUEL PIETROPAOLO | POLICY NO.<br>REDACTED 4,484 |
| OWNER (IF OTHER THAN INSURED) | |

| | |
|---|---|
| **1. ☐ PERSONAL DELIVERY** | I hereby certify that the above-referenced policy was personally delivered to me on _____ by the Agent signing below. |

| OWNER SIGNATURE | DATE |
|---|---|
| AGENT SIGNATURE | DATE |

| | |
|---|---|
| **2. ☐ MAILING** | I hereby certify that the above-referenced policy was mailed to the Owner on _____. |

| AGENT SIGNATURE | DATE |
|---|---|
| MANAGER OR OFFICE MANAGER SIGNATURE | DATE |

### FOR PENSION ADMINISTRATORS ONLY

| | |
|---|---|
| **3. ☐** | I hereby certify that the above-referenced policy is being retained by me pursuant to an authorization signed by the above-referenced Owner dated _____, a copy of which is attached. |

| AGENT SIGNATURE | DATE |
|---|---|

THIS FORM IS TO BE RETAINED IN THE AGENCY OR REGIONAL

OFFICE'S CENTRALIZED POLICY RECEIPT FILE.

DO NOT RETURN TO THE HOME OFFICE

S15251   5.95                                                    MC: 001M-L001 -0

# Exhibit C

# POLICY SCHEDULE

INSURED      SAMUEL PIETROPAOLO

POLICY NUMBER    REDACTED
                 REDACTED 4,484          MAY          07/28/1998   POLICY ISSUE DATE
                                         Amount
FACE AMOUNT         $500,000.00          Correct      69,MALE      ISSUE AGE AND SEX

DEATH BENEFIT    OPTION                                07/05/1998   POLICY DATE

PREMIUM CLASS   WITH EXTRA RATING                     07/05/2029   FINAL POLICY DATE

                              **BENEFITS**

FLEXIBLE PREMIUM VARIABLE LIFE INS
       INITIAL FACE AMOUNT        $500,000.00


This Policy provides life insurance coverage on the Insured until the final policy date, provided the Net Cash Surrender Value is sufficient to cover the deductions for the cost to that date of the benefits of this Policy and of any riders. You may have to pay more than the premiums shown below to keep this Policy and coverage in force to that date, and to keep any additional riders in force.

    MINIMUM INITIAL PREMIUM —        $3,145.00

    PLANNED PERIODIC PREMIUM —         $1,525.92 PAYABLE MONTHLY

    MINIMUM ANNUAL PREMIUM —        $18,870.00

# Exhibit D

# POLICY SCHEDULE

**INSURED**    SAMUEL PIETROPAOLO

**POLICY NUMBER**    REDACTED REDACTED 4,484      07/28/1998   **POLICY ISSUE DATE**

**FACE AMOUNT**    $200,000.00      69,MALE    **ISSUE AGE AND SEX**

**DEATH BENEFIT**    OPTION A      07/05/1998   **POLICY DATE**

**PREMIUM CLASS**    WITH EXTRA RATING      07/05/2029   **FINAL POLICY DATE**

## BENEFITS

FLEX BLE PREMIUM VARIABLE LIFE INSURANCE
     INITIAL FACE AMOUNT      $200,000.00

This Policy provides life insurance coverage on the Insured until the final policy date, provided the Net Cash Surrender Value is sufficient to cover the deductions for the cost to that date of the benefits of this Policy and of any riders. You may have to pay more than the premiums shown below to keep this Policy and coverage in force to that date, and to keep any additional riders in force.

MINIMUM INITIAL PREMIUM —      $3,145.00

PLANNED PERIODIC PREMIUM —      $1,525.92 PAYABLE MONTHLY

MINIMUM ANNUAL PREMIUM —      $18,870.00

MINIMUM FACE AMOUNT —      $100,000.00   AFTER 10TH POLICY YEAR

MINIMUM PAYMENT —   $25.00

PARTIAL WITHDRAWAL — MINIMUM AMOUNT      $1,500.00

TRANSFERS — MINIMUM AMOUNT      $500.00

POLICY LOAN — FIXED      6.00% POLICY LOAN INTEREST RATE

     MINIMUM LOAN AMOUNT — $500.00

# Exhibit E

**Pietropaolo, Sam**

| | |
|---|---|
| **From:** | COACHMCM@aol.com |
| **Sent:** | Friday, April 16, 2004 8:38 AM |
| **To:** | Pietropaolo_Sam@emc.com |

**Subject:** Follow up

I have asked for something earlier if possible. That was my mistake. I gave you bad dates for when I passed them to you. They are not coming to Massachusetts until the 5th or 6th. I looked at the wrong week. I have asked for something Thursday or Friday that week.

When I get my original NEAG file I will pass it right along. I am in the process of typing out my notes and a time line to pass to you with all that I have. I am going to storage this weekend to find my old files and see if anything is present.

I want to again apologize for this. I along with you thought based on the emails and forms that it was all set. I am very frustrated and angry that I was presented with something that someone else did not follow up. I want to insure you that your dad should not worry. IT WILL be handled properly and I would NEVER let you , your mom or dad be harmed by this in any way. I think its best said that family takes care of family and this will be settled right away. I am not going to let NEAG and their actions or lack of actions have a negative impact on family. I feel sick about it. I will push as hard as I can on this. I will be away over vacation but I think when everyone meets and sits down it will be handled quickly. I dont think we should make more of it than it is at this time. If we push to hard then I think it will take longer and if more people get involved it will bog down. They are willing to listen and then if we dont get immediate results we should push. I truly feel we will get a quick resolution. It will get resolved and I am sorry. I will write back as soon as I hear back from them today!

# Exhibit F

PC 0104

**Application for Policy Change**

# NATIONWIDE LIFE INSURANCE COMPANY OF AMERICA
### Berwyn, Pennsylvania 19312-1181

(Policy(ies) must be sent to the Company with this application)

1. First—middle initial—last name of Insured: **Samuel Pietropaolo**

| 2. Date of birth | | | 3. Policy Number |
|---|---|---|---|
| Month | Day | Year | REDACTED 4484 |
| REDACTED | 29 | REDACTED | |

The undersigned request the Company to make in the above policy the change(s) indicated below. If a change under A2, A3 or, if policy numbered under 2,000,000, A4 is requested, any beneficiary designation or election of method of settlement heretofore made under the original policy is revoked as to said policy. Usual attachment requirements (see Form A48) for supplementary benefits not included in the original policy.

**A. 1. CONVERSION OF TERM AGREEMENT**
- [ ] Convert $_____ of the supplementary term insurance agreement into a new policy as described in (B) below. Convert as of: [ ] Attained age [ ] Original age.
- [ ] Convert $_____ of the supplementary term insurance agreement and in conjunction with a new application dated _____ issue a new policy as described in (B) below.
- [X] Balance of $ **289,412** to continue under supplementary agreement attached to the original policy.
- [ ] Balance to lapse.

**A. 3.** [ ] Change or exchange the original policy into a new policy as described in (B) below.

**A. 2. CONVERSION OF TERM POLICY**
- [ ] Convert $_____ of the original term policy into a new policy as described in (B) below. Convert as of: [ ] Attained age [ ] Original age.
- [ ] Convert $_____ of the original term policy and in conjunction with a new application dated _____ issue a new policy as described in (B) below.
- [ ] Balance of $_____ to continue under a new policy of the same number, date and plan as the original policy.
- [ ] Balance to lapse.

**A. 4.** [ ] Cancel supplementary agreement for_____ attached to the original policy.

**B. PROVISIONS OF NEW POLICY**
1. a) Amount and plan of policy applied for:

   b) Additional benefits:*
   - [ ] Disability–waiver of premium
   - [ ] Guaranteed purchase option – amount $
   - [ ] Accidental death $
   - [ ] Protected premium agreement
   - [ ] Paid-up additions agreement $_____ Year(s)
   - [ ] Paid-up additions agreement $_____ single premium
   c) [ ] Insurance exchange agreement
   d) [ ] Term dividend option–balance of dividends applied as in B3
   e) Automatic premium loan [X] Yes [ ] No
   f) [ ] Policy Loan Interest Rate: [ ] Variable unless [X] Fixed is selected.

2. Premium frequency: Yrly [ ] H-Yrly [ ] Qtly [ ] Mthly [X] APP [ ]   1st prem. pd.? [X] Yes [ ] No

3. Dividends: [ ] Paid-up additions  [ ] Reduce premium
   [ ] Accumulations   balance of dividends to:
   [ ] Pay in cash   [ ] Paid-up additions
   [X] Accumulations
   [ ] Pay in cash

4. Beneficiary: (Name) **SAME (TRUST)** (Relationship)
   Otherwise Insured's executors or administrators, unless otherwise specified in remarks (Joint beneficiaries receive equally or survivor, unless otherwise specified.)

5. Owner – All rights belong to insured unless specified in remarks.

6. Policy date desired?

7. Have you used any tobacco product or product containing tobacco or nicotine in the last 12 months? [X] Yes [ ] No

8. Social Security No. of Insured   REDACTED 4826

9. S.S. or Tax I.D. No. of Owner

REMARKS

In consideration for the change of policy herein provided, the undersigned acknowledge receipt of any sums payable as set forth in the Authorization and Statement of Account on the reverse side hereof and direct payment of such sums in the manner therein set forth.

It is hereby declared and agreed that all the statements contained herein and in the application for the original policy are complete and true and are hereby made the basis for the new policy and that the original policy (if a change is made under A2, A3 or, if policy numbered under 2,000,000, or the original supplementary agreement (if a change is made under A1 or A4) is hereby released and surrendered to the Company.

Any reference in this instrument to a beneficiary living or surviving will, unless otherwise provided, mean living at the Insured's death.

I (we) hereby certify, under penalties of perjury, that the social security number or taxpayer identification number I am (we are) providing is correct and I am (we are) neither currently subject to backup withholding, nor have been so notified by the Internal Revenue Service.

Signed at (City and State) **Revere MASS**

On (Date) **July 5 2003** (Month Day Year)

Signature of Agent

Insured or Owner

All others having any interest in the policy

If policy is owned by or assigned to a corporation we must have signature of one officer (other than insured) with name and title clearly indicated on this form.

A49 7.88

(Rev. 6.02)

**AUTHORIZATION AND STATEMENT OF ACCOUNT**

To NATIONWIDE LIFE INSURANCE COMPANY OF AMERICA _____ July 5 2003 _____
(Month, Day, Year)

The undersigned hereby receipt for and approve and direct the application of the following moneys, as indicated below, originating from the change of the original policy number _9074484_____. All of the following items, unless indicated otherwise, refer to the original policy.

**In full consideration for the change of policy provided herein:**

| | | | |
|---|---|---|---|
| Total conversion credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | $ | 289,412 |
| Fractional dividend—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (Dr. 5903 | ) $ | |
| Full release of dividends and interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (Dr. 5773 | ) $ | |
| Allowance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (Dr. 5503120) | $ | |
| Cash value of $_____paid-up additions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (Dr. 5503120) | $ | |
| Reserve allowance—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (Dr. 5503120) | $ | |
| Return premium—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (Dr. 2003130) | $ | |
| Return premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (Dr. 1900030) | $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ( | ) $ | |
| **Total** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | $ | |

**To be disbursed as follows:**

| | | | |
|---|---|---|---|
| Pay loan on policy_____ in full / on account . . . . . . . . . . | (Cr. 0322010) | $ | |
| Pay interest on loan_____ . . . . . . . . . . . . . . . . . . . . . . . | (Cr. 3322110) | $ | |
| The balance of such loan(s), $_____, shall constitute a loan on the new policy, which loan shall be represented by the original loan agreement(s). | | | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ( | ) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ( | ) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ( | ) $ | |
| Deposit to Premium Deposit Fund (A/C#_____) . . . . . . . . . . . . . . . . . . . . . . . | (Cr. 1290130) | $ | |
| Pay_____premium due_____ on policy_____ | (Cr. 1900030) | $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ( | ) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ( | ) $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ( | ) $ | |
| Pay cost of change . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | (Cr. 1900030) | $ | |
| Pay the balance by check | | | |
| To the order of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1920040) Amount | | $ | |
| Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| To the order of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1920040) Amount | | $ | |
| Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| **Total paid** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | $ | |

Signed at _Revere MASS_____
(City and State)

Date signed _7/5/03_____
(Month, Day, Year)

Insured or owner x _Ronald Humphries_

All others having any xx _Samuel Willigrad_ interest in the policy _____

| AGENT(S) OF CREDIT—PRINT FIRST 2 INITIALS—LAST NAME | | | | % | F.E. | CODE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Special Instructions or Remarks**

A49 7.89

(Rev. 6.02)

☐ Nationwide Life Insurance Company of America
    Service and Technology Center, P.O. Box 15750, Wilmington, DE  19850-5750, (800) 688-5177
☐ Nationwide Life and Annuity Company of America
    Service and Technology Center, P.O. Box 15750, Wilmington, DE  19850-5750, (800) 688-5177

■ **Nationwide®**
Provident
a Nationwide® Financial company

**PC 0702**

## Fund Transfer/Allocation Change for Options Elite

| Insured's Name (please print) SAMUEL PIETROPAOLO | Policy No. ☞ REDACTED 4484 |
|---|---|
| Policy Owner's Name (please print) TRUST | Daytime Phone |

**Please select all that apply:** (If your allocation is different for each selection, use more than one form.)

☒ **Transfer of Current Account Value:** I elect to transfer my current account value into the following funds to the specified "end result." (Note: This will not change the allocation of future premium payments nor your election of asset rebalancing. To change those, check the box below.)

☐ **Allocation Changes for Future Premium Payments:** I wish to change the premium allocation percentages as specified. (Note: This will also affect Automatic Asset Rebalancing transfers, if previously elected.)

☐ **Allocation Changes for Monthly Deductions:** I wish to change the monthly deduction allocations as specified.(Not applicable to **Options** modified premium variable life policies.)

☒ **Allocation of Unscheduled Premium Payment:** $ 4200°° premium is enclosed. Allocate premium as specified. (Applies to this payment ONLY....will not affect future allocations).

|  | Transfer/ Allocation Change (whole % only) | Deduction Allocation (whole % only) |
|---|---|---|
| **AMERICAN CENTURY VARIABLE PORTFOLIOS, INC.** |  |  |
| American Century VP Ultra Fund:  Class I | _____ % | _____ % |
| American Century VP Income & Growth Fund:  Class I | 25 % | _____ % |
| **DREYFUS INVESTMENT PORTFOLIOS** |  |  |
| Small Cap Stock Index Portfolio | _____ % | _____ % |
| **DREYFUS VARIABLE INVESTMENT FUND** |  |  |
| Appreciation Portfolio:  Initial Shares | _____ % | _____ % |
| **FEDERATED INSURANCE SERIES** |  |  |
| Federated Quality Bond Fund II:  Primary Shares | _____ % | _____ % |
| **FIDELITY VARIABLE INSURANCE PRODUCTS** |  |  |
| Fidelity Investment Grade Bond Portfolio:  Service Class | 25 % | _____ % |
| Fidelity Equity-Income Portfolio:  Service Class | 25 % | _____ % |
| Fidelity Growth Portfolio:  Service Class | _____ % | _____ % |
| Fidelity Overseas Portfolio:  Service Class | _____ % | _____ % |
| **GARTMORE VARIABLE INSURANCE TRUST** |  |  |
| Gartmore GVIT Government Bond Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Aggressive Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Conservative Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Moderate Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Moderately Aggressive Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Moderately Conservative Fund | _____ % | _____ % |
| **JANUS ASPEN SERIES** |  |  |
| Capital Appreciation Portfolio:  Service Shares | _____ % | _____ % |
| **THE MARKET STREET FUND** |  |  |
| Equity 500 Index Portfolio | _____ % | _____ % |
| Money Market Portfolio | _____ % | _____ % |
| **OPPENHEIMER VARIABLE ACCOUNT FUNDS** |  |  |
| Capital Appreciation/VA:  Initial Class | _____ % | _____ % |
| Global Securities Fund/VA:  Initial Class | _____ % | _____ % |
| **VANGUARD VARIABLE INSURANCE FUND** |  |  |
| Equity Income Portfolio | _____ % | _____ % |
| Total Bond Market Index Portfolio | _____ % | _____ % |
| High Yield Bond Portfolio | _____ % | _____ % |
| Mid-Cap Index Portfolio | _____ % | _____ % |
| **GUARANTEED ACCOUNT***. | 25 % | _____ % |
| *Transfers from the Guaranteed Account may only be made within 30 days of a Policy Anniversary and are limited to 25% of the total account assets. | 100% | 100% |

**Or Request Specific Dollar Amount Transfers:**

☐ **Subaccount Transfer:** I elect to transfer the following dollar amounts from and to the specified funds. (Existing policy values only; does not affect allocation of future premium payments or asset rebalancing, if applicable)

| FROM Fund | Dollar Amount TOTAL | TO Fund |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Confirmation of request will follow and should be reviewed for accuracy.  Discrepancies must be brought to the attention of the Service Center immediately.  Please contact your Agent or our Service Center at (800) 688-5177 for additional assistance.

| _(signature)_ | _(signature)_ | 7/5/03 |
|---|---|---|
| Signature of Policy Owner(s) | Signature of Authorized Third Party Instructed to Request this Transfer/Change by the Owner | Date |

# Exhibit G

| | |
|---|---|
| Subj: | **(no subject)** |
| Date: | 7/01/2004 5:47:58 PM Eastern Standard Time |
| From: | |
| | Paul Tomassini |
| To: | |
| | CUSTOMLLC |

Hi Rick,

   Per our conversation I have received the forms that you had signed by the trustee and I will submit them.  Effective July 5, which is the anniversary date the policy face amount will be changed via a change in death benefit options to 489,512.  We will change the investment options as directed effective the same day.  As discussed the policy may MEC out and if so lets discuss the options.

   Your Uncle will receive the updates in his next statement.  I will forward a copy to you.  I am sorry about the confusion and the underwriter.  I will take the heat for you if needed.  Its our fault here and not yours.  If we have any other issues I will call you.


   Paul

| Subj: | **(no subject)** |
| Date: | 8/21/2004 3:16:42 PM Eastern Standard Time |
| From: | |
| | Paul Tomassini |
| To: | |
| | CUSTOMLLC |

Rick,

This is to confirm our conversation yesterday. I did send in the paperwork and the death benefit as of today is $489,512. I will forward a statement to you at the end of September. The underwriter did me a favor on this one. Please do not call I do not want to put her in an awkward situation again. Thanks for the sox tickets as well. We had fun. Lets catch up soon.

# Exhibit H

MEMORY TRANSMISSION REPORT

```
                              TIME      : SEP 03 '98  02:43
                              TEL NUMBER : 6179648431
                              NAME      : NEAG NEWTON
```

| NBR | FILE | DATE | TIME | DURATION | PGS | TO | DEPT NBR | MODE | STATUS |
|-----|------|------|------|----------|-----|----|----------|------|--------|
| 084 | 35 | SEP.03 | 02:42 | 00/31 | 1 | 6037750603 | | EC | M | OK |



July 27, 1998

Rick,

Per the phone conversation regarding your uncle I have worked with underwriting to get the policy issued as a favor to me. It is rated however I have come up with an illustration that will start with a DB of  326,563 and grow with the investment well above your 500000 target. This will be with a good portfolio strategy which I will forward. This will allow you to cancel the MONY policy ( or non take) and the Guardian. We really want and need this business and this will help. I realize its family and you have done a good job with us so I was able to get this done. It's a bit confusing but I will explain when you come in. Lets get it issued and placed then work through the modifications.

Barry

```
MEMORY TRANSMISSION REPORT

                              TIME      : SEP 10 '98  23:19
                              TEL NUMBER : 6179648431
                              NAME      : NEAG NEWTON


NBR  FILE   DATE   TIME   DURATION  PGS  TO                      DEPT NBR  MODE      STATUS

209  06   SEP.10  23:19   00/32     1   F.V. M MENIMEN III              G3      M   OK
```



July 16, 1998

As discussed heres the new illustration.  It has been backdated to April 29.
Please sign the illustration forms and we will fax to underwriters


                    Barry

# Exhibit I

**LAW OFFICES OF**
# RONALD P. PASSATEMPO
**ATTORNEY AT LAW**

RONALD P. PASSATEMPO JD MBA
MEMBER MASSACHUSETTS BAR

23 First Street, Suite 105
Medfield, Massachusetts 02155

Telephone (781) 395-7678
Facsimile (781) 395-7732



July 1, 2004

VIA CERTIFIED MAIL

Frederick V. McMenimen III
Custom Financial LLC
215 Newbury St.
Peabody, MA 01960

New England Advisory Group LLC
C/O Barry G. Armstrong
35 Farm St.
Medfield, MA 02052

Barry G. Armstrong
35 Farm St.
Medfield, MA 02052

Nationwide Provident
ATTN: James W. DuBois
300 Continental Drive
Newark, DE 19713-4399

RE:   **POLICY** *REDACTED*
      **Insured: Samuel Pietropaolo**
      **Owner – Ronald Passatempo, Trustee, Samuel Pietropaolo Family Trust**

Dear Mr. McMenimen et al.:

Under the provisions of Massachusetts General Laws, Chapter 93A, Section 9, I hereby make written demand for relief as outlined in that statute.

On or about July 5, 2003, the following unfair or deceptive act occurred:

On or about April 2003, Mr. Pietropaolo received a phone call from an agent of New England Advisory Group ("NEAG") named Jesse McPhail ("McPhail") stating that the above referenced policy had been "orphaned" and he was the new agent on the account. Frederick McMenimen ("McMenimen") was no longer the account representative.

Upon further inquiry we learned that McMenimen was no longer associated with NEAG and Nationwide Provident; however, McMenimen continued to direct us to make all payments to Nationwide through is office. Further, we learned through McPhail that the policy was for a limited value of $200,000.

We contacted McMenimen who stated and assured that he was still the agent and that while the policy showed $200,000 it was a mistake and he would correct the error.

In July 2003, McMenimen stated he executed documents to have policy cash value converted into $289,412 of permanent insurance which would raise the policy death benefit to guaranteed 489,412. Although still below the original $500,000 minimum; McMenimen promised continued growth in the investment portion of the policy as he also changed the policies investment strategy (which had been overlooked for years by McMenimen).

To date, no changes have been effectuated and the policy sits with a value below what was originally sold.

The insured, Mr. Pietropaolo, originally engaged McMenimen to discuss "pension maximization" for his state teachers' retirement pension. Based upon review of Mr. Pietropaolo's pension options, it was determined that the minimum insurance to make it worth doing pension maximization was $500,000.

McMenimen did not place Mr. Pietropaolo into a guaranteed $500,000 policy. Despite numerous representations that the policy would never be at risk to go below $500,000. He did explain that a portion of the premium would go to a mutual fund to build cash in order to one day make the policy "self-funding".

In structuring the transaction, McMenimen had Mr. Pietropaolo cancel and cash out an existing policy with John Hancock.

Mr. and Mrs. Pietropaolo made irrevocable elections regarding the pension maximization advice from McMenimen.

McMenimen has placed Mr. Pietropaolo in an inappropriate policy with unsuitable investment strategy. Mr. Pietropaolo placed the policy in trust for the benefit of his wife.

McMenimen was an agent of NEAG and Nationwide Provident.

McMenimen and NEAG earned commissions off of selling a policy to Mr. Pietropaolo.

The Trustee has made all required premium payments to date on this policy.

Mr. Pietropaolo and the trustee have been trying for over a year to get this matter corrected.

McMenimen, NEAG, and Nationwide, jointly and severally, through their collective acts and omissions have misled, intentionally misrepresented, and deceived Mr. Pietropaolo, Mrs. Pietropaolo, and Mr. Passatempo for which seek equitable and legal redress.

This unfair or deceptive act or practice is, in my opinion, declared unlawful by Section 2 of Chapter 93A, which in part reads as follows:

> "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

As a result of this unfair or deceptive act or practice, I suffered injury or loss of money as follows:

1. Policy value is more than $300,000 less than originally sold.
2. We have paid approximately $115,000 in premiums without benefit of receiving a $500,000 policy.
3. Mr. and Mrs. Pietropaolo forfeited certain guaranteed payment options through Mr. Pietropaolo's retirement benefits.
4. Attorney's fees.

Therefore, I hereby demand the following relief:

1. *Immediate confirmation of a fully paid insurance policy with a guaranteed death benefit of not less than $800,000 (based upon the $500,000 original expected policy plus the approximate $290,000 of converted cash value in the policy as of 7/5/03) documentation of such acceptable to the Trust and Mr. and Mrs. Pietropaolo.*
2. *Immediate return of all previously paid premiums and costs with 6% per annum interest*
3. *Confirmation that death benefit guaranteed with no further premiums costs, or other obligations due or owing now or in the future for the policy*
4. *Indemnification against any adverse financial or tax implications to the Trust or Mr. and Mrs. Pietropaolo as a result of this settlement.*
5. *Payment of all attorneys fees relatives since January 2003 to the present relative to this matter*

Chapter 93A gives you the opportunity to make a good-faith response to this letter within thirty (30) days. Your failure to do so could subject you to triple damages, attorney's fees and costs if I decide to institute legal action.

Sincerely,

Ronald P. Passatempo, Trustee
Samuel Pietropaolo Irrevocable Trust

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

)
RONALD P. PASSATEMPO, TRUSTEE,    )
On behalf of the Samuel Pietropaolo    )
Irrevocable Trust, SAMUEL PIETROPAOLO,  )
GRANTOR to the Samuel Pietropaolo    )
Irrevocable Trust, and PATRICIA D.    )
PIETROPAOLO, BENEFICIARY of the    )
Samuel Pietropaolo Irrevocable Trust,    )
                                        )
    Plaintiffs,    )
                                        )
    v.    )
                                        )
FREDERICK V. McMENIMEN III, BARRY    )
G. ARMSTRONG, NEW ENGLAND    )
ADVISORY GROUP, LLC, 1717 CAPITAL    )
MANAGEMENT COMPANY, NATIONWIDE)
PROVIDENT (f/k/a Provident Mutual Life    )
Insurance Company), and NATIONWIDE    )
FINANCIAL SERVICES, INC.,    )
                                        )
    Defendants.    )
                                        )



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR ...

JAN 1 4 2005

Edward J Sullivan
CLERK

Civil Action No. 04-2661

## AFFIDAVIT OF PROOF OF SERVICE

I, David M. Burkoff, attorney for the plaintiffs, Ronald P. Passatempo, Trustee, on behalf

of the Samuel Pietropaolo Irrevocable Trust, Samuel Pietropaolo, Grantor to the Samuel

Pietropaolo Irrevocable Trust, and Patricia D. Pietropaolo, Beneficiary of the Samuel Pietropaolo

Irrevocable Trust, certify that notice of service of process in the above-captioned case was made

upon the defendant Nationwide Provident (f/k/a Provident Mutual Life Insurance Company), and

a Summons and Amended Complaint were sent to Nationwide Provident (f/k/a Provident Mutual

Life Insurance Company) by certified mail, return receipt requested and that said receipt is attached hereto as Exhibit A.

I further depose and say that I have complied with the provisions of Massachusetts General Laws, Chapter 223A.

_____
Howard M. Cooper (BBO # 543842)
David M. Burkoff (BBO # 657447)
Todd & Weld LLP
28 State Street
Boston, MA  02109
(617) 720-2626

Dated: January 13, 2005

## CERTIFICATE OF SERVICE

I, David M. Burkoff, hereby certify that I have this 13th day of January, 2005 served a copy of the Affidavit of Proof of Service, by first-class mail, upon William P. Corbett, Jr., 85 Exchange Street, Suite 326, Lynn, MA  01901-1429; and Timothy J. Casey, Ropes & Gray LLP, One International Place, Boston, MA  02110.

_____
David M. Burkoff

2

**EXHIBIT A**

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X _Chester Farkas_   ☐ Agent   ☐ Addressee <br> B. Received by ( *Printed Name*)   C. Date of Delivery <br> _VICTOR FARKAS_   _1-10-05_ <br> D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☑ No |
| 1. Article Addressed to: <br><br> _Nationwide Provident_ <br> _100 Chesterbrook Boulevard_ <br> _Berwin, PA 19312_ <br> _ATTN: Florence Delaney_ | |
| | 3. Service Type <br> ☑ Certified Mail   ☐ Express Mail <br> ☐ Registered   ☑ Return Receipt for Merchandise <br> ☐ Insured Mail   ☐ C.O.D. <br> 4. Restricted Delivery? (*Extra Fee*)   ☐ Yes |
| 2. Article Number <br> (*Transfer from service label*) | 7004 2890 0004 8003 9877 |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



I HEREBY CERTIFY ON [date]
THIS DOCUMENT IS A FULL, TRUE
AND CORRECT COPY OF THE ORIGINAL ON FILE
IN MY OFFICE AND IN MY LEGAL CUSTODY.
TONY ANASTAS
CLERK, U.S. DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BY:

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



FILED COPY
IN CLERKS OFFICE

2005 JAN 19 A 10: 42

U.S. DISTRICT COURT
DISTRICT OF MASS.

2004 - 2661

|  |  |
|---|---|
| RONALD P. PASSATEMPO, Trustee of the Samuel Pietropaolo Irrevocable Trust, SAMUEL PIETROPAOLO, Grantor of the Samuel Pietropaolo Irrevocable Trust, and PATRICIA D. PIETROPAOLO, Beneficiary of the Samuel Pietropaolo Irrevocable Trust, | ) ) ) ) ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) ) |
| FREDERICK V. MCMENIMEN III, BARRY G. ARMSTRONG, NEW ENGLAND ADVISORY GROUP, LLC, 1717 CAPITAL MANAGEMENT COMPANY, NATIONWIDE PROVIDENT f/k/a Provident Mutual Life Insurance Company, and NATIONWIDE FINANCIAL SERVICES, INC., | ) ) ) ) ) ) ) ) ) |
| *Defendants.* | ) ) ) |

05    10118 GAO

## NOTICE OF REMOVAL

Defendant Frederick V. McMenimen, III ("Mr. McMenimen") hereby gives notice

that he has removed this action to this Court from the Middlesex Superior Court, where it

had been assigned docket number MICV2004-2661. Because 28 U.S.C. § 1446(a) requires

that "a copy of all process, pleadings, and orders served" upon the removing defendant be

included with this Notice, a copy of the Summons served upon Mr. McMenimen is

appended to this Notice at Tab A, and a copy of the First Amended Complaint is appended

at Tab B. Paragraph 44 of the First Amended Complaint and the documents appended to

that pleading as Exhibits A, B, C, D, F and I have been redacted to conform them with

Local Rule 5.3. As grounds for removal, Mr. McMenimen states the following:

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
JAN 26 2005
CLERK

1.      Count VII of the First Amended Complaint claims "Violations of the Massachusetts and Federal Securities Laws," and paragraph 128 of that pleading alleges, in pertinent part, violations of two specific provisions of Federal law:  Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10(b)(5).

2.      Accordingly, this is a "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the . . . laws of the United States," and it is therefore "removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

3.      Though this action was commenced in Middlesex Superior Court on July 1, 2004, Mr. McMenimen did not receive the Summons and First Amended Complaint until December 28, 2004, when he was served.  Before that date, Mr. McMenimen had not received, through service or otherwise, any initial or amended pleading, motion, order or other paper from which it could have been ascertained that this case is removable.  Indeed, before December 28, 2004, Mr. McMenimen did not even know that this lawsuit was pending.  This Notice of Removal is thus timely filed under 28 U.S.C. § 1446(b).

4.      As provided by Local Rule 81.1, Mr. McMenimen shall, within thirty (30) days after filing this Notice, file certified or attested copies of all records and proceedings in the Middlesex Superior Court and a certified or attested copy of all docket entries in that state court.

WHEREFORE, Mr. McMenimen respectfully requests that the Clerk docket this action and assign it to a District Judge and Magistrate Judge, as provided by Local Rule 40.1 and Magistrate Rule 8(a)(1)(A).

Respectfully submitted,

FREDERICK V. McMENIMEN, III

By his attorney,

William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
*A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  January 19, 2005

*CERTIFICATE OF SERVICE*

I hereby certify that on this nineteenth day of January, 2005, I caused a true copy of the foregoing document to be served by first class mail upon the plaintiffs' attorney of record and upon each other defendant in the captioned action.

William P. Corbett, Jr.

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

.................... MIDDLESEX .................... , ss
[seal]

No. 04-2661

RONALD P. PASSATEMPO, TRUSTEE, On behalf of
the Samuel Pietropaolo Irrevocable Trust,
SAMUEL PIETROPAOLO, GRANTOR to the Samuel Plaintiff(s)
Pietropaolo Irrevocable Trust, and PATRICIA D.
PIETROPAOLO, BENEFICIARY of the Samuel Pietropaolo
Irrevocable Trust

v.

FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG, NEW
ENGLAND ADVISORY GROUP, LLC, 1717 , Defendant(s)
CAPITAL MANAGEMENT COMPANY, NATIONWIDE PROVIDENT
(f/k/a Provident Mutual Life Insurance Company),
and NATIONWIDE FINANCIAL SERVICES, INC.

### SUMMONS

To the above-named Defendant: Frederick V. McMenimen III

You are hereby summoned and required to serve upon David M. Burkoff
.................................................. plaintiff's attorney, whose address is Todd & Weld LLP
28 State Street, Boston, MA 02109 ...................., an answer to the complaint which is herewith
served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you
fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also
required to file your answer to the complaint in the office of the Clerk of this court at Cambridge
.......................................................... either before service upon plaintiff's attorney or within a
reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Cambridge
Barbara J. Rouse
the 23rd .............................. day of December
...................., in the year of our Lord two thousand and four .

Edward J Sullivan
**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on .................................................................................................
20........, I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

...............................................................................................................................................
...............................................................................................................................................
...............................................................................................................................................
.......................................................................................

Dated: ...........................................................................................................

**N.B.  TO PROCESS SERVER:**
   **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX**
   **ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

( .............................................., .......... )

( _____ )

---

**COMMONWEALTH OF MASSACHUSETTS**

**SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT CIVIL ACTION No. 04-2661**

MIDDLESEX ............, ss.

RONALD P. PASSATEMPO, TRUSTEE., et al., Plff.

v.

FREDERICK V. McMENIMEN III., et al., Deft.

**SUMMONS**
(Mass. R. Civ. P. 4)

CHRIS STONE #43
DEPUTY SHERIFF

A TRUE COPY, ATTEST

COUNTY OF ROCKINGHAM, NH
DEPUTY SHERIFF

12/28/04
16:30

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

| | |
|---|---|
| RONALD P. PASSATEMPO, TRUSTEE, On behalf of the Samuel Pietropaolo Irrevocable Trust, SAMUEL PIETROPAOLO, GRANTOR to the Samuel Pietropaolo Irrevocable Trust, and PATRICIA D. PIETROPAOLO, BENEFICIARY of the Samuel Pietropaolo Irrevocable Trust, <br><br> Plaintiffs, <br><br> v. <br><br> FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG, NEW ENGLAND ADVISORY GROUP, LLC, 1717 CAPITAL MANAGEMENT COMPANY, NATIONWIDE PROVIDENT (f/k/a Provident Mutual Life Insurance Company), and NATIONWIDE FINANCIAL SERVICES, INC., <br><br> Defendants. | Civil Action No. 04-2661 |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

### i. Introduction

This Complaint seeks redress from the above-captioned Defendants for losses and

damages suffered as a result of their joint and several negligence; fraud, deceit and

misrepresentation; negligent misrepresentation; breach of fiduciary duty; intentional infliction of

emotional distress; negligent infliction of emotional distress; violations of Massachusetts and

federal securities laws; churning; breach of contract; and violations of consumer protection

laws—all relating to Nationwide Provident Flexible Premium Variable Life Insurance Policy No.

9,074,484 (the "Policy"). Variable life insurance policies contain both an insurance component and an investment component, and are therefore considered securities.

The Plaintiffs in this action are Samuel Pietropaolo, a retired school administrator on whose life the Policy was underwritten and who created the Samuel Pietropaolo Irrevocable Trust ("Family Trust") for his wife; Patricia D. Pietropaolo, the beneficiary of the Family Trust; and Ronald P. Passatempo, the trustee of the Family Trust, which is the current owner of the Policy (together, the "Plaintiffs").

Mr. Pietropaolo retired from the Revere Public School System in 1997. Upon his retirement, he sought to ensure that he would receive a monthly income sufficient to provide for himself and his family for the remainder of his life, plus a death benefit sufficient to provide for Mrs. Pietropaolo after his death. Mr. Pietropaolo had two existing life insurance policies, together worth approximately $150,000. Also, as a retiring school administrator, Mr. Pietropaolo had a pension with the Massachusetts Teachers' Retirement Board, and he was obligated at retirement to make an irrevocable choice between three pension payment options. However, none of these options provided adequate levels of lifetime monthly income and surviving spousal income to suit Mr. Pietropaolo's retirement needs. Thus, he sought the advice of his nephew, Defendant Frederick V. McMenimen, an insurance agent and financial advisor, who recommended a "pension maximization" plan.

Mr. McMenimen – in conjunction with Defendant Barry G. Armstrong, and as agent of Defendants New England Advisory Group, 1717 Capital Management Company, Nationwide Provident (f/k/a Provident Mutual Life Insurance Company) and Nationwide Financial Services, Inc. (together, the "Defendants") -- advised Mr. Pietropaolo to cancel his two existing life insurance policies and to choose the pension option that would pay the most monthly income to

2

Mr. Pietropaolo for life, but which included no surviving spousal annuity for Mrs. Pietropaolo upon his death. Then, Mr. McMenimen advised Mr. Pietropaolo to use the proceeds from his existing policies to purchase a variable insurance product with a death benefit of at least $500,000, and with an investment component that would, within a few years' time, become "self-funding" and therefore relieve him of the obligation of making future premium payments.

Mr. Pietropaolo relied upon and accepted Mr. McMenimen's advice in full, and Mr. McMenimen agreed to obtain for him the type of policy he (Mr. McMenimen) had recommended. Inexplicably, however, Mr. McMenimen instead obtained a policy with a $200,000 death benefit, while representing to the Plaintiffs that the policy included a $500,000 death benefit. Meanwhile, with Mrs. Pietropaolo's written consent (based upon her reliance on Mr. McMenimen's representations), Mr. Pietropaolo made the irrevocable pension choice recommended by Mr. McMenimen, forgoing any surviving spousal income to Mrs. Pietropaolo, and he cancelled his existing insurance policies. As a result, per the Defendants' designs, Mrs. Pietropaolo's only source of income after Mr. Pietropaolo's death will be the death benefit of the Policy arranged for the Plaintiffs by Mr. McMenimen.

At Mr. McMenimen's insistence, the Plaintiffs sent the Policy premium payments to Mr. McMenimen directly. Believing that Mr. McMenimen obtained for them the $500,000 policy they had discussed, the Plaintiffs have made all required premium payments from July 1998 to the present, totaling approximately $100,000. In or around April 2003, the Plaintiffs finally learned that the Policy was worth far less than the policy for which they had bargained. Despite his purported continued involvement, Mr. McMenimen had never described to the Plaintiffs the true nature of the Policy. The Plaintiffs made repeated requests for a copy of the Policy, but Mr. McMenimen never delivered one; thus, they never had the opportunity to review, consent to or

3

"non-take" the policy. Further, as detailed below, once the truth came to light, Mr. McMenimen apparently went so far as to forge certain e-mails in an effort to show that he was addressing the problem. From 1998 until 2003, Mr. McMenimen maintained that the Policy included a $500,000 death benefit and that it would become "self-funding." Once it became clear that the Policy was worth much less, Mr. McMenimen apologized repeatedly and said that he would make amends. He never did.

As a result of the Defendants' repeated and willful misrepresentations, omissions and obfuscations in connection with the Policy, the Plaintiffs have suffered significant economic harm and emotional distress. By this Complaint, they seek appropriate remedies through this Court.

## Parties

1. Plaintiff Ronald P. Passatempo, Esq. ("Mr. Passatempo") is the trustee of the Family Trust, which is the owner of the Policy. Mr. Passatempo has a business address of 23 Forest Street, Suite 105, Medford, Middlessex County, Massachusetts.

2. Plaintiff Samuel Pietropaolo ("Mr. Pietropaolo") is the grantor to the Family Trust. The Policy was underwritten on the life of Mr. Pietropaolo and purchased by the Family Trust for the benefit of Mr. Pietropaolo's wife, Plaintiff Patricia D. Pietropaolo. Mr. Pietropaolo resides in Revere, Suffolk County, Massachusetts.

3. Plaintiff Patricia D. Pietropaolo ("Mrs. Pietropaolo") is the beneficiary of the Family Trust, which is the owner of the Policy. Mrs. Pietropaolo resides in Revere, Suffolk County, Massachusetts.

4. Defendant Frederick V. McMenimen III ("Mr. McMenimen") is an insurance agent and financial advisor who is or was an agent of Defendant New England Advisory Group, LLC

4

and Defendant Nationwide Provident.  Mr. McMenimen has a current business address of 215

Newbury Street, Peabody, Massachusetts 01960, and a residential address of 6 Pumpkin Circle,

Exeter, New Hampshire 03833.

     5.  Defendant Barry G. Armstrong ("Mr. Armstrong") is an investment advisor and

former principal of Defendant New England Advisory Group, LLC who worked with Mr.

McMenimen on the Policy for the Plaintiffs.  Mr. Armstrong has an address of 35 Farm Street,

Medfield, Middlesex County, Massachusetts 02052.

     6.  Defendant New England Advisory Group, LLC ("NEAG") is or was a Massachusetts

limited liability company that sells insurance and investment products.  Its manager's address is

35 Farm Street, Medfield, Massachusetts 02052 and its business address is 75 Wells Avenue,

Newton, Middlesex County, Massachusetts 02459.

     7.  Defendant 1717 Capital Management Company ("1717 CMC"), a subsidiary of

Defendant Nationwide Provident, is the broker-dealer and registered investment advisor through

which Nationwide Provident offers securities and advisory services.  1717 CMC has a business

mailing address at P.O. Box 15626, Wilmington, Delaware 15626 and operates as a foreign

corporation in Massachusetts with a registered agent address of Corporation Service Company,

84 State Street, Boston, Massachusetts 02109.

     8.  Defendant Nationwide Provident ("Nationwide") is a member of the Nationwide

Financial Services, Inc. companies, which have an address of 1 Nationwide Plaza, Columbus,

Ohio 43215.  Nationwide sold the Policy to the Plaintiffs through its agents 1717 CMC, NEAG,

Mr. Armstrong and Mr. McMenimen.  Nationwide is the successor to Provident Mutual Life

Insurance Company and operates as a foreign corporation in Massachusetts under the name of

5

Nationwide Securities, Inc. with a resident agent address at CT Corporation System, 101 Federal Street, Boston, Massachusetts 02110.

9.  Defendant Nationwide Financial Services, Inc. ("NFS") is the parent company of Nationwide and a provider of insurance and financial services.  NFS has an address of 1 Nationwide Plaza, Columbus, Ohio 43215 and operates as a foreign corporation in Massachusetts with a registered agent address at CT Corporation System, 101 Federal Street, Boston, Massachusetts 02110.

### Facts

10. The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

11. Mr. Pietropaolo was the Director of Special Education for the City of Revere, Massachusetts and worked for the City for over thirty-two years.

12. In June 1997, Mr. Pietropaolo retired at age sixty-eight.

13. As a long-time municipal employee, Mr. Pietropaolo was eligible for certain retirement benefits, including one of three pension payment options from the Massachusetts Teachers Retirement Board ("MTRB").  A description of these options is attached hereto as Exhibit A.

14. Option A would provide a monthly retirement payment of $4,438.88 with no surviving spousal support upon Mr. Pietropaolo's death.  Mrs. Pietropaolo, as Mr. Pietropaolo's spouse, would be required to "sign off" on his election of Option A.

15. Option B would provide a monthly retirement payment of $4,228.31 with a limited amount of surviving spousal support upon Mr. Pietropaolo's death.

6

16. Option C would provide a monthly retirement payment of $3,151.62 with a surviving spousal support payment of $2,101.08 per month to Mrs. Pietropaolo upon Mr. Pietropaolo's death.

17. Mr. Pietropaolo discussed the three MTRB options with Mrs. Pietropaolo, and with his son, Samuel F. Pietropaolo ("Sam P.").

18. Mr. Pietropaolo wanted to secure for Mrs. Pietropaolo, upon his death, a steady stream of income and/or a lump sum payment to provide for her health and welfare needs. In this regard, he concluded that the fixed monthly income stream under MTRB Option C would not be satisfactory.

19. Sam P. recalled that Mr. McMenimen, who is his cousin and Mr. and Mrs. Pietropaolo's nephew, had told him in the past that he had experience working with municipal retirees and comparing their pension options with insurance options in order to maximize their retirement income. Mr. McMenimen had described such analyses to Sam P. as "pension maximization."

20. Mr. Pietropaolo and Sam P. decided to engage Mr. McMenimen to determine if Mr. Pietropaolo could afford an insurance policy the proceeds of which would (*i*) yield at least as much monthly income to Mrs. Pietropaolo as the "spousal survivor pension payments" under MTRB Option C ($2,101.08), or (*ii*) provide a lump sum payment to Mrs. Pietropaolo, through the Family Trust, sufficient to cover the cost of owning a home (she and Mr. Pietropaolo currently share a two-family home with Mr. Pietropaolo's sister) and/or any advanced medical care she might require after Mr. Pietropaolo's death.

21. In providing advice and ultimately obtaining a Policy for the Plaintiffs, Mr. McMenimen worked in conjunction with Mr. Armstrong. Mr. McMenimen was then an agent of

7

NEAG, and Mr. Armstrong was the principal thereof. As discussed below, however, the Plaintiffs were unaware of Mr. Armstrong's involvement until April 2004.

22. Mr. McMenimen analyzed Mr. Pietropaolo's situation in light of his goal of providing sufficient income to Mrs. Pietropaolo upon his death.

23. Mr. McMenimen represented to Mr. Pietropaolo and Sam P. that he was an experienced licensed insurance agent and financial advisor. He again represented that he had experience advising individuals in "pension maximization" situations.

24. Mr. McMenimen advised Sam P. that Mr. Pietropaolo would need an insurance policy worth at least $500,000 in order to "maximize" his pension.

25. Mr. McMenimen was aware of the limited financial resources of Mr. and Mrs. Pietropaolo, and he was aware of their limited financial planning and investing experience.

26. Mr. McMenimen was aware that Mr. Pietropaolo, on Mr. McMenimen's own advice, did not want to risk having less than $500,000 in guaranteed insurance for the benefit of Mrs. Pietropaolo.

27. Mr. McMenimen was aware that Mr. and Mrs. Pietropaolo's primary asset was the MTRB pension, and he was aware that once Mr. Pietropaolo chose between MTRB pension Options A, B and C, that choice would be irrevocable.

28. Mr. McMenimen reviewed Mr. Pietropaolo's three MTRB pension payment options.

29. Mr. McMenimen was aware that once Mr. Pietropaolo elected Option A, he would be forfeiting any guaranteed spousal survivor payment to Mrs. Pietropaolo upon his death.

30. Mr. McMenimen discussed with Sam P. that a policy worth at least $500,000 would, upon Mr. Pietropaolo's death, provide Mrs. Pietropaolo with monthly income equal to or greater

8

than the income she would receive under MTRB Option C, or alternatively would provide a lump sum for her benefit of at least $500,000 for her care and welfare.

31. Mr. and Mrs. Pietropaolo relied on the representations and advice of Mr. McMenimen in making the irrevocable choice between MTRB pension payment options. As a result of such reliance, Mrs. Pietropaolo will receive no surviving spousal income from Mr. Pietropaolo's MTRB pension.

32. Mr. McMenimen knew that Mr. Pietropaolo had two existing life insurance policies with John Hancock (the "John Hancock Policies") which had a combined guaranteed death benefit of approximately $150,000.

33. Mr. McMenimen knew that Mr. Pietropaolo was paying less than $500 per month for the John Hancock Policies.

34. Mr. McMenimen had Mr. Pietropaolo cancel the John Hancock policies in order to fund a new policy that Mr. McMenimen would obtain for Mr. Pietropaolo. Mr. Pietropaolo relied on the representations and advice of Mr. McMenimen in deciding to cancel the John Hancock Policies.

35. Mr. McMenimen had Mr. Pietropaolo apply for several insurance policies of varying types and amounts, and with various rates. At Mr. McMenimen's instruction, the Plaintiffs signed certain blank forms and returned them to Mr. McMenimen, whereupon Mr. McMenimen subsequently filled in the application details.

36. Mr. McMenimen applied for a $500,000 policy from Nationwide for Mr. Pietropaolo. Mr. McMenimen filled out the investment selections and certain other policy information on the Nationwide application without discussing these selections with the Plaintiffs.

37. Nationwide declined to insure Mr. Pietropaolo on or about May 8, 1998. Mr. McMenimen told Sam P. that Nationwide's decision was a mistake and that he would correct it.

38. Several of Mr. Pietropaolo's other insurance applications were approved, including applications for policies with Mutual of New York and Guardian. Mr. McMenimen directed Mr. Pietropaolo to instead purchase a policy from Nationwide. Mr. Pietropaolo relied on the representations and advice of Mr. McMenimen in deciding to cancel his applications for insurance with Mutual of New York and Guardian.

39. Nationwide subsequently approved Mr. Pietropaolo's insurance application.

40. Mr. McMenimen explained to Mr. Pietropaolo and Sam P. that to make the insurance more affordable, he would obtain a policy with two components; one component would have a face value of less than $500,000, but with the second component (a rider or a second policy), the aggregate value of Mr. Pietropaolo's insurance would never be less than $500,000.

41. Mr. McMenimen was aware of Mr. Pietropaolo's limited financial planning and investing experience, and he knew that Mr. Pietropaolo did not want any risk that the value of his insurance would fall below $500,000.

42. Mr. McMenimen assured the Plaintiffs that the insurance would always be worth at least $500,000. Mr. McMenimen also made numerous representations that the value of the insurance would grow *beyond* $500,000 and would become "self-funding."

43. Sam P. expressed to Mr. McMenimen that the Plaintiffs' primary concern was securing the $500,000 death benefit.

44. In July 1998, Mr. McMenimen obtained Nationwide Flexible Premium Variable Life Insurance Policy No. REDACTED 4,484 for Mr. Pietropaolo (the "Policy"). The Plaintiffs relied on the

10

representations and advice of Mr. McMenimen in deciding to purchase the Policy from Nationwide.

45. Mr. McMenimen, in coordination with Mr. Armstrong and NEAG, sold the Policy to the Plaintiffs through Defendants 1717 CMC, Nationwide and NFS.  1717 CMC is a subsidiary of Nationwide, and Nationwide is owned by NFS.  Nationwide is the successor to Provident Mutual Life Insurance Company.  The Defendants are all related by common ownership, control and/or contract, and are responsible for one another's acts and omissions in connection with the Policy.

46. The monthly premium payment for the Policy is $1,592.25.  Since July 1998, Mr. Pietropaolo has paid the premium amounts to the Family Trust, and the Family Trust has sent the premium payments to Mr. McMenimen directly, at his instruction.  The Family Trust has now paid approximately $100,000 in premium payments.

47. Mr. McMenimen led the Plaintiffs to believe that he would have continuing involvement in managing and monitoring the Policy, hence his instruction that the Plaintiffs send the premium payments to him directly.

48. Mr. McMenimen explained to Sam P. that a portion of the premiums would pay for the Policy's death benefits, while another portion would be invested to build a fund, which over time would allow the $500,000 policy to become "self-funding," relieving Mr. Pietropaolo from the obligation of making any further premium payments and allowing him to enjoy all of his Option A pension payments during his lifetime.

49. Mr. McMenimen described a number of investment scenarios to demonstrate how the investment portion of the Policy would eventually reach a "self-funding" state.

11

50. McMenimen never explained to Sam P. or the Plaintiffs that the death benefit would be variable or unguaranteed.

51. The final Policy and its terms were never delivered to the Plaintiffs, as indicated by the unsigned "Policy Delivery Receipt" attached hereto as Exhibit B.

52. On numerous occasions, Sam P. asked Mr. McMenimen for a copy of the Policy for Mr. Pietropaolo. Upon each and every request, Mr. McMenimen assured Sam P. that everything was in order and not to worry. None of the Plaintiffs ever received a copy of the Policy from Mr. McMenimen or from any other Defendant.

53. The Plaintiffs believed the Policy included a minimum $500,000 death benefit. The Plaintiffs relied upon McMenimen's purported continued oversight of the Policy and his insistence that it included a guaranteed $500,000 total death benefit.

54. Indeed, on or about May 4, 2004, Mr. McMenimen produced documents to Sam P. including a $500,000 Policy Schedule from Nationwide, a copy of which is attached hereto as Exhibit C. Curiously, however, Mr. McMenimen also produced a $200,000 Policy Schedule, a copy of which is attached hereto as Exhibit D. Both Schedules include the identical policy number, issue date and premium amount.

55. According to Nationwide's records, Mr. McMenimen never requested or purchased more than $200,000 of insurance for the Plaintiffs.

56. On or about April 2003, Mr. Pietropaolo received a call from another NEAG agent, Jesse McPhail ("Mr. McPhail"). Mr. Pietropaolo asked Mr. McPhail to speak with Sam P.

57. McPhail informed Sam P. that the Policy was worth $200,000 and had been "orphaned," that Mr. McMenimen was no longer the agent assigned to the Policy, and, further, that Mr. McMenimen was no longer affiliated with NEAG.

12

58. In response, Sam P. suggested that Mr. McPhail was misinformed, since the Policy as Mr. McMenimen had represented it to the Plaintiffs was worth $500,000 rather than $200,000. Sam P. asked Mr. McPhail to research the Policy to find out whether there were any riders or other components of the Policy that would raise its value to at least $500,000.

59. After investigating, Mr. McPhail advised Sam P. that the Policy was valued at just $200,000; that no additional riders or insurance had been purchased; and that the insurance portion of the Policy was becoming more expensive each year, thus leaving an increasingly smaller percentage of the premiums to be applied to the investment, "self-funding" portion of the Policy.

60. Sam P. advised the Plaintiffs that he would speak to Mr. McMenimen about this matter. Between April 2003 and July 2003, Sam P. and Mr. McMenimen had many conversations concerning the "orphaned" Policy.

61. Mr. McMenimen told Sam P. that he *was* still the agent responsible for the Policy. Further, he advised Sam P. that he would address the apparent problem and that Sam P. should not ask Mr. McPhail to perform any further investigation.

62. Sam P. complied with Mr. McMenimen's instructions.

63. Mr. McMenimen admitted to Sam P. that he "took his eye off the ball" by failing to monitor and manage the Policy, which resulted in its loss of value to less than $500,000. At the same time, Mr. McMenimen also tried to shift the blame, writing to Sam P. at one point that "someone else did not follow up." See the April 16, 2004 e-mail attached hereto as Exhibit E.

64. Mr. McMenimen assured Sam P. that he would correct the situation and secure the Policy's value at a minimum of $500,000.

13

65. To that end, Mr. McMenimen informed Sam P. in June 2003 that he was having the Policy re-underwritten, which would result in an additional $289,412 being added immediately to the existing $200,000. See the "Application for Policy Change" attached hereto as <u>Exhibit</u> <u>F</u>. Again, Mr. McMenimen produced blank forms for the Plaintiffs to sign in order to "expedite" his efforts to correct the Policy mistakes.

66. When Sam P. expressed his and the Plaintiffs' disappointment that Mr. McMenimen's proposed solution would fail to secure the entire $500,000 as originally promised, Mr. McMenimen said it was the best that he could do and that the investment portion of the Policy would continue to grow and was already worth more than $30,000. Added to the new $489,412 value of the Policy, Mr. McMenimen said, the $30,000 would push the Policy's value over the $500,000 target.

67. Between July and December of 2003, Sam P. repeatedly asked Mr. McMenimen for a copy of the amended Policy to review with the Plaintiffs. In response, Mr. McMenimen provided assurances that everything would be taken care of and that he would get the paperwork to Sam P. shortly. This he did not do.

68. When the year-end Policy Statement from Nationwide did not reflect any changes to the Policy between July and December 2003, Sam P. again confronted Mr. McMenimen regarding the Policy errors and lack of any corrections. Mr. McMenimen once again assured Sam P. that everything would be taken care of.

69. In March 2004, Mr. McMenimen finally responded substantively to Sam P., alleging mistakes by NEAG and Nationwide in failing to process the July 2003 Application for Policy Change and related paperwork.

14

70. On April 1, 2004, Mr. McMenimen met with Sam P. in Billerica, Massachusetts and provided various documents to Sam P. relating to his alleged July 2003 efforts to change the Policy. Among these documents are two e-mails that Mr. McMenimen claimed he had received from NEAG. Suspiciously, these e-mails are dated July 1, 2004 and August 21, 2004, months *after* the date Mr. McMenimen provided them to Sam P – *i.e.* months *after* April 1, 2004. Copies of the e-mails are attached hereto as Exhibit G.

71. Further, at his April 1, 2004 meeting with Sam P., Mr. McMenimen also produced copies of certain correspondence with Mr. Armstrong in which Mr. Armstrong described the Policy as "confusing" and wrote that "[w]e really want and need this business." In addition, Mr. Armstrong indicated that illustrations used to sell the Policy to the Plaintiffs were back-dated. See faxes dated July 16, 2004 and July 27, 2004, attached hereto as Exhibit H.

72. Mr. McMenimen told Sam P. for the first time that Mr. Armstrong had reviewed and worked on Mr. Pietropaolo's insurance applications with Mr. McMenimen. He said that Mr. Armstrong was instrumental in developing the strategy and the presentations made by Mr. McMenimen to the Plaintiffs.

73. Mr. Armstrong became the lead agent responsible for the Policy after Mr. McMenimen left NEAG. Mr. Armstrong never contacted the Plaintiffs, either during or after Mr. McMenimen's tenure at NEAG. Like Mr. McMenimen, Mr. Armstrong was only concerned with his expected commissions, and not with the stated investment objectives and risk tolerance of the Plaintiffs.

74. Indeed, Mr. McMenimen, Mr. Armstrong and/or NEAG have received (and continue to receive) commissions in connection with the Policy.

15

75. Since about April 2003, Sam P. and the Plaintiffs have attempted to obtain clarification from the Defendants regarding the Policy and any attempted changes thereto.

76. Mr. McMenimen told Sam P. that Nationwide representatives scheduled a meeting with the two of them for May 7, 2004 to discuss a potential resolution. Mr. McMenimen also told Sam P. that he had forwarded his files relating to the Policy to Nationwide for their review.

77. Nationwide has denied that any meeting was ever scheduled. According to Nationwide, no requests for any changes to the original $200,000 Policy were ever received from Mr. McMenimen, NEAG or any other entity or person.

78. On or about July 2, 2004, the Plaintiffs sent the Defendants a written demand for relief pursuant to Massachusetts General Law c. 93A, identifying themselves and the unfair acts and practices upon which they relied, and describing their resultant injuries. A copy of this letter is attached hereto as Exhibit I.

79. As of the date of this First Amended Complaint and Jury Demand, the Defendants have not made a reasonable offer of relief to the Plaintiffs and, in particular, Defendants McMenimen and NEAG have yet to respond.

## Count I

### (Negligence)

80. The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

81. Mr. McMenimen used his position as a relative of Mr. and Mrs. Pietropaolo to garner their trust and gain their business.

82. Mr. McMenimen and the other Defendants, as financial advisors to the Plaintiffs in connection with the Policy, jointly and severally owed a duty to the Plaintiffs.

16

83. The Defendants, through their agent Defendant McMenimen, represented to the Plaintiffs that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.  In this regard, the Defendants, through Defendant McMenimen, showed the Plaintiffs misleading analyses, reports and illustrations.

84. Once the truth arose, in or around April 2003, Defendant McMenimen falsely represented to the Plaintiffs that he was working on adjusting the Policy to reflect what they had originally bargained for.

85. The Defendants, by their acts and omissions in connection with the Policy, have jointly and severally breached their duty to the Plaintiffs.

86. As a result of the Defendants' acts and omissions, the Plaintiffs have suffered grievous harm.

## Count II

### (Fraud, Deceit and Misrepresentation)

87. The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

88. The Defendants, through their agent Defendant McMenimen, knowingly lied, deceived and misled the Plaintiffs by representing to them that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.

89. Defendant McMenimen represented that he would obtain an insurance policy for the Plaintiffs with a guaranteed $500,000 death benefit and which would likely become "self-funding" within several years.

90. Defendant McMenimen showed the Plaintiffs misleading analyses, reports and illustrations in order to convince them that such a policy suited their stated investment goals, experience and desired risk.

17

91. Defendant McMenimen represented to the Plaintiffs that he had obtained such a policy.

92. Once the Plaintiffs learned, in or around April 2003, that no such policy had been obtained, Defendant McMenimen represented to them that he was working on adjusting the Policy to reflect what they had originally bargained for.

93. Each of the above representations was false when made and known to be false.

94. The Defendants knew or reasonably should have known that their representations, acts and omissions would and did induce reasonable reliance on the part of the Plaintiffs in connection with the Policy.

95. The Plaintiffs reasonably relied on the Defendants' representations, acts and omissions in connection with the Policy.

96. As a result of the Defendants' fraud, deceit and misrepresentations, the Plaintiffs have suffered grievous harm.

## Count III

### (Negligent Misrepresentation)

97. The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

98. The Defendants, through their agent Defendant McMenimen, failed to exercise reasonable care in their dealings with the Plaintiffs by representing to them that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.

99. Defendant McMenimen represented that he would obtain an insurance policy for the Plaintiffs with a guaranteed $500,000 death benefit and which would likely become "self-funding" within several years.

18

100.    Defendant McMenimen showed the Plaintiffs misleading analyses, reports and illustrations in order to convince them that such a policy suited their stated investment goals, experience and desired risk.

101.    Defendant McMenimen represented to the Plaintiffs that he had obtained such a policy.

102.    Once the Plaintiffs learned, in or around April 2003, that no such policy had been obtained, Defendant McMenimen represented to them that he was working on adjusting the Policy to reflect what they had originally bargained for.

103.    The Plaintiffs reasonably relied on the Defendants' acts and omissions in connection with the Policy.

104.    As a result of the Defendants' failure to exercise reasonable care with respect to their acts and omissions in connection with the Policy, the Plaintiffs have suffered grievous harm.

## Count IV

### (Breach of Fiduciary Duty)

105.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

106.    The Defendants, through their agent Defendant McMenimen, were financial advisors to the Plaintiffs in connection with the Policy.

107.    Defendant McMenimen is a relative of Plaintiffs Mr. and Mrs. Pietropaolo.

108.    Defendant McMenimen represented to the Plaintiffs that he had experience working with municipal retirees in "pension maximization" situations.

19

109.    Defendant McMenimen instructed the Plaintiffs to send their premium payments for the Policy directly to him.

110.    The Defendants owed fiduciary duties to the Plaintiffs.

111.    The Defendants, through Defendant McMenimen, breached their fiduciary duties by representing to the Plaintiffs that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.  In this regard, the Defendants, through Defendant McMenimen, showed the Plaintiffs misleading analyses, reports and illustrations.

112.    Once the truth arose, in or around April 2003, Defendant McMenimen breached his fiduciary duty by falsely representing to the Plaintiffs that he was working on adjusting the Policy to reflect what they had originally bargained for.

113.    As a result of the Defendants' breaches of fiduciary duty, the Plaintiffs have suffered grievous harm.

## Count V

### (Intentional Infliction of Emotional Distress)

114.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

115.    By representing to the Plaintiffs, through Defendant McMenimen, that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for, the Defendants knew or reasonably should have known that they were likely to cause emotional distress on the part of the Plaintiffs.

116.    Once the truth arose, in or around April 2003, by falsely representing to the Plaintiffs that he was working on adjusting the Policy to reflect what they had originally

20

bargained for, Defendant McMenimen knew or reasonably should have known that he was likely to cause emotional distress on the part of the Plaintiffs.

117.    The Defendants' acts and omissions in this regard were extreme and outrageous.

118.    As a result of these acts and omissions, Plaintiff Samuel Pietropaolo has been deeply concerned with his wife's potential welfare after his passing. He has suffered from repeated episodes of anxiety and restlessness, leading to sleep deprivation, loss of appetite and increased frequency of smoking.

## Count VI

### (Negligent Infliction of Emotional Distress)

119.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

120.    The Defendants, through their agent Defendant McMenimen, failed to exercise reasonable care in their dealings with the Plaintiffs by representing to them that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.

121.    Once the truth arose, in or around April 2003, Defendant McMenimen failed to exercise reasonable care in his dealings with the Plaintiffs by falsely representing to them that he was working on adjusting the Policy to reflect what they had originally bargained for.

122.    The Defendants' acts and omissions in this regard were extreme and outrageous.

123.    As a result of these acts and omissions, Plaintiff Samuel Pietropaolo has been deeply concerned with his wife's potential welfare after his passing. He has suffered from repeated episodes of anxiety and restlessness, leading to sleep deprivation, loss of appetite and increased frequency of smoking.

21

## Count VII

### (Unsuitability and Violations of Massachusetts and Federal Securities Laws)

124.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

125.    The Defendants obtained for the Plaintiffs a variable life insurance policy (the "Policy") that did not meet the Plaintiffs' stated investment objectives, experience and tolerance of risk.

126.    The Defendants invested 100% of the investment component of the Policy in the Fidelity Income Fund, with no diversification and without regard to market conditions, Plaintiff Samuel Pietropaolo's advanced age, the Plaintiffs' stated investment objectives and/or their tolerance of risk.

127.    The Defendants, through Defendant McMenimen, represented to the Plaintiffs that the Policy was worth more than its actual value and that the Policy they received was the Policy they bargained for.  In this regard, the Defendants, through Defendant McMenimen, showed the Plaintiffs misleading analyses, reports and illustrations.

128.    By these acts and omissions, the Defendants violated Massachusetts and federal securities laws, including but not limited to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b); S.E.C. Rule 10b-5, 17 C.F.R. § 240.10(b)-5; and sections 101, 102 and 410(a) of the Massachusetts Uniform Securities Act, Mass. Gen. Laws c. 110A, §§ 101, 102, 410(a)(2).

## Count VIII

### (Churning)

129.     The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

130.     In advising the Plaintiffs to cancel Mr. Pietropaolo's existing insurance policies and to use the proceeds to purchase the Policy, the Defendants were primarily motivated by their desire to receive commissions on the Policy and not by the Plaintiffs' stated investment needs, experience and tolerance of risk.

131.     As a result of the Defendants' acts and omissions in this regard, the Plaintiffs have suffered grievous harm.

## Count IX

### (Breach of Contract)

132.     The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

133.     The Plaintiffs entered into an agreement with the Defendants, through Defendant McMenimen, to obtain an insurance policy with an aggregate death benefit of not less than $500,000, and which would likely become "self-funding" within several years.

134.     Since July 1998, when they purchased the Policy, the Plaintiffs have paid $19,107 annually as consideration for an insurance policy described by the Defendants as having an aggregate death benefit of not less than $500,000, and which would likely become "self-funding" within several years.

135.     The Defendants instead obtained a $200,000 insurance policy for the Plaintiffs that costs approximately three times as much, per month, as the John Hancock Policies (worth

approximately $150,000) they advised Plaintiff Samuel Pietropaolo to cancel in order to fund the purchase of the Policy.

136.    As a result of these acts and omissions by the Defendants, the Plaintiffs have not received the benefit of their bargain and have suffered grievous harm.

### Count X

### (Violation of Consumer Protection Laws)

137.    The Plaintiffs restate and reallege the allegations in the above-numbered paragraphs.

138.    The Defendants, through their agent Defendant McMenimen, represented to the Plaintiffs that the Policy they received was worth more than its actual value and was the Policy they bargained for.  In this regard, the Defendants, through Defendant McMenimen, showed the Plaintiffs misleading analyses, reports and illustrations.

139.    Once the truth arose, in or around April 2003, Defendant McMenimen falsely represented to the Plaintiffs that he was working on adjusting the Policy to reflect what they had originally bargained for.

140.    By these unfair and deceptive trade practices, the Defendants have violated Massachusetts consumer protection laws, including but not limited to Massachusetts General Law chapters 93A and 176D.

141.    As a result of these practices on the part of the Defendants, the Plaintiffs have suffered grievous harm.

24

**Prayer for Relief**

WHEREFORE, the Plaintiffs respectfully request that this Court:

1.     Determine and award damages appropriate to compensate the Plaintiffs for the

        harm of which they complain;

2.     Award treble damages pursuant to Massachusetts General Law chapter 93A

        section 9(3);

3.     Award the Plaintiffs' costs, expenses, interest and reasonable attorneys' fees; and

4.     Grant such other relief as justice may require.

**Jury Demand**

THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

                Respectfully submitted,

                Plaintiffs RONALD P. PASSATEMPO,
                TRUSTEE, On behalf of the Samuel
                Pietropaolo Irrevocable Trust, SAMUEL
                PIETROPAOLO, GRANTOR to the Samuel
                Pietropaolo Irrevocable Trust, and
                PATRICIA D. PIETROPAOLO,
                BENEFICIARY of the Samuel Pietropaolo
                Irrevocable Trust,

                By their counsel:

                Howard M. Cooper (BBO # 543842)
                David M. Burkoff (BBO # 657447)
                 Todd & Weld LLP
                28 State Street
                Boston, MA 02109
                (617) 720-2626

Dated: December 23, 2004

25

# Exhibit A



**MASSACHUSETTS TEACHERS' RETIREMENT BOARD**

*Boston Office*
69 Canal Street
Boston, MA 02114-2006
(617) 727-3661
Fax (617) 727-6797

*Western Regional Office*
60 Macek Drive
Chicopee, MA 01013-3304
(413) 592-4771
Fax (413) 784-1707

*Retiring from the MTRS*
# Option Selection Form

**INSTRUCTIONS:** Please verify the information in Section 1; review Sections 2 and 3; analyze your benefit options in Section 4 in light of your particular situation; complete Sections 5 and 6 (on back); make a copy of this form for your records and return this original form to us.

---

SAMUEL PIETROPAOLO

45 THURLOW STREET
REVERE MA 02151

## 1 | MEMBER DATA

| | |
|---|---|
| School District | REVERE PUBLIC SCHOOLS |
| Social Security No. | *REDACTED* 4826 |
| Date of Retirement | 06/30/1997 |
| Veteran Status | VETERAN |
| Date of Birth | *REDACTED* /1929 |

## 3 | ANNUITY ACCOUNT STATUS

This information is included for your reference in calculating your income tax after retirement. Refer to your *Retirement Information Booklet* or consult with your tax advisor for additional information. *All figures below are estimated.*

| | |
|---|---|
| After-tax contributions (for Simplified General Rule) | $26,428.14 |
| Pre-tax contributions (after 1/1/88) | $29,365.63 |
| Pre-tax interest (all interest is pre-tax) | $43,531.57 |
| Annuity savings account balance | $99,325.34 |

## 2 | RETIREMENT BENEFIT CALCULATION COMPONENTS

| | |
|---|---|
| Age and age factor | 68 /.0250 |
| Creditable service | 32.6000 YRS |
| Salary average | $66,208.18 |
| % of salary average | 80.45 |
| Option C factor | .7100 |

## 4 | ESTIMATED ALLOWANCES BY OPTION (NOTE THAT THESE ARE SUBJECT TO CHANGE)

| Option | Benefit | Monthly | Annually |
|---|---|---|---|
| **A** | Amount paid to member for life | $4,438.88 | $53,266.56 |
| **B** | Amount paid to member for life | $4,228.31 | $50,739.72 |
| | Annual reduction from member's MTRS annuity savings account | | $8,164.56 |
| **C** | Amount paid to member for life* | $3,151.62 | $37,819.44 |
| | Amount paid to Option C beneficiary (named below) upon member's death, for life* PATRICIA PIETROPAOLO | $2,101.08 | $25,212.96 |

*Estimated figures will appear here ONLY if you completed Part 4 of your Application for Retirement and submitted your beneficiary's certified birth record and marriage certificate, if applicable, along with your Application. If you choose Option C and your beneficiary predeceases you, please contact the MTRB and request an Option C Reversion Claim Form.*

## 5 | MEMBER'S RETIREMENT OPTION SELECTION, STATEMENT AND SIGNATURE

I, the undersigned, having applied for retirement from the Massachusetts Teachers' Retirement System, hereby elect to receive my retirement allowance under the option selected below *(check one)*:

| Date sent (2/19.) | Date due |
|---|---|
| 8-22-97 | 9-22-97 |

☒ **Option A** (No survivor benefits)

☐ **Option B** (Remainder of annuity savings account paid to named beneficiary in lump sum)

☐ **Option C** (Monthly benefit paid to named beneficiary)

**Your signed Option Selection Form must be received in the Office of the MTRB by 9/22/97. (30 days from date of mailing), or your retirement allowance benefits will be paid under Option "B"**

I also understand that: I cannot change my option selection after my date of retirement; and, if I do not return this *Option Selection Form* by my date of retirement, the MTRB will retire me under Option B.

Member's signature _Samuel Pietropaolo_     Date 9/22/97

**IMPORTANT: COMPLETE SECTION 6 ON THE BACK** - - - - - - - - - - - - - - →

**MTRB**

MASSACHUSETTS
TEACHERS'
RETIREMENT
BOARD

Boston Office
69 Canal Street
Boston, MA 02114-2006
(617) 727-3661
Fax (617) 727-6797

Western Regional Office
60 Macek Drive
Chicopee, MA 01013-3304
(413) 592-4771
Fax (413) 784-1707

*Option Selection Form* (back)

# Spousal Acknowledgment

**MTRB USE ONLY**

## RECEIVED
### SEP 2 2 1997
MASSACHUSETTS TEACHERS
RETIREMENT BOARD

### INSTRUCTIONS TO RETIRING MEMBER

The law requiring this Spousal Acknowledgment (Chapter 306, § 18 of the Acts of 1996) became effective on November 7, 1996. As a member who is retiring from the Massachusetts Teachers' Retirement System and who files his or her *Option Selection Form* on or after November 7, 1996, you need to complete this *Spousal Acknowledgment*.

You must complete Section 6 and then, if applicable, your spouse must complete Section 7. If your spouse's whereabouts are unknown, you must complete a notarized affidavit, including your spouse's last known address. If your spouse is medically unable to sign the acknowledgment, you will need to submit a letter from the attending physician attesting to that fact. (Special affidavits for these situations are available from the MTRB.) You must also provide the Board with a copy of an executed durable power of attorney if one is available.

### 6  MEMBER'S STATEMENT AND SIGNATURE

Member's name *(please print)*  Last **PIETROPAOLO**  First **SAMUEL**  Middle

Member's Social Security number  REDACTED  REDACTED **4826**

I, the undersigned, having applied for retirement from the Massachusetts Teachers' Retirement System, have elected to receive my retirement allowance under the option selected in Section 5 of this *Option Selection Form.* I hereby certify that (check one):

[✗] I am now married or expect to be married as of the date of retirement stated in Section 1 of this *Option Selection Form.* *Please sign and date Section 6, below, then give this form to your spouse for completion of Section 7.*

[ ] I am currently divorced and it is my understanding that there
[ ] is    [ ] is not    [ ] don't know
a Domestic Relations Order on file with the Massachusetts Teachers' Retirement Board. *Please sign and date Section 6, below, then return this form to the MTRB.*

[ ] I am NOT currently married and do not expect to be married as of the date of retirement stated in Section 1 of this *Option Selection Form.* *Please sign and date Section 6, below, then return this form to the MTRB.*

I subscribe under the penalties of perjury that the information I have supplied in this form is true, complete and correct to the best of my knowledge.

Signature *Samuel Pietropaolo*    Date **9/22/97**

### INSTRUCTIONS TO SPOUSE

As the spouse of a member who is retiring from the Massachusetts Teachers' Retirement System on or after November 7, 1996, you are entitled to both notification and explanation of the retirement option selected by the member. The member must complete Section 6 and then, if applicable, you must complete Section 7. You must sign Section 7 before one witness; the member named in Section 6, above, cannot be your witness. The witness must sign and date the form on the same day that you do; it is not necessary that your witness be a Notary Public.

Before completing this section, please see which retirement option your spouse has chosen in Section 5 on the front of this form and then read the explanations of the available retirement options as provided in the *MTRB Retirement Information Booklet* provided with your spouse's *Option Selection Form.* Please be sure that you have read and understand the various provisions of the option selected by your spouse, specifically, the benefits to which you may or may not be entitled to upon his or her death. If you have any questions, do not hesitate to contact the MTRB for an explanation.

If you fail to sign the *Spousal Acknowledgment,* the Board will notify you within fifteen (15) days by registered mail of the option selected by your spouse and your right to sign and return the spousal acknowledgment within thirty (30) days. Failure to sign and return the *Spousal Acknowledgment* to the Massachusetts Teachers' Retirement Board within 30 days will result in your spouse's selection becoming effective without your signature.

### 7  SPOUSAL ACKNOWLEDGMENT

Spouse's name *(please print)*  Last **PIETROPAOLO**  First **PATRICIA**  Middle **D**

Spouse's Social Security number  REDACTED  REDACTED **0524**

I, the undersigned, am the spouse of the member named in Section 6, above, who has applied for retirement from the Massachusetts Teachers' Retirement System. I hereby certify that

▶ I have read and understand the information on Options A, B and C provided in the *MTRB Retirement Information Booklet (The Three Options: An Overview);*

▶ I have reviewed Section 5 of this *Option Selection Form;* and,

▶ I am aware of the option selected by the member and understand the provisions of that option.

I subscribe under the penalties of perjury that the information I have supplied in this form is true, complete and correct to the best of my knowledge.

Signature *Patricia Pietropaolo*    Date **9/22/97**

SPOUSE'S SIGNATURE WITNESSED BY

Signature *Mary McKenna Guanci*    Date **9/22/97**

Name (please print) **Mary McKenna Guanci**    Address **25 Spy Pond Parkway, Arlington, MA.**

# Exhibit B



# PROVIDENT MUTUAL



RECEIVED
AUG - 5 1998

## POLICY DELIVERY RECEIPT

| AGENT<br>MEMENIMEN III, FREDERICK V | AGENCY<br>001-01 |
|---|---|
| INSURED<br>SAMUEL PIETROPAOLO | POLICY NO.<br>REDACTED 4,484 |
| OWNER (IF OTHER THAN INSURED) | |

| | |
|---|---|
| 1. ☐<br>PERSONAL<br>DELIVERY | I hereby certify that the above-referenced policy was personally delivered to me on _____ by the Agent signing below. |

| OWNER SIGNATURE | DATE |
|---|---|
| AGENT SIGNATURE | DATE |

| | |
|---|---|
| 2. ☐<br>MAILING | I hereby certify that the above-referenced policy was mailed to the Owner on _____ . |

| AGENT SIGNATURE | DATE |
|---|---|
| MANAGER OR OFFICE MANAGER SIGNATURE | DATE |

### FOR PENSION ADMINISTRATORS ONLY

| | |
|---|---|
| 3. ☐ | I hereby certify that the above-referenced policy is being retained by me pursuant to an authorization signed by the above-referenced Owner dated _____ , a copy of which is attached. |

| AGENT SIGNATURE | DATE |
|---|---|

THIS FORM IS TO BE RETAINED IN THE AGENCY OR REGIONAL

OFFICE'S CENTRALIZED POLICY RECEIPT FILE.

DO NOT RETURN TO THE HOME OFFICE

S15251   5.95                                                          MC: 001M-L001 -0

# Exhibit C

# POLICY SCHEDULE

**INSURED**     SAMUEL PIETROPAOLO

**POLICY NUMBER**     REDACTED 4,484     MAY    07/28/1998     **POLICY ISSUE DATE**
                                         Amount

**FACE AMOUNT**     $500,000.00     Correct     69,MALE     **ISSUE AGE AND SEX**

**DEATH BENEFIT**     OPTION     07/05/1998     **POLICY DATE**

**PREMIUM CLASS**     WITH EXTRA RATING     07/05/2029     **FINAL POLICY DATE**

## BENEFITS

FLEXIBLE PREMIUM VARIABLE LIFE INSUR
    INITIAL FACE AMOUNT     $500,000.00

This Policy provides life insurance coverage on the Insured until the final policy date, provided the Net Cash Surrender Value is sufficient to cover the deductions for the cost to that date of the benefits of this Policy and of any riders. You may have to pay more than the premiums shown below to keep this Policy and coverage in force to that date, and to keep any additional riders in force.

MINIMUM INITIAL PREMIUM —     $3,145.00

PLANNED PERIODIC PREMIUM —     $1,525.92 PAYABLE MONTHLY

MINIMUM ANNUAL PREMIUM —     $18,870.00

# Exhibit D

# POLICY SCHEDULE

**INSURED**   SAMUEL PIETROPAOLO

**POLICY NUMBER**   REDACTED 4,484    07/28/1998   **POLICY ISSUE DATE**

**FACE AMOUNT**   $200,000.00    69,MALE   **ISSUE AGE AND SEX**

**DEATH BENEFIT**   OPTION A    07/05/1998   **POLICY DATE**

**PREMIUM CLASS**   WITH EXTRA RATING    07/05/2029   **FINAL POLICY DATE**

### BENEFITS

FLEX BLE PREMIUM VARIABLE LIFE INSURANCE
INITIAL FACE AMOUNT     $200,000.00

This Policy provides life insurance coverage on the Insured until the final policy date, provided the Net Cash Surrender Value is sufficient to cover the deductions for the cost to that date of the benefits of this Policy and of any riders. You may have to pay more than the premiums shown below to keep this Policy and coverage in force to that date, and to keep any additional riders in force.

MINIMUM INITIAL PREMIUM –     $3,145.00

PLANNED PERIODIC PREMIUM –     $1,525.92 PAYABLE MONTHLY

MINIMUM ANNUAL PREMIUM –     $18,870.00

MINIMUM FACE AMOUNT –     $100,000.00  AFTER 10TH POLICY YEAR

MINIMUM PAYMENT –  $25.00

PARTIAL WITHDRAWAL – MINIMUM AMOUNT     $1,500.00

TRANSFERS – MINIMUM AMOUNT     $500.00

POLICY LOAN – FIXED     6.00% POLICY LOAN INTEREST RATE

MINIMUM LOAN AMOUNT –  $500.00

# Exhibit E

## Pietropaolo, Sam

| | |
|---|---|
| **From:** | COACHMCM@aol.com |
| **Sent:** | Friday, April 16, 2004 8:38 AM |
| **To:** | Pietropaolo_Sam@emc.com |

**Subject:** Follow up

I have asked for something earlier if possible. That was my mistake. I gave you bad dates for when I passed them to you. They are not coming to Massachusetts until the 5th or 6th. I looked at the wrong week. I have asked for something Thursday or Friday that week.

When I get my original NEAG file I will pass it right along. I am in the process of typing out my notes and a time line to pass to you with all that I have. I am going to storage this weekend to find my old files and see if anything is present.

I want to again apologize for this. I along with you thought based on the emails and forms that it was all set. I am very frustrated and angry that I was presented with something that someone else did not follow up. I want to insure you that your dad should not worry. IT WILL be handled properly and I would NEVER let you , your mom or dad be harmed by this in any way. I think its best said that family takes care of family and this will be settled right away. I am not going to let NEAG and their actions or lack of actions have a negative impact on family. I feel sick about it. I will push as hard as I can on this. I will be away over vacation but I think when everyone meets and sits down it will be handled quickly. I dont think we should make more of it than it is at this time. If we push to hard then I think it will take longer and if more people get involved it will bog down. They are willing to listen and then if we dont get immediate results we should push. I truly feel we will get a quick resolution. It will get resolved and I am sorry. I will write back as soon as I hear back from them today!

# Exhibit F

Application for Policy Change                                                                PC 0104

# NATIONWIDE LIFE INSURANCE COMPANY OF AMERICA
Berwyn, Pennsylvania 19312-1181

(Policy(ies) must be sent to the Company with this application)

| 1. First—middle initial—last name of Insured | 2. Date of birth | 3. Policy Number |
|---|---|---|
| Samuel Pietropaolo | Month / Day / Year REDACTED 29 | REDACTED 4484 |

The undersigned request the Company to make in the above policy the change(s) indicated below. If a change under A2, A3 or, if policy numbered under 2,000,000, A4 is requested, any beneficiary designation or election of method of settlement heretofore made under the original policy is revoked as to said policy. Usual attachment requirements (see Form A48) for supplementary benefits not included in the original policy.

**A. 1. CONVERSION OF TERM AGREEMENT**

☐ Convert $_____ of the supplementary term insurance agreement into a new policy as described in (B) below. Convert as of:
☐ Attained age  ☐ Original age.

☐ Convert $_____ of the supplementary term insurance agreement and in conjunction with a new application dated _____ issue a new policy as described in (B) below.

☒ Balance of $ 289,412 to continue under supplementary agreement attached to the original policy.

☐ Balance to lapse.

**A. 3.** ☐ Change or exchange the original policy into a new policy as described in (B) below.

**A. 2. CONVERSION OF TERM POLICY**

☐ Convert $_____ of the original term policy into a new policy as described in (B) below. Convert as of:
☐ Attained age  ☐ Original age.

☐ Convert $_____ of the original term policy and in conjunction with a new application dated _____ issue a new policy as described in (B) below.

☐ Balance of $_____ to continue under a new policy of the same number, date and plan as the original policy.

☐ Balance to lapse.

**A. 4.** ☐ Cancel supplementary agreement for _____ attached to the original policy.

**B. PROVISIONS OF NEW POLICY**

1. a) Amount and plan of policy applied for: _____

b) Additional benefits:*
☐ Disability-waiver of premium
☐ Guaranteed purchase option — amount $ _____
☐ Accidental death $ _____
☐ Protected premium agreement
☐ Paid-up additions agreement $ _____ Year(s)
☐ Paid-up additions agreement $ _____ single premium
c) ☐ Insurance exchange agreement
d) ☐ Term dividend option-balance of dividends applied as in B3
e) Automatic premium loan ☒ Yes  ☐ No
f) Policy Loan Interest Rate: ☐ Variable unless ☒ Fixed is selected.

2. Premium frequency: Yrly ☐ H-Yrly ☐ Qtly ☐ Mthly ☒ APP ☐ — 1st prem. pd.? ☒ Yes ☐ No

3. Dividends: ☐ Paid-up additions  ☐ Reduce premium
☐ Accumulations
☐ Pay in cash  balance of dividends to:
☐ Paid-up additions
☒ Accumulations
☐ Pay in cash

4. Beneficiary:    (Name)    (Relationship)

SAME (TRUST)

Otherwise Insured's executors or administrators, unless otherwise specified in remarks (Joint beneficiaries receive equally or survivor, unless otherwise specified.)

5. Owner — All rights belong to insured unless specified in remarks.

6. Policy date desired? _____

7. Have you used any tobacco product or product containing tobacco or nicotine in the last 12 months? ☒ Yes ☐ No

8. Social Security No. of Insured    REDACTED 4826

9. S.S. or Tax I.D. No. of Owner _____

**REMARKS**

In consideration for the change of policy herein provided, the undersigned acknowledge receipt of any sums payable as set forth in the Authorization and Statement of Account on the reverse side hereof and direct payment of such sums in the manner therein set forth.

It is hereby declared and agreed that all the statements contained herein and in the application for the original policy are complete and true and are hereby made the basis for the new policy and that the original policy (if a change is made under A2, A3 or, if policy numbered under 2,000,000, or the original supplementary agreement (if a change is made under A1 or A4) is hereby released and surrendered to the Company.

Any reference in this instrument to a beneficiary living or surviving will, unless otherwise provided, mean living at the Insured's death.

I (we) hereby certify, under penalties of perjury, that the social security number or taxpayer identification number I am (we are) providing is correct and I am (we are) neither currently subject to backup withholding, nor have been so notified by the Internal Revenue Service.

| Signed at (City and State) | Revere MASS |
|---|---|
| On (Date) | JULY 5 2003 (Month Day Year) |
| Signature of Agent | |

Insured or Owner _____

All others having any interest in the policy _____  Samuel Pietropaolo

If policy is owned by or assigned to a corporation, we must have signature of one officer (other than insured) with name and title clearly indicated on this form.

A49 7.88

(Rev. 6.02)

**AUTHORIZATION AND STATEMENT OF ACCOUNT**

To NATIONWIDE LIFE INSURANCE COMPANY OF AMERICA _____ July 5 2003 _____
                                                              (Month, Day, Year)

The undersigned hereby receipt for and approve and direct the application of the following moneys, as indicated below, originating from the change of the original policy number __9074484_____. All of the following items, unless indicated otherwise, refer to the original policy.

**In full consideration for the change of policy provided herein:**

| | | |
|---|---|---|
| Total conversion credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 289,412 |
| Fractional dividend—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5903 ) | $ | |
| Full release of dividends and interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5773 ) | $ | |
| Allowance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5503120) | $ | |
| Cash value of $_____paid-up additions . . . . . . . . . . . . . . . . . . . . . . (Dr. 5503120) | $ | |
| Reserve allowance—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 5503120) | $ | |
| Return premium—conversion credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 2003130) | $ | |
| Return premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Dr. 1900030) | $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ( ) | $ | |
| **Total** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | |

**To be disbursed as follows:**

| | | |
|---|---|---|
| Pay loan on policy_____ in full on account . . . . . . . . . . . . (Cr. 0322010) | $ | |
| Pay interest on loan_____ (Cr. 3322110) | $ | |
| The balance of such loan(s), $_____, shall constitute a loan on the new policy, which loan shall be represented by the original loan agreement(s). | | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ( ) | $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ( ) | $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ( ) | $ | |
| Deposit to Premium Deposit Fund (A/C#            ). . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1290130) | $ | |
| Pay_____ premium due_____ on policy_____ (Cr. 1900030) | $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ( ) | $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ( ) | $ | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ( ) | $ | |
| Pay cost of change . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1900030) | $ | |
| Pay the balance by check | | |
| To the order of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1920040) Amount $ | | |
| Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| To the order of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Cr. 1920040) Amount $ | | |
| Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| **Total paid** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | | |

Signed at ___Revere MASS_____         Insured or  x _Ronald Armstrong_
                    (City and State)                    owner
Date signed ___7/5/03_____              All others
                    (Month, Day, Year)             having any xx _Samuel Pittyrsch_
                                                   interest in
                                                   the policy _____

| AGENT(S) OF CREDIT—PRINT FIRST 2 INITIALS—LAST NAME | | | | | % | F.E. | CODE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Special Instructions or Remarks**

A-49  7.89                                                              (Rev. 6.02)

☐ Nationwide Life Insurance Company of America
   Service and Technology Center, P.O. Box 15750, Wilmington, DE 19850-5750, (800) 688-5177
☐ Nationwide Life and Annuity Company of America
   Service and Technology Center, P.O. Box 15750, Wilmington, DE 19850-5750, (800) 688-5177

**Nationwide®**
Provident
*a Nationwide® Financial company*

PC 0702

## Fund Transfer/Allocation Change for Options Elite

| Insured's Name (please print)  SAMUEL PIETROPAOLO | Policy No. ☐ REDACTED 4484 |
|---|---|
| Policy Owner's Name (please print)  TRUST | Daytime Phone |

**Please select all that apply:** *(If your allocation is different for each selection, use more than one form.)*

☒ **Transfer of Current Account Value:** I elect to transfer my current account value into the following funds to the specified "end result." (Note: This will not change the allocation of future premium payments nor your election of asset rebalancing. To change those, check the box below.)

☐ **Allocation Changes for Future Premium Payments:** I wish to change the premium allocation percentages as specified. (Note: This will also affect Automatic Asset Rebalancing transfers, if previously elected.)

☐ **Allocation Changes for Monthly Deductions:** I wish to change the monthly deduction allocations as specified. (Not applicable to **Options** modified premium variable life policies.)

☒ **Allocation of Unscheduled Premium Payment:** $ 4200.⁰⁰ premium is enclosed. Allocate premium as specified. (Applies to this payment ONLY....will not affect future allocations.)

| | Transfer/ Allocation Change (whole % only) | Deduction Allocation (whole % only) |
|---|---|---|
| **AMERICAN CENTURY VARIABLE PORTFOLIOS, INC.** | | |
| American Century VP Ultra Fund:  Class I | _____ % | _____ % |
| American Century VP Income & Growth Fund:  Class I | 25 % | _____ % |
| **DREYFUS INVESTMENT PORTFOLIOS** | | |
| Small Cap Stock Index Portfolio | _____ % | _____ % |
| **DREYFUS VARIABLE INVESTMENT FUND** | | |
| Appreciation Portfolio:  Initial Shares | _____ % | _____ % |
| **FEDERATED INSURANCE SERIES** | | |
| Federated Quality Bond Fund II:  Primary Shares | _____ % | _____ % |
| **FIDELITY VARIABLE INSURANCE PRODUCTS** | | |
| Fidelity Investment Grade Bond Portfolio:  Service Class | 25 % | _____ % |
| Fidelity Equity-Income Portfolio:  Service Class | 25 % | _____ % |
| Fidelity Growth Portfolio:  Service Class | _____ % | _____ % |
| Fidelity Overseas Portfolio:  Service Class | _____ % | _____ % |
| **GARTMORE VARIABLE INSURANCE TRUST** | | |
| Gartmore GVIT Government Bond Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Aggressive Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Conservative Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Moderate Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Moderately Aggressive Fund | _____ % | _____ % |
| Gartmore GVIT Investor Destinations Moderately Conservative Fund | _____ % | _____ % |
| **JANUS ASPEN SERIES** | | |
| Capital Appreciation Portfolio:  Service Shares | _____ % | _____ % |
| **THE MARKET STREET FUND** | | |
| Equity 500 Index Portfolio | _____ % | _____ % |
| Money Market Portfolio | _____ % | _____ % |
| **OPPENHEIMER VARIABLE ACCOUNT FUNDS** | | |
| Capital Appreciation/VA:  Initial Class | _____ % | _____ % |
| Global Securities Fund/VA:  Initial Class | _____ % | _____ % |
| **VANGUARD VARIABLE INSURANCE FUND** | | |
| Equity Income Portfolio | _____ % | _____ % |
| Total Bond Market Index Portfolio | _____ % | _____ % |
| High Yield Bond Portfolio | _____ % | _____ % |
| Mid-Cap Index Portfolio | _____ % | _____ % |
| **GUARANTEED ACCOUNT** * | 25 % | _____ % |
| *Transfers from the Guaranteed Account may only be made within 30 days of a Policy Anniversary and are limited to 25% of the total account assets. | 100% | 100% |

**Or Request Specific Dollar Amount Transfers:**

☐ **Subaccount Transfer:** I elect to transfer the following dollar amounts from and to the specified funds. (Existing policy values only; does not affect allocation of future premium payments or asset rebalancing, if applicable)

| FROM Fund | Dollar Amount TOTAL | TO Fund |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Confirmation of request will follow and should be reviewed for accuracy. Discrepancies must be brought to the attention of the Service Center immediately. Please contact your Agent or our Service Center at (800) 688-5177 for additional assistance.

| _Ronald Fantastempo_ | _Samuel Pietropaolo_ | 7/5/03 |
|---|---|---|
| Signature of Policy Owner(s) | Signature of Authorized Third Party  Instructed to Request this Transfer/Change by the Owner | Date |

16171  1.03

# Exhibit G

| | |
|---|---|
| Subj: | **(no subject)** |
| Date: | 7/01/2004 5:47:58 PM Eastern Standard Time |
| From: | |
| | Paul Tomassini |
| To: | |
| | CUSTOMLLC |

Hi Rick,

Per our conversation I have received the forms that you had signed by the trustee and I will submit them. Effective July 5, which is the anniversary date the policy face amount will be changed via a change in death benefit options to 489,512. We will change the investment options as directed effective the same day. As discussed the policy may MEC out and if so lets discuss the options.

Your Uncle will receive the updates in his next statement. I will forward a copy to you. I am sorry about the confusion and the underwriter. I will take the heat for you if needed. Its our fault here and not yours. If we have any other issues I will call you.

Paul

| Subj: | (no subject) |
| Date: | 8/21/2004 3:16:42 PM Eastern Standard Time |
| From: | |
| | Paul Tomassini |
| To: | |
| | CUSTOMLLC |

Rick,

This is to confirm our conversation yesterday. I did send in the paperwork and the death benefit as of today is $489,512. I will forward a statement to you at the end of September. The underwriter did me a favor on this one. Please do not call I do not want to put her in an awkward situation again. Thanks for the sox tickets as well. We had fun. Lets catch up soon.

# Exhibit H

MEMORY TRANSMISSION REPORT

TIME       : SEP 03 '98  02:43
TEL NUMBER : 6179648431
NAME       : NEAG NEWTON

| NBR | FILE | DATE | TIME | DURATION | PGS | TO | DEPT NBR | MODE | STATUS |
|-----|------|------|------|----------|-----|-----|----------|------|--------|
| 084 | 35 | SEP.03 | 02:42 | 00/31 | 1 | 6037750603 | | EC | M | OK |



July 27, 1998

Rick,

Per the phone conversation regarding your uncle I have worked with underwriting to get the policy issued as a favor to me. It is rated however I have come up with an illustration that will start with a DB of 326,563 and grow with the investment well above your 500000 target. This will be with a good portfolio strategy which I will forward. This will allow you to cancel the MONY policy ( or non take) and the Guardian. We really want and need this business and this will help. I realize its family and you have done a good job with us so I was able to get this done. It's a bit confusing but I will explain when you come in. Lets get it issued and placed then work through the modifications.

Barry

MEMORY TRANSMISSION REPORT

```
                              TIME       : SEP 10 '98  23:19
                              TEL NUMBER : 6179648431
                              NAME       : NEAG NEWTON
```

| NBR | FILE | DATE | TIME | DURATION | PGS | TO | DEPT NBR | MODE | STATUS |
|-----|------|------|------|----------|-----|-----|----------|------|--------|
| 209 | 06 | SEP.10 | 23:19 | 00/32 | 1 | F.V. M MENIMEN III | G3 | M | OK |



July 16, 1998

As discussed heres the new illustration.  It has been backdated to April 29.
Please sign the illustration forms and we will fax to underwriters


Barry

# Exhibit I

**LAW OFFICES OF**
# RONALD P. PASSATEMPO
**ATTORNEY AT LAW**

RONALD P. PASSATEMPO JD MBA
MEMBER MASSACHUSETTS BAR

23 Far st Street, Suite 105
Med o d, Massachusetts 02155

Teleph ne (781) 395-7678
Facs m le  (781) 395-7732



July 1, 2004                           VIA CERTIFIED MAIL

Frederick V. McMenimen III
Custom Financial LLC
215 Newbury St.
Peabody, MA 01960

New England Advisory Group LLC
C/O Barry G. Armstrong
35 Farm St.
Medfield, MA 02052

Barry G. Armstrong
35 Farm St.
Medfield, MA 02052

Nationwide Provident
ATTN: James W. DuBois
300 Continental Drive
Newark, DE 19713-4399

RE:   **POLICY** REDACTED
      **Insured: Samuel Pietropaolo**
      **Owner – Ronald Passatempo, Trustee, Samuel Pietropaolo Fam l / Trust**

Dear Mr. McMenimen et al.:

Under the provisions of Massachusetts General Laws, Chapter 93A, Section ), I hereby
make written demand for relief as outlined in that statute.

On or about July 5, 2003, the following unfair or deceptive act occurred:

On or about April 2003, Mr. Pietropaolo received a phone call from an agent of New
England Advisory Group ("NEAG") named Jesse McPhail ("McPhail") sta i g that the
above referenced policy had been "orphaned" and he was the new agent on t ie account.
Frederick McMenimen ("McMenimen") was no longer the account represe r ative.

Upon further inquiry we learned that McMenimen was no longer associated with NEAG and Nationwide Provident; however, McMenimen continued to direct us to make all payments to Nationwide through is office. Further, we learned through McPhail that the policy was for a limited value of $200,000.

We contacted McMenimen who stated and assured that he was still the agent and that while the policy showed $200,000 it was a mistake and he would correct the error.

In July 2003, McMenimen stated he executed documents to have policy cash value converted into $289,412 of permanent insurance which would raise the policy death benefit to guaranteed 489,412. Although still below the original $500,000 minimum; McMenimen promised continued growth in the investment portion of the policy as he also changed the policies investment strategy (which had been overlooked for years by McMenimen).

To date, no changes have been effectuated and the policy sits with a value below what was originally sold.

The insured, Mr. Pietropaolo, originally engaged McMenimen to discuss "pension maximization" for his state teachers' retirement pension. Based upon review of Mr. Pietropaolo's pension options, it was determined that the minimum insurance to make it worth doing pension maximization was $500,000.

McMenimen did not place Mr. Pietropaolo into a guaranteed $500,000 policy. Despite numerous representations that the policy would never be at risk to go below $500,000. He did explain that a portion of the premium would go to a mutual fund to build cash in order to one day make the policy "self-funding".

In structuring the transaction, McMenimen had Mr. Pietropaolo cancel and cash out an existing policy with John Hancock.

Mr. and Mrs. Pietropaolo made irrevocable elections regarding the pension maximization advice from McMenimen.

McMenimen has placed Mr. Pietropaolo in an inappropriate policy with unsuitable investment strategy. Mr. Pietropaolo placed the policy in trust for the benefit of his wife.

McMenimen was an agent of NEAG and Nationwide Provident.

McMenimen and NEAG earned commissions off of selling a policy to Mr. Pietropaolo.

The Trustee has made all required premium payments to date on this policy.

Mr. Pietropaolo and the trustee have been trying for over a year to get this matter corrected.

McMenimen, NEAG, and Nationwide, jointly and severally, through their collective acts and omissions have misled, intentionally misrepresented, and deceived Mr. Pietropaolo, Mrs. Pietropaolo, and Mr. Passatempo for which seek equitable and legal redress.

This unfair or deceptive act or practice is, in my opinion, declared unlawful by Section 2 of Chapter 93A, which in part reads as follows:

> "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

As a result of this unfair or deceptive act or practice, I suffered injury or loss of money as follows:

1. Policy value is more than $300,000 less than originally sold.
2. We have paid approximately $115,000 in premiums without benefit of receiving a $500,000 policy.
3. Mr. and Mrs. Pietropaolo forfeited certain guaranteed payment options through Mr. Pietropaolo's retirement benefits.
4. Attorney's fees.

Therefore, I hereby demand the following relief:

1. *Immediate confirmation of a fully paid insurance policy with a guaranteed death benefit of not less than $800,000 (based upon the $500,000 original expected policy plus the approximate $290,000 of converted cash value in the policy as of 7/5/03) documentation of such acceptable to the Trust and Mr. and Mrs. Pietropaolo.*
2. *Immediate return of all previously paid premiums and costs with 6% per annum interest*
3. *Confirmation that death benefit guaranteed with no further premiums costs, or other obligations due or owing now or in the future for the policy*
4. *Indemnification against any adverse financial or tax implications to the Trust or Mr. and Mrs. Pietropaolo as a result of this settlement.*
5. *Payment of all attorneys fees relatives since January 2003 to the present relative to this matter*

Chapter 93A gives you the opportunity to make a good-faith response to this letter within thirty (30) days. Your failure to do so could subject you to triple damages, attorney's fees and costs if I decide to institute legal action.


Sincerely,


Ronald P. Passatempo, Trustee
Samuel Pietropaolo Irrevocable Trust