# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| RONALD P. PASSATEMPO, TRUSTEE, )<br>On behalf of the Samuel Pietropaolo )<br>Irrevocable Trust, SAMUEL PIETROPAOLO, )<br>GRANTOR to the Samuel Pietropaolo )<br>Irrevocable Trust, and PATRICIA D. )<br>PIETROPAOLO, BENEFICIARY of the )<br>Samuel Pietropaolo Irrevocable Trust, )<br> )<br> Plaintiffs, )<br> )<br> v. )<br> )<br>FREDERICK V. McMENIMEN III, BARRY )<br>G. ARMSTRONG, NEW ENGLAND )<br>ADVISORY GROUP, LLC, 1717 CAPITAL )<br>MANAGEMENT COMPANY, NATIONWIDE)<br>PROVIDENT (f/k/a Provident Mutual Life )<br>Insurance Company), and NATIONWIDE )<br>FINANCIAL SERVICES, INC., )<br> )<br> Defendants. )<br>_____) | Civil Action No.<br>05-10118-GAO |

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### Introduction

Plaintiffs Ronald P. Passatempo, Trustee, and Patricia D. Pietropaolo

("Plaintiffs") respectfully submit this memorandum in support of their request for

preliminary injunctive relief, pursuant to Fed. R. Civ. P. 64, restraining Defendant

Frederick V. McMenimen, III ("Mr. McMenimen") and all those acting in concert with

him from conveying, during the pendency of this action and outside of the ordinary

course of business, (*i*) any assets from any account, trust, business venture or other

investment vehicle currently under his ownership or control, or of which he is a direct,

indirect or contingent beneficiary; (*ii*) any real property currently under his ownership or

control; and (*iii*) any other business or personal assets of any kind – except to the extent

such property and assets exceed $900,000 in net value.[1]

The matter before this Court has now assumed increased urgency requiring the

relief requested herein. As the Court is aware, the third plaintiff in this lawsuit, Samuel

Pietropaolo ("Mr. Pietropaolo"), husband of Plaintiff Patricia D. Pietropaolo ("Mrs.

Pietropaolo") and grantor to the trust of which Plaintiff Ronald P. Passatempo is trustee,

passed away on April 1, 2005.[2] Thus, the Plaintiffs are now compelled by unfortunate

circumstances to pursue this matter with a heightened sense of urgency. With Mr.

Pietropaolo's passing, that is, the nature of the money damages alleged in the First

Amended Complaint and Jury Demand (the "Complaint") has changed from damages

that were in part *expected* to result from Mr. McMenimen's wrongdoing in fraudulently

failing to place the coverage repeatedly requested by the Plaintiffs (and which he

recommended), to damages that have now been fully realized. At the core of this lawsuit

are the insurance policy which Mr. Pietropaolo sought through Mr. McMenimen in order

to provide for the care and maintenance of Mrs. Pietropaolo after his death; the

termination of Mr. Pietropaolo's prior policies, at Mr. McMenimen's direction; and the

waiver of Mrs. Pietropaolo's survivor spousal benefits from Mr. Pietropaolo's

---

[1] Note that the Plaintiffs' suggested $900,000 limit on the restraint requested herein does not reflect the full amount of money damages alleged in this lawsuit. Rather, the Plaintiffs have been damaged *at least* in an amount equal to the difference between the $500,000 guaranteed death benefit they were promised and the $200,000 death benefit they apparently received, trebled pursuant to Massachusetts General Law section 93A. The Plaintiffs reserve their rights with respect to the total amount of money damages they are seeking through this litigation.

[2] See Suggestion of Death, filed April 4, 2005 (Docket No. 14) and attached hereto as Exhibit A. The Plaintiffs intend to timely file a motion to substitute the executor of Mr. Pietropaolo's estate (who has not yet been named) as a party to this action in the place of Mr. Pietropaolo.

Massachusetts Teachers Retirement Board pension in reliance on Mr. McMenimen's promises and assurances that the new insurance coverage would been obtained. <u>See</u> Complaint ("Compl.") ¶¶ 19-44.[3]  Instead of a policy with a minimum guaranteed death benefit of $500,000 and which would eventually become "self-funding," as promised by Mr. McMenimen, the Plaintiffs instead received a $200,000 policy. Compl. ¶¶ 44, 48-50, 55.  The Plaintiffs proceeded to file this lawsuit but, sadly, Mr. Pietropaolo died before its resolution, without knowing whether his wife would be taken care of as the Defendants repeatedly promised, and to his serious distress.  With her husband now deceased and having waived her survivor spousal benefits, Mrs. Pietropaolo now is in the unfortunate position of needing the $500,000 policy which Mr. McMenimen represented to the Plaintiffs he had secured.  She soon must begin to live off of the proceeds of the deficient Nationwide policy that *was* obtained, without knowing, for the duration of this litigation, whether she will ultimately receive the full benefit of the bargain originally struck between the Plaintiffs and the Defendants.

The requested restraint against Mr. McMenimen is especially appropriate because his actions evidence intentionally fraudulent behavior that will not be covered by any errors and omissions ("E&O") insurance coverage he may carry.[4]  In short, for nearly six years after Mr. McMenimen first told the Plaintiffs, counterfactually, that he obtained a Nationwide policy with a $500,000 death benefit, he actively concealed from them the

---

[3] Samuel F. Pietropaolo, in his accompanying Affidavit ("S.F.P. Aff.") (attached hereto as <u>Exhibit B</u>), has verified the Complaint.  Accordingly, citations in support of the factual references herein are to the relevant portions of the Complaint.

[4] It should also be mentioned that Mr. McMenimen filed a meritless motion to dismiss on February 16, 2005 (Docket Nos. 9-10), which the Plaintiffs have vigorously opposed (<u>see</u> Docket No. 13).  None of the other Defendants have moved to dismiss the Plaintiffs' claims against them, and thus it is Mr. McMenimen's motion alone that has slowed the pace of this now very urgent litigation.

fact that the Policy was worth only $200,000. Compl. ¶¶ 53, 63. It now appears

established that he then went so far as to fabricate documents purporting to minimize his

role in the wrongdoing that occurred. See Compl. ¶ 70; see also Answer of Defendant

Barry G. Armstrong (Docket No. 2) at 14 (asserting affirmative defense that Mr.

McMenimen fabricated documents showing a connection between Mr. Armstrong and

the Plaintiffs' Nationwide policy). It also appears established that he lied to the Plaintiffs

about purported meetings with insurance representatives which he never in fact arranged.

Compl. ¶¶ 76, 77; see Answer of Defendant Nationwide Life Insurance Company of

America ("Nationwide") (Docket No. 3) ¶ 77 (denying that its representatives were ever

asked to meet with Mr. McMenimen and/or Samuel F. Pietropaolo).

    To date, the Plaintiffs have not received proof of any insurance coverage held by

Mr. McMenimen, despite their request to Mr. McMenimen's counsel upon his entry of an

appearance in this case. The chain of correspondence between counsel on this issue is

attached hereto as Exhibit C, the point being that without documentation showing that

Mr. McMenimen carries insurance that will cover the probable judgment against him in

this matter (and, again, the Plaintiffs are concerned that any insurance he *does* have will

not cover his fraudulent conduct), the Plaintiffs are left with no option but to move for the

preliminary relief requested herein in order to ensure that their likely victory in this action

will not be a victory in name only.

## Facts

    The factual background is concisely set forth in the Complaint, which has been

verified by the accompanying Affidavit of Samuel F. Pietropaolo (attached hereto as

Exhibit B). Relevant portions thereof are cited below. In summary, upon Mr.

Pietropaolo's retirement from the Revere School System, he sought assistance from Mr. McMenimen – his nephew and a financial advisor and insurance agent – in order to determine how best to plan for his wife's financial security after his death. Compl. ¶¶ 19, 20. Mr. McMenimen advised him to choose the Massachusetts Teachers' Retirement Board pension payment option that included *no* surviving spousal payment upon his death. Compl. ¶¶ 27-31. He also advised him to terminate his existing John Hancock life insurance policies, Compl. ¶¶ 32-34, and to purchase a new policy or policies with a guaranteed death benefit of $500,000 and which would become self-funding. Compl. ¶¶ 30, 40-43. Mr. Pietropaolo, who had limited financial resources and no appetite for risk, Compl. ¶¶ 25-27, 41, relied upon Mr. McMenimen's advice and purported "pension maximization" expertise, Compl. ¶¶ 19, 23, 31. However, Mr. McMenimen and the other Defendants did not live up to their side of the bargain: instead of the policy or policies discussed, the Plaintiffs instead received a policy from Defendant Nationwide with a $200,000 death benefit (the "Policy"). Compl. ¶¶ 55-59. To obtain the Policy, Mr. McMenimen had Mr. Pietropaolo sign blank application forms, which he later completed and submitted to Nationwide without showing them to the Plaintiffs. Compl. ¶ 35. Thereafter, despite repeated requests, Mr. McMenimen never provided the Plaintiffs with a copy of the Policy. Compl. ¶ 51, 52.

When an insurance agent eventually called Mr. Pietropaolo in or around April 2003 to tell him his policy had been "orphaned," was worth only $200,000 and would never become self-funding, Compl. ¶¶ 56-59, Mr. McMenimen swung into high gear: he instructed the Plaintiffs not to deal with the agent, Compl. ¶ 61; he by turns apologized and blamed others for "not follow[ing] up," Compl. ¶ 63; he said he would submit an

Application For Policy Change that would amend the policy to reflect what he had
originally promised, Compl. ¶¶ 64-66, and he again provided the Plaintiffs with blank
forms to sign for that purpose, Compl. ¶ 65; he thereafter refused their repeated requests,
through Mr. Pietropaolo's son, for a copy of the amended policy, Compl. ¶ 67; and,
lastly, when it became clear to the Plaintiffs at the end of 2003 that no amendment had
been made, Mr. McMenimen blamed the other Defendants, Compl. ¶ 69, and as described
above, he fabricated documents to that effect, Compl. ¶ 70, and professed to schedule a
meeting with Nationwide representatives that he never actually made any effort to
schedule, Compl. ¶¶ 76-77.

<u>**Argument**</u>

The Plaintiffs are entitled to the requested injunction because: (*i*) their claims
against Mr. McMenimen are likely to succeed on the merits; (*ii*) they will suffer
irreparable injury if Mr. McMenimen is permitted to convey his assets outside the course
of his ordinary business such that the Plaintiffs cannot recover the Court's probable
judgment against him; (*iii*) the irreparable injury to the Plaintiffs would outweigh any
harm to Mr. McMenimen; and (*iv*) the public interest will be served as a result. See, e.g.,
<u>Equine Tech., Inc. v. Equitechonology, Inc.,</u> 68 F.3d. 542, 544 (1st Cir. 1995) (describing
the preliminary injunction standard).

**I.**    <u>**The Plaintiffs Are Likely To Succeed On The Merits.**</u>

Each of the ten individual Counts in the Complaint applies to Mr. McMenimen,
and the overwhelming likelihood is that each will be resolved in the Plaintiffs' favor.[5]
Their success on the merits is especially likely given Mr. McMenimen's written apology,

---

[5] All of the Counts allege Massachusetts state law claims, save for Counts VII and VIII, which allege, in
part, violations of the federal securities laws.

in an e-mail to Samuel F. Pietropaolo, for at least some of the harm at issue. Compl. at Ex. E ("I want to again apologize for this.").

### A.     Negligence

In Count I, the Plaintiffs' allege that Mr. McMenimen was negligent in connection with, *inter alia*, his "pension maximization advice," his misrepresentations about the Nationwide policy, and, later, his misrepresentations to the effect that he was working to amend that policy. Compl. ¶¶ 80-86. Proof of negligence generally requires a duty, breach of that duty, and injury as a proximate cause of the breach. E.g., Lacoille v. Dulong, 1984 Mass. App. Ct. 270, 277 (1984). Massachusetts law is clear that "[r]ecovery can be had in tort for failure of an agent to perform a duty to obtain an insurance policy." Rayden Engineering Corp. v. Church, 337 Mass. 652, 660 (1958).

After the Plaintiffs engaged Mr. McMenimen to provide advice regarding the proper investment vehicle for Mr. Pietropaolo's retirement assets, Compl. ¶ 20, and after Mr. McMenimen agreed to obtain for them the type of insurance policy or policies they discussed, Compl. ¶¶ 24, 44, 53, Mr. McMenimen plainly had a duty, at minimum, to actually obtain such a policy or policies for them, or to make a reasonable effort to do so, see, e.g., Shaughnessy v. Dolan, et al., 1999 Mass. Super. LEXIS 27 at *9 ("Insurance brokers owe policyholders a duty to proceed in accordance with instructions. Policyholders' instructions and requests must be carried out by the insurance broker with reasonable skill and ordinary diligence." (internal citations omitted)). Since Mr. McMenimen instead obtained a less valuable policy for them, Compl. ¶ 55, and since he then took multiple steps to actively misrepresent the nature of that policy, Compl. ¶¶ 58,

61, 64-68; see infra pp. 8-9, he is in breach of his duty to the Plaintiffs and is liable in tort for the injuries, both physical and economic, suffered by the Plaintiffs as a result.

**B.    Fraud and Negligent Misrepresentation**

In Counts II and III, the Plaintiffs allege fraud and negligent misrepresentation, respectively. Compl. ¶¶ 87-104. To prevail on their fraud claim, the Plaintiffs must establish that Mr. McMenimen "made a false representation of a material fact knowing that the representation was false and that [he] made the false representation to induce [them] to act." Modena v. Ellis, 1981 Mass. App. Ct. 136, 137 (1981). "The plaintiff[s] must also show [their] reliance on the false representation and [their] subsequent damage." Id. As for their negligent misrepresentation claim, the Plaintiffs will need to prove that Mr. McMenimen, "(1) in the course of his business, (2) supplie[d] false information for the guidance of [the Plaintiffs] (3) in their business transactions, (4) causing and resulting in pecuniary loss to [the Plaintiffs] (5) by their justifiable reliance upon the information, and [that he] (6) … fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." Nota Constr. v. Keyes Assoc., Inc., 45 Mass. App. Ct. 15, 19-20 (1998).

Mr. McMenimen's knowing – or, at minimum, negligent – misrepresentations here are manifold. He misrepresented the extent of his experience counseling clients on "pension maximization." Compl. ¶ 23. He made misrepresentations with respect to the ideal investment vehicle to suit the Plaintiffs' goals, investment experience and desired degree of risk. Compl. ¶¶ 30. He misrepresented the nature of the insurance policy he actually obtained for the Plaintiffs. Compl. ¶¶ 40, 42. And, without limitation, he made misrepresentations concerning both the extent of his involvement with the Plaintiffs'

policy, Compl. ¶¶ 47, 61, and his purported efforts to secure an amendment thereto,
Compl. ¶¶ 63-65. Taken together, these misrepresentations clearly extend far beyond the
bounds of the sort of reasonable conduct customers, by law, may expect from their
investment advisers and insurance brokers. Since the Plaintiffs relied heavily on Mr.
McMenimen's purported experience and assurances with respect to the choices they
made about how to invest Mr. Pietropaolo's retirement money, Compl. ¶¶ 24-34, and
given their resultant injuries, Compl. ¶ 27-29, 55 they are likely to prevail on Counts II
and III.

### C.      Breach of Fiduciary Duty

Count IV alleges that Mr. McMenimen breached his fiduciary duty to the
Plaintiffs. Compl. ¶¶ 105-113. The relationship between an insurance broker and his
customer may be fiduciary in nature where "special circumstances of assertion,
representation and reliance" are present. Clough v. Brown, 59 Mass. App. Ct. 405, 418-
419 (2003) (quoting Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc.,
44 Mass. App. Ct. 29, 31-32 (1997)). As a recent Superior Court decision explains:

> When the insurance broker claims special knowledge about either the insurance
> industry or the insurance needs of a particular type of business, or has a long-
> standing relationship with the client, or has otherwise fostered a relationship in
> which the client has come to rely on the broker to help him procure necessary and
> appropriate insurance, the duty of care of such an insurance broker includes a duty
> to be reasonably clear in informing the client as to what he has done and what he
> has not done, as to when there is coverage and when there is not, especially when
> the client otherwise reasonably would be mistaken in his assumption as to what
> the broker had done and whether there was coverage.

Gonzalez ex rel. Espinal v. Arsenault, 2004 Mass. Super. LEXIS 336 at *16-17 (Sept. 8,
2004); see Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 680-681 (2001)
(discussing same factors as predicate for establishing fiduciary relationship); see also

<u>Bicknell, Inc. v. Havlin</u>, 9 Mass. App. Ct. 497, 500 (1980) ("The nature and extent of the duty of care owed by an independent insurance agent to his client depends in part, at least, upon the degree of skill which he represents himself to possess").

Mr. McMenimen held himself out to the Plaintiffs as an expert on "pension maximization." Compl. ¶¶ 19, 23. He also knew that by dint of his familial relationship with Mr. and Mrs. Pietropaolo, the Plaintiffs would trust his "pension maximization" advice to an even greater degree than they would were he simply an insurance salesman or investment adviser with whom they had no history. Compl. ¶¶ 19, 31. Accordingly, Mr. McMenimen owed a fiduciary duty to the Plaintiffs, and by his misrepresentations and attempts to conceal his wrongdoing, <u>see</u> <u>supra</u> pp. 8-9, he breached that duty many times over.

### D.    Infliction of Emotional Distress

Counts V and VI allege, respectively, intentional and negligent infliction of emotional distress. Compl. ¶¶ 114-123. In <u>Agis v. Howard Johnson, Co.</u>, the Supreme Judicial Court set forth the elements of the former:

> It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

371 Mass. 140, 144-145 (1976) (internal citations omitted). "The outrageous and reckless or intentional nature of a defendant's conduct permits a jury to infer that the plaintiff suffered genuine emotional distress." <u>Payton v. Abbot Labs</u>, 386 Mass. 540, 547 (1982). Thus, with respect to claims for negligent infliction of emotional distress, "[i]n

the absence of these indicia of genuineness … plaintiffs alleging negligent infliction of emotional distress [must] substantiate their claims by demonstrating, in order to recover, that they suffered physical harm." Id.

It is clear that, at minimum, Mr. McMenimen *should* have known that his behavior would lead to genuine emotional distress on the part of Mr. Pietropaolo. At the time he instructed the Plaintiffs to sell Mr. Pietropaolo's existing policies in favor of a new, variable insurance policy – and then when he failed to obtain the type of policy he had recommended – Mr. McMenimen knew the Plaintiffs had limited means, Compl. ¶¶ 25, 27; he knew the Plaintiffs had come to him to discern how best to invest their assets so that Mrs. Pietropaolo would have enough money to carry on after Mr. Pietropaolo's death, Compl. ¶¶ 20; and he knew Mr. Pietropaolo was an elderly man with little investment experience and a low tolerance for risk, Compl. ¶¶ 25, 41. He either did or should have expected that, as a result of his acts and omissions, Mr. McMenimen would (as he did before he passed away) suffer physical manifestations of distress such as repeated episodes of anxiety and restlessness, inability to sleep, loss of appetite and increased frequency of smoking. Compl. ¶¶ 118, 123; S.F.P. Aff. ¶ 2.

### E.    Securities Law Violations

In Counts VII and VIII, the Plaintiffs allege unsuitability, churning and violations of the federal and Massachusetts securities laws more generally. Compl. ¶¶ 124-131. Section 10(b) of the Securities Exchange Act of 1934 renders it unlawful "[t]o use or employ, in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). The Plaintiffs' unsuitability and churning claims are each grounded in section 10(b) and in Rule 10b-5 promulgated

thereunder, 17 C.F.R. 240.10b-5, as well as in section 410(a) of the Massachusetts

Uniform Securities Act, G.L. c. 110A § 410(a).  See also S.E.C. v. Variable Annuity Life

Ins. Co. of America, et al., 359 U.S. 65 (1959) (variable insurance policies may qualify as

securities under the securities laws).

       To prevail on their unsuitability claim, the Plaintiffs must show "that the quality

of the securities purchased … was inappropriate in light of [their] investment objectives."

Lefkowitz v. Smith Barney, Harris Upham & Co., 804 F.2d 154, 155 (1st Cir. 1986).

From the outset, Mr. McMenimen knew that the Plaintiffs' primary objective was to

invest Mr. Pietropaolo's retirement assets so that, upon his death, Mrs. Pietropaolo would

be sufficiently secure financially.  Compl. ¶¶ 20, 27-31.  In this regard, he recommended

that the Plaintiffs obtain, through him, an insurance policy or policies with a minimum

guaranteed death benefit of $500,000 and which would eventually become self-funding.

Compl. ¶¶ 41, 42.   There is thus no room for doubt that the $200,000 policy he obtained

for them was "inappropriate in light of their investment objectives."

       As for the Plaintiffs' churning claim, the basic rule is that "churning occurs when

a broker causes transactions to be made in a customer's account that are excessive in

amount and frequency, given the nature of that account."  United States v. Trask, 143

F.Supp.2d 88, 89 (D. Mass. 2001).  By advising the Plaintiffs to redeem Mr.

Pietropaolo's two existing policies, Compl. ¶¶ 32-34, and then by advising them to

purchase a new variable life insurance policy which included an unguaranteed investment

component, Compl. ¶ 48,  Mr. McMenimen, motivated by his expected commissions,

Compl. ¶ 74, became liable for churning.

### F.    Breach of Contract

The Plaintiffs' Count IX alleges breach of contract. Compl. ¶¶ 132-136. "[A]n insurance broker's failure to perform … in obtaining coverage for its client may support a claim for breach of contract." Cape Site Mgmt. Assocs. v. Inland Underwriters Ins. Agency, Ltd., 61 Mass. App. Ct. 14, 17 (2004). Further:

> When an insured makes an agreement with a broker calling for the purchase of particular coverage, the insured may reasonably rely on the broker's superior expertise and may assume that the broker has performed his duty. Accordingly, a "broker cannot claim that the oral contract to procure insurance was merged into the written policy."

422 Mass. 185, 195-196 (1996) (quoting 16A J.A. APPLEMAN & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 8843, at 228 (1981)) (internal citations omitted). Accordingly, the Plaintiffs will likely prevail on this claim as well because there is no dispute that Mr. McMenimen did not obtain the Policy he promised them, Compl. ¶¶ 55, 63; he *did* receive consideration for that promise in the form of commissions and recognition at NEAG for bringing in new business, Compl. ¶ 74; and the Plaintiffs *were* injured as a result, Compl. ¶ 136.

### G.    Consumer Protection Law Violations

Finally, the Court will likely find for the Plaintiffs on Count X, which alleges that Mr. McMenimen violated applicable Massachusetts consumer protection laws. Because their fraud and negligent misrepresentation claims are meritorious, see supra pp. 8-9, it follows that, at minimum, they will succeed on their claim that Mr. McMenimen violated Massachusetts General Law 93A as well. Riley v. Commercial Ins. Agency, 1999 Mass. App. Ct. 243, 246 (1999) ("misrepresentations made to induce the execution of a contract are 'unfair and deceptive' acts under 93A." (quoting Bond Leather Co., Inc. v. O.T. Shoe

Mfg. Co., Inc., 764 F.2d 928 (1st Cir. 1985)); Nota Constr. v. Keyes Assoc., Inc., 45

Mass. App. Ct. 15, 21 (1998) ("Where we hold that at least two of the representations

made by [the defendant] … set forth potentially viable claims for deceit and negligent

misrepresentation, [the plaintiff's] c. 93A claim based on those representations remains

viable.").

## II.   The Plaintiffs Will Suffer Irreparable Injury Absent The Injunction Requested.

The Plaintiffs' damages include, without limitation, the difference in value

between the insurance policy Mr. McMenimen agreed to obtain (and then said he *had*

obtained) and the Nationwide policy they actually received.  See supra note 1.  As

discussed above, the Plaintiffs are likely to prevail in this matter and judgment will likely

enter against Mr. McMenimen entitling them to recover their damages, including treble

damages pursuant to their Massachusetts General Laws chapter 93A claim.  These

monies will enable Mrs. Pietropaolo to carry on financially, just as the Plaintiffs intended

when they originally enlisted Mr. McMenimen for his advice and expertise.  Compl. ¶ 30.

While insurance held by Mr. McMenimen *may* cover some portion of the probable

judgment against him, the Plaintiffs have not seen proof thereof to date, nor will any such

insurance would cover Mr. McMenimen's intentionally fraudulent acts.  Further, the

Plaintiffs are concerned that absent the proposed injunction, Mr. McMenimen will resort

to some unscrupulous method of transferring his assets beyond their reach, given his

history of making fraudulent statements and, apparently, fabricating documents.  See

supra pp. 3-4.  The Plaintiffs will suffer irreparable injury if their fears prove well-

founded, i.e., if the requested injunction is not granted and they prevail on the merits but

are then not able to recover from Mr. McMenimen due to insufficient insurance coverage coupled with conveyances of his assets during the pendency of this action.

### III.   The Irreparable Injury To The Plaintiffs If The Injunction Is Not Granted Would Outweigh Any Harm To Mr. McMenimen.

As set forth above, because they are likely to prevail on their claims against him, the Plaintiffs will suffer irreparable harm if Mr. McMenimen is able to transfer his assets beyond their reach prior to entry of judgment. Any harm to Mr. McMenimen, on the other hand, will be temporary and relatively minor. First and foremost, the Plaintiffs' proposed injunction would not restrict Mr. McMenimen from transferring assets in the ordinary course of his business. Thus, his livelihood will not be affected. Additionally, since the Plaintiffs will likely succeed on their claims, any assets Mr. McMenimen might convey, up to the amount of the judgment that will ultimately be entered against him, are not rightly his to convey in the first place; i.e., their value is owed to the Plaintiffs, as will be proven at trial. Finally, the harm to the Plaintiffs from an inability to recover from Mr. McMenimen would be permanent and severe: nothing less than Mrs. Pietropaolo's ability to care for herself in her widowhood is at stake. For Mr. McMenimen, the proposed injunction would only limit certain conveyances while this action is pending.

### IV.   The Requested Injunction Would Serve The Public Interest.

The public has a definite interest in recovery by prevailing parties on judgments entered in their favor by the courts. Were recovery not the norm, the public would lose faith in the judicial process and in the ability of courts to facilitate the just resolution of disputes. Thus, if Mr. McMenimen is permitted to convey assets such that the Plaintiffs cannot recover the full amount of the judgment he will likely be obligated to pay, the public interest will suffer as a result.

## Conclusion

WHEREFORE, the Plaintiffs respectfully request that the Court allow their

Motion For Preliminary Injunction and endorse the Proposed Order submitted herewith.

Respectfully submitted,

Plaintiffs RONALD P. PASSATEMPO,
TRUSTEE, On behalf of the Samuel
Pietropaolo Irrevocable Trust, SAMUEL
PIETROPAOLO, GRANTOR to the Samuel
Pietropaolo Irrevocable Trust, and
PATRICIA D. PIETROPAOLO,
BENEFICIARY of the Samuel Pietropaolo
Irrevocable Trust,

By their counsel:

/s/ David M. Burkoff
Howard M. Cooper (BBO #543842)
David M. Burkoff (BBO #657447)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

Dated: May 2, 2005

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

RONALD P. PASSATEMPO, Trustee of the Samuel
Pietropaolo Irrevocable Trust, *et al.,*

     *Plaintiffs,*

     v.

FREDERICK V. MCMENIMEN III, *et al.,*

     *Defendants.*

Case No. 05-CV-10118-GAO

---

### SUGGESTION OF DEATH

Pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, defendant

Frederick V. McMenimen III hereby suggests upon the record the death of plaintiff Samuel

Pietropaolo, who passed away on or about April 1, 2005.

     Respectfully submitted,

     FREDERICK V. MCMENIMEN, III

     By his attorney,

          /S/

     William P. Corbett, Jr. (BBO #561201)
     THE CORBETT LAW FIRM
     *A Professional Corporation*
     85 Exchange Street, Suite 326
     Lynn, Massachusetts 01901-1429
     (781) 596-9300

Dated:  April 4, 2005

# <u>Exhibit **B**</u>

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD P. PASSATEMPO, TRUSTEE, )<br>On behalf of the Samuel Pietropaolo )<br>Irrevocable Trust, SAMUEL PIETROPAOLO, )<br>GRANTOR to the Samuel Pietropaolo )<br>Irrevocable Trust, and PATRICIA D. )<br>PIETROPAOLO, BENEFICIARY of the )<br>Samuel Pietropaolo Irrevocable Trust, )<br> )<br>     Plaintiffs, )<br> )<br>    v. )<br> )<br>FREDERICK V. McMENIMEN III, BARRY )<br>G. ARMSTRONG, NEW ENGLAND )<br>ADVISORY GROUP, LLC, 1717 CAPITAL )<br>MANAGEMENT COMPANY, NATIONWIDE)<br>PROVIDENT (f/k/a Provident Mutual Life )<br>Insurance Company), and NATIONWIDE )<br>FINANCIAL SERVICES, INC., )<br> )<br>    Defendants. )<br> ) | Civil Action No.<br>05-10118-GAO |

## AFFIDAVIT OF SAMUEL F. PIETROPAOLO

    I, Samuel F. Pietropaolo, do hereby depose and say as follows:

1.    I am the eldest son of Plaintiffs Samuel Pietropaolo and Patricia D. Pietropaolo. I submit this affidavit based upon my personal knowledge.

2.    At my father's request, I helped my parents with respect to their decisions about my father's pension options and obtaining insurance so as to provide for my mother upon my father's death. I did so primarily by communicating on their behalf with my cousin, their nephew, Defendant Frederick V. McMenimen, III. Mr. McMenimen repeatedly assured my parents and me that he was an expert in this area and, at that point in time, given our family relationship, we had no reason to doubt him. Unfortunately, our faith in my cousin was misplaced and we were subjected to what now appears to have been many, many lies and misrepresentations. Worse, my father recently passed away and this terrible loss has been compounded by the fact that he died very anxious about whether the insurance program he believed Mr. McMenimen had put in place for my mother

would in fact be available to provide for her. My father was not a wealthy man and the promises and reassurances we received from Mr. McMenimen were critical to him during his illness. My mother now lives in fear that as a result of my cousin's lies to us, she has been left financially at risk.

3.    I have reviewed the First Amended Complaint and Jury Demand in this matter, filed on December 23, 2004 (the "Complaint").

4.    Due to my role in communicating for my parents with Mr. McMenimen in connection with the events underlying the Complaint, I am able to and I do hereby verify that the Complaint is true and accurate to the best of my personal knowledge and belief.

Signed under the pains and penalties of perjury this 30th day of April, 2005.

Samuel F. Pietropaolo

# COMMONWEALTH OF MASSACHUSETTS

_____, SS

On this 30th day of April 2005, before me, the undersigned notary public, personally appeared Samuel F. Pietropaolo, proved to me through satisfactory evidence of identification to be the person whose name is signed on the preceding document, and acknowledged to me that he signed it knowingly and voluntarily for the stated purpose.

Notary Public
My commission expires 2/16/2007

2

# Exhibit C

## Burkoff, David

| | |
|---|---|
| **From:** | Burkoff, David |
| **Sent:** | Wednesday, January 12, 2005 3:28 PM |
| **To:** | 'WPC@BostonBarristers.com' |
| **Cc:** | Cooper, Howard |
| **Subject:** | RE: Passatempo v. McMenimen |

Bill,

Thanks for your personal written representation about your client's insurance, assets and future conduct. We and our clients will rely upon them as Massachusetts law allows us to do.

Please forward all evidence you have to believe in good faith that there is any need for an immediate deposition of our client, as we believe that it is you who seem intent upon escalating matters unnecessarily. We will oppose your motion and we will do so based upon medical testimony. That said, as we have already suggested in response to your correspondence to Howard (who is busy preparing for a trial), we too are anxious to move this case forward quickly once all defendants have appeared. At that time, we can discuss jointly requesting a change to the Tracking Order and asking the Court for a date upon which to discuss an expedited schedule.

You will find in this case that we will always do our best to treat you courteously, but that we will not engage you in meaningless debate about the merits of the case by email or pay attention to your overly aggressive and insulting comments about our clients.

David M. Burkoff
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
Direct: 617-624-4775
Fax: 617-624-4895

This e-mail. and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information If you are not the intended recipient of this e-mail. you are hereby notified that any dissemination. distribution or copying of this e-mail. and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof

-----Original Message-----
**From:** Bill Corbett [mailto:WPC@BostonBarristers.com]
**Sent:** Wednesday, January 12, 2005 1:08 PM
**To:** Burkoff, David
**Subject:** RE: Passatempo v. McMenimen

Dave,

Take it easy!

Rest assured that Rick McMenimen has not destroyed, nor will he destroy, any documents that are potentially discoverable in this case. There is no need for motion practice, whether stipulated or otherwise. Indeed, even if documents were improperly destroyed, you would have Rule 37 at your disposal, as well as the well-established remedies for spoliation. There's no need to manufacture issues where they don't exist.

The same is true with respect to your saber-rattling about

prejudgment security. For 4 main reasons, you would be wasting your time and your clients' money in pursuing such a course. First, prejudgment security presupposes an absence of liability insurance and. as we discussed on Monday, I am in the process of rounding up all information I can about available coverage; if you want proof of coverage, make an appropriate discovery request, and we will, of course, provide you with all documents in Mr. McMenimen's possession, custody or control within the scope of Rule 26(b)(2). Second, as you and your clients are well aware, Mr. McMenimen is quite well-to-do (as you must surely know, this action amounts to Sam P. and Attorney Passatempo attempting to insert their sticky little fingers into my client's relatively deep pockets), and he is more than capable of satisfying any judgment that might be entered against him. Third, any talk of prejudgment security presupposes a finding that your clients are likely to prevail on the merits; the time-barred, factually-deficient and legally-defective claims trumped up by Sam P. and Attorney Passatempo would not clear that hurdle – even if they survived scrutiny under Rule 4(j). Fourth, Mr. McMenimen has no intention of entering into any transactions that would leave him insolvent or otherwise incapable of satisfying a judgment that could be entered against him and you have no reason to believe the contrary; even if Mr. McMenimen did have such intentions, moreover, G.L. c. 109A already prohibits the transactions you would seek to prohibit with the stipulation you propose.

Instead of creating collateral issues and building mounds of paper, let's focus our clients and their resources on achieving a prompt resolution on the merits. To that end, you still have not provided dates for Uncle Sam's deposition, which I requested in Monday's letter to Howard Cooper. Given Mr. Pietropaolo's declining health, I need to get that deposition done ASAP.

Regards,

Bill Corbett

William P. Corbett, Jr.
THE CORBETT LAW FIRM
 *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
Telephone: (781) 596-9300
Facsimile: (781) 596-9302
E-Mail: WPC@BostonBarristers.com
www.BostonBarristers.com

-----Original Message-----
**From:** Burkoff, David [mailto:dburkoff@toddweld.com]
**Sent:** Tuesday, January 11, 2005 6:43 PM
**To:** WPC@BostonBarristers.com
**Subject:** Passatempo v. McMenimen

Bill,

I received your earlier email attaching your emergency motion for enlargement of time to answer.

At this point, there are a couple of other matters of particular concern to us. First, given that your client's manufacture and manipulation of documents is at issue in this case, we intend to promptly seek an order from the court restraining your client from destroying documents. Alternatively, we would be willing to file a stipulated-to injunction preventing destruction of documents by both sides.

Second, you told me when we spoke on Monday that you are still in the process of looking into your client's insurance situation. We will need to see proof of coverage in very short order; otherwise we will plan on moving for pre-judgment security. In the alternative, as above, we would be willing to file a stipulation with the court restricting transfer of assets outside the ordinary course of business.

Please give me a call at your earliest convenience to discuss these matters.

David M. Burkoff
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
Direct: 617-624-4775
Fax: 617-624-4895

This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof.

4/30/2005

## Burkoff, David

| | |
|---|---|
| **From:** | Burkoff, David |
| **Sent:** | Friday, March 04, 2005 10:32 AM |
| **To:** | 'WPC@BostonBarristers.com' |
| **Subject:** | RE: Passatempo v. McMenimen |

Bill,

We stand by our request for your client's insurance information and, again, we hope that you will rethink your position.

As for Mr. Pietropaolo's deposition, his doctors have now confirmed that he has lung cancer, as you may have heard, and he's now scheduled to start a six-week course of radiation on Monday. Combined with his dialysis treatments, it's expected that he will be too weak over the next six weeks to be deposed. We would be willing, however, to pick a date towards the end of April, after his radiation is completed. As I've mentioned, he goes to dialysis on Mondays, Wednesdays and Fridays, so we would need to pick a Tuesday or a Thursday. We would also insist on taking his testimony first, and, as you and I have discussed, on putting limits on the duration and location of the deposition as his health may dictate.

Feel free to call to discuss these matters.

Dave


David M. Burkoff
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
Phone: 617-720-2626
Fax: 617-624-4895

This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof.

-----Original Message-----
**From:** Bill Corbett [mailto:WPC@BostonBarristers.com]
**Sent:** Wednesday, March 02, 2005 5:42 PM
**To:** Burkoff, David
**Cc:** COACHMCM@aol.com
**Subject:** RE: Passatempo v. McMenimen

Dave,

What is the "reversal of course" to which you refer? At 1:08 p.m. on January 12, 2005, I wrote the following in an e-mail to you:

> Rest assured that Rick
> McMenimen has not
> destroyed, nor will he
> destroy, any documents
> that are potentially
> discoverable in this case.
> There is no need for

motion practice, whether
stipulated or otherwise.
Indeed, even if documents
were improperly
destroyed, you would have
Rule 37 at your disposal, as
well as the well-established
remedies for spoliation.
There's no need to
manufacture issues where
they don't exist.

The same is true with
respect to your saber-
rattling about prejudgment
security.  For 4 main
reasons, you would be
wasting your time and
your clients' money in
pursuing such a course.
First, prejudgment security
presupposes an absence of
liability insurance and, as
we discussed on Monday, I
am in the process of
rounding up all
information I can about
available coverage; if you
want proof of coverage,
make an appropriate
discovery request, and we
will, of course, provide you
with all documents in Mr.
McMenimen's possession,
custody or control within
the scope of Rule 26(b)(2).
Second, as you and your
clients are well aware, Mr.
McMenimen is quite well-
to-do (as you must surely
know, this action amounts
to Sam P. and Attorney
Passatempo attempting to
insert their sticky little
fingers into my client's
relatively deep pockets),
and he is more than
capable of satisfying any
judgment that might be
entered against him.
Third, any talk of
prejudgment security
presupposes a finding that
your clients are likely to
prevail on the merits; the
time-barred, factually-
deficient and legally-
defective claims trumped
up by Sam P. and Attorney
Passatempo would not

clear that hurdle – even if
they survived scrutiny
under Rule 4(j). Fourth,
Mr. McMenimen has no
intention of entering into
any transactions that
would leave him insolvent
or otherwise incapable of
satisfying a judgment that
could be entered against
him and you have no
reason to believe the
contrary; even if Mr.
McMenimen did have such
intentions, moreover, G.L.
c. 109A already prohibits
the transactions you would
seek to prohibit with the
stipulation you propose.

Instead of creating
collateral issues and
building mounds of paper,
let's focus our clients and
their resources on
achieving a prompt
resolution on the merits.
To that end, you still have
not provided dates for
Uncle Sam's deposition,
which I requested in
Monday's letter to Howard
Cooper. Given Mr.
Pietropaolo's declining
health, I need to get that
deposition done ASAP.

My position has not changed in the last two months. Rather, it is you who has made a "reversal of course". Indeed, you responded to my January 12, 2005 e-mail at 4:24 p.m. that afternoon, and you said, in pertinent part:

Thanks for your personal
written representation
about your client's
insurance, assets and
future conduct. We and
our clients will rely upon
them as Massachusetts
law allows us to do.

What gives? Has there been some change in circumstances causing you to renege on that undertaking? In any event, you will get your insurance information when and to the extent required by Fed. R. Civ. P. 26. However, we won't start making discovery piecemeal before the stay mandated by the PSLRA is lifted.

As I have repeatedly reminded you, moreover, if there are any exigent circumstances calling for discovery before the PSLRA stay is lifted, Uncle Sam's health is at the top of the list. To that end, if you don't propose deposition dates in the next couple of days, I need some times at which you are available to confer pursuant to LR 7.1(A)(2), so I may make a motion pursuant to Fed. R. Civ. P. 30(a)(2)(C). (The other parties will have to be involved in this discussion, given that all have an interest in Uncle Sam's deposition, so I can't

just pick up the phone and discuss the issue informally.)  However, I would prefer to avoid motion practice, and I expect that Uncle Sam would prefer to be deposed at a time of his choosing.

Furthermore, as you know, Massachusetts law governs prejudgment attachments in this action.  Fed. R. Civ. P. 64.  Mass. R. Civ. P. 4.1 only allows for an attachment in the amount a plaintiff is reasonably likely to recover, over and above applicable policy limits.  Even if the plaintiffs' time-barred, late-served complaint otherwise stated some claim against Mr. McMenimen on which relief might arguably be granted, I do not see how you can make a motion for a prejudgment attachment that squares with Fed. R. Civ. P. 11(b).  Practically speaking, you will spend thousands of dollars of your clients' money preparing and arguing a motion that, at the end of the day, has zero chance of success.


Bill


William P. Corbett, Jr.
THE CORBETT LAW FIRM
 *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
Telephone: (781) 596-9300
Facsimile: (781) 596-9302
E-Mail: WPC@BostonBarristers.com
www.BostonBarristers.com

-----Original Message-----
**From:** Burkoff, David [mailto:dburkoff@toddweld.com]
**Sent:** Wednesday, March 02, 2005 4:46 PM
**To:** WPC@BostonBarristers.com
**Subject:** RE: Passatempo v. McMenimen

Bill,

Thanks for your response.  I appreciate your confidence in your client's legal position, but I guess that is why we have courts.

It is difficult to understand your reversal of course on the insurance issue.  If your client has adequate insurance to secure what we expect will be a substantial judgment against him, I don't see why you wouldn't want to disclose the limits of that coverage in order to avoid motion practice with respect to prejudgment security.

We will certainly inform the Court of our back and forth on the insurance issue when we move for relief.  Please let us know if you rethink your position and decide to disclose the available insurance.

Dave


David M  Burkoff
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
Phone: 617-720-2626
Fax: 617-624-4895

4/30/2005

This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof.

-----Original Message-----
**From:** Bill Corbett [mailto:WPC@BostonBarristers.com]
**Sent:** Wednesday, March 02, 2005 12:41 PM
**To:** Burkoff, David
**Cc:** COACHMCM@aol.com
**Subject:** RE: Passatempo v. McMenimen

Dave,

I thought we resolved that issue in our January 12 exchange of e-mails. Please review those e-mails again.

In any event, you have been informed that there is insurance. After the pending motion to dismiss (which, by operation of the PSLRA, stays all discovery) is resolved, and in the unlikely event that Mr. McMenimen remains in the case, he would have to provide that information as part of his automatic disclosures. Fed. R. Civ. P. 26(a)(1)(D). Unlike the situation with respect to Uncle Sam's deposition (by the way, do you have any dates for me yet?), there is no urgent need to deviate from the rules and accelerate the production of that information.

Regards,

Bill


William P. Corbett, Jr.
THE CORBETT LAW FIRM
*A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
Telephone: (781) 596-9300
Facsimile: (781) 596-9302
E-Mail: WPC@BostonBarristers.com
www.BostonBarristers.com

-----Original Message-----
**From:** Burkoff, David [mailto:dburkoff@toddweld.com]
**Sent:** Wednesday, March 02, 2005 10:56 AM
**To:** WPC@BostonBarristers.com
**Cc:** Cooper, Howard
**Subject:** Passatempo v. McMenimen

Bill,

We're in the process, as you know, of preparing our opposition to your motion to dismiss. As you also know, we remain interested in seeing documentation demonstrating that your client carries sufficient insurance to cover any judgment the court may enter against him in this matter. To date, you have not provided any such documentation. Please consider this email to be yet another request for same. If we do not receive such proof of insurance by the end of next week, we will file a motion for attachment along with our opposition.

If you would prefer to discuss by phone, please feel free to call.

Dave


David M. Burkoff
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
Phone: 617-720-2626
Fax: 617-624-4895

This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally
privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that
any dissemination, distribution or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have
received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any
copy of this e-mail message and any printout thereof.

4/30/2005