UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————
)
RONALD P. PASSATEMPO, Trustee of the Samuel )
Pietropaolo Irrevocable Trust, *et al.,*                      )
)
        *Plaintiffs,*                      )
)    Case No. 05-CV-10118-GAO
        v.                                     )
)
FREDERICK V. MCMENIMEN III, *et al.,*                  )
)
        *Defendants.*                      )
—————————————————————)

## MOTION OF DEFENDANT FREDERICK V. MCMENIMEN III FOR LEAVE TO FILE REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Pursuant to Local Rule 7.1(B)(3), defendant Frederick V. McMenimen, III ("Mr. McMenimen") respectfully requests leave to file a reply memorandum in response to the opposition of Samuel Pietropaolo ("Uncle Sam"), Patricia Pietropaolo, and Ronald Passatempo to his motion to dismiss their First Amended Complaint.

In support of this motion, Mr. McMenimen states that the Plaintiffs' opposition gave rise to several arguments not made in his initial brief; that a recent decision by the Supreme Court illuminated others; and that the recent death of Uncle Sam brought others to the forefront. Although Mr. McMenimen disagrees with most of the arguments set out in the Plaintiffs' opposition, most can be adequately addressed during oral argument. However, the issues to be addressed in the proposed reply require additional briefing.

The Plaintiffs originally assented to Mr. McMenimen's request for leave to file such a memorandum, provided that Mr. McMenimen would assent to any motion they might file seeking leave to submit an equivalent surreply. However, the Plaintiffs have since withdrawn that assent.

WHEREFORE, for the reasons set out above, Mr. McMenimen respectfully requests that he be granted leave to file a reply memorandum in the form appended to this motion. Pursuant to his agreement with the surviving Plaintiffs, Mr. McMenimen will not oppose any request by them to submit a comparable surreply.

Respectfully submitted,

FREDERICK V. MCMENIMEN III

By his attorney,

*/s/ William P. Corbett, Jr.*
_____
William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
  *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated: May 31, 2005

LOCAL RULE 7.1(A)(2) CERTIFICATE

I hereby certify that before filing this motion, I conferred by e-mail with David M. Burkoff, Esquire, attorney for the plaintiffs, copying counsel for the other defendants, in a good faith effort to resolve or narrow the issues presented.

*/s/ William P. Corbett, Jr.*
_____
William P. Corbett, Jr.

13-006-001

Filename:         Motion for Leave to File Reply Brief
Directory:        C:\Documents and Settings\Bill
      Corbett\Desktop\Client Files\Open Files\File #13-006-001 --
      McMenimen (Passatempo Securities Lawsuit)
Template:         C:\Documents and Settings\Bill Corbett\Application
      Data\Microsoft\Templates\Normal.dot
Title:            COMMONWEALTH OF MASSACHUSETTS
Subject:
Author:           Bill Corbett
Keywords:
Comments:
Creation Date:    5/4/2005 2:18 PM
Change Number:    8
Last Saved On:    5/31/2005 9:50 AM
Last Saved By:
Total Editing Time: 202 Minutes
Last Printed On:    5/31/2005 9:51 AM
As of Last Complete Printing
      Number of Pages:      2
      Number of Words:      7,232 (approx.)
      Number of Characters: 41,226 (approx.)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| RONALD P. PASSATEMPO, Trustee of the Samuel Pietropaolo Irrevocable Trust, *et al.*, )<br><br>*Plaintiffs,* )<br><br>v. )<br><br>FREDERICK V. MCMENIMEN III, *et al.*, )<br><br>*Defendants.* ) | Case No. 05-CV-10118-GAO |

---

*[PROPOSED]*
**REPLY MEMORANDUM SUPPORTING
DEFENDANT FREDERICK V. MCMENIMEN III'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Local Rule 7.1(B)(3), with the Court's leave, defendant Frederick V. McMenimen, III ("Mr. McMenimen") respectfully submits this memorandum in reply to the opposition (DE #13) of Patricia Pietropaolo ("Aunt Pat"), Ronald Passatempo ("Attorney Passatempo"), and the now-deceased Samuel Pietropaolo ("Uncle Sam") (collectively "Plaintiffs") to Mr. McMenimen's motion to dismiss (DE #9) their First Amended Complaint ("Complaint"). Although Mr. McMenimen disagrees with the legal positions staked out in the Plaintiffs' opposition, he can adequately debunk most during oral argument. Furthermore, because any well-pled factual averments by the Plaintiffs must be taken as true for purposes of a Rule 12(b)(6) motion, Mr. McMenimen must await a later opportunity to rebut the florid (but largely untrue) recitation of facts in the Plaintiffs' opposition, which simply restates the not-yet-challenged allegations of the Complaint. There are nonetheless several points – largely focused on the staleness of the Plaintiffs' claims – that require treatment in this supplemental memorandum.

A<small>RGUMENT</small>

The Complaint embodies the very problems Congress and the Massachusetts Legislature sought to prevent when they adopted the governing statutes of limitations and repose, which "although affording plaintiffs what the legislature deems a reasonable time to present their claims, … protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Tagliente v. Himmer,* 949 F.2d 1, 7-8 (1ˢᵗ Cir. 1991) (quoting *United States v. Kubrick,* 444 U.S. 111, 117 (1979)). "Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428 (1965). They embody a legislative recognition that:

> [n]o human transactions are unaffected by time. Its influence is seen on all things subject to change. And this is peculiarly the case in regard to matters which rest in memory, and which consequently fade with the lapse of time, and fall with the lives of individuals.

*Rhode Island v. Massachusetts,* 45 U.S. 591, 639 (1846). Such concerns are especially *apropos* in this case, where the alleged "victim," Uncle Sam, passed away on April 1, 2005 – little more than three months after Mr. McMenimen was served with the Complaint but nearly seven years after the operative transaction. (DE #14)[1]

---

[1] Several claims did not survive Uncle Sam's death. *See Sheldone v. Marino,* 398 Mass. 817, 819 (1986) ("actions seeking the vindication of personal rights, in the absence of a statute, do not survive while those seeking redress for damage to property do survive"); G.L. c. 228, § 1 (survival statute). It will thus be necessary to analyze each count of the Complaint and establish which, if any of the Plaintiffs' claims survive in order to ascertain whether relief might lawfully be granted thereupon. That is potentially significant, because the other two Plaintiffs – Aunt Pat and Attorney Passatempo – lack standing to pursue many of those claims in their own right. *See Klein v. Catalano,* 386 Mass. 701, 714 (1982) ("a third party cannot effectively vindicate the rights of others," and "a plaintiff who lacks individual standing may not assert the rights of others before the court.") However, because no representative has yet sought to substitute himself for Uncle Sam, these issues are not yet ripe for consideration.

Fundamental fairness to defendants and practical considerations of judicial economy thus require that the courthouse doors be closed to these Plaintiffs – each of whom "has slept on his rights." *Burnett,* 380 U.S. at 428. To allow their claims to go forward despite the passage of so much time would be "utterly repugnant to the genius of our laws." *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.,* 483 U.S. 143, 156 (1987) (quoting *Wilson v. Garcia,* 471 U.S. 261, 271 (1985) & *Adams v. Woods,* 2 Cranch 336, 342 (1805)). "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 348-49 (1944). There comes a time when "even wrongdoers are entitled to assume that their sins may be forgotten." *Agency Holding Corp.,* 483 U.S. at 156 (quoting *Wilson,* 471 U.S. at 271). Though Mr. McMenimen is by no means a "wrongdoer", he is certainly entitled to the same protection.

Concededly, an untimely complaint may be dismissed pursuant to FED. R. CIV. P. 12(b)(6) "only if the pleader's allegations leave no doubt that an asserted claim is time-barred." *Young v. Lepone,* 305 F.3d 1, 8 (1st Cir. 2002) (quoting *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 509 (1st Cir. 1998)). Yet even under this most indulgent of standards, each of the Plaintiffs' claims must fail. The initial brief supporting Mr. McMenimen's motion to dismiss (DE #10 at 5-8) described how each of the Plaintiffs' claims was barred by an applicable statute of limitations, and the Plaintiffs' opposition (DE #10) did nothing to alleviate those concerns. Furthermore, as discussed more fully below, analysis of the arguments made in that opposition led Mr. McMenimen to a related argument – the existence of a controlling two-year statute of repose, G.L. c. 175, § 181 – which, when coupled with public records obtained since the motion to dismiss was filed, cinches the time bar issue insofar as the Plaintiffs' state law claims are concerned.

As for the ostensible Federal claims, a case decided by the U.S. Supreme Court a month after the Plaintiffs filed their opposition conclusively establishes their futility. That decision, *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S. Ct. 1627 (2005), not only sets forth without ambiguity the necessary components of a pleading that comports with Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4, but it also makes clear that the injuries described in the Complaint are not cognizable under the Federal securities laws.

## I.    THE STATE LAW CLAIMS WERE BARRED NEARLY FIVE YEARS AGO.

While analyzing the Plaintiffs' opposition to Mr. McMenimen's motion to dismiss, counsel realized that, although he had made several arguments about claims being time-barred under applicable statutes of limitations (DE #10 at 5-8), he had not made the most compelling argument of all – that G.L. c. 175, § 181 required all state law claims pled in the Complaint to be asserted on or before July 28, 2000. Under that statute:

> The insured under any policy of life … insurance … who was induced to procure it by any [misrepresentations to insured] by an officer or agent of the company issuing or executing it may recover from such company all premiums paid on such policy or contract less any indebtedness to the company thereon or secured thereby and less any payments otherwise made by the company thereon, in an action brought within two years after the date of issue thereof.

G.L. c. 175, § 181. Mr. McMenimen is alleged to have been an agent of the company issuing the "Flexible Premium Adjustable Variable Life" policy ("Policy") at issue in this lawsuit (*see* Complaint ¶¶ 4, 8, 83, 88, 98, 106, 111, 115, 120, 127, 133, 138), so he is certainly within the class of persons the Legislature sought to protect with that statute. Accordingly, not only does the statute essentially limit the Plaintiffs' monetary "upside" to a mere fraction of what they claim in their Complaint (the premiums they paid, less any debts they owe to the insurer, and less any payments made on claims) but it also makes clear that any civil action should have been commenced on or before July 28, 2000 – nearly four years before these Plaintiffs saw fit to file suit.

Unlike the statutes discussed in Mr. McMenimen's initial brief (*see* DE #10 at 5-8), no "discovery rule" applies to G.L. c. 175, § 181, because it is a statute of repose, not a statute of limitations. The time bar runs from a definitely established event – the policy's July 28, 1998 "date of issue" – so the date on which the Plaintiffs learned of their putative causes of action is of no consequence. *Nissan Motor Corp. v. Commissioner of Revenue,* 407 Mass. 153, 157-58 (1990). A statute of repose like G.L. c. 175, § 181 "completely eliminates a cause of action" after the specified period expires. *Klein,* 386 Mass. at 708. "The injury need not have occurred, much less have been discovered" for the statute to extinguish an otherwise viable claim. *Id.* at 702. The statute sets:

> an absolute time limit on the liability of those within its protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury is not discovered, until after the statute's time limit has expired.

*McGuinness v. Cotter,* 412 Mass. 617, 622 (1992).

### A. The Multifarious Labels The Plaintiffs Place On Their Claims Do Not Immunize Them From The Consequences Of The Statute Of Repose.

Because G.L. c. 175, § 181 specifically addresses claims like those asserted by the Plaintiffs in this case, it operated to bar each of the state law causes of action pled in the Complaint – regardless of whether the Court accepts any of Mr. McMenimen's other arguments concerning the futility of those theories – nearly four years before the Plaintiffs saw fit to foist them upon the defendants and the courts.

The essence of the Plaintiffs' Complaint is fraudulent inducement of their purchase of the Policy, and the suit was not commenced before July 28, 2000, so G.L. c. 175, § 181 bars their state law claims. That the Plaintiffs purport to shoehorn those claims into various statutory, contract and tort theories has no bearing on which statute of limitations or repose to apply. Nor does it matter that they elected not to seek recovery under this most specific of statutes. Litigants cannot "escape the consequences of a statute of repose" merely by

affixing a different label to their claims; the Court "must look to the 'gist of the action.'"

*Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*, 396 Mass. 818, 823 (1986)

(quoting *Hendrickson v. Sears,* 365 Mass. 83, 85 (1974)). "[T]he essential nature of the

right asserted" determines the appropriate statute of limitations or repose. *Micera v.*

*Neworld Bank,* 412 Mass. 728, 731 (1992). The general statutes of limitations for contract,

tort and consumer protection claims must yield to the specific statute of repose

promulgated for situations like this. *Lavecchia v. MBTA,* 441 Mass. 240, 243 (2004).

   *Slingsby v. Metropolitan Ins. Co.,* 2001 Mass. App. Div. LEXIS 7, is on all fours

with this case. In *Slingsby,* an agent of the defendant insurance company sold the plaintiff

three variable life policies. The plaintiff thereafter asserted several tort and statutory

theories of liability against the insurer. A justice of the Massachusetts District Court

dismissed the claims pursuant to G.L. c. 175, § 181, and – holding that "[i]t is the

gravamen of the complaint" (and not the labels placed upon claims by the plaintiff) that

warrants application of that statute – the District Court's Appellate Division affirmed the

dismissal. *Slingsby,* 2001 Mass. App. Div. LEXIS at 5. The same outcome resulted when

similar claims were asserted in *Grande v. PFL Life Ins. Co.,* 2000 Mass. App. Div. LEXIS

96 *5-6. *See also Loguidice v. Metropolitan Ins. Co.,* 336 F.3d 1, 4-6 (1st Cir. 2003)

(affirming summary judgment based on *Grande* and *Slingsby* without reaching issue of

whether G.L. c. 175, § 181 controlled); *Wilson Farm, Inc. v. Berkshire Life Ins. Co.,* 2002

Mass. Super. LEXIS 376 *19 n.4 (Brassard, J.) (applying G.L. c. 175, § 181 to tort claim).

**B.    *"Fraudulent Concealment" Does Not Save The State Law Claims.***

Without specifically invoking G.L. c. 260, § 12, the Plaintiffs seek its shelter (*see* DE #13 at 9-10, 12) for their claims, which are exposed as untimely.  That statute provides:

> If a person liable to a personal action fraudulently conceals the cause of
> such action from the knowledge of the person entitled to bring it, the
> period prior to the discovery of his cause of action by the person so
> entitled shall be excluded in determining the time limited for the
> commencement of the action.

G.L. c. 260, § 12.  However, because G.L. c. 175, § 181 is a statute of repose, not a statute of limitations, this fraudulent concealment rule has no bearing on its application.  *Sullivan v. Iantosca,* 409 Mass. 796, 798 (1991).  Insofar as the Plaintiffs' state law claims are concerned, G.L. c. 175, § 181 forbids the Court from considering whether they "did not discover or reasonably could not have discovered" the harms they allege before the two-year period specified in the statute of repose had expired, and neither the fraudulent concealment provisions of G.L. c. 260, § 12 nor any related common law estoppel rule can prevent the statute of repose from barring the Plaintiffs' claims.  *Sullivan,* 409 Mass. at 798; *Lemrise v. Koska,* 1996 Mass. Super. LEXIS 169 at *6 (Garsh, J.).

Even if a statute of repose could be tolled under G.L. c. 260, § 12, the general rule is that the defendant must have actively concealed the cause of action for a claim to be tolled. It is axiomatic that "mere silence is not a fraudulent concealment . . . there must be something in the nature of positive acts with intent to deceive." *Lynch v. Signal Fin. Co. of Quincy,* 367 Mass. 503, 507 (1975).  Here, there is no allegation in the Complaint suggesting that Mr. McMenimen took any active steps to conceal from the Plaintiffs any viable cause of action that might have accrued.  The only allegations of active concealment made in the Complaint refer to actions occurring three or more years after the state law claims had already been extinguished by G.L. c. 175, § 181.

Of course, breach of a fiduciary duty of disclosure "is a substitute for the active fraud normally required to constitute fraudulent concealment within the Massachusetts tolling statute." *Burns v. Massachusetts Institute of Technology,* 394 F.2d 416, 419 (1st Cir. 1968). Such a duty is created "when one party reposes, to the other's knowledge, trust and confidence under circumstances in which the other's failure to make disclosure would be inequitable." *Id.* Though this is ordinarily a question of fact, the Plaintiffs cannot conceivably establish such a relationship with respect to Mr. McMenimen. They wrongly assume that the social obligations which flow from a familial relationship amount to a fiduciary obligation in a legal sense. *Fay v. Aetna Life Ins. & Annuity Co.,* 307 F. Supp. 2d 284, 291 n.19 (D. Mass. 2004). *See also Kelly v. Kelly,* 358 Mass. 154, 156 (1970) (family relationship alone insufficient to establish fiduciary relationship). The fact of the matter is that it was Cousin Sam – and not Mr. McMenimen – who "helped [his] parents with respect to their decisions about [his] father's pension options and obtaining insurance so as to provide for [his] mother upon [his] father's death." (DE #22 at ex. B ¶ 2) Cousin Sam purported to "communicate on [his parents'] behalf" with Mr. McMenimen "in connection with the events underlying the Complaint." (*Id.* ¶¶ 2, 4). While making florid assertions about Uncle Sam's "limited financial planning and investing experience" (Complaint ¶ 41) – the Plaintiffs chose to keep from the defendants and the Court important information concerning Cousin Sam's extensive experience and expertise with respect to such matters.

According to public records obtained by Mr. McMenimen since the Plaintiffs served their opposition to his motion, Cousin Sam is a member of the Massachusetts Bar (Ex. A) whose entire career experience before becoming a lawyer came in the financial services industry. (Ex. B at 7) Indeed, Cousin Sam's last professional position before becoming a lawyer was in the "Financial Planning" business of a major life insurance conglomerate, John Hancock Financial Services. (Ex. B at 7) Cousin Sam had even

- 8 -

sought and obtained licensure from the Commonwealth's Division of Insurance – passing the examination concerning life insurance products – of which the policy at issue in this case was one. (Ex. E)  At the time of the operative transaction, Cousin Sam was a licensed agent of the John Hancock Life Insurance Company and – more to the point (given that the gravamen of the Complaint is the alleged failure by Mr. McMenimen to explain how a variable life insurance policy works) – of the John Hancock Variable Life Insurance Company.  (*Id.*)  Cousin Sam retained those licenses for nearly three years after the Policy was issued (*id.*) – or for almost a year after the repose date specified by G.L. c. 175, § 181. Given that Cousin Sam – an attorney, experienced financial professional, and licensed agent of the John Hancock Variable Life Insurance Company – represented the Plaintiffs in their dealings with Mr. McMenimen, they could not, as a matter of law, have reasonably relied on the nondisclosure they allege.  *Tagliente,* 949 F.2d at 14.[2]

Even if Plaintiffs' allegations were sufficient for Mr. McMenimen to be treated as a fiduciary for purposes of this motion, any discussion of fraudulent concealment is academic, because the Plaintiffs had "actual knowledge of the facts" giving rise to their putative causes of action, rendering G.L. c. 260, § 12 inapplicable.  *Stark v. Advanced Magnetics, Inc.,* 50 Mass. App. Ct. 226, 234 (2000).  In this Commonwealth, "[a] cause of action cannot be said to be concealed from one who has a personal knowledge of the facts which create it."  *Sanborn v. Gale,* 162 Mass. 412, 414 (1894).  As this Court has noted, "a

---

[2] Exhibit A is a printout from the website of the Board of Bar Overseers identifying Cousin Sam as an attorney licensed to practice in the Commonwealth.  Exhibit B is a copy of Cousin Sam's application for admission to the Bar (redacted to remove personal data identifiers), which the Clerk of the Supreme Judicial Court for Suffolk County produced to Mr. McMenimen in response to a public records request. Attorney Passatempo is also a member of the Bar (Ex. C), who was Cousin Sam's classmate at the Massachusetts School of Law.  (Ex. B at 13; Ex. D at 14)  Furthermore, Attorney Passatempo's application for admission (also produced in response to Mr. McMenimen's public records request) reveals that he, like Cousin Sam, is no *naïf* in financial matters, holding a Master's degree in Business Administration ("MBA").  (Ex. D at 4)  Because Exhibits A through E are public records, the Court may consider them without converting Mr. McMenimen's Rule 12(b)(6) motion "into one for summary judgment."  *Greene v. State of Rhode Island,* 398 F.3d 45, (1st Cir 2005) (quoting *Boateng v. InterAmerican Univ., Inc.,* 210 F.3d 56, 60 (1st Cir.), *cert. denied,* 531 U.S. 904 (2000)).

[f]iduciary's lie or failure to disclose significant information is relevant only if it actually conceals an injury from the plaintiff." *Hodas v. Sherburne, Powers & Needham, P.C.,* 938 F. Supp. 60, 64 (D. Mass. 1996) (O'Toole, J.), *aff'd* 114 F.3d 1169 (1st Cir. 1997). There is no tolling if a plaintiff "had knowledge of the facts or a means of discovering them under circumstances which should have put him on inquiry." *Falk v. Levine,* 66 F. Supp. 700, 703 (D. Mass. 1946). "If someone, like the plaintiff[s] in this case, is deemed to know the facts on which [their] claim rests, there can be no fraudulent concealment." *Malapanis v. Shirazi,* 21 Mass. App. Ct. 378, 386 n.8 (1986).

These plaintiffs had such knowledge even before the Policy was issued. Attorney Passatempo acknowledged on July 19, 1998 that he had received a copy of a policy illustration dated July 16, 1998 – an illustration which referenced a "Flexible Premium Adjustable Variable Life" policy with a death benefit of $200,000 and confirmed his understanding "that any non-guaranteed elements illustrated are subject to change and could be higher or lower." (Ex. F at 6)[3] In that selfsame document, Attorney Passatempo declared that "Frederick V. McMenimen III has told me [those elements] are not guaranteed." (*Id.*) When this illustration was delivered to Attorney Passatempo, the Plaintiffs were on notice of their putative injury, "because all they had to do was read it to know that it was something other than what they had anticipated." *Fay,* 307 F. Supp. 2d at 291. *See also Lewis v. Dime Sav. Bank of NY,* 1996 Mass. Super. LEXIS 79 at *11-12

---

[3] Though not a public record like Exhibits A through E, Exhibit F is sufficiently intertwined with the allegations in the Complaint (*see, e.g.,* ¶¶ 50, 53, 90-91, 100-101, 111, 115, 120, 125-127, 133) as to warrant consideration by the Court without converting the Rule 12(b)(6) motion to one seeking summary judgment pursuant to FED. R. CIV. P. 56. It is well-established in this Circuit that when a plaintiff "fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir.), *cert. denied,* 488 U.S. 821 (1988) (quoting Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1327 at 489 (1969 ed.)). In a lawsuit whose gist is the alleged failure of Mr. McMenimen to inform the Plaintiffs of the nature of the policy at issue, an illustration acknowledged by one of the Plaintiffs could not be more pertinent.

(Neel, J) (before expiration of statute of limitations, plaintiffs "had information from which, upon inquiry, they would have been able to" ascertain alleged fraud). The cover page of that illustration also made this disclaimer:

> The assumed hypothetical rates of return shown are illustrative only and should not be deemed a representation of past or future investment rates of return. Actual investment rates of return may be more or less than those shown and will depend on a number of factors, including the premium allocation chosen by the policyholder. The death benefits, policy account values and cash surrender values for a policy would be different from those shown if the actual rates of return averaged the illustrated return percentages over a period of years, but fluctuated above or below those averages for individual policy years.

(*Id.* at 1)  Even if he failed to read the illustration and disclaimer, Attorney Passatempo is charged with knowledge of their contents. *Kravetz v. United States Trust Co.,* 941 F. Supp. 1295, 1305 (D. Mass. 1996) (Wolf, J.).  Moreover, as a lawyer with an MBA, Attorney Passatempo surely appreciated the meaning and significance of his acknowledgments and the quoted disclaimer, as well as the mechanics of a variable life insurance policy.  Indeed, in his capacity as Trustee – the role which confers some measure of standing upon Attorney Passatempo in this case – he had a duty to act diligently to protect the Trust, its settlor, and its beneficiaries from fraud.  Like the plaintiff in *Cape Ann Investors, LLC v. Lepone,* 171 F. Supp. 2d 22, 27-28 (D. Mass. 2001), if Attorney Passatempo had done what his fiduciary duties required him to do, he would have discovered what he now alleges to be fraud by reading the document he signed.  A simple "read-through" would have put Attorney Passatempo on inquiry notice of the Plaintiffs' putative claims.  *Loguidice,* 336 F.3d at 17. *See also Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 (1ˢᵗ Cir. 1991) (such documents "clearly 'bespeak caution'" and "are not the stuff of which securities fraud claims are made); *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1256 (1ˢᵗ Cir.), *cert. denied,* 519 U.S. 823 (1996) (receipt of prospectuses put plaintiffs on inquiry notice of alleged misrepresentations).

13-006-001

Even if Mr. McMenimen had been the Plaintiffs' fiduciary, they had a duty to apply their common sense to the available facts. *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 129 (1st Cir. 1987). The Plaintiffs' own complaint further establishes beyond any good faith dispute that, soon after the Policy was issued, they possessed sufficient information for the statute to start running. Because the Plaintiffs allege that "[t]he final Policy and its terms were never delivered to the Plaintiffs", and that despite requests "[o]n numerous occasions . . . for a copy of the Policy . . . . [n]one of the Plaintiffs ever received a copy of the Policy from Mr. McMenimen or from any other Defendant" (Complaint ¶¶ 51-52), their contention that "[t]here were no 'storm warnings' of any kind" until April 2003 (DE #13 at 12) strains credulity. "It would be incredible" to assume that the Plaintiffs – who could have approached the insurer directly after requests for copies of the Policy were allegedly rebuffed – could not have verified its contents. *Micromuse, Inc. v. Micromuse, PLC,* 304 F. Supp. 2d 202, 212 (D. Mass. 2004) (Stearns, J.). Such "telltale warning signs augur that fraud is afoot," and were "sufficiently portentous" that they "may as a matter of law be deemed to alert a reasonable investor to the possibility of fraudulent conduct." *Young,* 305 F.3d at 8. The Plaintiffs' complete inaction for a half-decade after facing those "great glowering clouds" was not "reasonable diligence," preventing them from successfully arguing that Mr. McMenimen's alleged deceptions tolled the Federal statute of limitations. *Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 802-03 (1st Cir. 1987).

## II.    THE PLAINTIFFS' OPPOSITION DID NOT RESCUE THEIR FEDERAL CLAIMS.

The Plaintiffs' argument that the statute of repose does not bar their stale claims under the Federal securities laws (DE #13 at 12) is grossly misplaced. *See Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 188 (1997) (rejecting similar "last predicate act" tolling argument in civil RICO case). It is therefore unsurprising that the cases cited by the Plaintiffs refer to actionable misconduct, not alleged concealment of existing claims. *See*

*also Kelly v. Marcantonio,* 187 F.3d 192, 202 (1999) (so-called "continuing tort" doctrine does not apply to "after the fact" attempts to conceal claim); *S-G Metals Indus. v. New England Life Ins. Co,* 346 F.3d 218, 221-22 (1st Cir. 2003) (continuing tort doctrine does not apply where plaintiffs' alleged injury is "'definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress"). Indeed, the current statute, 28 U.S.C. § 1658(b), specifically sets the repose date as "5 years after [a] violation" – not 5 years after an alleged attempt to conceal a potential cause of action.

In any event, that statute of repose is less than 3 years old, having been adopted as Section 804 of the comprehensive Sarbanes-Oxley Act of 2002, Pub. L. 107-204, and the Plaintiffs' claims under the Federal securities laws had been time-barred for a year before Sarbanes-Oxley was enacted. Before July 2002, every lawsuit instituted pursuant to Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10(b)(5), had to be "commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson,* 501 U.S. 350, 364 (1991). "Because the purpose of the 3-year limitation is clearly to serve as a cutoff," the Supreme Court held "that tolling principles do not apply to that period." *Id.* at 363. When it enacted Sarbanes-Oxley, Congress did not intend to revive actions that were already time-barred, and its extended limitations and repose periods are not applied retroactively. *Swack v. Credit Suisse First Boston,* 2004 U.S. Dist. LEXIS 22749 at *18 (D. Mass.) (Woodlock, J.). Because the alleged violation took place on July 28, 1998, the date of the Policy's issuance, *Lampf, Pleva* operated to bar the Plaintiffs' Federal securities fraud claims on July 28, 2001.

13-006-001

## III.    MASS. R. CIV. P. 6(B) AFFORDS THE PLAINTIFFS NO SHELTER.

In an effort to escape the effects of their decision to wait six months before making service, the Plaintiffs suggested in their opposition that they had moved for an extension of time to serve Mr. McMenimen pursuant to MASS. R. CIV. P. 6(b), eliminating their exposure to dismissal under MASS. R. CIV. P. 4(j).  That argument has some superficial appeal, because "Rule 6(b)(1) gives the court wide discretion to grant a request for additional time that is made prior to the expiration of the period originally prescribed or prior to the expiration of the period as extended by a previous enlargement order."  Wright & Miller, FEDERAL PRACTICE & PROCEDURE ("WRIGHT & MILLER") § 1165 at 520 (2002 ed.).  However, as the state court record (DE #12) demonstrates, the Plaintiffs' March 16, 2005 opposition (DE #13 at 4, 6-9) was the first occasion on which they had even paid lip service to the "for cause shown" standard of Rule 6(b), and their declaration that "the Superior Court (prior to removal) allowed the Plaintiff's two motions because they satisfied that standard" was patently untrue.  The Plaintiffs never sought to satisfy the "good cause" standard of Rule 4(j) or meet the "for cause shown" test of Rule 6(b), and the Superior Court never made any finding that the Plaintiffs had "shown" any degree of "cause"– whether "good" or otherwise – for their failure to effect timely service on Mr. McMenimen.

### A.    *The Plaintiffs Showed No Justification For An Extension.*

Even if the Superior Court had "for cause shown" granted the extensions pursuant to Rule 6(b), those findings would not bind this Court.  Although they remain binding on the parties until formally set aside by this Court, the Superior Court's orders extending the time for service "are not conclusive" after removal.  *Capizzi v. FDIC,* 1993 U.S. Dist. LEXIS 19446 at *3 n.1 (Skinner, J.) (quoting WRIGHT & MILLER § 3738 at 405).  Such rulings should "be treated with respect, but not as final or conclusive."  *General Inv. Co. v. Lake Shore & Mich. Southern R. Co.,* 260 U.S. 261, 267  (1922).  The removal statute itself

contemplates dissolution or modification of state court orders.  28 U.S.C. § 1450 (3rd par.).

Even as to questions of Massachusetts law, if this Court is satisfied that the Superior Court

"made a mistake, it ha[s] power to reopen the matter."  *Remington v. Central P. R. Co.,*

1989 U.S. 95, 99-100 (1905) (Holmes, J.).

Rule 6(b) requires "cause" (as opposed to the "good cause" required by Rule 4(j))

to be "shown" for an extension.  Such a request "normally will be granted in the absence of

bad faith on the part of the party seeking relief or prejudice to the adverse party."  *Brunelle*

*v. Blaise,* 2004 Mass. Super. LEXIS 545 at *16 (cited by Plaintiffs) (quoting WRIGHT &

MILLER § 1165 at 521-522).  "[F]or cause shown" is not defined in the Rule, but it relates,

at the very least, "to some cause affecting the ability or fitness of the officer to perform his

duties."  *Gelpi v. Tugwell,* 123 F.2d 377, 381 (1st Cir. 1941).[4]  Though the Superior Court's

discretion was "wide," the Plaintiffs still had to show "some justification."  *Brunelle,* 2004

Mass. Super. LEXIS 545 at *16 (quoting WRIGHT & MILLER § 1165 at 521).  Here, as in

*Lujan v. National Wildlife Fed.,* 497 U.S. 871, 897 (1990), the Plaintiffs "made no

'showing' of cause at all."  They did not identify a single obstacle to timely service.

Instead, they knowingly sat on the lawsuit for almost six months.

Given that Mr. McMenimen's whereabouts were well-known to the Plaintiffs (*see*

Complaint ¶ 4)[5] and the complete absence of any evidence of diligence with respect to

service, the Superior Court would have improvidently granted a Rule 6(b) extension, even

if it had initially acted pursuant to that Rule.  *See Toy v. Katz,* 192 Ariz. 73, 83 (Ariz. Ct.

---

[4] Authorities like *Gelpi* are pertinent because the SJC construes the Commonwealth's version of Rule 6(b) in harmony with the cognate Federal Rule.  *Goldstein v. Barron,* 382 Mass. 181, 186-87 (1980).

[5] Not only did the Plaintiffs' know Mr. McMenimen's home and business addresses, but they even sent materials to those addresses during the lengthy period between the action's commencement and the date of service.  For instance, the Chapter 93A demand letter appended to the Complaint as Exhibit I purports to have been sent to Mr. McMenimen's office in Peabody, and Uncle Sam and Aunt Pat, as well as their learned intermediary with Mr. McMenimen, Cousin Sam, sent holiday cards (Ex. G & H) to his home. Because this portion of Mr. McMenimen's motion is based on Rule 4(j), and not Rule 12(b)(6), the Court can consider those holiday cards without converting this into a motion for summary judgment.

App. 1997) (cited with approval in *Nett v. Bellucci,* 437 Mass. 630, 642 (2002) (applying cognate rule and affirming trial court's realization that it "had improvidently granted the motions for extension" when defendants' "whereabouts were well-known" and there was "a complete lack of diligence with respect to service"). There simply was no "cause" – whether "good" or otherwise – for the failure to serve Mr. McMenimen. *See Saunders v. R.D. Werner Co., Inc.,* 1995 U.S. Dist. LEXIS 14886 at *4 (D. Mass.) (O'Toole, J.) ("The plaintiffs' motions show [no] 'cause' in a broad sense [and] say simply that their investigation of the case had been 'inexplicably delayed.'").

The Plaintiffs' first request for an extension, filed by Attorney Passatempo before the Plaintiffs engaged their current counsel, was palpably insufficient. *Shaughnessy v. Dolan,* 1996 Mass. Super. LEXIS 293 (Fecteau, J.), is an illustrative point of comparison. Unlike Attorney Passatempo, the plaintiff's attorney in *Shaughnessy* had been retained "just prior to the running of the service deadline." *Id.* at *12. Unlike this case, the defense attorneys in *Shaughnessy* "were contacted and service was attempted before the expiration of the original deadline." *Id.* at *13. Unlike *Shaughnessy,* this is "a case where the prospective defendants were broadsided with an unexpected lawsuit." *Id.* If the Rule 6(b) "for cause shown" standard was applied by the Superior Court, then it was misapplied.[6]

### B.   The Extensions Prejudiced Mr. McMenimen.

The Superior Court's discretion to find that "cause" was "shown" under Rule 6(b) "must not be exercised in a manner that prejudices the other party's substantial rights." *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 409 (1st Cir. 1985). Yet in this case, not only did the Plaintiffs fail to show cause for not timely serving Mr.

---

[6] As in *Pacific Employers Ins. Co. v Sav-A-Lot of Winchester,* 291 F.3d 392, 399 (6th Cir. 2002), the Superior Court offered no rationale for its allowance of the Plaintiffs' motion. Indeed, it is possible that a justice of the Superior Court never even heard either application, given that both extensions came in the form of margin entries by an Assistant Clerk, and not orders or margin notations from an actual justice of that Court. (DE #10 ex. A & B)

McMenimen, but the eventual service was so untimely that it significantly prejudiced Mr.

McMenimen.  In the ten weeks since Mr. McMenimen filed his Motion to Dismiss, he has

suffered a tangible effect of the Plaintiffs' election to conceal the litigation from him during

those six months; when Uncle Sam died, Mr. McMenimen lost the opportunity to use this

Court's discovery procedures to establish the fallacy of the Plaintiffs' allegations against

him.  Such prejudice was clearly foreseeable by the Plaintiffs, who were fully aware of the

seriousness of Uncle Sam's advanced age and severe illnesses.  (Complaint ¶¶ 12, 118, 123;

DE #13 ex. B ¶ 3).  As in *Pacific Employers Insurance,* post-removal events have brought

the circumstances "into sharper focus" and made the prejudice obvious to all.  291 F.3d at

399.  The key witness in this case died before his deposition could be taken.

> **C.    The Plaintiffs Sought The Extensions In Bad Faith.**

The unfortunate reality is that the Plaintiffs' tactics were not unlike those used by

the Empire of Japan in early December of 1941.  *See, e.g., Red Wing Shoe Co., Inc. v. B-*

*Jays USA, Inc.,* 2002 WL 1398538 *2 (D. Minn.) (quoting *Brierwood Shoe Corp. v. Sears,*

*Roebuck & Co.,* 479 F. Supp. 563, 568 (S.D. N.Y. 1978) (court loath to "reward Pearl

Harbor tactics at the expense of the Marquis of Queensberry rules."));  *Bausch & Lomb, Inc.*

*v. Alcide Corp.,* 684 F. Supp. 1155, 1160 (W.D. N.Y. 1987) (plaintiff engaged in "Pearl

Harbor tactics" by filing suit before negotiations ended).  Much like the Emperor's

emissaries who feigned good faith while hostile aircraft were closing in on Hawaii, two of

the three Plaintiffs (along with their intermediary) sent Mr. McMenimen and his family

effusive holiday greetings only days before they caused him to be served with a Complaint

alleging criminal misconduct and seeking more than a million dollars in damages – in a

lawsuit they had commenced nearly six months earlier.  At the same time the Plaintiffs

signed those cards with "Love", and wished Mr. McMenimen "Happy Holidays," "Merry

Christmas," "the blessings of Christmas and every happiness in the New Year", and "many

13-006-001

blessings, pep and happiness throughout the coming year" (Ex. G & H), they knew that in a matter of days, they would rend his world asunder – falsely accusing him of having "knowingly lied, deceived and misled the Plaintiffs" (Complaint ¶ 88) and intentionally inflicting emotional distress upon his Uncle Sam (*id.,* Count V), imperiling Mr. McMenimen's livelihood, damaging his reputation, and seeking to ruin him financially.

The Plaintiffs withheld the existence of this lawsuit from Mr. McMenimen with full knowledge of Uncle Sam's age, infirmity, and potential unavailability for discovery. They feigned cordial family relations while setting Mr. McMenimen up for a potentially devastating result, mindful that the longer they waited, the more likely that memories would fade, evidence would be lost, and important witnesses like Uncle Sam would no longer be available. Those tactics are the quintessence of bad faith:

> "Bad faith" is a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud.

*Spiegel v. Beacon Participations, Inc.,* 297 Mass. 398, 416 (1937). "Moral obliquity" is a generous euphemism for their conduct, because the Plaintiffs knew or should have known that their approach could deprive Mr. McMenimen of access to such a key witness. The very risk identified by the First Circuit in *Tagliente,* 949 F.2d at 8 – that "the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise" – had to have been palpable to the Plaintiffs. Yet they sat back and waited nearly six months before serving Mr. McMenimen.

IV.    "ECONOMIC LOSS" AND "LOSS CAUSATION" ARE NOT ADEQUATELY ALLEGED.

Last month, a unanimous Supreme Court summarized several decades of jurisprudence and articulated a specific list of the necessary elements of a private fraud claim under the Federal securities laws "(1) *a material representation (or omission)…*; (2) *scienter…*; (3) *a connection with the purchase or sale of a security…*; (4) *reliance…*; (5) *economic loss…*; and (6) *loss causation…*" *Dura Pharmaceuticals,* 127 S. Ct. at 1631 (*emphasis* in original). Of particular emphasis in that decision were the elements of "economic loss" and "loss causation"[7] – "a causal connection between the material misrepresentation and the loss." *Id.*

Writing for the Court, Justice Breyer reasoned "as a matter of pure logic," that a plaintiff does not necessarily suffer any loss at the time of a disputed transaction. By way of example, he cited to *Freeman v. Venner,* 120 Mass. 424, 426 (1876), in which the Supreme Judicial Court had held that a mortgagee cannot bring a tort action for damages arising from a promissory note he was fraudulently induced into executing until the note comes due. *Dura Pharmaceuticals,* 125 S. Ct. at 1632. So too in this case: the Plaintiffs, even if each of them had been fraudulently induced into purchasing the Policy, their claims under the Federal securities laws (if otherwise viable) would not mature until a claim must be paid. Until then, the claim is "uncertain and contingent." *Freeman,* 120 Mass. at 426. Even if all other elements are adequately pled and proven, the inchoate liability of Mr. McMenimen depends on the anticipated failure of the insurer to pay what the surviving Plaintiffs claim to be owed under the Policy – concerning which there could not have been

---

[7] A panel of the Massachusetts Appeals Court recently held that loss causation is not an element of common law fraud in this Commonwealth. *Reisman v. KPMG Peat Marwick LLP,* 57 Mass. App. Ct. 100, 119, *review denied,* 439 Mass. 1105 (2003). Although that holding may have been influenced by what the panel characterized as "the conceptual disarray in the term 'loss causation' in Federal securities law" (*see id.* at 117) – which disarray was eliminated by *Dura Pharmaceuticals* – Mr. McMenimen does not, in this memorandum, urge the Court to apply the loss causation rule to the state law claims.

any allegations in the Complaint.  If the surviving Plaintiffs receive the full benefit to which they are entitled, they "will have suffered no actionable wrong." *Id.*  Under the facts as alleged in the Complaint, the Plaintiffs simply cannot establish "loss causation" at trial.[8]

That inability to prove this element of requires the Court to conclude that the Plaintiffs' Complaint did not adequately allege that requirement, *Dura Pharmaceuticals.* 125 S. Ct. at 1634, further bolstering the arguments made on pages 11 and 12 of Mr. McMenimen's original brief (DE #10).  The Plaintiffs' allegations of scienter are indisputably threadbare, and their cognizable allegations of loss causation are non-existent.

CONCLUSION

For the foregoing reasons and those set forth in his original brief, Mr. McMenimen respectfully requests that his motion to dismiss all claims asserted against him be allowed.

Respectfully submitted,

FREDERICK V. MCMENIMEN, III

By his attorney,

*/s/ William P. Corbett, Jr.*

_____
William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
 *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  May 27, 2005

---

[8] While recognizing Rule 8(a)(2)'s general requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," Justice Breyer recognized that "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind."  *Id.*  To allow a plaintiff "to forego giving any indication of the economic loss and proximate cause" on which he relies would "bring about harm of the very sort" the PSLRA seeks to avoid, permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence."  *Id.* (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741 (1975)).

# *Exhibit A*

# Massachusetts Board of Bar Overseers

## of the Supreme Judicial Court
99 High Street
Boston, Ma. 02110
## Attorney Status Report



### Samuel Francis Pietropaolo
EMC Corporation
508-435-1000
176 South Street

Hopkinton MA 01748

Admitted to the bar on 1996-06-20
Current status is Active

Next Registration : March

Full office addresses for active status attorneys only.

| This attorney has no record of public discipline. | Data as of 2005-05-27 |
|---|---|

**Click HERE to SEARCH AGAIN!**

**or HERE to return to the main page.**

# *Exhibit B*

Civil No. 132092          Suffolk

IN THE MATTER OF



Samuel F. Pietropaolo
(Typed name of Petitioner)

FEB 1996

PETITION

FOR ADMISSION TO THE BAR
OF THE COMMONWEALTH

Petition filed January 16, 1996.

# THE COMMONWEALTH OF MASSACHUSETTS

Suffolk, SS.

Supreme Judicial Court
For Suffolk County

## PETITION FOR ADMISSION TO THE BAR OF THE COMMONWEALTH

I, _SAMUEL F. PIETROPAOLO_ , hereby petition for
Type or print full name

admission to the bar of the Commonwealth. I represent that I am of good moral character and
over the age of eighteen years, having been born on _REDACTED, 1964_ . I request that
I be examined for admission as an attorney and, if found qualified, be admitted as such.

Signed: _Samuel F. Pietropaolo_

Address: _350 Lexington Street_

_Newton_        _MA_   _02166_
City        State    Zip

Date: _1/14/96_

## RECOMMENDATION OF A MEMBER OF THE BAR OF THE COMMONWEALTH OF MASSACHUSETTS OR OF ANY STATE, DISTRICT OR TERRITORY OF THE UNITED STATES.
SJC Rule 3:01 subsection 1.2 (effective 10/2/95)

I, _Catherine L. Barton_ , an attorney of the bar of the
Type or print full name

_Commonwealth of Massachusetts_ , respectfully recommend that the foregoing petition be granted,
and certify that the petitioner is of good moral character.

Attorney's Signature: _Catherine L. Barton_

Business Address: _P.O. Box 613_

_Reading, MA 01867_

Telephone Number: _(617) 944-1334_

Attorney's State Registration No.: _558607_

# THE COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPREME JUDICIAL COURT

In the matter of SAMUEL F. PIETROPAOLO

## Applicant for admission as an attorney at law.

(Applicants taking Massachusetts Examination for first time)

## APPLICANT'S STATEMENT TO BOARD OF BAR EXAMINERS

1. Please type (or print legibly):

    (a) Full Name exactly as you wish it to appear on your Certificate of Admission to the Bar:

    SAMUEL        Francis        PIETROPAOLO

    First        Middle Name/Initial        Last

    (b) Address 330 Lexington Street

    City Newton    State MA    Zip 02166    Telephone No. (617) 965-1107

    (c) Place of birth Boston        MA        Date of birth REDACTED

    City        State

    (d) Have you ever been known by any other name or surname? No ✓        Yes_____

    If yes, please state name: _____

2. Have you applied before in Massachusetts for admission as an attorney?

    No ✓        Yes_____        Date_____

3. Law School(s) Attended: MASSACHUSETTS School of Law    500 Federal Park    Andover, MA

    Name        Address

    Dates of Attendance: From: 8/92    To: 1/96    Degree Awarded: J.D.

4. Are you taking the Multistate Bar Examination in a different jurisdiction in connection with a second (concurrent) application? NO ✓        YES_____

    If YES, print the name of that jurisdiction where you will sit for the MULTISTATE BAR EXAMINATION part.

    JURISDICTION_____

    *(You MUST sit in the jurisdiction which you have indicated on this line)

*See CAVEAT

5. Parents:

Father _____ SAMUEL _____ PIETROPAOLO _____, 45 Thurlow Avenue Revere MA 02151
           First Name            Last Name                                    Address

Mother _____ Patricia _____ McMenimen _____ (same)
           First Name            Last (Maiden)                    Address

6. List all colleges and universities attended and indicate information requested below:

(a) College or university other than law study:

Colby College _____ Waterville, ME _____ From 9/82 To 5/86
Name                              Location

_____ _____ From_____ To_____
Name                              Location

_____ _____ From_____ To_____
Name                              Location

Degree (if any) B.A. (Bachelor of Arts) _____ School Colby College

7. Have you ever been the subject of a disciplinary procedure or suspended or expelled from a college, university or law school? ____ NO ____ . If so, state the facts fully.
                                        (yes or no)

_____

_____

_____

_____

_____

8. List employment you have held since your 18th birthday or any business or profession engaged in on your own account. Attach additional 8½ x 11 white sheets if necessary.

( *SEE AHached* )

(a) Month & Year of Beginning & Ending Period of Employment (most recent)_____

Name & Address of Employer & Nature of Business_____

DO NOT ABBREVIATE

_____

_____

Position Held_____

Reason for Leaving_____

(b) Month & Year of Beginning & Ending Period of Employment_____

Name & Address of Employer & Nature of Business_____

DO NOT ABBREVIATE

_____

_____

Position Held_____

Reason for Leaving_____

(c) Month & Year of Beginning & Ending Period of Employment_____

Name & Address of Employer & Nature of Business_____

DO NOT ABBREVIATE

_____

_____

Position Held_____

Reason for Leaving_____

9. List jurisdictions and courts other than Massachusetts in which you have applied or been admitted to practice law. Give dates of admission to practice.  N/A

    (a) Jurisdiction            (b) Courts            (c) Date of Application and/or
                                                                  Admission

_____    _____    _____

_____    _____    _____

_____    _____    _____

_____    _____    _____

10. (a) Have you ever been disbarred, suspended, reprimanded, censured, or otherwise disciplined or disqualified as an attorney, or as a member of any other profession, or as a holder of any public office?_____No_____
                               (yes or no)

If so, state the dates, and the name and address of the authority in possession of the record thereof.

_____

_____

_____

    (b) Are any charges or complaints now pending concerning your conduct as an attorney, or as a member of any profession, or as a holder of any public office?_____No_____
                                                   (yes or no)

If so, state the name and address of the authority in possession of the record thereof.

_____

_____

_____

# Employment List for Samuel F. Pietropaolo

## (a) October 1995 to Present

**JOHN HANCOCK FINANCIAL SERVICES,** *Braintree,* **MA**
*Nature of Business:* Financial Planning
*Position Held:* Marketing Representative

## (b) April 1990 to September 1995

**BAYER FINANCIAL SERVICES,** *Wilmington,* **MA**
*Nature of Business:* Equipment Financing and Leasing
*Position Held:* Senior Financial Analyst
*Position Held:* Senior Credit Analyst
*Reason for leaving:* Career advancement.

## (c) June 1987 to March 1990

**FLEET CREDIT CORPORATION,** *Providence,* **RI**
*Position Held:* Leasing Representative

**FLEET NATIONAL BANK TRAINING PROGRAM**, *Providence,* **RI**
*Position Held:* Loan Officer Trainee

*Nature of Business:* Equipment Financing and Leasing
*Reason for leaving:* Career advancement.

## (d) May 1986 to June 1987

**BAYBANK INVESTMENT MANAGEMENT COMPANY**, *Boston,* **MA**
*Nature of Business:* Investment Management Company
*Position Held:* Investment Assistant
*Reason for leaving:* Career advancement.

## (e) March 1982 to May 1986

Full time student.

11. Have you been convicted anywhere within the last 7 years for conduct now deemed to be a felony in the jurisdiction where the judgment was rendered or within the last 5 years for conduct now deemed to be a misdemeanor in the jurisdiction where the judgment was rendered? If so answer this question ''yes'' and attach a separate document or documents in a sealed envelope giving a full explanation. _____NO_____
(yes or no)

The Board of Bar Examiners reserves the right to procure records or otherwise to verify your answer to Question 11, and, in appropriate cases to call upon you to provide such verification.

12. Have you ever been a party in any non-criminal legal proceeding not covered by Question 11 other than divorce or separate maintenance? If so, state the facts fully._____YES_____
(yes or no)

Auto Accident Nov. 1993. Passenger in other vehicle sued me for injuries. Claim was handled by my insurance company. Suit settled out-of-court

13. (a) Are there any unsatisfied judgments or court orders of continuing effect against you?_____NO_____
(yes or no)

(b) If yes, state the facts fully, giving names and addresses of creditors, amounts, dates and the nature of debts, judgments or court orders, and the reason for nonpayment of unsatisfied judgments.

14. Please staple to opposite page, two letters addressed to the Board of Bar Examiners stating facts relative to your character by persons who know you. Please call to the attention of the writer that statements should not be conclusions but should contain facts tending to help the Board of Bar Examiners reach conclusions.

15. Rule 3:01, 3.6 requires that to be admitted as an attorney, each applicant shall have passed the Multistate Professional Responsibility Examination either before or after passing the written law examination.

   (1) Have you taken and passed the MPRE?        ☑ YES. See A        ☐ NO. See B

   A. **ATTACH A COPY OF EXAMINEE'S MPRE SCORE REPORT**
   (ONLY IF SCALED SCORE OF 75 OR HIGHER)

   B. If you take the MPRE in the future, forward a copy of examinee's score report immediately, to be attached for completion of your application showing scaled score of 75 or higher.

*CAVEAT:    NO CHANGE IN THE ABOVE SPECIAL ARRANGEMENT WILL BE PERMITTED AFTER FILING THIS APPLICATION IN THE SUPREME JUDICIAL COURT, CLERK'S OFFICE FOR SUFFOLK COUNTY (JANUARY 16, 1996)

SEATING ARRANGEMENTS ON FEBRUARY 28 & 29 WILL BE MADE ONLY IN ACCORDANCE WITH APPLICANT'S ANSWERS TO #4

# CERTIFICATE

I, the applicant, certify that each of the foregoing answers is true, complete, and candid.

Dated this....*fourteenth*.................... day of.....J A N U A R Y......................, 19.9.6...

.....*Samuel F. Pietropaolo*..........
Applicant's Signature

CIVIL NO.  132092

IN THE MATTER OF

Samuel F. Pietropaolo
..............................................
(Type or print name)

APPLICATION FOR ADMISSION
as
AN ATTORNEY

APPLICANT'S STATEMENT
to the
BOARD OF BAR EXAMINERS



**LETTER OF RECOMMENDATION FOR SAMUEL F. PIETROPAOLO**

41 Washington Street
Waltham, Massachusetts 01254

January 6, 1996

Members of the Massachusetts Board of Bar Examiners
77 Franklin Street
Boston, Massachusetts  02110

Dear Members of the Board of Bar Examiners:

I am writing this letter of recommendation on behalf of Samuel F.
Pietropaolo's application  to sit for the February 1996 Bar Exam and for his
admission to the Massachusetts Bar.

I have known Sam for the last four years on both a professional and personal
level.  In the business environment, Sam is a conscientious, honest, and
hard-working professional.  Among his peers, his opinion and advice is often
sought to resolve problems or to manage difficult situations.  This type of
recognition is one of the highest forms of respect one can achieve.  He
supports the efforts of his colleagues and helps guide all who work with him
to perform at their highest levels.

On the personal side, Sam is a trusted friend.  Although his schedule is
complete with work, school, and family obligations, he always carves out
time for those who need him.  I cherish my relationship with him and offer
you my highest recommendation.  I believe Sam will be a tremendous asset
to the Massachusetts Bar and to the legal community in whole.

Respectively,

Suzanne Poirier

January 10, 1996

Members of the Massachusetts Board of Bar Examiners
Supreme Judicial Court, Suffolk County
14th Floor, New Court House
Boston, Massachusetts 02108

Dear Members of the Board of Bar Examiners,

I have known Sam all my life. As his younger brother, I am in a unique position to offer this recommendation, since I have observed him for nearly thirty years. Overall, Sam is a kind, thoughtful, and responsible individual. He exemplifies these traits through the life he leads.

As the oldest sibling, Sam always has been thoughtful and caring. He has been a source of encouragement and support for all members of our family. As we both wind down our law school careers, Sam has proven to be an even more valuable resource for me. For the past three years, he has provided meaningful advice and has been an inspiration during our law school education.

His friends consider him dependable and trustworthy. Although his time is pressed by obligations of school, a large family, and his friends, Sam has managed to balance these demands, while still working towards achieving his personal goals. His care and concern for others has earned him the respect of his peers.

While law school has limited Sam's free time, he believes in giving back to the community. In high school he coached youth soccer. During college, Sam spent time in the summer working with special needs children. Even during law school, Sam volunteers his time serving as Treasurer for a local credit union.

I am proud of my brother's achievements. His successes both professionally and personally reflect his unselfish character. A character based on honesty, trustworthiness, and loyalty. Sam's continued exercise of these characteristics will make him a fine addition to the Massachusetts Bar.

Sincerely,

Vincent P. Pietropaolo
330 Lexington Street
Newton, Massachusetts  02166



# National Conference of Bar Examiners
MULTISTATE PROFESSIONAL RESPONSIBILITY EXAMINATION

## EXAMINEE'S REPORT OF SCORES

Please review carefully all information printed below. If any data are incorrect or incomplete, contact the board of bar examiners in the jurisdiction to which your scores were reported.

| RAW SCORE | SCALED SCORE | TEST DATE | SOCIAL SECURITY NUMBER* |
|-----------|--------------|-----------|-------------------------|
| 035 | 087 | 08/12/94 | |

*If you did not indicate a Social Security number on your answer sheet, an identification number was assigned to your record for processing purposes.

```
PIETROPAOLO, SAMUEL F
330 LEXINGTON ST
NEWTON, MA  02166
```

Your scores (shown above) were reported to the following jurisdiction as you requested in Block J of your answer sheet:

## MASSACHUSETTS

This jurisdiction requires a minimum passing **scaled** score of:

## 075

Each jurisdiction has the authority to determine its own passing score. If the jurisdiction you chose does not list a passing score, check with the board of bar examiners in that state to determine the passing score.

## EXPLANATION OF SCORES

Your **RAW SCORE** is the number of test questions that you answered correctly in the examination. The lowest possible raw score is 0; the highest is 50.

**SCALED SCORES** are standard scores that range from 50 (low) to 150 (high). The original mean (average) scaled score was established at 100. The conversion of raw scores to scaled scores involves a statistical process that adjusts for variations in difficulty of different forms of the examination so that any particular scaled score will represent the same level of knowledge from test to test. For instance, if this test were more difficult than previous forms, then your scaled score would be adjusted upward to account for this difference. If this test were easier than previous forms, then your scaled score would be adjusted downward to account for this difference. The purpose of these adjustments is to help ensure that no examinee is unfairly penalized (or rewarded) for taking a harder (or easier) form of the test.

## ADDITIONAL SCORE REPORT REQUESTS

If, after the examination, you decide that you would like to have your scores sent to one or more boards of bar examiners in addition to the jurisdiction you indicated on your answer sheet, you may do so by writing to the address below. Your request should include your name, address, Social Security number, date of birth, test date, your signature, and each board of bar examiners you wish to receive a copy of your scores. Enclose $15.00 for each board of bar examiners you request. Payment must be in the form of a cashier's check, certified check, or money order made payable to the National Conference of Bar Examiners. No cash, business checks, or personal checks will be accepted.

Duplicate score reports may also be requested by following this procedure.

## REQUESTS FOR RECHECKING OF ANSWER SHEETS

A request to have your answer sheet rechecked must be made within two months of the original test date. The request should include your name, Social Security number, date of birth, test date, and your signature, and should be sent to the address below.

Multistate Professional Responsibility Examination
Records Department
P.O. Box 451, Iowa City, Iowa 52243
Telephone: (319) 337-1304

# THE COMMONWEALTH OF MASSACHUSETTS.

Supreme Judicial Court.

Suffolk, ss.

In the matter of the application of... SAMUEL. F.. PIETROPAOLO..............

Address.... 330 LEXINGTON STREET, NEWTON, MA  02166 ..............

for admission as an attorney.

_____

I certify that the above-named applicant was a member of the.....................

MASSACHUSETTS SCHOOL OF LAW .......................................(Law School)

.................................................................

{ Day      X_

{ Evening—

AUGUST, 1992                     JANUARY, 1996

from........................................to.................................

and that to the best of my belief the applicant was in regular attendance at this school during that period.

The applicant has furnished evidence to this school of a college education as follows:

.................................................................

A.B. COLBY COLLEGE ............................... (Undergraduate Degree)

.................................................................

The applicant has been graduated from MASSACHUSETTS  SCHOOL  OF  LAW Law School,

the THIRD.....day of .JANUARY...19 96 , with the degree of (LLB or JD)........JD................

I understand that you expect me to report to you by separate communication anything which appears to me to be adverse in respect of the moral character or fitness to practice law of the applicant or anything which in my opinion should be investigated by the Board with respect thereto.

Date this... THIRD.............day of... JANUARY ...............19 96

DEAN.............. (Title)

.................................................................
(Signature)

MASSACHUSETTS SCHOOL OF LAW ...................... (Name of School)

.................................................................

# *Exhibit C*

# Massachusetts Board of Bar Overseers

## of the Supreme Judicial Court

99 High Street
Boston, Ma. 02110

## Attorney Status Report



### Ronald P. Passatempo

(781) 395-7678
23 Forest St., Suite #105

Medford MA 02155

Admitted to the bar on 1996-06-20
Current status is Active

Next Registration : March

Full office addresses
for active status
attorneys only.

This attorney has no record of public discipline. | Data as of 2005-05-27

**Click HERE to SEARCH AGAIN!**

**or HERE to return to the main page.**

# *Exhibit D*

Civil No.    132508    Suffolk

IN THE MATTER OF

OF THE COMMONWEALTH

FOR ADMISSION TO THE BAR



RONALD PATRICK PASSATEMPO
(Type or print name)

Petition filed January 15, 1996.

# THE COMMONWEALTH OF MASSACHUSETTS

Suffolk, SS.

Supreme Judicial Court
For Suffolk County

## PETITION FOR ADMISSION TO THE BAR OF THE COMMONWEALTH

I, _Ronald P. Passatempo_ , hereby petition for
Type or print full name

admission to the bar of the Commonwealth. I represent that I am of good moral character and
over the age of eighteen years, having been born on___ ; **REDACTED** ' _1959_ . I request that
I be examined for admission as an attorney and, if found qualified, be admitted as such.

Signed: _Ronald P. Passatempo_

Address: _4 Apache Trail_

_Medford, Mass. 02155_
City                State    Zip

Date: _Jan 11, 1996_

## RECOMMENDATION OF A MEMBER OF THE BAR OF THE COMMONWEALTH OF MASSACHUSETTS OR OF ANY STATE, DISTRICT OR TERRITORY OF THE UNITED STATES.
SJC Rule 3:01 subsection 1.2 (effective 10/2/95)

I, _Joseph E. Devlin_ , an attorney of the bar of the
Type or print full name

_Massachusetts_ , respectfully recommend that the foregoing petition be granted,
and certify that the petitioner is of good moral character.

Attorney's Signature: _Joseph E. Devlin_

Business Address: _500 Federal Street_

_Andover, MA 01810_

Telephone Number: ( _508_ ) _681-0800_

Attorney's State Registration No.: _122543_

# THE COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                                    SUPREME JUDICIAL COURT

In the matter of _Ronald P. Passatempo_

## Applicant for admission as an attorney at law.

(Applicants taking Massachusetts Examination for first time)

## APPLICANT'S STATEMENT TO BOARD OF BAR EXAMINERS

1. Please type (or print legibly):

    (a) Full Name exactly as you wish it to appear on your Certificate of Admission to the Bar:

    _Ronald_          _Patrick_          _Passatempo_
       First             Middle Name/Initial          Last

    (b) Address _4 Apache Trail_

    City _Medford_ State _MA._ Zip _02155_ Telephone No. (_617_) _391-5951_

    (c) Place of birth _Revere_          _Mass_ Date of birth __ **REDACTED**
       City                    State

    (d) Have you ever been known by any other name or surname? No _✓_ Yes _____

    If yes, please state name: _N/A_

2. Have you applied before in Massachusetts for admission as an attorney?

    No _✓_          Yes _____          Date _____

3. Law School(s) Attended: _School of Law_ _500 Federal St._ _Andover, MA 01810_
                                 _Massachusetts_
                                 Name          Address

    Dates of Attendance: From: _August 1992_ To: _January 1996_ Degree Awarded: _J. D_

4. Are you taking the Multistate Bar Examination in a different jurisdiction in connection with a second (concurrent) application?  NO _✓_          YES _____

    If YES, print the name of that jurisdiction where you will sit for the MULTISTATE BAR EXAMINATION part.

    JURISDICTION _N/A_
    *(You MUST sit in the jurisdiction which you have indicated on this line)

*See CAVEAT

5. Parents:

Father _PETER J. PASSATEMPO_ _____ _4 APACHE TRAIL Medford Ma_ _02155_
First Name               Last Name          Address

Mother _CATHERINE PASSATEMPO_ _DiBlasi 4 APACHE TRAIL MEDFORD MA_ _02155_
First Name               Last (Maiden)       Address

6 . List all colleges and universities attended and indicate information requested below:

(a) College or university other than law study:

_WESTERN NEw ENGLAND College_ _Springfield, Ma._ From_JAN. 1987_ To _MAY 1991_
Name                                Location

_University of Massachusetts_ _Boston, Ma._ From_Sept. 1980_ To _MAY 1982_
Name                        Location

_Salem STATE College_ _Salem, Ma._ From_Sept. 1977_ To _MAY 1979_
Name                   Location

_M. B. A._ ——————— WESTERN New England College
Degree (if any)_ _B. S._ _____ School _University of Massachusetts_

7 . Have you ever been the subject of a disciplinary procedure or suspended or expelled from a college, university or law school?_ _NO_ ____ . If so, state the facts fully.
(yes or no)

_N/A_ _____
_____
_____
_____
_____
_____

8. List employment you have held since your 18th birthday or any business or profession engaged in on your own account. Attach additional 8½ x 11 white sheets if necessary.

(a) Month & Year of Beginning & Ending Period of Employment (most recent) *Nov. 1986 – April 1995*

Name & Address of Employer & Nature of Business *HONDA CARS of BOSTON /*
DO NOT ABBREVIATE
*FOREIGN ENGINE Company 100 BroadwAY, Everett, MA 02149*
*RETAIL Automobile Dealership*

Position Held *BUSINESS MANAGER*

Reason for Leaving *STUDY FOR LAST YEAR of LAW School and STUDY FOR BAR Exam*

(b) Month & Year of Beginning & Ending Period of Employment *Sept. 1983 – Nov. 1986*

Name & Address of Employer & Nature of Business *Belotti Oldsmobile / C.L.T LEASING*
DO NOT ABBREVIATE
*Company BroadwAY, Somerville, Mass and Route 287*
*WHITE PLAINS, New York RETAIL Automobile Dealership and LEASING Company of AUTOS*

Position Held *LEASE MANAGER*

Reason for Leaving *Dealership / LEASING COMPANY WAS SOLD*

(c) Month & Year of Beginning & Ending Period of Employment *April 1981 – January 1983*

Name & Address of Employer & Nature of Business *West MARSHALL JUNIOR High School*
DO NOT ABBREVIATE
*WATERTOWN, MASS.  TEACHING STUDENTS*

Position Held *SUBSTITUTE TEACHER*

Reason for Leaving *TO GAIN FULL TIME employment*

9. List jurisdictions and courts other than Massachusetts in which you have applied or been admitted to practice law. Give dates of admission to practice.

| (a) Jurisdiction | (b) Courts | (c) Date of Application and/or Admission |
|---|---|---|
| N/A | | |
| | | |
| | | |
| | | |

10. (a) Have you ever been disbarred, suspended, reprimanded, censured, or otherwise disciplined or disqualified as an attorney, or as a member of any other profession, or as a holder of any public office? __N/A – NO__
(yes or no)

If so, state the dates, and the name and address of the authority in possession of the record thereof.

N/A

(b) Are any charges or complaints now pending concerning your conduct as an attorney, or as a member of any profession, or as a holder of any public office? __N/A – NO__
(yes or no)

If so, state the name and address of the authority in possession of the record thereof.

N/A

11. Have you been convicted anywhere within the last 7 years for conduct now deemed to be a felony in the jurisdiction where the judgment was rendered or within the last 5 years for conduct now deemed to be a misdemeanor in the jurisdiction where the judgment was rendered? If so answer this question "yes" and attach a separate document or documents in a sealed envelope giving a full explanation. _____ NO _____
(yes or no)

The Board of Bar Examiners reserves the right to procure records or otherwise to verify your answer to Question 11, and, in appropriate cases to call upon you to provide such verification.

12. Have you ever been a party in any non-criminal legal proceeding not covered by Question 11 other than divorce or separate maintenance? If so, state the facts fully. _____ NO _____
(yes or no)

13. (a) Are there any unsatisfied judgments or court orders of continuing effect against you? _____ NO _____
(yes or no)

(b) If yes, state the facts fully, giving names and addresses of creditors, amounts, dates and the nature of debts, judgments or court orders, and the reason for nonpayment of unsatisfied judgments.

N/A

14. Please staple to opposite page, two letters addressed to the Board of Bar Examiners stating facts relative to your character by persons who know you. Please call to the attention of the writer that statements should not be conclusions but should contain facts tending to help the Board of Bar Examiners reach conclusions.

15. Rule 3:01, 3.6 requires that to be admitted as an attorney, each applicant shall have passed the Multistate Professional Responsibility Examination either before or after passing the written law examination.

(1) Have you taken and passed the MPRE?     ☑ YES. See A          ☐ NO. See B

A. **ATTACH A COPY OF EXAMINEE'S MPRE SCORE REPORT**
   (ONLY IF SCALED SCORE OF 75 OR HIGHER)

B. If you take the MPRE in the future, forward a copy of examinee's score report immediately, to be attached for completion of your application showing scaled score of 75 or higher.

\*CAVEAT:    NO CHANGE IN THE ABOVE SPECIAL ARRANGEMENT WILL BE PERMITTED AFTER FILING THIS APPLICATION IN THE SUPREME JUDICIAL COURT, CLERK'S OFFICE FOR SUFFOLK COUNTY (JANUARY 16, 1996)

SEATING ARRANGEMENTS ON FEBRUARY 28 & 29 WILL BE MADE ONLY IN ACCORDANCE WITH APPLICANT'S ANSWERS TO #4

## CERTIFICATE

I, the applicant, certify that each of the foregoing answers is true, complete, and candid.

Dated this . . . . . . . . . . . *15TH* . . . . . . . . . . . . . . . day of . . . *JANUARY* . . . . . . . . . . . . . . , 19 *96* . . .

*Ronald P. Passatempo*
Applicant's Signature

CIVIL NO. 132508

IN THE MATTER OF

*Ronald Patrick Passatempo*

(Type or print name)

APPLICATION FOR ADMISSION

as

AN ATTORNEY

APPLICANT'S STATEMENT

to the

BOARD OF BAR EXAMINERS

January 15, 1996

To the Board of Bar Examiners:

Subject:  Letter of Recommendation

It is with my adoration and confidence to recommend Ronald Passatempo to the Massachusetts Bar Association.  I have known Ronald Passatempo for thirty-five years and growing up with him I have learned that he is of extreme moral character.  Since his days of adolescence, he has continually offered his community services to children through coaching and umpiring little league sports.  He has also volunteered his services at the local parish on many occasions. Ronald's work ethic is exemplary and he always provides the highest quality work and dedication.  Ronald is an honest, conscientious person and will be a great representative of the Massachusetts Bar Association.

Sincerely,

Steven A. Passatempo
360 High Street
Medford, MA 02155

January 14, 1995

To The Board of Bar Examiners,

It is with great pleasure that I recommend Ronald Passatempo to become a member of the Massachusetts Bar Association. I have known Ronald both personally and professionally for the past three years. Ronald displays tremendous work ethics with both his employees and clients. He is always willing to consider both sides of the business transaction which is a rare quality in today's business environment.

In Ronald's personal life he continually motivates those around him to attain their goals and become successful. He is always willing to help those less fortunate to overcome their difficulties.

Again, Ronald would be a great asset to the Massachusetts Bar Association because of his dignity and high moral character.

Sincerely,

Ann Marie Damian
18 Fletcher Road
Lynnfield, MA 01940



# National Conference of Bar Examiners
MULTISTATE PROFESSIONAL RESPONSIBILITY EXAMINATION

## EXAMINEE'S REPORT OF SCORES

Please review carefully all information printed below. If any data are incorrect or incomplete, contact the board of bar examiners in the jurisdiction to which your scores were reported.

| RAW SCORE | SCALED SCORE | TEST DATE | SOCIAL SECURITY NUMBER* |
|-----------|--------------|-----------|-------------------------|
| 034 | 082 | 08/12/94 | |

*If you did not indicate a Social Security number on your answer sheet, an identification number was assigned to your record for processing purposes.

```
PASSATEMPO, RONALD P
4 APACHE TRAIL
MEDFORD, MA  02155
```

Your scores (shown above) were reported to the following jurisdiction as you requested in Block J of your answer sheet:

**MASSACHUSETTS**

This jurisdiction requires a minimum passing **scaled** score of:

**075**

Each jurisdiction has the authority to determine its own passing score. If the jurisdiction you chose does not list a passing score, check with the board of bar examiners in that state to determine the passing score.

## EXPLANATION OF SCORES

Your **RAW SCORE** is the number of test questions that you answered correctly in the examination. The lowest possible raw score is 0; the highest is 50.

**SCALED SCORES** are standard scores that range from 50 (low) to 150 (high). The original mean (average) scaled score was established at 100. The conversion of raw scores to scaled scores involves a statistical process that adjusts for variations in difficulty of different forms of the examination so that any particular scaled score will represent the same level of knowledge from test to test. For instance, if this test were more difficult than previous forms, then your scaled score would be adjusted upward to account for this difference. If this test were easier than previous forms, then your scaled score would be adjusted downward to account for this difference. The purpose of these adjustments is to help ensure that no examinee is unfairly penalized (or rewarded) for taking a harder (or easier) form of the test.

## ADDITIONAL SCORE REPORT REQUESTS

If, after the examination, you decide that you would like to have your scores sent to one or more boards of bar examiners in addition to the jurisdiction you indicated on your answer sheet, you may do so by writing to the address below. Your request should include your name, address, Social Security number, date of birth, test date, your signature, and each board of bar examiners you wish to receive a copy of your scores. Enclose $15.00 for each board of bar examiners you request. Payment must be in the form of a cashier's check, certified check, or money order made payable to the National Conference of Bar Examiners. No cash, business checks, or personal checks will be accepted.

Duplicate score reports may also be requested by following this procedure.

## REQUESTS FOR RECHECKING OF ANSWER SHEETS

A request to have your answer sheet rechecked must be made within two months of the original test date. The request should include your name, Social Security number, date of birth, test date, and your signature, and should be sent to the address below.

# THE COMMONWEALTH OF MASSACHUSETTS.

Suffolk, ss.                                                    Supreme Judicial Court.

In the matter of the application of... *Ronald Patrick Passatempo*

Address... *4 Apache Trail    Medford, Ma    02155*

for admission as an attorney.

——————

I certify that the above-named applicant was a member of the......................

...MASSACHUSETTS SCHOOL OF LAW ...................................(Law School)

{ Day      —

{ Evening-X̶

from... AUGUST, 1992 ...................to...... JANUARY, 1996 ...............

and that to the best of my belief the applicant was in regular attendance at this school during that period.

The applicant has furnished evidence to this school of a <u>college education</u> as follows:

M.B.A., WESTERN NEW ENGLAND COLLEGE

B.S., UNIVERSITY OF MASSACHUSETTS AT BOSTON ......... (Undergraduate Degree)

The applicant has been graduated from MASSACHUSETTS SCHOOL OF LAW Law School, the THIRD day of JANUARY 19 96, with the degree of (LLB or JD) JD

I understand that you expect me to report to you by separate communication anything which appears to me to be adverse in respect of the moral character or fitness to practice law of the applicant or anything which in my opinion should be investigated by the Board with respect thereto.

Date this... THIRD ............ day of... JANUARY ...........1996

.................................................. DEAN

(signature) ........................................(Title)

MASSACHUSETTS SCHOOL OF LAW ..............................(Name of School)

# *Exhibit E*

View Individual At A Glance



*Commonwealth of Massachusetts*

**LICENSING**

**Search Individual**

**Search Business Entity**

**Search Company**

# View Individual At A Glance

**Division of Insurance**

Consolidated Licensing And Regulation Information System

**claris**

Page 1 of 1

Home Licensing Demographics Help Producer

| | |
|---|---|
| Name: | Samuel F Pietropaolo |
| SSN: | REDACTED-7727 |
| DOB: | 1964 |
| Status: | Cancelled - No Licenses |
| Original Approval Date : | 01/03/1996 |
| Continuing Education Hours: | |
| Notes : | Check Number:0123123 Check Amount:100.00 Jan 3 1996 12:00AM Lines of Authority: LA |
| Total Lines: | |

## ADDRESS

| | ADDRESS | PHONE | FAX | E-MAIL |
|---|---|---|---|---|
| Mailing | 330 Lexington Street Newton, Massachusetts 02166 | | | |

## ACTIVE LICENSES

| TYPE | STATUS | LIC # | ORIG APPROVAL | CANCEL | LINES |
|---|---|---|---|---|---|
| No Records Exist | | | | | |

## BUSINESS ENTITY AFFILIATIONS: (Total Active = 0)

| BUSINESS ENTITY | FED ID | START | END | LINES |
|---|---|---|---|---|
| No Records Exist | | | | |

## EXEMPTIONS

| EXEMPTION | START DATE |
|---|---|
| No Records Exist | |

## CANCELED LICENSES

| TYPE | COMPANY NAME | STATUS | LIC # | ORIG APPROVAL | CANCEL |
|---|---|---|---|---|---|
| Agent | John Hancock Life Insurance Company | Cancelled - Renewal | 1201400 | 01/03/1996 | 06/30/2001 |
| Agent | John Hancock Variable Life Insurance Company | Cancelled - Renewal | 1409594 | 01/03/1996 | 06/30/2001 |

## EXAMS

| EXAM | PASSED | DATE | END |
|---|---|---|---|
| Accident & Health | Y | 12/16/1995 | 06/30/2001 |
| Life | Y | 12/16/1995 | 06/30/2001 |

## MONETARY TRANSACTIONS

| LIC # | LICENSE | FEE DESCRIPTION | AMOUNT | DATE |
|---|---|---|---|---|
| 1201400 | Agent | Individual Agent - Life Accident & Health | $50.00 | 11/01/2000 |
| 1409594 | Agent | Individual Agent - Life Accident & Health | $50.00 | 11/01/2000 |

LOGOUT

Home Licensing Demographics Help Producer

# *Exhibit F*

# Provident Mutual Life Insurance Company

Provident Mutual Life Insurance Company
A Life Insurance Policy Illustration
Flexible Premium Variable Life
*OptionsPlus*

Samuel Pietropoalo

July 16, 1998

*Issued by:*
Provident Mutual Life Insurance Company
1050 West Lakes Drive
Berwyn, PA 19312-2405

*Presented by:*
Frederick V. McMenimen III
28 Front Street
Exeter, NH 03833

The assumed hypothetical investment rates of return shown are illustrative only and should not be deemed a
representation of past or future investment rates of return. Actual investment rates of return may be more or less than
those shown and will depend on a number of factors, including the premium allocation chosen by the policyholder.
The death benefits, policy account values and cash surrender values for a policy would be different from those shown
if the actual rates of return averaged the illustrated return percentages over a period of years, but fluctuated above or
below those averages for individual policy years.  No representation can be made by Provident Mutual Life Insurance
Company or 1717 Capital Management Company that these assumed investment rates of return can be achieved for
any one year or sustained over any period of time.

# Provident Mutual Life Insurance Company

## OPTIONSPLUS
## FLEXIBLE PREMIUM ADJUSTABLE VARIABLE LIFE

**Samuel Pietropoalo**                          **Male Standard, Age 69**

$200,000  Flexible Premium Adjustable Variable Life

| | |
|---|---|
| Initial Monthly Premium | $1,416.66 |
| Rollover Deposit | $20,000.00 |
| Total Premium Deposit at Issue | $21,416.66 |

| | | | Current Charges | | |
|---|---|---|---|---|---|
| | | | 12.00% Gross (10.88%Net) Hypothetical Investment Return | | |
| End of Year | Age | Planned Annual Premium | Policy Value | Cash Surrender Value | Death Benefit |
| 1 | 70 | 37,000 | 26,207 | 20,625 | 200,000 |
| 2 | 71 | 17,000 | 33,115 | 26,513 | 200,000 |
| 3 | 72 | 17,000 | 39,635 | 32,459 | 200,000 |
| 4 | 73 | 17,000 | 45,527 | 38,351 | 200,000 |
| 5 | 74 | 17,000 | 50,617 | 43,441 | 200,000 |
| | | 105,000 | | | |
| 6 | 75 | 17,000 | 54,860 | 47,684 | 200,000 |
| 7 | 76 | 1,042 | 40,787 | 35,046 | 200,000 |
| 8 | 77 | 13,563 | 34,753 | 30,448 | 200,000 |
| 9 | 78 | 17,000 | 27,983 | 25,112 | 200,000 |
| 10 | 79 | 17,000 | 18,396 | 14,961 | 200,000 |
| | | 170,605 | | | |
| 11 | 80 | 17,000 | 1,896 | 1,896 | 200,000 |
| | | 187,605 | | | |

This illustration is valid only if all pages are included.

# Provident Mutual Life Insurance Company

## OPTIONSPLUS
## FLEXIBLE PREMIUM ADJUSTABLE VARIABLE LIFE

**Samuel Pietropoalo**                                      **Male Standard, Age 69**

| | | |
|---|---|---:|
| $200,000 | Flexible Premium Adjustable Variable Life | |
| | Initial Monthly Premium | $1,416.66 |
| | Rollover Deposit | $20,000.00 |
| | Total Premium Deposit at Issue | $21,416.66 |

| | | | Guaranteed Charges | | | Current Charges | | |
|---|---|---|---|---|---|---|---|---|
| | | | 8.00% Gross (-1.33% Net) Hypothetical Investment Return | | | 12.00% Gross (10.68% Net) Hypothetical Investment Return | | |
| End of Year | Age | Planned Annual Premium | Policy Value | Cash Surrender Value | Death Benefit | Policy Value | Cash Surrender Value | Death Benefit |
| 1 | 70 | 37000 | 11570 | 5989 | 200000 | 26207 | 20625 | 200000 |
| 2 | 71 | 17000 | 1390 | 0 | 200000 | 33115 | 26513 | 200000 |
| 3 | 72 | 17000 | 0 | 0 | 0 | 39635 | 32459 | 200000 |
| 4 | 73 | 17000 | 0 | 0 | 0 | 45527 | 38351 | 200000 |
| 5 | 74 | 17000 | 0 | 0 | 0 | 50817 | 43441 | 200000 |
| 6 | 75 | 17000 | 0 | 0 | 0 | 54860 | 47684 | 200000 |
| 7 | 76 | 1042 | 0 | 0 | 0 | 40787 | 35046 | 200000 |
| 8 | 77 | 13563 | 0 | 0 | 0 | 34753 | 30448 | 200000 |
| 9 | 78 | 17000 | 0 | 0 | 0 | 27983 | 25112 | 200000 |
| 10 | 79 | 17000 | 0 | 0 | 0 | 16396 | 14961 | 200000 |
| 11 | 80 | 17000 | 0 | 0 | 0 | 1896 | 1896 | 200000 |

### Summary Values at Age(s) 70

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | 70 | 37000 | 11570 | 5989 | 200000 | 26207 | 20625 | 200000 |

# Provident Mutual Life Insurance Company

## OPTIONSPLUS
## FLEXIBLE PREMIUM ADJUSTABLE VARIABLE LIFE

Presented by:   Frederick V. McMenimen III.
Prepared for:   Samuel Pietropoalo, Male Standard, age 69, Special Premium Class F.

Face amount: $200,000                              Premium Mode: Monthly (APP)
Planned Monthly Premium: $1,416.66                 Riders: None

This personalized sales illustration has been produced especially for you based on the information you have provided as to age, sex, premium classification, and insurance needs.

The illustration shows how the policy account values, cash surrender values and death benefits change with (1) the investment experience of the contract based on hypothetical gross annual investment return assumptions and (2) guaranteed vs. Current charges and deductions. The maximum cost of the insurance rates are based on the Commissioners 1980 Standard Ordinary Smoker or Nonsmoker Mortality Table.

The policy values assume a premium allocation strategy of:

**Sentinel Advisors Growth   100%**

The allocation of cash values among the separate accounts or guaranteed account affects policy values, since the charges assessed against each account vary.

The columns under the heading "Guaranteed" assume that throughout the life of the policy, the monthly charge for cost of insurance is based on the maximum level permitted under the Policy (based on the 1980 CSO Smoker/Nonsmoker Table), a Premium Expense Charge of 5.00%, maximum monthly administrative fee of $12 and an initial monthly administrative charge of $17.50 for the first 12 months; the columns under the heading "Current" assume that throughout the life of the Policy, the monthly charge for cost of insurance is based on the current cost of insurance rate, a Premium Expense Charge of 3.50%, current monthly administrative fee of $7.50 and an initial monthly administrative charge of $17.50 for the first 12 months.

# Provident Mutual Life Insurance Company

## OPTIONSPLUS
## FLEXIBLE PREMIUM ADJUSTABLE VARIABLE LIFE

The amounts shown in all tables reflect an averaging of certain other charges described below that may be assessed under the Policy, depending upon how premiums are allocated. These other charges are not applicable to the Guaranteed Account. The total of the asset charges reflected in the Current and Guaranteed illustrations, including the mortality and expense risk charge, is 1.18% and 1.33%, respectively. This total is based on the current level of charges as follows:

- A daily charge for mortality and expense risks equivalent to an annual rate of 0.75% (could increase to 0.90% which is reflected in the Guaranteed Illustrations).

- The level of investment advisory fees paid by the Portfolios of the Funds which are indirectly borne by the assets of the Separate Accounts chosen.

- Expenses charged against the Portfolios of the Funds which are indirectly borne by the assets of the Separate Accounts chosen.

- A transaction charge against the Zero Coupon Bond Separate Account (if chosen) of 0.25% for Current illustrations to recover the transaction charge paid by PMLIC (could increase to 0.50% which is reflected in the Guaranteed Illustrations).

The policy loan rate charged is 6%. When a policy loan is taken, the collateral for the policy loan is transferred to the Loan Account. The Loan Account earns interest at a current rate of 4.5%. Beginning at the later of the tenth policy year or the anniversary nearest age 65, the current interest rate credited to the Loan Account will increase to 5.5%. The interest rate on the Loan Account is guaranteed to be at least 4%.

The hypothetical values shown in the tables do not reflect any charges for federal income taxes, since Provident Mutual is not currently making such charges. However, if in the future such charges are made, the gross annual investment rate of return would have to exceed the stated investment rates by a sufficient amount to cover the tax charges in order to produce death benefits, policy account values, and cash surrender values illustrated.

The assumed hypothetical investment rates of return shown are illustrative only and should not be deemed a representation of past or future investment rates of return. Actual investment rates of return may be more or less than those shown and will depend on a number of factors, including the premium allocation chosen by the policyowner. The death benefits, policy account values, and cash surrender values for a policy would be different from those shown if the actual rates of return averaged the illustrated return percentages over a period of years, but fluctuated above or below those averages for individual policy years. No representation can be made by Provident Mutual Life Insurance Company or 1717 Capital Management Company that these assumed investment rates of return can be achieved for any one year or sustained over any period of time.

# Provident Mutual Life Insurance Company

## OPTIONSPLUS
## FLEXIBLE PREMIUM ADJUSTABLE VARIABLE LIFE

You have elected the Accelerated Death Benefit Rider.  There is no premium charge for this
optional rider.  Either of two events can trigger payment of the benefit under the rider.  These are a
terminal illness or permanent confinement in a nursing care facility.  In either event, the
policyowner can elect to have a portion of the death benefit paid as a lump sum or in twelve or
twenty-four level monthly payments.  For more details, see the Required Disclosure Form and the
Accelerated Death Benefit Rider brochure.

This proposal may not fully reflect your actual tax situation. We suggest that you consult your
professional tax advisors regarding the interpretation of current and proposed tax laws.

**ILLUSTRATIONS MUST BE ACCOMPANIED OR PRECEDED BY A CURRENT
PROSPECTUS.** You should refer to the prospectus for additional information. The Prospectus
includes illustrations of Death Benefits, Cash Surrender Values, and Accumulated Premiums
(accumulated at 5% interest compounded annually).

This product is underwritten by Provident Mutual Life Insurance Company and distributed by
1717 Capital Management Company, P.O. Box 15626, Wilmington, DE 19850. As of the 1996
edition of Best's Insurance Report, Provident Mutual received A.M. Best's Excellent (A) rating for
financial strength.

This illustration assumes that $20,000.00 was rolled over into the policy as part of a 1035
exchange in year 1 with a basis of $20,000.00.

For presentation in the state of MA by Registered Representative Frederick V. McMenimen III.

# Provident Mutual Life Insurance Company

## OPTIONSPLUS
## FLEXIBLE PREMIUM ADJUSTABLE VARIABLE LIFE

Samuel Pietropaolo                                      Male Standard, Age 69

| | | |
|---|---|---|
| $200,000 | Flexible Premium Adjustable Variable Life | |
| | Initial Monthly Premium | $1,416.66 |
| | Rollover Deposit | $20,000.00 |
| | Total Premium Deposit at Issue | $21,416.66 |

## SIGNATURE PAGE

I certify that this illustration has been presented to the applicant and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no representations that are inconsistent with the illustration.

Frederick V. McMenimen III                             7/19/88
                                                        Date

I have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be higher or lower. Frederick V. McMenimen III has told me they are not guaranteed.

I also understand that the benefits provided to me will be governed by the terms of my policy as issued.

Applicant/Owner Name                                    7/19/88
                                                        Date

This illustration is valid only if all pages are included.

# *Exhibit G*





*Wishing you the blessings*
*of Christmas and every*
*happiness in the New Year.*

# *Exhibit H*

