UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
RONALD P. PASSATEMPO, Trustee of the   )
Samuel Pietropaolo Irrevocable Trust, *et al.,* )
                                                    )
                              *Plaintiffs,*         )
                                                    )        Case No. 05-CV-10118-GAO
                    v.                              )
                                                    )
FREDERICK V. MCMENIMEN III, *et al.,*   )
                                                    )
                              *Defendants.*         )
_____)

**SUPPLEMENTAL MEMORANDUM OF
DEFENDANT FREDERICK V. MCMENIMEN III
CONCERNING STATUTE OF REPOSE FOR
FEDERAL SECURITIES FRAUD CLAIMS**

Pursuant to the Court's directive during the May 31, 2005 hearing on the motion of

defendant Frederick V. McMenimen, III ("Mr. McMenimen") to dismiss the First Amended

Complaint ("Complaint") of Ronald Passatempo ("Attorney Passatempo"), the late Samuel

Pietropaolo ("Uncle Sam") and Patricia Pietropaolo ("Aunt Pat") (collectively "Plaintiffs"),

Mr. McMenimen respectfully submits this supplemental memorandum of law concerning

the statute of repose applicable to the portions of Counts VII and VIII which allege

violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) ("Section

10(b)"), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5

("Rule 10b-5").

## ARGUMENT

Counts VII and VIII of the Complaint, insofar as they allege violations of the Federal securities laws, must be dismissed with prejudice, because the Plaintiffs' allegations "leave no doubt" that they are time-barred. *Young v. Lepone,* 305 F.3d 1, 8 (1st Cir. 2002) (quoting *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 509 (1st Cir. 1998)). The Plaintiffs bear "the burden of proving facts demonstrating the timeliness of [their] action," *Young,* 305 F.3d at 8, but it is abundantly clear that their Section 10(b) and Rule 10b-5 claims were extinguished four years ago:

- *Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson,* 501 U.S. 350, 364 (1991), mandated commencement of the Plaintiffs' claims alleging violations of the Federal securities laws on or before July 28, 2001, because any violation occurred no later than July 28, 1998;

- Section 804 of the Sarbanes-Oxley Act of 2002, Pub. L. 107-204 ("Sarbanes-Oxley"), superseded *Lampf* and extended the repose period, but Sarbanes-Oxley did not revive claims that had already been extinguished before the new statute took effect;

- Tolling principles do not apply to those statutes of repose; and

- Because the repose period began to run from the alleged "violation", the Plaintiffs' "last misrepresentation" argument is without merit.

The Court will thus be required to determine whether to exercise its jurisdiction over the pendent non-Federal claims, dismiss those claims without prejudice, or certify to the Supreme Judicial Court ("SJC") dispositive issues concerning G.L. c. 175, § 181. As discussed more fully below, the law is sufficiently clear for the Court to dismiss the Plaintiffs' state law claims, despite the absence of SJC precedents construing that particular statute. If the Court, as a matter of comity, chooses to defer to the Massachusetts judiciary, it should nonetheless retain jurisdiction over the pendent claims and certify the dispositive questions pursuant to SJC Rule 1:03.

I.    THE FEDERAL SECURITIES FRAUD CLAIMS ARE TIME-BARRED.

Before July 2002, every lawsuit instituted under the private right of action implied into Section 10(b) and Rule 10b-5 had to be "commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf,* 501 U.S. at 364.  Here, the alleged violation took place no later than July 28, 1998, the date on which the "Flexible Premium Adjustable Variable Life" insurance policy ("Policy") was issued, so *Lampf* operated to bar the Federal securities fraud claims no later than July 28, 2001.

Even if the Plaintiffs' claims fell under Sarbanes-Oxley, they would still be time-barred.  Under that statute's extended repose provision, claims still must be asserted within 5 years of the alleged violation.  28 U.S.C. § 1658(b).  Because the only violation of the Federal securities laws alleged by the Plaintiffs took place on July 28, 1998, Sarbanes-Oxley would have required this action to be commenced more than 11 months before the Plaintiffs commenced this litigation.

A.    *SARBANES-OXLEY DID NOT REVIVE THE PLAINTIFFS' STALE CLAIMS.*

*Lampf*'s absolute 3-year repose deadline had passed more than a year before Congress enacted Sarbanes-Oxley, so Counts VII and VIII of the Complaint, insofar as they purport to assert Federal securities fraud claims, have been time-barred since 2001. Sarbanes-Oxley did not revive them.

An act of Congress does not revive time-barred causes of action unless the statute specifically provides for retroactive application.  *Hughes Aircraft Co. v. United States,* 520 U.S. 939, 950 (1997); *Landgraf v. USI Film Prods.,* 511 U.S. 244, 264 (1994); *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988).  Language mandating retroactivity must be "clear, strong, and imperative."  *Brown v. Hot, Sexy & Safer Prods., Inc.,* 68 F.3d

525, 538 (1st Cir. 1995) (quoting *Landgraf,* 511 U.S. at 269), *cert. denied,* 516 U.S. 1159 (1996).  For a statute be applied retroactively, Congress must have used "language that was so clear that it could sustain only one interpretation."  *INS v. St. Cyr,* 533 U.S. 289, 316-17 (2001).  Congress did not do so when it adopted the extended limitations and repose periods set forth in Sarbanes-Oxley, which was silent concerning the revival of claims that were previously time-barred.

This Court would find itself isolated on a jurisprudential island if it were to hold that Sarbanes-Oxley revived these Plaintiffs' time-barred causes of action.[1]  Neither the Supreme Court nor the First Circuit has been presented with the issue, but the Second, Fourth, Seventh and Eighth Circuits have all held that Sarbanes-Oxley did not breathe life into deceased causes of action, and no Court of Appeals has made a contrary ruling.  *See In re ADC Telecommunications, Inc. Securities Litigation,* 2005 U.S. App. LEXIS 10353 *10 (8th Cir. 2005) (no revival of time-barred claims); *Glaser v. Enzo Biochem, Inc.,* 2005 U.S. App. LEXIS 4598 *13-14 (4th Cir.) (same); *Foss v. Bear, Stearns & Co.,* 394 F.3d 540, 542 (7th Cir. 2005) (same); *Aetna Life Ins. Co. v. Enterprise Mortg. Accept. Co., LLC,* 391 F.3d 401, 406 (2nd Cir. 2004) (same).  *But see Tello v. Dean Witter Reynolds, Inc.,* 2005 U.S. App. LEXIS 9977 at *51-52 & 55 n.18 (11th Cir.) (declining to address "premature" "statutory-interpretation issue of whether previously time-barred claims are revived by the SOA statute of limitations").  In this District, Judge Saris and Judge Woodlock have both been confronted with the issue, and both have held that Sarbanes-Oxley did not rekindle extinguished claims.  *Quaak v. Dexia, S.A.,* 357 F. Supp. 2d 330, 336 (D. Mass. 2005) (Saris, J.); *Swack v. Credit Suisse First Boston,* 2004 U.S. Dist. LEXIS 22749 at *18 n.10

---

[1] When this Court was recently faced with the revival issue, it determined that "[t]he question need not be resolved," because the claims had been brought within the *Lampf* limitations and repose periods.  *In re Credit Suisse First Boston Analyst Reports Securities Litigation,* 2005 U.S. Dist. LEXIS 6345 at *29-*31 (D. Mass.) (O'Toole, J.).

(D. Mass.) (Woodlock, J.).  Nationwide, every other District Judge (save one) to address this issue held that Sarbanes-Oxley did not revive moribund causes of action – and the anomaly was vacated on appeal.[2]  *See, e.g., Great S. Life Ins. Co. v. Enterprise Mortg. Accept. Co., LLC,* 295 F. Supp. 2d 307, 315-17 (S.D.N.Y. 2003) (Sarbanes-Oxley did not revive time-barred claims), *aff'd sub nom. Aetna Life Ins. Co. v. Enterprise Mortg. Accept. Co., LLC,* 391 F.3d 401, 406 (2nd Cir. 2004); *Ballard v. Tyco Int'l,* 2005 U.S. Dist. LEXIS 6982 at *18 (D. N.H); *Wuliger v. Anstaett,* 2005 U.S. Dist. LEXIS 5502 at *29-*41 (N.D. Ohio) (same); *Lieberman v. Cambridge Partners, LLC,* 2004 U.S. Dist. LEXIS 11553 at *10 (E.D. Pa.) (same); *Zouras  v. Hallman,* 2004 U.S. Dist. LEXIS 19684 at *47-*48 (D. N.H) (same); *Newby v. Enron Corp.,* 2004 U.S. Dist. LEXIS 8158 at *58-*79 (S.D. Tex.) (same); *In re WorldCom, Inc. Securities Litigation,* 2004 U.S. Dist. LEXIS 11696 at *21 (S.D.N.Y.) (same); *In re Royal Ahold N.V. Securities & ERISA Litigation,* 351 F. Supp. 2d 334, 364-68 (S.D.N.Y. 2004) (same); *Zurich Capital Markets, Inc. v. Coglianese,* 2004 U.S. Dist. LEXIS 19432 at *35 (N.D. Ill.) (same); *Glaser v. Enzo Biochem, Inc.,* 303 F. Supp. 2d 724, 734 (E.D. Va. 2003) (same), *aff'd in part, rev'd in part,* 2005 U.S. App. LEXIS 4598 (4th Cir.); *In re Heritage Bond Litigation,* 289 F. Supp. 2d 1132, 1148 (C.D. Cal. 2003) (same); *In re DDi Corp. Securities Litigation,* 2005 U.S. Dist. LEXIS 1056 at *49 n.21 (C.D. Cal.) (same).

In any event, whether Sarbanes-Oxley revived the Plaintiffs' stale claims is a *non sequitur,* because the new statute also has a repose provision, which sets an absolute cut-off

---

[2] The outlier, *Roberts v. Dean Witter Reynolds, Inc.,* 2003 U.S. Dist. LEXIS 5676 at *12-*13 (M.D. Fla.), held that Sarbanes-Oxley revived claims extinguished under *Lampf,* but it allowed an interlocutory appeal because "a difference of opinion may exist."  *Roberts* was the first opinion addressing the issue, so the District Judge who decided it did not have the benefit of the analysis in the numerous other decisions since issued.  *Roberts* has since been criticized extensively.  *See, e.g., Lieberman,* 2004 U.S. Dist. LEXIS 11553 at *10 n.12 (noting that the reasoning of *Roberts* "rests on unpersuasive citations to the SOA's legislative history"); *Zouras,* 2004 U.S. Dist. LEXIS 19684 at *48 n.10 (same); *Newby,* 2004 U.S. Dist. LEXIS 8158 at *54 n.12 (same); *Great S. Life,* 295 F. Supp. 2d at 316-17 (same).  Earlier this month, *Roberts* was vacated by the Eleventh Circuit.  *Tello,* 2005 U.S. App. LEXIS 9977.

date of "5 years after such violation."  28 U.S.C. § 1658(b)(2).  Even if the weight of

authorities were wrong and Sarbanes-Oxley did revive the Plaintiffs' claims, they would

have been extinguished again a year before this lawsuit was commenced.

### B.    THE FEDERAL REPOSE PERIOD WAS NOT TOLLED.

*Lampf* set forth a two-part time limitation on securities fraud actions.  One element

ran from discovery of the violation, but the other was an absolute bar affording defendants

repose 3 years from the violation itself.  July 28, 2001 served "as an absolute cut-off point"

– an "outside limit" on when the Plaintiffs might have brought their Federal securities fraud

claims.  *Oropallo v. United States,* 994 F.2d 25, 31 (1st Cir. 1993).

The Supreme Court closed the door tightly on any tolling arguments the Plaintiffs

might make:

> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling. One commentator explains: "The inclusion of the three-year period can have no significance in this context other than to impose an outside limit." Bloomenthal, The Statute of Limitations and Rule 10b-5 Claims: A Study in Judicial Lassitude, 60 U. Colo. L. Rev. 235, 288 (1989). See also ABA Committee on Federal Regulation of Securities, Report of the Task Force on Statute of Limitations for Implied Actions 645, 655 (1986) (advancing "the inescapable conclusion that Congress did not intend equitable tolling to apply in actions under the securities laws"). Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.

*Lampf,* 501 U.S. at 363.  Similar reasoning would apply if Sarbanes-Oxley controlled.

Statutes of repose "always tend to cut against the remedial results that plaintiffs might

otherwise enjoy," and Congress addressed that concern in 2002 by extending the repose

period – not by eroding the definiteness and finality of its operation.  *P. Stolz Fam.

Partnership v. Daum,* 355 F.3d 92, 102-04 (2nd Cir. 2004).  Although *Lampf* and Sarbanes-

Oxley both have components that run from discovery, those provisions could only shorten

the time for claims to be brought; the repose provisions set the outside deadlines.[3]

---

[3] It is thus unnecessary for Mr. McMenimen to address the date on which the Plaintiffs' "discovered" their putative claims.

### D.    THE REPOSE PERIOD RAN FROM THE LAST ALLEGED "VIOLATION."

The Plaintiffs have attempted an "end-run" around *Lampf*'s explicit rejection of

tolling in connection with the 3-year repose period. As they did in their initial response to

Mr. McMenimen's motion to dismiss, the Plaintiffs likely will conflate the words

"violation" and "misrepresentation" to argue that their claims were reborn every time Mr.

McMenimen allegedly said something false during the six years after the Policy was

issued. However, both *Lampf*, 501 U.S. at 363-64, and Sarbanes-Oxley, 28 U.S.C. §

1658(b)(2), have repose periods that run from the alleged "violation" of the Federal

securities laws, not from a post-transaction "misrepresentation."

Even if their factual averments were true, the Plaintiffs did not allege a "violation"

that occurred after the Policy's issuance. The Federal securities laws are not so broad "as

to convert every common-law fraud that happens to involve securities into a violation."

*SEC v. Zandford,* 535 U.S. 813, 820 (2002). Section 10(b) and Rule 10b-5 only prohibit

misconduct "in connection with the purchase or sale of any security." What constitutes a

"violation" of Rule 10b-5 and Section 10(b) has been tightly confined by Congress and the

Supreme Court. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 736-755 (1975).

Here, there was no "purchase or sale of any security" after July 28, 1998 – when the

Policy was issued. Where, as here, the operative transaction predated the alleged

misrepresentations, and where the later misrepresentation did not motivate any purchase or

sale, there could be no "violation" of Section 10(b)(5) or Rule 10b-5. *Howe v. Bank for

Int'l Settlements,* 194 F. Supp. 2d 6, 25-26 (D. Mass. 2002) (Lindsay, J.). Had there been

any post-issuance misrepresentations, those would be removed from the underlying

exchange of securities, would not give rise to any "violation," and would not begin the

repose period anew. *See Caviness v. Durand Resources Corp.,* 983 F.2d 1295, 1299-1303

(4th Cir. 1993) (rejecting tolling of *Lampf* repose period by fraudulent concealment).

Furthermore, as the Supreme Court reaffirmed less than two months ago, there are six necessary elements of a private fraud claim under the Federal securities laws "(1) *a material representation (or omission)*…; (2) *scienter...;* (3) *a connection with the purchase or sale of a security...*; (4) *reliance...*; (5) *economic loss...*; and (6) *loss causation..."* *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S. Ct. 1627, 1631 (2005) (*emphasis* in original). Of particular emphasis in that decision were the elements of "economic loss" and "loss causation" – "a causal connection between the material misrepresentation and the loss." *Id.* Even if the Plaintiffs could establish the first four elements with respect to the post-1998 statements, they cannot establish the last two.

## II.    IF THE COURT DISMISSES THE FEDERAL SECURITIES FRAUD CLAIMS, IT SHOULD EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER THE REMAINING CLAIMS.

The Court may be tempted to decline jurisdiction over the futile pendent claims after it dismisses the Federal causes of action, but it should resist that temptation and retain jurisdiction. The Court need not "throw out the bath water with the baby." *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995). As in *Curley v. North Am. Man Boy Love Ass'n,* 2003 U.S. Dist. LEXIS 12488 at *6-*7 (D. Mass.) (O'Toole, J.), "[i]t is in the interest of justice and judicial economy" for the Court to exercise its supplemental jurisdiction over the pendent state law claims.

Part of a properly-removed civil action, Counts I through VI, IX, X, and the non-Federal aspects of VII and VIII are integral components of this case, based on the same nexus of facts as the Section 10(b) and Rule 10b-5 claims. The Supreme Court:

> has long adhered to principles of pendent and ancillary jurisdiction by which by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'"

*City of Chicago v. International Coll. Of Surgeons,* 522 U.S. 156, 165 (1997) (quoting

*United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)).  This principle is codified in 28

U.S.C. § 1367, and it "applies with equal force to cases removed to federal court as to cases

initially filed there."  *City of Chicago,* 522 U.S. at 165.[4]

Consequently, "the termination of the foundational federal claim does not divest the

district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an

exercise of the court's informed discretion."  *Roche v. John Hancock Mut. Life Ins. Co.,* 81

F.3d 249, 256-57 (1st Cir. 1996).  The Court may retain jurisdiction or dismiss the

Complaint without prejudice.[5]  28 U.S.C. § 1367(c)(3); *Carnegie-Mellon University v.

Cohill,* 484 U.S. 343, 356-57 (1988).  Where removal was based on a Federal question,

dismissal "may sometimes be appropriate if the federal question claim is eliminated early

in the proceedings," but "each case must be gauged on its own facts."  *Roche,* 81 F.3d at

256-57.  This Court "may retain jurisdiction over state-law claims notwithstanding the

early demise of all foundational federal claims."  *Rodriguez,* 57 F.3d at 1177.

If the Federal claims were "substantial," their dismissal "does not, by itself, require

that all pendent state-law claims be jettisoned."  *Id.*  In determining which option to elect,

the Court "must reassess its jurisdiction, this time engaging in a pragmatic and case-

specific evaluation of a variety of considerations that may bear on the issue."  *Camelio v.*

---

[4] Because the claims alleging Federal securities violations are "so related" to the pendent state claims "that they form part of the same case or controversy", and are not "separate and independent" claims, 28 U.S.C. § 1367(c), not 28 U.S.C. § 1441(c), bounds the Court's discretion whether to retain jurisdiction.

[5] Such dismissal would not be equivalent to the dismissal Mr. McMenimen seeks pursuant to Mass. R. Civ. P. 4(j) and Fed. R. Civ. P. 12(b)(5), because a dismissal resulting from a District Court's decision to decline supplemental jurisdiction tolls applicable statutes of limitations for 30 days.  28 U.S.C. § 1367(d). That aspect of Mr. McMenimen's motion remains viable.  Contrary to the Plaintiffs' assertion, they never requested, pursuant to Mass. R. Civ. P. 6(b), an extension of the time in which to serve Mr. McMenimen; instead, they invoked the Superior Court's time standards, which impose the same "good cause" standard as Rule 4(j).  Regardless, even if they had invoked Rule 6(b), the Plaintiffs never showed any cause for their failure to serve Mr. McMenimen, and the Superior Court never found that they had satisfied the "for cause shown" test of Rule 6(b).

*American Federation,* 137 F.3d 666, 672 (1st Cir. 1998).  Factors to consider include "comity, judicial economy, convenience, fairness, and the like."  *Roche,* 81 F.3d at 257.

As discussed below, none of those factors militates in favor of declining jurisdiction.  As in *Roche,* the Federal and state law claims are "interconnected," and "powerful interests in both judicial economy and fairness tug[ ] in favor of retaining jurisdiction."  *Id.*  In one forum or another, G.L. c. 175, § 181 will mandate dismissal of the pendent claims.  This Court is as capable as the Superior Court to order that dismissal, and its disposition of those claims would materially shorten the time it takes to resolve the parties' dispute.  An established certification procedure exists to allay comity concerns.[6]

A.    *MASSACHUSETTS LAW IS CLEAR ENOUGH FOR THIS COURT TO APPLY G.L. c. 175, § 181 TO THE PENDENT CLAIMS AND DISMISS THEM.*

Comity would not be disturbed if the Court were to retain jurisdiction over the pendent causes of action after dismissing the Federal securities fraud claims.   Because the state law claims are futile, this Court would needlessly burden the Commonwealth and the parties by requiring them to begin again in the Superior Court.  It would not "step on the toes" of the Massachusetts judiciary to address G.L. c. 175, § 181, and "no purpose would be served by . . . prolonging this doomed litigation by sending it back to the state court to be dismissed there."  *Sullivan v. Conway,* 157 F.3d 1092, 1095 (7th Cir. 1998) (Posner, J.).

The plain text of G.L. c. 175, § 181 indicates that the Plaintiffs' state law causes of action expired a year earlier than their putative Federal claims.  Under that statute:

---

[6] One case-specific factor to consider is whether the Plaintiffs have engaged in improper tactics to manipulate the forum.  *Carnegie-Mellon University,* 484 U.S. at 357.  Here, the Plaintiffs' odd reliance on the answer and affirmative defenses of Mr. McMenimen's co-defendant, Barry Armstrong– whom they nominally accuse of fraud – emanates a piscatorial odor of fraudulent joinder.  Absent the inclusion of Mr. Armstrong and his company, New England Advisory Group, as defendants, Mr. McMenimen – a New Hampshire resident– would have been entitled to remove the case on diversity grounds, in addition to the Federal question on which he did base removal.  Mr. McMenimen is not presently in a position to make the extraordinary showing necessary to establish fraudulent joinder (*see In re Massachusetts Diet Drugs Litigation,* 338 F. Supp. 2d 198, 202 (D. Mass. 2004) (O'Toole, J.) & *Anderson v. R.J. Reynolds Tobacco Co.,* 1999 U.S. Dist. LEXIS 22261 at *4-*5 (D. Mass.) (O'Toole, J.)), but the aroma is strong enough that it should inform the Court's exercise of discretion under 28 U.S.C. § 1367(c).

> The insured under any policy of life … insurance … who was induced to procure it by any [misrepresentations to insured] by an officer or agent of the company issuing or executing it may recover . . . in an action brought within two years after the date of issue thereof.

G.L. c. 175, § 181.  Mr. McMenimen is alleged to have been an agent of the company issuing the Policy (*see* Complaint ¶¶ 4, 8, 83, 88, 98, 106, 111, 115, 120, 127, 133, 138), so he is certainly within the class of persons to whom the Legislature sought to afford repose. Accordingly, the statute makes clear that any civil action should have been commenced nearly four years before these Plaintiffs filed suit.

Although the SJC has not spoken directly to G.L. c. 175, § 181 in the century since it was enacted,[7] precedents and the statute itself[8] are sufficiently unambiguous for this Court to ascertain how that provision would be construed.  As in *Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266, 275 (5th Cir. 1976) (cited with approval in *Bi-Rite Enterprises, Inc. v. Bruce Miner Co., Inc.,* 757 F.2d 440, 443 n.3 (1st Cir. 1985)), "[t]his clearly is not a case" where the Court would be "required to 'guess' state law from one or two questionable precedents."  526 F.2d at 275.  This Court can and should decide the issues presented.  *See Choroszy v. Wentworth Inst. of Tech.,* 915 F. Supp. 446, 453 n.4 (D. Mass. 1996) (O'Toole, J.) (denying request for certification and citing *Bi-Rite* for proposition that "it is inappropriate for a federal court to use such a procedure when the course state courts would take is reasonably clear") *but see Anderson,* 1999 U.S. Dist. LEXIS 22261 at *8-*9 (dismissing Federal claim on which removal was based, declining to consider pendent law claims, and remanding them to Superior Court because they "raise potentially novel questions of state law").

---

[7] The Legislature adopted G.L. c. 175, § 181 in 1907, and the statute has not been amended since 1939.

[8] The SJC has held that "[e]lementary rules of statutory construction" require that statutes of repose (like all other legislative enactments) be construed with "the statutory language itself as the principal source of insight into the legislative purpose," and that "the words of the statute" be accorded "their 'usual and natural meaning.'"  *Klein v. Catalano,* 386 Mass. 701, 702 (1982).

## 1.    G.L. c. 175, § 181 Is A Statute Of Repose.

The Court would dispose of the Plaintiffs' state law claims simply by holding that G.L. c. 175, § 181 is a statute of repose, not a statute of limitations.  Because the Plaintiffs filed suit against Mr. McMenimen long after July 28, 2000 – the statute's repose point in this case – none of the pendent state claims would require factual development, trial or other engagement by this Court.   The Court need not resort to surmise or conjecture to conclude that G.L. c. 175, § 181 is a statute of repose; its plain text, amplified by SJC precedents construing similar statutes, makes its nature patently clear.

The distinction between statutes of repose and limitations is crucial to the Court's determination of whether the Plaintiffs' state law claims survive Mr. McMenimen's Rule 12(b)(6) motion.  Under Massachusetts law, a statute of limitations "is a procedural measure which 'normally governs the time within which legal proceedings must be commenced. . .'" *McGuinness v. Cotter,* 412 Mass. 617, 621 (1992) (quoting *Klein,* 386 Mass. at 702).  "A statute of repose, on the other hand, 'completely eliminates a cause of action' after the time period established has run . . . ." *McGuinness,* 412 Mass. at 622 (quoting *Klein,* 386 Mass. at 708).  Like the *Lampf* and Sarbanes-Oxley repose rules discussed above, a statute of repose adopted by the Commonwealth's Legislature places:

> an absolute time limit on the liability of those within its protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury is not discovered, until after the statute's time limit has expired.

*McGuinness,* 412 Mass. at 622.  Its purpose "is to give particular types of defendants the benefit of a date certain on which their liability for past conduct will definitively come to an end." *Nett v. Bellucci,* 437 Mass. 630, 639 (2002) (responding to certified question).

A statute of repose thus limits "the time within which the action it creates may be brought, without any regard to the accrual of an action." *Nissan Motor Corp. v. Commissioner of Revenue,* 407 Mass. 153, 158 (1990).  Key to determining whether a

statute fixing a deadline for commencing a lawsuit operates as a statute of repose is the question of whether it runs from a "definitely established event." *McGuinness,* 412 Mass. at 622 (quoting *id.*). By specifically defining the triggering event, the Legislature "expressly" manifests its intention that it be construed as a statute of repose. *Id.*

G.L. c. 175, § 181 certainly satisfies these criteria. Indeed, the SJC has never declined to treat a statute with such a specific trigger as a statute of repose. Unlike statutes of limitation (*see, e.g.,* G.L. c. 260, §§ 2, 2A & 5A; G.L. c. 110, § 410(e)), G.L. c. 175, § 181 does not run from when a claim "accrues" or is "discovered." There is no vagueness or uncertainty about the date from which it begins to run. The trigger under G.L. c. 175, § 181 – the Policy's "date of issue" – could not be more definite.

As the Legislature did with respect to other fields, like medicine and construction, it "decided that the uncertainties inherent in statutes of limitation, which run from the unpredictable and theoretically never-ending date on which a cause of action can 'accrue,' are contrary to the needs" of life insurance companies and their agents. *Nett,* 437 Mass. at 639. G.L. c. 175, § 181 effectuates that Legislature's sound policy determination that "[t]here comes a time when [a life insurance agent] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not be called on to resist a claim 'when evidence has been lost, memories have faded, and witnesses have disappeared.'" *Id.* (quoting *Klein,* 386 Mass. at 709 & *Rosenberg v. North Bergen,* 61 N.J. 190, 201 (1972)). The unavailability of Uncle Sam for deposition and trial brightly illuminates the wisdom of that principle; absent proper application of G L. c. 175, § 181, the harm that has been done to Mr. McMenimen by the Plaintiffs' election to wait so long to sue (and then waiting even longer to serve him) is *"Damnum absque injuria* – a wrong for which the law affords no redress." *Rosenberg,* 61 N.J. at 199.

2.    **Because The "Gist" Of The Complaint Is Fraudulent Inducement Of Their Purchase Of A Life Insurance Policy, G.L. c. 175, § 181 Applies To Every State Law Claim.**

G.L. c. 175, § 181 specifically addresses claims like these Plaintiffs', so that statute it operated to bar each of the state law causes of action nearly 4 years before the Plaintiffs asserted them. The suit was not commenced before July 28, 2000, and its essence is fraudulent inducement of their purchase of the Policy, so G.L. c. 175, § 181 extinguished their state law claims.

That the Plaintiffs attempt to shoehorn their claims into myriad statutory, contract and tort theories has no bearing on which time limitation to apply. Under well-established Massachusetts law, the Plaintiffs cannot "escape the consequences of a statute of repose" merely by affixing multifarious labels to their claims; the Court "must look to the 'gist of the action.'" *Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*, 396 Mass. 818, 823 (1986) (quoting *Hendrickson v. Sears,* 365 Mass. 83, 85 (1974)). It is "the essential nature of the right asserted," not the nomenclature used by the Plaintiffs, which determines the appropriate statute of limitations or repose. *Micera v. Neworld Bank,* 412 Mass. 728, 731 (1992). General statutes of limitations must yield to the specific statute of repose promulgated for situations like this. G.L. c. 260, § 19; *Lavecchia v. MBTA,* 441 Mass. 240, 243 (2004); *Maltz v. Smith Barney, Inc.,* 427 Mass. 560, 563 (1998).

Although it has not been addressed by the SJC, the question of whether G.L. c. 175, § 181 should be applied in situations like this is not one of first impression in this District. The issue before this Court is indistinguishable from that precipitating Judge Freedman's decision to grant summary judgment in *Loguidice v. Metropolitan Ins. Co.,* Civil Action No. 97-10060-FHF, slip op. at 4-6 (D. Mass. Oct. 11, 2002) (copy attached as Appendix ("App.") 1), *aff'd* 336 F.3d 1, 4-6 (1st Cir. 2003). Like this case, *Loguidice* involved numerous contract, tort and statutory theories. Although the SJC had never construed G.L.

c. 175, § 181, Judge Freedman was "enlightened" by two recent decisions from the

Appellate Division of the Commonwealth's District Court – *Grande v. PFL Life Ins. Co.,*

2000 Mass. App. Div. LEXIS 96 *5-6 (App. 3) and *Slingsby v. Metropolitan Ins. Co.,* 2001

Mass. App. Div. LEXIS 7 (App. 4) – and concluded that G.L. c. 175, § 181 is the

appropriate statute to apply in situations like this.  App. 1 at 4-5.[9]  *See also Wilson Farm,*

*Inc. v. Berkshire Life Ins. Co.,* 2002 Mass. Super. LEXIS 376 *19 n.4 (Brassard, J.)

(applying G L. c. 175, § 181 to tort claim but not addressing whether it is a statute of

repose).  This Court should follow Judge Freedman's well-reasoned lead and dismiss the

stale state law claims asserted by these Plaintiffs.[10]

### 3.    G.L. c. 175, § 181 Was Not Tolled.

Because G.L. c. 175, § 181 is a statute of repose, not a statute of limitations, neither

the so-called "discovery rule," "equitable estoppel," nor the fraudulent concealment statute

has any bearing on its application.  The SJC recognizes "that statutes of repose are harsh,"

but it has nevertheless been consistent in its "strict approach to statutes of repose."  *Nett,*

437 Mass. at 646.

The SJC recently reaffirmed its "strict approach" in response to a question certified

by the First Circuit, holding that "[u]nlike statutes of limitation, statutes of repose may not

be 'tolled' for any reason, as 'tolling' would deprive the defendant of the certainty of the

repose deadline and thereby defeat the purpose of a statute of repose."  *Id.* at 635.  "To

---

[9] According to the case docket, *Loguidice* was originally assigned to this Court before it was transferred to the Springfield Division.  App. 2 at 4-5.

[10] Although Judge Freedman characterized G L. c. 175, § 181 as a "statute of limitations", App. 1 at 5-6, he did not address the distinction between statutes of limitations and repose.  Despite the label he affixed to the statute, Judge Freedman treated it as a statute of repose.  After all, he found that the plaintiff purchased the policy at issue in 1991, *id.* at 1, and the plaintiff alleged that she had not discovered her causes of action until 1996, *id.* at 2, but the docket reveals that she filed suit prior to January 10, 1997, when the action was transferred to this District.  Had Judge Freedman treated G L. c. 175, § 181 as a statute of limitations, and not a statute of repose, he could only have found that the plaintiff's claims were timely.  Neither *Grande* nor *Slingsby,* on which Judge Freedman based his decision, had required the Appellate Division to address whether G L. c. 175, § 181 operated as a statute of repose, because the plaintiffs' alleged discovery of their claims outside the statute's two-year period.

serve this purpose, there must be a clear, bright-line method for determining the statute's operation, as only certainty in the measurements provides the certainty that such defendants are to be accorded." *Id.* at 639. Any "vagary or flexibility" would only "defeat the purposes of the statute." *Id.* "The only way to satisfy the 'absolute time limit' of a statute of repose is to 'commence' the action prior to the expiration of that time limit." *Id.* at 635 (quoting *McGuinness,* 412 Mass. at 622).

Accordingly, insofar as the Plaintiffs' state law claims are concerned, G.L. c. 175, § 181 forbids the Court from considering whether they "did not discover or reasonably could not have discovered" the harms they allege before the two-year period specified in the statute of repose had expired – even if a defendant allegedly concealed their claims. *Sullivan v. Iantosca,* 409 Mass. 796, 798 (1991). The date on which the Plaintiffs learned of their putative causes of action is of no consequence. *Nissan Motor Corp.,* 407 Mass. at 157-58. "The injury need not have occurred, much less have been discovered" for the statute to extinguish an otherwise viable claim. *Klein,* 386 Mass. at 702. G.L. c. 175, § 181 imposed an absolute cut-off date of July 28, 2000 for commencing a civil action alleging fraudulent inducement of the Plaintiffs' purchase of the Policy.

**B.    IF THE COURT HAS RESERVATIONS ABOUT WHETHER G.L. C. 175, § 181 IS A STATUTE OF REPOSE, IT SHOULD RETAIN JURISDICTION AND CERTIFY THE ISSUE TO THE SUPREME JUDICIAL COURT.**

Because there are ample authorities from which the Court can discern that the Plaintiffs' state law causes of action are time-barred, it should retain its supplemental jurisdiction over those claims, decide the questions attending G.L. c. 175, § 181 and dismiss the whole Complaint, not just the Federal securities fraud claims. However, if concerns about comity give the Court pause about construing that statute, the appropriate course would be to certify the dispositive question of whether it is a statute of repose. *See Dahill*

*v. Boston Police Dep't,* 2000 U.S. Dist. LEXIS 21932 at *30-*31 (D. Mass.) (Woodlock, J.) (exercising supplemental jurisdiction and certifying state law question to SJC).

"Certification of a question of Massachusetts law to the Supreme Judicial Court is proper when the question is 'determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the [SJC].'" *United States Steel v. DeMatteo Constr. Co.,* 315 F.3d 43, 53 (1st Cir. 2002) (quoting SJC R. 1:03). Whether to certify a question is committed to this Court's sound discretion. *U.S. Steel,* 315 F.3d at 53. The "most important" factors in that determination are "the closeness of the question and the existence of sufficient sources of state law – statutes, judicial decisions, attorney general's opinions – to allow a principled rather than conjectural conclusion." *Shevin,* 526 F.2d at 274-75. Also important are "considerations of comity" and "practical limitations of the certification process." *Id.* Here, there are ample resources available to permit a principled determination by this Court, but if it nonetheless believes there to be some ambiguity about the nature of G.L. c. 175, § 181, those factors militate in favor of certification.

Certification effectuates the policy that Federal courts should avoid making "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs,* 383 U.S. at 726. "[T]hrough certification of novel or unsettled questions of [Massachusetts] law for authoritative answers by [the Commonwealth's] highest court, a federal court may save 'time, energy, and resources and help build a cooperative judicial federalism.'" *Romero v. Colegio de Abogados de Puerto Rico,* 204 F.3d 291, 306 (2000) (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 77 (1997) & *Lehman Bros. v. Schein,* 416 U.S. 386, 391 (1974)). The procedure recognizes that "the decisions of state courts are definitive pronouncements of the will of the States as sovereigns." *Bush v. Gore,*

531 U.S. 98, 112 (2000).  Certification may "greatly simplify" an ultimate adjudication in this Court.  *Arizonans for Official English,* 520 U.S. at 79 (quoting *Bellotti v. Baird,* 428 U.S. 132, 151 (1976)).  In recent years, unsettled questions concerning Massachusetts statutes of repose have thus been certified to and answered by the SJC.  *See, e.g., Nett v. Bellucci,* 269 F.3d 1, 8 (1st Cir. 2001) (certifying questions concerning application of statutes of repose); *Nett,* 437 Mass. at 631 (answering certified questions); *Protective Life Ins. Co. v. Sullivan,* 89 F.3d 1, 4 (1st Cir. 1996) (certifying question involving 2-year incontestability statute); *Protective Life Ins. Co. v. Sullivan,* 425 Mass. 615, 617 (1997) (answering certified questions).

Courts sometimes view delay as "an inevitable side effect of certification." *Shevin,* 526 F.2d at 275-76.  However, the contrary is true in this case.  Given the dispositive nature of the issues attending G.L. c. 175, § 181, a final resolution of the dispute between the parties would be hastened if the case were certified.  If the state law claims were dismissed without prejudice and reasserted in the Superior Court, it would be several years before the SJC reached the time-bar issues, if it were ever to reach them, and the parties may have to slog through expensive, time-consuming discovery, motion practice, and trial before receiving any definitive consideration of the repose issues.  The Superior Court would be compelled to reopen its file, administer the case, oversee discovery battles and other pretrial activity, and afford the parties a trial.  Certification could eliminate the need for such expensive and dilatory activity.[11]  The clarity to be achieved by certification would be several more years away if this action were left to wend its way through the Commonwealth's appellate process.

---

[11] In *Nett,* for example, the SJC answered the First Circuit's questions less than eleven months after they were certified.  In *Protective Life Insurance,* the SJC took only 50 weeks to resolve the certified issues.  If a similar turnaround were possible in this case, the SJC would address the dispositive repose issue – and effectively dispose of the time-barred state law claims – long before the case could even be reached for trial in the Superior Court.  *See* Second Amended Standing Order 1-88 ¶ E(i)(5) (requiring firm trial date within 14 months after commencement of action) (Mass. Super.).

Consequently, instead of imposing additional burdens on the parties, continued exercise of the Court's supplemental jurisdiction – perhaps coupled with certification of the dispositive issue concerning G.L. c. 175, § 181 – would give rise to economies maximizing the prospects for the prompt but fair resolution that should be this Court's lodestar.  *See* Fed. R. Civ. P. 1 (rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").  If the SJC responds to the certified question by stating that it is not a statute of repose, then the Court might revisit the supplemental jurisdiction issue.  However, it is highly likely that the SJC would adopt Mr. McMenimen's construction and precipitate dismissal with prejudice of the pendent claims.

### CONCLUSION

For the reasons discussed above and in the other memoranda submitted in support of his motion to dismiss, Mr. McMenimen respectfully reiterates his request that the Complaint be dismissed in its entirety.  Alternatively, if the Court is inclined to dismiss only those portions of the Complaint which assert Federal securities fraud claims and defer to the Commonwealth's judiciary concerning the timeliness of the state law claims, Mr. McMenimen requests that the Court retain jurisdiction over the state claims and certify to the Supreme Judicial Court the question of whether G.L. c. 175, § 181 a statute of repose.

Respectfully submitted,

FREDERICK V. MCMENIMEN III

By his attorney,

*/s/ William P. Corbett, Jr.*
_____
William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
 *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  June 13, 2005

# *Appendix 1*

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
BRENDA LOGUIDICE,                )
               Plaintiff         )
                                 )
          v.                     )        CIVIL ACTION NO. 97-10060-FHF
                                 )
METROPOLITAN LIFE INSURANCE      )
   COMPANY, and                  )
STEVEN ANASTASIA,                )
               Defendants        )
```

MEMORANDUM AND ORDER

October 11, 2002

FREEDMAN, S.J.

I.   INTRODUCTION

Before the Court is a motion of the defendant, Metropolitan Life Insurance Company ("Metropolitan"), styled as a "Renewed Motion for Summary Judgment" (Doc. No. 99).[1]  For the reasons stated below, the motion will be granted.

II.   BACKGROUND

Because the Court has set forth the facts of this case previously, see Loguidice v. Metropolitan Life Ins. Co, C.A. No. 97-10060-FHF, slip op. at 1-5 (D. Mass. Mar. 16, 1999), its recitation of the relevant facts will be brief.  In 1991, the plaintiff, Brenda Loguidice ("plaintiff") purchased a whole life insurance policy from Metropolitan.  The plaintiff, however, thought she was purchasing a retirement plan, based upon a sales pitch from Metropolitan's agent, Steven Anastasia ("Anastasia").

---

[1] Acting pro se, defendant Steven Anastasia joined in the first motion for summary judgment.  See Doc. No. 32.  Therefore, the Court will consider the renewed motion also to be on behalf of both defendants.

In 1996, she allegedly first learned that she had purchased a
life insurance policy, not a pension or retirement plan, and she
filed suit against the defendants, alleging several common law
and statutory causes of action.  In 1999, this Court granted the
defendants' motion for summary judgment as to several claims, but
denied summary judgment as to the plaintiff's claims for fraud
and deceit, breach of fiduciary duty, and violation of the
Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A
("93A").  Id. at 21.  Of particular relevance to this motion, the
defendants argued in their first summary judgment motion that the
plaintiff's claims sound in tort, and therefore are subject to
the three-year statute of limitations set forth in Mass. Gen.
Laws ch. 260, § 2A.  In ruling on this argument, the Court held
that "the essential nature of the plaintiff's claims are
contractual," and, applying the six-year limitations period
pursuant to Mass. Gen. Laws ch. 260, § 2, held that the
plaintiff's claims were timely.  Id. at 7-8.

### III.  DISCUSSION

In the instant motion, the defendants contend that the
plaintiff's remaining claims must be dismissed as a matter of law
because they are barred by the special limitations period set
forth in Mass. Gen. Laws ch. 175, § 181 ("section 181").  Section
181 provides:

> No company, no officer or agent thereof and no
> insurance broker or insurance adviser shall make,
> issue, circulate or use, or cause or permit to be made,
> issued, circulated or used, any written or oral
> statement misrepresenting the terms of any policy of
> insurance or any annuity or pure endowment contract

2

> issued or to be issued by any company, or the benefits
> or privileges promised thereunder.
>
>      . . .
>
>      The insured under any policy of life or endowment
> insurance or the holder of any annuity or pure
> endowment contract who was induced to procure it by any
> action in violation of this section by an officer or
> agent of the company issuing or executing it may
> recover from such company . . . <u>in an action brought
> within two years after the date of issue thereof</u>.

Mass. Gen. Laws ch. 175, § 181 (emphasis added). The plaintiff
opposes the motion and claims that pursuant to the law of the
case doctrine, the Court should decline to revisit the issue of
the limitations period.

"[D]ecisions made by district court during the course of
litigation establish the law of the case." 18 Moore's Federal
Practice, § 134.22[1][a], at 134-50 (3d ed. 2000). "The law of
the case doctrine makes binding upon a court a ruling made by a
court at the same or higher level during prior stages of the same
litigation, unless, of course, the ruling has been reversed in
the interim." <u>Lacy v. Gardino</u>, 791 F.2d 980, 984 (1st Cir.
1986), <u>cert. denied</u>, 479 U.S. 888 (1986); <u>see</u> <u>Martins v. Bicknell
& Fuller Corrugated Container Corp.</u>, Civ. A. No. 84-482-WF, 1988
WL 9294, at *2 (D. Mass. Feb. 1, 1988). The doctrine is intended
to promote "the finality and efficiency of the judicial process
by protecting against the agitation of settled issues." <u>Piazza
v. Roque</u>, 909 F.2d 35, 38 (1st Cir. 1990).

However, the law of the case doctrine is neither so rigid
nor "the policy so strong that it mandates the perpetuation of
clearly erroneous rulings." <u>Martins</u>, 1988 WL 9294, at *2. The

3

doctrine still enables "a court [to] change its mind . . . when presented with additional arguments and facts." Cruz-Sanchez v. Rivera Cordero, 728 F.2d 1531, 1531 (1st Cir. 1984). Accordingly, issues once decided may be reopened where "controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 46 F.3d 1211, 1215 and n.4 (1st Cir. 1995); see Martins, 1988 WL 9294, at *2.

    Here, the defendants' brief argues that two cases recently decided in the lower Massachusetts courts constitute a "substantial development" of the law which requires the Court to revisit its earlier decision. See Slingsby v. Metropolitan Ins. Co., No. 9708, 2001 WL 389347, at *2 (Mass. App. Div. Apr. 4, 2001); Grande v. PFL Life Ins. Co., No. 9663, 2000 WL 1476676 at *2 (Mass. App. Div. Sept. 27, 2000). In Grande, the Massachusetts Appellate Division decided the gravamen of the plaintiff's breach of contract and 93A claims, concerning an insurance purchase disguised as an annuity, really alleged misrepresentations in the selling of insurance governed by section 181. Id. at *6. Thus, the court held that the plaintiff "could not escape the consequences of the [section 181 two year] statute of limitations . . . merely by labeling [her] claim as contractual." Id. at *7 (quotations omitted). Likewise, in a dispute over similar representations made in the sale of insurance, the Slingsby court held that "the gravamen of the

4

complaint as one for . . . misrepresentations . . . governs the
applicability of [the section 181] statute of limitations, not
the designation of the claim." <u>Slingsby</u>, 2001 WL 389347 at *2.

The Court agrees that <u>Slingsby</u> and <u>Grande</u> are more factually
similar to the case at hand than <u>Barber v. Fox</u>, 632 N.E.2d 1246
(Mass. App. Ct. 1994), upon which this Court previously relied in
applying a six year limitations period.  Neither of the two
recent cases, however, is a decision by a controlling authority
re-interpreting section 181.  <u>Compare</u> <u>CPC Int'l</u>, 46 F.3d at 1216-
17 (decision of state supreme court qualifies as substantial
change in law where choice-of-law analysis is altered).  Thus,
the Court rejects the defendants' preliminary assertion that
<u>Slingsby</u> and <u>Grande</u> absolutely require this Court to disturb the
prior ruling.

Nonetheless, the defendants' belated suggestion that section
181 applies, along with section 181's recent application to
similar claims in the Massachusetts courts, give the Court pause
to reconsider whether the Court applied the six year limitations
period in error.[2]  The plaintiff's remaining claims are plainly
founded upon allegations of misrepresentations made in the sale
of products governed by section 181.  Although <u>Slingsby</u> and
<u>Grande</u> do not require the Court to adjust its original decision,
the Court remains enlightened that section 181 provides the
appropriate statute of limitations for the plaintiff's remaining

---

[2] The prior statute of limitations determination was made
bereft of any consideration of the applicability of section 181.

5

claims.  Because it would constitute error and a waste of
judicial resources to continue to ignore the section 181 two year
statute of limitations, the Court grants the defendants' renewed
motion for summary judgment to avoid any injustice that would
result from the perpetuation of the Court's earlier decision.

IV.   CONCLUSION

Accordingly, the defendants' renewed motion for summary
judgment (Doc. No. 99) is GRANTED.

It is So Ordered.

_Frank H Freedman_
Senior United States District Judge

# *Appendix 2*

**United States District Court**
**District of Massachusetts (Springfield)**
**CIVIL DOCKET FOR CASE #: 3:97-cv-10060-FHF**

Loguidice v. Metropolitan Life, et al
Assigned to: Judge Frank H. Freedman
Demand: $50000
Case in other court:  Western Penn., 96-00858
Cause: 28:1332 Diversity-Contract Dispute

Date Filed: 01/15/1997
Jury Demand: None
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**Brenda Loguidice**                          represented by    **Daniel W. Ernsberger**
Behrend and Ernsberger, P.C.
306 Fourth Avenue, Ste. 300
Pittsburgh, PA 15222
412-391-2515
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth R. Behrend**
Behrend & Ernsberger
306 4th Avenue
Pittsburgh, PA 15222-2000
412-391-2515
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin M. Miller**
Behrend and Ernsberger, P.C.
306 Fourth Avenue, Ste. 300
Pittsburgh, PA 15222
412-391-2515
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark D. Mason**
Cooley, Shrair P.C.
1380 Main St., 5th Floor
Springfield, MA 01103
413-735-8040
Fax: 413-733-3042
Email: mmason@cooleyshrair.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven P. Engel**
Behrend and Ernsberger
306 4th Avenue
Pittsburgh, PA 15222-2000
412-391-2515
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Metropolitan Life Insurance Company**          represented by **Andrew P. Boucher**
33 Chestnut St.
#204
Charlestown, MA 02129
617-241-9025
Email: aeboucher@concast.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frederick N. Egler**
P.O. Box 350
Indianola, PA 15051-0350
412-281-9810
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Ciapciak**
Ciapciak & Associates, PC
99 Access Road
Norwood, MA 02062
781-255-7401
Email: JJC@Candalawyers.com
*TERMINATED: 05/07/1998*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John C. Blessington**
Foley & Lardner, LLP
3000 K Street, N.W.
Suite 500
Washington, DC 20007
617-261-3108
Fax: 617 261-3175
Email: jblessington@kl.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas F. Holt, Jr.**
Kirkpatrick & Lockhart Nicholson Graham
LLP
6th Floor
75 State Street
Boston, MA 02109
617-261-3165
Fax: 617-261-3175
Email: tholt@klng.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steven Anastasia**          represented by **Stephen Anastasia**

7127 Pelican Island Drive
Tampa, FL 33634
813-885-6069
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Metropolitan Life Insurance Company**
*TERMINATED: 07/10/1998*

represented by **Frederick N. Egler**
(See above for address)
*TERMINATED: 07/10/1998*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James J. Ciapciak**
(See above for address)
*TERMINATED: 05/07/1998*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew P. Boucher**
(See above for address)
*TERMINATED: 07/10/1998*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Steven Anastasia**
*TERMINATED: 07/10/1998*

represented by **Steven Anastasia**
408 S. Arrawana Avenue, #C-4
Tampa, FL 33609
PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 01/10/1997 | 1 | Original file, certified copy of transfer order and docket sheet received Service in other district on Answer filed in state court on from the District of Western Pennsylvania. Docket # in other court: (fmr) (Entered: 01/15/1997) |
| 01/16/1997 | 2 | Judge George A. O'Toole Jr. . Procedural Order on Initial Scheduling Conference entered. Entered cc/cl (lau) (Entered: 01/17/1997) |
| 01/16/1997 | 3 | Judge George A. O'Toole Jr. . Notice of Hearing/conference: set scheduling conference for 3:30 2/19/97 . Entered cc/cl (lau) (Entered: 01/17/1997) |
| 01/27/1997 | 4 | Answer to complaint by Metropolitan Life and cross-claim against Steven Anastasia , filed. (dms) (Entered: 01/28/1997) |
| 01/30/1997 | 5 | Emergency Motion by Metropolitan Life to stay proceedings pending ruling by MDL Panel , filed. (lau) (Entered: 01/30/1997) |
| 02/03/1997 | 6 | Judge George A. O'Toole Jr. . Order of the Court entered. Upon motion of the defendant, Metro Life Ins., pursuant to Local Rule 26.1, the above captioned case is hereby stayed pending a determination by the Judicial Panel on Multidistrict Litigation as to whether to transfer this case to the U.S.D.C. for the Western District of Penn. for coordinated pretrial proceedings in that court. In the event that the case has not been transferred by 3/25/97, the parties shall appear that date at 2:30 p.m. for a status |

| | | conference. Entered cc/cl (lau) (Entered: 02/04/1997) |
|---|---|---|
| 03/25/1997 | | Status conference held . (lau) (Entered: 03/26/1997) |
| 03/25/1997 | 7 | Judge George A. O'Toole Jr. . Clerk's Notes: re: status conference; no one appears for the plaintiff. Defendant's counsel advises the court that an application was made to the M.D.L. Panel. The M.D.L. never moved on it, this is assumed to be a denial of the request. Also court discusses with counsel the issue of venue, since the only party in the action resides in Agawam, the action will be trasferred to Springfield. (lau) (Entered: 03/26/1997) |
| 03/26/1997 | | Judge George A. O'Toole Jr. Transfer to Springfield Division. Entered cc/cl (lau) (Entered: 03/26/1997) |
| 03/26/1997 | 8 | Judge George A. O'Toole Jr. . Order: Pursuant to the provisions of Rule 40.1(d) of the Local Rules, the above-entitled case is hereby transferred to the Springfield session of this court for all further proceedings. Entered cc/cl (lau) (Entered: 03/26/1997) |
| 04/04/1997 | | Original file, transfer order and docket sheet received from Boston Division, from Judge George A. O'Toole, Jr. (mef) (Entered: 04/04/1997) |
| 04/04/1997 | 9 | Notice of case assignment. Case reassigned from Judge George A. O'Toole, Jr. to Senior Judge Frank H. Freedman; cc/cl. and Systems. (mef) (Entered: 04/04/1997) |
| 04/08/1997 | 10 | Senior Judge Frank H. Freedman . Notice of Confernece: Set Pretrial Scheduling Conf. for 2:00 P.M. on 5/6/97; cc/cl. (mef) (Entered: 04/08/1997) |
| 05/05/1997 | 11 | Recommendations for scheduling order by Metropolitan Life filed. (fmr) (Entered: 05/05/1997) |
| 05/07/1997 | | Scheduling conference held. by telephone. (mef) (Entered: 05/07/1997) |
| 05/07/1997 | 12 | Senior Judge Frank H. Freedman . Clerk's Notes: re: Telephone scheduling conf. held. Order to issue. Court Reporter: Yergeau. (mef) (Entered: 05/07/1997) |
| 05/07/1997 | 13 | Senior Judge Frank H. Freedman . Scheduling Order entered setting Discovery cutoff 1/31/98, except for Pltf's deposition which shall be completed by 8/31/97. Deadline for filing of motions for S/J by 3/6/98. Pretrial Conf. at 10:00 A.M. on 6/11/98; cc/cl. (mef) (Entered: 05/07/1997) |
| 05/07/1997 | 14 | Senior Judge Frank H. Freedman . Procedural Order entered Pretrial Conf. set for 10:00 A.M. on 6/11/98; cc/cl. (mef) (Entered: 05/07/1997) |
| 07/03/1997 | 15 | Answer by Steven Anastasia to complaint , filed. (jcs) (Entered: 07/03/1997) |
| 07/30/1997 | 16 | Notice of appearance of attorney for Brenda Loguidice by Mark D. Mason filed. (fmr) (Entered: 07/30/1997) |
| 09/23/1997 | | Terminated document: terminating [5-1] motion to stay proceedings pending ruling by MDL Panel. Motion granted by Judge O'Toole on 2/3/97. Requested by jcs. (jcs) (Entered: 09/23/1997) |
| 01/16/1998 | 17 | Motion by Brenda Loguidice for Kenneth R. Behrend to appear pro hac vice , filed. (lau) (Entered: 01/20/1998) |
| 01/16/1998 | 18 | Certificate of Good Standing by Attorney Kenneth R. Behrend, filed. (lau) (Entered: 01/20/1998) |
| 01/16/1998 | 19 | Motion by Brenda Loguidice for Steven P. Engel to appear pro hac vice , filed. (lau) (Entered: 01/20/1998) |
| 01/16/1998 | 20 | Certificate of Good Standing by Attorney Steven P. Engel, filed. (lau) (Entered: |

| | | 01/20/1998) |
|---|---|---|
| 01/27/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [17-1] motion for Kenneth R. Behrend to appear pro hac vice; cc/cl. (mef) (Entered: 01/27/1998) |
| 01/27/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [19-1] motion for Steven P. Engel to appear pro hac vice; cc/cl. (mef) (Entered: 01/27/1998) |
| 01/28/1998 | 21 | Motion by Brenda Loguidice to extend discovery to 3/16/98 filed. (fmr) (Entered: 01/29/1998) |
| 01/29/1998 | 22 | Response by Metropolitan Life to [21-1] motion to extend discovery to 3/16/98 , filed. (faxed) (jcs) (Entered: 01/29/1998) |
| 01/29/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered denying [21-1] motion to extend discovery to 3/16/98 . (jcs) (Entered: 01/29/1998) |
| 01/29/1998 | 23 | Notice of appearance of attorney for Brenda Loguidice by Steven P. Engel and Kenneth R. Behrend filed. (fmr) (Entered: 01/29/1998) |
| 01/29/1998 | 24 | Answer by Steven Anastasia to [4-2] cross claim , filed. (jcs) (Entered: 02/02/1998) |
| 02/02/1998 | 25 | Response by Metropolitan Life in opposition to [21-1] motion to extend discovery to 3/16/98 filed. (fmr) (Entered: 02/02/1998) |
| 02/11/1998 | 26 | Notice of appearance of attorney for Metropolitan Life by Thomas F. Holt Jr., John C. Blessington, Andrew P. Boucher filed. (fmr) (Entered: 02/11/1998) |
| 02/17/1998 | 27 | Motion by Steven Anastasia to amend [15-1] answer to assert crossclaim filed. (fmr) (Entered: 02/18/1998) |
| 03/06/1998 | 28 | Motion by Metropolitan Life for summary judgment filed. (fmr) (Entered: 03/06/1998) |
| 03/06/1998 | 29 | Motion by Metropolitan Life for leave to file brief in excess of limit filed. (fmr) (Entered: 03/06/1998) |
| 03/06/1998 | 30 | Affidavit of Andrew P. Boucher re: [28-1] motion for summary judgment filed. (fmr) (Entered: 03/06/1998) |
| 03/09/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [29-1] motion for leave to file brief in excess of limit; cc/cl. (mef) (Entered: 03/09/1998) |
| 03/09/1998 | 31 | Memorandum by Metropolitan Life in support of [28-1] motion for S/J filed. (mef) (Entered: 03/09/1998) |
| 03/09/1998 | 32 | Motion by Steven Anastasia for summary judgment filed. (fmr) (Entered: 03/09/1998) |
| 03/24/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting, without opposition [27-1] motion by Deft. Steven Anastasia to amend [15-1] answer to assert crossclaim; cc/cl. (mef) (Entered: 03/25/1998) |
| 04/08/1998 | 33 | Motion by Brenda Loguidice to ext. time to resp. to D's motion for S/J sixty days from date the Deft produces docs. re: P's req. for production of docs. filed. (mef) (Entered: 04/08/1998) |
| 04/08/1998 | 34 | Motion by Brenda Loguidice to compel production of docs. from the Deft. filed. (mef) (Entered: 04/08/1998) |
| 04/13/1998 | 35 | Affidavit of Kenneth R. Behrend re: [34-1] motion to compel production of docs. filed. (fmr) (Entered: 04/13/1998) |
| 04/15/1998 | 36 | Response by Metropolitan Life in partial opposition to [33-1] motion to ext. time to |

| | | |
|---|---|---|
| | | resp. to S/J filed. (fmr) (Entered: 04/15/1998) |
| 04/16/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [33-1]; cc/cl. P's resp. to motion reset to 4/30/98 for [28-1] motion for S/J by Deft. Metropolitan Life Ins. (mef) (Entered: 04/16/1998) |
| 04/22/1998 | 37 | Memorandum by Metropolitan Life in opposition to [34-1] motion to compel production filed. (fmr) (Entered: 04/22/1998) |
| 04/23/1998 | 38 | Senior Judge Frank H. Freedman . ORDER entered: referral to Mag. Judge Kenneth P. Neiman. Referred Mag. Judge Kenneth P. Neiman : [34-1] motion to compel production of docs. from the Deft. Purpose: ruling on motion. . (mef) (Entered: 04/23/1998) |
| 04/27/1998 | 39 | Emergency Motion by Brenda Loguidice for reconsideration of [0-0] endorsed granting Pltf. to 4/30/98 to resp. to [28-1] motion for S/J by Deft. Metropolitan Life Ins. , filed. (mef) (Entered: 04/27/1998) |
| 04/28/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered denying [39-1] motion for reconsideration of [0-0] endorsed granting Pltf. to 4/30/98 to resp. to [28-1] motion for S/J by Deft. Metropolitan Life Ins.; cc/cl. (mef) (Entered: 04/28/1998) |
| 04/28/1998 | | Mag. Judge Kenneth P. Neiman. Endorsed Order denying [34-1] motion to compel production of docs. from Deft. ENTERED, cc:cl. "Denied without prejudice for failure to comply with Local Rule 37.1(b)(3) through (5)." (bah) (Entered: 04/29/1998) |
| 04/28/1998 | | CASE NO LONGER REFERRED TO Mag. Judge Kenneth P. Neiman . (mef) (Entered: 02/11/1999) |
| 04/30/1998 | 40 | Response by Brenda Loguidice in opposition to [28-1] motion for summary judgment filed. (fmr) (Entered: 04/30/1998) |
| 04/30/1998 | 41 | Motion by Brenda Loguidice for leave to file brief in excess of limit filed. (fmr) (Entered: 04/30/1998) |
| 04/30/1998 | 42 | Affidavit of Kenneth R. Behrend re: [40-1] opposition to S/J filed. (fmr) (Entered: 04/30/1998) |
| 05/04/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [41-1] motion for leave to file brief in excess of limit; cc/cl. (mef) (Entered: 05/05/1998) |
| 05/05/1998 | 43 | Memorandum by Brenda Loguidice in opposition to [28-1] motion for S/J filed. (mef) (Entered: 05/05/1998) |
| 05/07/1998 | 44 | Notice of withdrawal of counsel by attorney James J. Ciapciak for Metropolitan Life filed. (mef) (Entered: 05/07/1998) |
| 05/29/1998 | 45 | Motion by Metropolitan Life for leave to file reply brief , filed. (jcs) (Entered: 05/29/1998) |
| 05/29/1998 | 46 | Motion by Metropolitan Life to strike [42-1] affidavit of Kenneth Behrend , filed. (jcs) (Entered: 05/29/1998) |
| 05/29/1998 | 47 | Memorandum by Metropolitan Life in support of [46-1] motion to strike [42-1] affidavit of Kenneth Behrend , filed. (jcs) (Entered: 05/29/1998) |
| 06/09/1998 | 48 | Memorandum by Brenda Loguidice in resp. to [47-1] support memorandum, [46-1] motion to strike [42-1] of Kenneth Behrend filed. (mef) (Entered: 06/09/1998) |
| 06/09/1998 | 49 | Affidavit by Brenda Loguidice of Kenneth R. Behrend , re: [48-1] opposition memorandum , filed. (mef) (Entered: 06/09/1998) |
| 07/07/1998 | 50 | Senior Judge Frank H. Freedman . Notice of Hearing: Motion hearing set for 10:00 |

| | | |
|---|---|---|
| | | A.M. on 8/4/98 for [46-1] motion to strike [42-1] affidavit of Kenneth Behrend, [32-1] motion for S/J and [28-1] motion for S/J; cc/cl . (mef) (Entered: 07/07/1998) |
| 07/08/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [45-1] motion for leave to file reply brief; cc/cl. (jcs) (Entered: 07/08/1998) |
| 07/08/1998 | 51 | Reply by Metropolitan Life to resp. to [28-1] motion for S/J filed. (jcs) (Entered: 07/08/1998) |
| 07/10/1998 | 52 | Stipulation of dismissal of cross-claims by Metropolitan Life, Steven Anastasia with prejudice, without costs and waiver of all rights of appeal filed. (fmr) (Entered: 07/10/1998) |
| 08/04/1998 | 53 | Senior Judge Frank H. Freedman . Notice of Hearing: Motion hearing reset to 10:30 A.M. on 8/18/98 for [46-1] motion to strike [42-1] affidavit of Kenneth Behrend, [32-1] motion for S/J and [28-1] motion for S/J; cc/cl . . (mef) (Entered: 08/04/1998) |
| 08/14/1998 | 54 | Stipulated Motion by Metropolitan Life to continue 8/18/98 motion hearing filed. (fmr) (Entered: 08/14/1998) |
| 08/17/1998 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [54-1]; cc/cl. Motion hearing reset to 11:00 A.M. on 9/10/98 for [46-1] motion to strike [42-1] affidavit of Kenneth Behrend, [32-1] motion for S/J, [28-1] motion for S/J. (mef) (Entered: 08/17/1998) |
| 09/10/1998 | | Motion hearing re: [46-1] motion to strike [42-1] affidavit of Kenneth Behrend, [28-1] motion for S/J. Motions hearing held. (mef) (Entered: 09/10/1998) |
| 09/10/1998 | 55 | Senior Judge Frank H. Freedman . Clerk's Notes: re: Hearing on Deft. Metropolitan Life's motions to strike - [46-1] and motion for S/J - [28-1] held. After hearing the Court DENIES Deft. Metropolitan's motion for S/J as to Count 4. Pltf. stipulates to dismissal of counts 5 and 9. The balance of the motion for S/J is taken under advisement Court Reporter: Judy Donnellan. (mef) (Entered: 09/10/1998) |
| 02/02/1999 | 56 | Text not available. (Entered: 02/02/1999) |
| 02/17/1999 | 57 | Notice of change of address filed by Steven Anastasia. (fmr) (Entered: 02/17/1999) |
| 03/09/1999 | 58 | Notice of withdrawal of counsel for Metropolitan Life filed by James M. Campbell (no appearance of record). (fmr) (Entered: 03/09/1999) |
| 03/16/1999 | 59 | Senior Judge Frank H. Freedman . Memorandum and Order entered. The Court DENIES the Defts. motions for S/J as to Counts I, III and IV and GRANTS the Defts. motions for S/J as to Counts II, VI, VII and VIII - [32-1], [28-1]; cc/cl. (mef) (Entered: 03/16/1999) |
| 03/16/1999 | | Senior Judge Frank H. Freedman . Endorsed Order entered denying [46-1] motion to strike [42-1] affidavit of Kenneth Behrend; cc/cl. (mef) (Entered: 03/16/1999) |
| 04/07/1999 | 60 | Senior Judge Frank H. Freedman. Notice of Conference: Set Status Conf. for 10:30 A.M. on 4/22/99; cc/cl. . (mef) (Entered: 04/07/1999) |
| 04/22/1999 | | Status conference held . (mef) (Entered: 04/22/1999) |
| 04/22/1999 | 61 | Senior Judge Frank H. Freedman . Clerk's Notes: re: Counsel present for status conf. Counsel given sixty (60) days to agree on confidentiality agreement or file appropriate motions to resolve discovery disputes. Court will schedule a final pretrial conf. thereafter if case is not resolved. Court Reporter: Moran. (mef) (Entered: 04/22/1999) |
| 07/15/1999 | 62 | Senior Judge Frank H. Freedman . Notice of Conference: Set Pretrial Conf. for 10:30 A.M. on 8/24/99; cc/cl. (mef) (Entered: 07/15/1999) |

| | | |
|---|---|---|
| 08/12/1999 | 63 | Stipulated Motion by Brenda Loguidice to continue pretrial conf. filed. (fmr) (Entered: 08/12/1999) |
| 08/16/1999 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [63-1]; cc/cl. Reset Pretrial Conf. for 10:00 A.M. on 10/22/99. . [EOD Date 8/16/99] (mef) (Entered: 08/16/1999) |
| 10/18/1999 | 64 | Motion by Brenda Loguidice to compel production of documents from the Deft. Metropolitan Life Insurance Company , filed. (mef) (Entered: 10/19/1999) |
| 10/18/1999 | 65 | Affidavit by Brenda Loguidice of Kenneth R. Behrend re: [64-1] motion to compel production of documents from the Deft. Metropolitan Life Insurance Company , filed. (mef) (Entered: 10/19/1999) |
| 10/18/1999 | 66 | Certificate of Consultation re: [64-1] motion to compel production of documents from the Deft. Metropolitan Life Insurance Company , filed. (mef) (Entered: 10/19/1999) |
| 10/19/1999 | 67 | Joint motion by Brenda Loguidice, Metropolitan Life to continue pretrial conf. filed. (fmr) (Entered: 10/20/1999) |
| 10/20/1999 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [67-1]; cc/cl. Reset Pretrial Conf. for 10:00 A.M. on 12/9/99 . [EOD Date 10/20/99] (mef) (Entered: 10/20/1999) |
| 10/28/1999 | 68 | STIPULATION (Motion) by Metropolitan Life to ext. time to 11/05/99 to resp. to P's motion to compel , filed. (mef) (Entered: 10/28/1999) |
| 10/28/1999 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [68-1]; cc/cl. P's resp. to motion reset to 11/5/99 for [64-1] motion to compel production of documents from the Deft. Metropolitan Life Insurance Company . [EOD Date 10/28/99] (mef) (Entered: 10/28/1999) |
| 11/05/1999 | 69 | Response by Metropolitan Life in opposition to [64-1] motion to compel production of documents from the Deft. Metropolitan Life Insurance Company, filed, c/s. (bah) (Entered: 11/05/1999) |
| 11/05/1999 | 70 | Affidavit of Metropolitan Life of John C. Blessington re: [64-1] motion to compel production of documents from Deft. Metropolitan Life Insurance Company, filed, c/s. (bah) (Entered: 11/05/1999) |
| 11/23/1999 | 71 | Senior Judge Frank H. Freedman . ORDER entered: referral to Mag. Judge Kenneth P. Neiman. Referred Mag. Judge Kenneth P. Neiman: [64-1] motion to compel production of documents from the Deft. Metropolitan Life Insurance. Purpose: Ruling on motion. . (mef) (Entered: 11/23/1999) |
| 12/02/1999 | 72 | Mag. Judge Kenneth P. Neiman. Memorandum and Order denying [64-1] motion to compel production of documents from the Deft. Metropolitan Life Insurance ENTERED, cc:cl. [EOD Date 12/2/99] (bah) (Entered: 12/02/1999) |
| 12/02/1999 | | CASE NO LONGER REFERRED TO Mag. Judge Kenneth P. Neiman. (bah) (Entered: 01/18/2000) |
| 12/07/1999 | 73 | Senior Judge Frank H. Freedman . Notice of Conference: Set Pretrial Conf. for 10:00 A.M. on 1/13/2000; cc/cl. and Deft. Anastasia. (mef) (Entered: 12/07/1999) |
| 12/07/1999 | 74 | Senior Judge Frank H. Freedman . Procedural Order entered Pretrial Conf. set for 10:00 A.M. on 1/13/2000; cc/cl. and Deft. Anastasia. [EOD Date 12/7/99] (mef) (Entered: 12/07/1999) |
| 12/30/1999 | 75 | Motion by Brenda Loguidice for reconsideration of [72-1] memorandum order re motion to compel and to continue pretrial conf. filed. (fmr) (Entered: 12/30/1999) |

| | | |
|---|---|---|
| 01/04/2000 | 76 | Memorandum by Brenda Loguidice in support of [75-1] motion for reconsideration filed. (fmr) (Entered: 01/04/2000) |
| 01/10/2000 | 77 | Joint motion to continue pretrial conf. filed. (fmr) (Entered: 01/10/2000) |
| 01/10/2000 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [77-1]; cc/cl. The pretrial conf. will be rescheduled after the Court has ruled on the motion for reconsideration. Terminated Pretrial conf. deadline of 1/13/200. . [EOD Date 1/10/00] (mef) (Entered: 01/10/2000) |
| 01/19/2000 | 78 | Stipulated Motion by Metropolitan Life to extend time to 1/19/00 to oppose motion for reconsideration filed. (fmr) (Entered: 01/19/2000) |
| 01/19/2000 | 79 | Motion by Metropolitan Life for leave to file brief in excess of limit filed. (fmr) (Entered: 01/19/2000) |
| 01/20/2000 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [79-1] motion for leave to file brief in excess of limit; cc/cl. [EOD Date 1/20/00] (mef) (Entered: 01/20/2000) |
| 01/20/2000 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [78-1] motion to ext. time to 1/19/00 to oppose motion for reconsideration; cc/cl. [EOD Date 1/20/00] (mef) (Entered: 01/20/2000) |
| 01/20/2000 | 80 | Resp. by Metropolitan Life in opposition to [75-1] motion for reconsideration of [72-1] memorandum order re motion to compel filed. (mef) (Entered: 01/20/2000) |
| 02/07/2000 | | CASE NO LONGER REFERRED TO Mag. Judge Kenneth P. Neiman. Judge Freedman to rule on [75-1] Motion to reconsider. (bah) (Entered: 02/07/2000) |
| 03/10/2000 | 81 | Joint motion to stay proceedings 60 days filed. (fmr) (Entered: 03/10/2000) |
| 03/13/2000 | 82 | Senior Judge Frank H. Freedman . Order entered granting [81-1] joint motion to stay proceedings 60 days . [EOD Date 3/13/00] (jcs) (Entered: 03/13/2000) |
| 01/16/2001 | 83 | Senior Judge Frank H. Freedman . Order entered, Status report due on 1/26/01 . [EOD Date 1/16/01] (jcs) (Entered: 01/16/2001) |
| 01/26/2001 | 84 | Status report by Brenda Loguidice, Metropolitan Life, Steven Anastasia filed. Case cannot be settled at this time. Parties request that stay be lifted and that the court rule on pltf's motion for reconsideration. Pltf. requests permission to file a supplemental brief. (sealed) (Entered: 01/26/2001) |
| 01/26/2001 | | Senior Judge Frank H. Freedman . Endorsement re: [84-1] status report . Stay is vacated. Pltf. has 10 days to file a supplemental brief. Defts. have 10 days to file a reply. (jcs) (Entered: 01/26/2001) |
| 02/05/2001 | 85 | Memorandum by Brenda Loguidice in support of [75-1] motion for reconsideration of [72-1] memorandum order re motion to compel , filed. (jcs) (Entered: 02/06/2001) |
| 02/13/2001 | 86 | Motion by Metropolitan Life to extend time to 2/20/01 to reply to Pltf's supplemental brief , filed. c/s (mgl) (Entered: 02/13/2001) |
| 02/14/2001 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [86-1]; cc/cl. Deft. Metropolitan Life Insurance's reply to P's suppl. memorandum in support of her [75-1] motion for reconsideration of [72-1] memorandum order re motion to compel . [EOD Date 2/14/01] (mef) (Entered: 02/14/2001) |
| 02/20/2001 | 87 | Resp. by Metropolitan Life in opposition to [85-1] suppl. support memorandum in support of her motion for reconsideration of the Court's Order denying her motion to compel production of docs. FILED UNDER SEAL. (mef) (Entered: 02/20/2001) |

| | | |
|---|---|---|
| 02/20/2001 | 88 | Motion by Metropolitan Life to seal/impound [87-1] response. , filed. (mef) (Entered: 02/20/2001) |
| 02/21/2001 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [88-1] motion to seal/impound [87-1] response; cc/cl. [EOD Date 2/21/01] (mef) (Entered: 02/21/2001) |
| 02/21/2001 | | SEALED DOCUMENT # [87-1] and placed in file in a sealed envelope. (mef) (Entered: 02/21/2001) |
| 02/27/2001 | | Mail sent to Steven P. Engel & Kenneth R. Behrend, returned by Post Office because: not deliverable as addressed. (mgl) (Entered: 02/27/2001) |
| 03/22/2001 | 89 | SEALED DOCUMENT [89] in envelope and placed in vault. (mgl) (Entered: 03/22/2001) |
| 03/22/2001 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [89-1] motion to seal document(s) . [EOD Date 3/22/01] (jcs) (Entered: 03/22/2001) |
| 03/22/2001 | 90 | Memorandum by Brenda Loguidice in support of [75-1] motion for reconsideration of [72-1] memorandum order re motion to compel , FILED UNDER SEAL (jcs) (Entered: 03/22/2001) |
| 04/02/2001 | 91 | SEALED DOCUMENT placed in vault. (mgl) (Entered: 04/02/2001) |
| 04/12/2001 | 92 | Supplement of Dft. Metropolitan Life Ins. Co. to its response, filed. c/s (mgl) (Entered: 04/12/2001) |
| 09/18/2001 | | Terminated document: terminating [75-2] motion to continue pretrial conf. Requested by jcs. (jcs) (Entered: 09/18/2001) |
| 11/05/2001 | 93 | Senior Judge Frank H. Freedman . Memorandum and Order entered. The Pltf's motion for reconsideration of the Magistrate/Judge's [72-1] Memorandum and Order re: motion to compel - [75-1]; cc/cl. [EOD Date 11/5/01] (mef) (Entered: 11/05/2001) |
| 01/14/2002 | 94 | Notice of change of address filed by Steven Anastasia by Steven Anastasia . (mef) (Entered: 01/14/2002) |
| 01/14/2002 | 95 | Senior Judge Frank H. Freedman . Notice of Conference: Set Pretrial Conf. for 10:00 A.M. on 2/15/2002; cc/cl. . (mef) (Entered: 01/14/2002) |
| 01/14/2002 | 96 | Senior Judge Frank H. Freedman . Procedural Order entered Pretrial Conference set for 10:00 A.M. on 2/15/2002; cc/cl. [EOD Date 1/14/02] (mef) (Entered: 01/14/2002) |
| 01/28/2002 | 97 | Joint motion by Brenda Loguidice, Metropolitan Life, Steven Anastasia to stay proceedings for thirty (30) days filed. (mef) (Entered: 01/28/2002) |
| 01/28/2002 | 98 | Senior Judge Frank H. Freedman . Order entered granting [97-1] joint motion to stay proceedings for thirty (30) days. Terminated PTC date of 2/15/2002; cc/cl. [EOD Date 1/28/02] (mef) (Entered: 01/28/2002) |
| 03/25/2002 | 99 | RENEWED Motion by Metropolitan Life for S/J filed. (sealed) (Entered: 03/25/2002) |
| 03/25/2002 | 100 | Memorandum by Metropolitan Life in support of [99-1] motion for S/J , filed. (sealed) (Entered: 03/25/2002) |
| 03/25/2002 | 101 | Affidavit by Metropolitan Life of John C. Blessington in support of [99-1] motion for S/J , filed. (sealed) (Entered: 03/25/2002) |
| 04/01/2002 | 102 | Emergency Motion by Brenda Loguidice to extend time to 4/18/02 to file response to motion for summary judgment , filed. (jcs) (Entered: 04/02/2002) |
| 04/03/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [102-1]; cc/cl. P's |

| | | |
|---|---|---|
| | | resp. to motion reset to 4/18/2002 for [99-1] motion for S/J . [EOD Date 4/3/02] (mef) (Entered: 04/03/2002) |
| 04/18/2002 | 103 | STIPULATION (Motion) by Brenda Loguidice , for leave to file memo in excess of twenty (20) pages , filed. (mef) (Entered: 04/18/2002) |
| 04/18/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [103-1] stipulation motion for leave to file memo in excess of twenty (20) pages; cc/cl. [EOD Date 4/18/02] (mef) (Entered: 04/18/2002) |
| 04/18/2002 | 104 | Memorandum by Brenda Loguidice in opposition to [99-1] renewed motion for S/J , filed. (mef) (Entered: 04/18/2002) |
| 04/18/2002 | 105 | P's Affidavit of Kenneth R. Behrend , in support of [104-1] opposition memorandum , filed. (mef) (Entered: 04/18/2002) |
| 04/24/2002 | 106 | Senior Judge Frank H. Freedman . Notice of Hearing: Motion hearing set for 10:30 A.M. on 5/16/2002 for [99-1] renewed motion for S/J; cc/cl. (mef) (Entered: 04/24/2002) |
| 04/30/2002 | 107 | Motion by Brenda Loguidice for Kevin M. Miller to appear pro hac vice. Fee Status: Not paid. , filed. (mef) (Entered: 04/30/2002) |
| 05/01/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [107-1] motion for Kevin M. Miller to appear pro hac vice; cc/cl. [EOD Date 5/1/02] (mef) (Entered: 05/01/2002) |
| 05/02/2002 | 108 | Notice of appearance of attorney for Brenda Loguidice by Kevin M. Miller, filed. (mef) (Entered: 05/02/2002) |
| 05/06/2002 | 109 | Notice of appearance of attorney for Brenda Loguidice by , Kevin Miller, Esq. filed. (jcs) (Entered: 05/06/2002) |
| 05/13/2002 | 110 | Motion by Metropolitan Life for leave to file reply brief in support of its renewed motion for S/J filed. (mef) (Entered: 05/14/2002) |
| 05/16/2002 | | Motion hearing re: [99-1] motion for S/J Motion hearing held (mef) (Entered: 05/22/2002) |
| 05/16/2002 | 111 | Senior Judge Frank H. Freedman . Clerk's Notes: re: Hearing on Deft. Metropolitan Life Insurance's renewed motion for S/J - [99-1] held. After hearing the Court takes the motion under advisement. Set Jury Trial for 10:00 A.M. on 10/28/2002. Court Reporter: Susan Mitchell. (mef) (Entered: 05/22/2002) |
| 05/22/2002 | 112 | Senior Judge Frank H. Freedman . Notice of Hearing: Set Jury Trial for 10:00 A.M. on 10/28/2002; cc/cl. . (mef) (Entered: 05/22/2002) |
| 05/22/2002 | 113 | Senior Judge Frank H. Freedman . Procedural Order entered Jury Trial set for 10:00 A.M. on 10/28/2002. All pretrial motions, proposed voir dire questions, proposed jury instructions and proposed special verdict form to be filed no later than one (1) week before trial; cc/cl. [EOD Date 5/22/02] (mef) (Entered: 05/22/2002) |
| 05/23/2002 | 114 | Supplemental Memorandum by Metropolitan Life in support of [99-1] renewed motion for S/J , filed. (jcs) (Entered: 05/24/2002) |
| 05/29/2002 | 115 | Resp. by Brenda Loguidice in opposition to [114-1] suppl. support memorandum , filed. (mef) (Entered: 05/29/2002) |
| 09/04/2002 | 116 | Motion by Brenda Loguidice for leave (permission) to use material and relevant discovery produced in other jurisdictions with memorandum in support, filed. (mef) (Entered: 09/04/2002) |

| | | |
|---|---|---|
| 09/16/2002 | 117 | Motion by Metropolitan Life to strike plaintiff's late expert designations , filed. (jcs) (Entered: 09/16/2002) |
| 09/16/2002 | 118 | Memorandum by Metropolitan Life in support of [117-1] motion to strike plaintiff's late expert designations , filed. (jcs) (Entered: 09/16/2002) |
| 09/18/2002 | 119 | Resp. by Metropolitan Life in opposition to [116-1] motion for leave (permission) to use material and relevant discovery produced in other jurisdictions , filed. (mef) (Entered: 09/18/2002) |
| 09/19/2002 | 120 | Motion by Brenda Loguidice for Daniel W. Ernsberger to appear pro hac vice. Fee Status: Paid. Fee Amount: $50.00. Receipt #: 304991. , filed. (mef) (Entered: 09/20/2002) |
| 09/20/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [120-1]; cc/cl. Added for the Pltf., Atty. Daniel W. Ernsberger . [EOD Date 9/20/02] (mef) (Entered: 09/20/2002) |
| 09/20/2002 | 121 | Notice of appearance of attorney for Brenda Loguidice by , Daniel W. Ernsberger filed. (mef) (Entered: 09/20/2002) |
| 09/26/2002 | 122 | Emergency Motion by Metropolitan Life for protective order quashing ptf's notice of video taped depositions for use at trial , and stay of deposition pending resolution , filed. c/s (mgl) (Entered: 09/26/2002) |
| 09/26/2002 | 123 | Memorandum by Metropolitan Life in support of [122-1] motion for protective order quashing ptf's notice of video taped depositions for use at trial and stay of deposition pending reslution, filed. c/s (mgl) (Entered: 09/26/2002) |
| 09/27/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [122-1] motion for protective order quashing ptf's notice of video taped depositions for use at trial and mooting [122-2] motion stay of depositions pending resolution . Discovery closed four years ago. Sanctions are denied. [EOD Date 9/27/02] (jcs) (Entered: 09/27/2002) |
| 09/27/2002 | 124 | Witness and exhibit list by Metropolitan Life , filed. (jcs) (Entered: 09/27/2002) |
| 09/27/2002 | 125 | Objection by Metropolitan Life to pltf's original exhibit and witness list and first supplement to exhibits filed. (jcs) (Entered: 09/27/2002) |
| 09/30/2002 | | Mail sent to Frederick N. Egler returned by Post Office because: fardward time expired. (mgl) (Entered: 09/30/2002) |
| 09/30/2002 | 127 | Resp. (Reply) by Brenda Loguidice to [122-1] motion for protective order quashing ptf's notice of video taped depositions for use at trial, [122-2] motion stay of deposition pending resolution , filed. (mef) (Entered: 10/01/2002) |
| 09/30/2002 | 128 | Memorandum by Brenda Loguidice in support of [127-1] motion response FILED UNDER SEAL. (mef) (Entered: 10/01/2002) |
| 09/30/2002 | 129 | STIPULATION (Motion) by Brenda Loguidice , for leave to file reply to Deft. Metropolitan's resp. to her motion to use discovery from other Metlife cases at trial , filed. (mef) (Entered: 10/01/2002) |
| 09/30/2002 | 130 | Motion by Brenda Loguidice for reconsideration of [0-0] endorsed order granting the Deft's motion for a protective order quashing P's notice of videotape depos. for use at trial and mooting motion to stay depos. pending resolution filed. (mef) (Entered: 10/01/2002) |
| 09/30/2002 | 131 | Brief and resp. by Brenda Loguidice to [117-1] motion to strike plaintiff's late expert designations , filed. (mef) (Entered: 10/01/2002) |

| 10/01/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [129-1] stipulation motion for leave to file reply to Deft. Metropolitan's resp. to her motion to use discovery from other Metlife cases at trial; cc/cl. [EOD Date 10/1/02] (mef) (Entered: 10/01/2002) |
|---|---|---|
| 10/01/2002 | 132 | Reply by Brenda Loguidice to resp. to [116-1] motion for leave (permission) to use material and relevant discovery produced in other jurisdictions , filed. (mef) (Entered: 10/01/2002) |
| 10/04/2002 | 133 | Exhibit list by Brenda Loguidice , filed. (mgl) (Entered: 10/04/2002) |
| 10/04/2002 | 134 | Plaintiff's first supplement to Exhibits by Brenda Loguidice [133-1] exhibits list (mgl) (Entered: 10/04/2002) |
| 10/08/2002 | 135 | Memorandum by Metropolitan Life in opposition to [130-1] motion for reconsideration of [0-0] endorsed order granting the Deft's motion for a protective order quashing P's notice of videotape depos. for use at trial and mooting motion to stay depos. pending resolution , filed. (mef) (Entered: 10/08/2002) |
| 10/09/2002 | 136 | STIPULATION (Motion) by Metropolitan Life , for leave to file memorandum of law in further opp. to P's motion to use discovery from other cases at trial , filed. (mef) (Entered: 10/09/2002) |
| 10/09/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [136-1] stipulation motion for leave to file memorandum of law in further opp. to P's motion to use discovery from other cases at trial; cc/cl. [EOD Date 10/9/02] (mef) (Entered: 10/09/2002) |
| 10/09/2002 | 137 | Memorandum by Metropolitan Life in further opp. to [129-1] stipulation motion for leave to file reply to Deft. Metropolitan's resp. to her motion to use discovery from other Metlife cases at trial , filed. (mef) (Entered: 10/09/2002) |
| 10/09/2002 | 138 | Plaintiff's consented to emergency Motion by Brenda Loguidice to request permission to file memorandum of law in support of ptf's reply to dft's memo of law in opp. to ptf's motion for recon. , filed. c/s (mgl) (Entered: 10/09/2002) |
| 10/10/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [138-1] motion to request permission to file memorandum of law in support of ptf's reply to dft's memo of law in opp. to ptf's motion for recon.; cc/cl. [EOD Date 10/10/02] (mef) (Entered: 10/10/2002) |
| 10/10/2002 | 139 | Memorandum and reply by Brenda Loguidice to response to [130-1] motion for reconsideration of [0-0] endorsed order granting the Deft's motion for a protective order quashing P's notice of videotape depos. for use at trial and mooting motion to depos. pending resolution , filed. (mef) (Entered: 10/10/2002) |
| 10/11/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered granting [110-1] motion for leave to file reply brief in support of its renewed motion for S/J. [EOD Date 10/11/02] cc/cl (mgl) (Entered: 10/11/2002) |
| 10/11/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered denying [116-1] motion for leave (permission) to use material and relevant discovery produced in other jurisdictions. DENIED. as moot (summary judgment having been granted this date) [EOD Date 10/11/02] cc/cl (mgl) (Entered: 10/11/2002) |
| 10/11/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered denying [117-1] motion to strike plaintiff's late expert designations. DENIED. as moot (summary judgment having been granted this date) [EOD Date 10/11/02] cc/c (mgl) (Entered: 10/11/2002) |
| 10/11/2002 | | Senior Judge Frank H. Freedman . Endorsed Order entered denying [130-1] motion for reconsideration of [0-0] order granting the Deft's motion for a protective order quashing |

|  |  | P's notice of videotape depos. for use at trial and mooting motion to stay depos. pending resolution. DENIED. as moot (summary judgment having been granted this date) [EOD Date 10/11/02] cc/cl (mgl) (Entered: 10/11/2002) |
|---|---|---|
| 10/11/2002 | 140 | Senior Judge Frank H. Freedman . Memorandum and Order entered. granting [99-1] motion for S/J (see memo for details) [EOD Date 10/11/02] cc/cl (mgl) (Entered: 10/11/2002) |
| 10/21/2002 | 141 | Senior Judge Frank H. Freedman . Judgment entered for the Defts. pursuant to the Memorandum and Order of the Court entered on 10/11/2002 granting the Defts. motion for S/J; cc/cl. [EOD Date 10/21/02] (mef) (Entered: 10/21/2002) |
| 10/21/2002 |  | Case closed. (mef) (Entered: 10/21/2002) |
| 10/25/2002 | 142 | Ptf's Motion by Brenda Loguidice for reconsideration of [141-1] judgment order, [140-1] memorandum order , filed. c/s (mgl) (Entered: 10/25/2002) |
| 10/25/2002 | 143 | Memorandum by Brenda Loguidice in support of [142-1] motion for reconsideration of [141-1] judgment order, [140-1] memorandum order, filed. c/s (mgl) (Entered: 10/25/2002) |
| 11/07/2002 | 144 | Memorandum by Metropolitan Life in opposition to [142-1] motion for reconsideration of [141-1] judgment order, [140-1] memorandum order , filed. c/s (mgl) (Entered: 11/07/2002) |
| 11/13/2002 |  | Senior Judge Frank H. Freedman . Endorsed Order entered denying [142-1] motion for reconsideration of [141-1] judgment order, [140-1] memorandum order; cc/cl. [EOD Date 11/14/02] (sealed) (Entered: 11/14/2002) |
| 11/25/2002 | 145 | Notice of appeal by Brenda Loguidice filed. Filing Fee of $105.00 paid. Receipt #: 305058. Appealing: [141-1] Judgment Order. Copy sent to all counsel. Appeal record due on 12/10/2002. Original file and docket sheet forwarded to the Appeals Clerk. (mef) (Entered: 11/25/2002) |
| 11/27/2002 |  | Mail sent to Frederick N. Egler returned by Post Office because: Forward time exp.. (mgl) (Entered: 11/27/2002) |
| 11/27/2002 |  | Certified copy of docket and record on appeal forwarded to U.S. Court of Appeals re: [145-1] appeal. (jr) (Entered: 11/27/2002) |
| 12/09/2002 |  | Mail resent to Frederick Egler. (mef) (Entered: 12/09/2002) |
| 01/08/2003 |  | US Court of Appeals Case Number assigned to [145-1] appeal: USCA NUMBER: 02-2538. (jr) (Entered: 01/08/2003) |
| 08/18/2003 | 146 | MANDATE of USCA as to [145] Notice of Appeal, filed by Brenda Loguidice; This cause came on to be heard on appeal from the United States District Court for the District of Massachusetts, and was argued by counsel. Upon consideration whereof, it is now here ordered, adjudged and decreed as follows: The judgment of the district court is affirmed. (Ramos, Jeanette) (Entered: 08/18/2003) |
| 09/11/2003 |  | Appeal Record Returned: [145] Notice of Appeal, (Ramos, Jeanette) (Entered: 09/11/2003) |

| **PACER Login:** | th1542 | **Client Code:** | 13-008-001 |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 3:97-cv-10060-FHF |
| **Billable Pages:** | 10 | **Cost:** | 0.80 |

# *Appendix 3*

LEXSEE 2000 MASS. APP. DIV. 261

## Judith B. Grande vs. PFL Life Insurance Co.

## [NO NUMBER IN ORIGINAL]

## STATE OF MASSACHUSETTS, APPELLATE DIVISION, NORTHERN DISTRICT

### 2000 Mass. App. Div. 261; 2000 Mass. App. Div. LEXIS 96

### September 27, 2000, Decided

**PRIOR HISTORY:** **[**1]** Opinion dismissing plaintiff's appeal. Action heard in the Ayer Division by Kilmartin, J.

**DISPOSITION:** Entry of summary judgment for defendant PEL Life Insurance Company affirmed. Appeal dismissed.

**LexisNexis(R) Headnotes**

**COUNSEL:** Robert C. Moran for the plaintiff.

Stephen A. Roach for the defendant.

**JUDGES:** Merrick, P.J., Coven & Curtin, JJ.

**OPINIONBY:** Coven

**OPINION:**

[*261] Coven, J. This is an action to recover for the defendant's alleged breach of contract, conversion and G.L.c. 93A unfair and deceptive acts in its sale of a life insurance policy to plaintiff Judith B. Grande ("Grande"). Grande claimed that the defendant's salesman represented that the policy was an annuity. Summary judgment was entered for the defendant, and Grande has appealed pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8C.

The record indicates that on July 1, 1994, Grande met with one of defendant PFL Life Insurance Company's ("PFL") agents at her home and purchased a policy. Grande alleges that she contracted to buy, and the agent described, an annuity toward which she was to make monthly contributions of $500.00 until whatever time she decided to retire, that PFL would invest whatever contributions she had decided to make, and that she would begin **[**2]** to receive periodic distributions when she reached age sixty-five. At her deposition, Grande could not provide any information about interest rates, tax benefits, investment choices, precise maturity dates, pay-out sums or any other essential terms of the alleged annu-

ity. n1 Grande also signed on July 1, 1994 a number of documents which included a Disclosure of Benefits form, an Application for Life Insurance, and an Authorization to Obtain and Disclose medical information. None of the documents she signed contained a single reference to an annuity. All of the documents she signed pertained to life insurance.

> n1 Her lack of information did not result from an unfamiliarity with insurance products or investment terms. It was undisputed that Grande has a Masters in Business Administration; was self-employed as a marketing consultant with annual earnings of $125,000.00; owned, with her husband, real estate, stocks and mutual funds valued at close to a million dollars; had invested in several real estate limited partnerships; and had a Keogh plan, an IRA, other life insurance policies and an annuity.

[**3]

On July 6, 1994, PFL issued life insurance policy no. 7–242005506 to Grande. She claimed that she never received the policy or a copy thereof.

Approximately one year later, on August 22, 1995, Grande sent a letter to PFL informing it that she was discontinuing her monthly payments of $500.00 because she intended to retire on October 5, 1995. PFL responded that her letter constituted a cancellation of her policy, and that her insurance protection would terminate on September 6, 1995, without any further liability. Grande immediately asked PFL not to cancel the policy until she "straightened things out." She conceded that, after reading the documents she had signed in 1994, it was clear that she had purchased a life insurance policy and not an annuity. Grande continued, however, to make [*262] monthly $500.00 payments for another year, through September, 1996.

Grande filed this action on February 25, 1997 to recover damages in the amount of the total monthly payments she had made, plus reasonable attorney's fees. PFL

2000 Mass. App. Div. 261, *262; 2000 Mass. App. Div. LEXIS 96, **3

filed an answer denying the complaint allegations, and a counterclaim in quantum meruit for the value of the life insurance coverage Grande had enjoyed for two [**4] years.

In March, 1999, PFL filed a motion for judgment on the pleadings on the grounds, *inter alia*, that Grande's claims were time-barred by the *G.L.c. 175, § 181* two year statute of limitations. After hearing, the court elected to treat the motion as one for summary judgment under *Mass. R. Civ. P., Rule 56*, and notified the parties of their right to submit any additional materials. *Mass. R. Civ. P., Rule 12(c)*. See generally *Bell v. Zoning Board of Appeals of Gloucester, 429 Mass. 551, 555, 709 N.E.2d 815 (1999)*. On September 3, 1999, the court allowed PFL's summary judgment motion, and dismissed all of Grande's claims as well as PFL's counterclaim. In his memorandum of decision, the motion judge noted that Grande, "a sophisticated, educated MBA graduate with extensive business experience," had sought to avoid the *G.L.c. 175, § 181* limitations bar by characterizing her misrepresentation claim as one for breach of contract, and that the evidence she advanced was insufficient to raise a material issue warranting a trial on any claim.

1. The record before us was an appropriate one for the entry of summary judgment on statute [**5] of limitations grounds on Grande's claims for breach of contract and conversion. *Fidler v. E.M. Parker Co., 394 Mass. 534, 546, 476 N.E.2d 595 (1985); Malapanis v. Shirazi, 21 Mass. App. Ct. 378, 383, 487 N.E.2d 533 (1986)*. PFL satisfied its initial Rule 56 burden of establishing, on the basis of undisputed facts, that Grande's claims were barred by the two year statute of limitations set forth in *G.L.c. 175, § 181*. The statute provides, in pertinent part:

No company, no officer or agent thereof and no insurance broker or insurance adviser shall make, issue, circulate or use, or cause or permit to be made, issued, circulated or used, any written or oral statement misrepresenting the terms of any policy of insurance or any annuity or pure endowment contract issued or to be issued by any company. ... The insured under any policy of life or endowment insurance or the holder of any annuity ... who was induced to procure it by an action in violation of this section by an officer or agent of the company issuing or executing it may recover from such company all premiums paid on such policy or contract ... in an action brought within two years after [**6] the date of the issue thereof.

Although Grande's first claim is for breach of contract, it is the "gravamen of [her] complaint" which dictates the applicable statute of limitations. *Pagliuca v. Boston, 35 Mass. App. Ct. 820, 823, 626 N.E.2d 625 (1994)*. Grande admitted in her deposition, and her attorney's G.L.c. 93A demand letter further indicated, that her claim against PFL arose solely out of the alleged misrepresentations by PFL's agent who supposedly advised her of the terms of an annuity in selling her a life insurance policy. n2 Grande could not "escape the consequences" of the *G.L.c. 175, § 181* shorter statute of limitations for PFL's alleged misrepresentations "merely by labeling [her] claim as contractual." *Fall River Hous. Auth. v. H.V. Collins Co., 414 Mass. 10, 15 n.6, 604 N.E.2d 1310 (1992)*. See also *Hendrickson v. Sears, 365 Mass. 83, 85, 310 N.E.2d 131 (1974)*. Therefore, pursuant to § 181, Grande's cause of action accrued on July 6, 1994. Given the applicable two year limitations period, Grande's February 25, 1997 complaint was filed too late.

n2 Grande's attorney's letter accused PFL of "misrepresentations, half truths and outright lies."

[**7]

Once PFL satisfied its burden of proving that Grande's "contract" claim was filed after the expiration of the statute of limitations, the Rule 56 burden shifted to Grande to set forth specific facts which would "take her claim outside the statute." *McGuinness [*263] v. Cotter, 412 Mass. 617, 620, 591 N.E.2d 659 (1992)*. Grande asserted only that she did not receive a copy of the insurance policy issued by PFL and was thus prevented from discovering that she had purchased life insurance rather than an annuity. Under the "discovery rule," an action which is based on an "inherently unknowable" wrong does not accrue for statute of limitations purposes "until the injured party knows or in the exercise of reasonable diligence should know the factual basis for the cause of action." *Puritan Medical Center, Inc. v. Cashman, 413 Mass. 167, 175, 596 N.E.2d 1004 (1992); Frank Cooke, Inc. v. Hurwitz, 10 Mass. App. Ct. 99, 106, 406 N.E.2d 678 (1980)*. However, the limitations period is not tolled unless the basis of the plaintiff's claim was "inherently unknowable" or incapable of being discovered through the exercise of ordinary diligence. *Melrose Hous. Auth. v. New Hampshire Ins. Co., 24 Mass. App. Ct. 207, 212, 507 N.E.2d 787 (1987)*. [**8]

As a matter of law, the nature of the insurance contract Grande purchased and thus PFL's misrepresentations concerning the same were not "inherently unknowable." See *Kent v. Dupree, 13 Mass. App. Ct. 44, 47, 429 N.E.2d 1041 (1982)* (misrepresentation not "inherently unknowable" when it was apparent on the basis of express terms of written document given to plaintiff's attorney). The Disclosure of Benefits and Application forms

Case 1:05-cv-10118-GAO    Document 27    Filed 06/13/2005    Page 46 of 51

Page 3

2000 Mass. App. Div. 261, *263; 2000 Mass. App. Div. LEXIS 96, **8

Grande completed with PFL's agent on July 1, 1994 were clearly labeled "Life Insurance." Grande had access to these forms before the life insurance policy was ever issued, but neglected to read them. She conceded that when she later reviewed the forms, it was clear that she had contracted for life insurance rather than an annuity. The basis of Grande's "contract" claim could have been discovered, therefore, through the exercise of reasonable diligence as early as July 1, 1994. Thus the statute of limitations was not tolled, Grande's cause of action accrued on July 6, 1994 when the policy was issued pursuant to *G.L.c. 175, § 181*, and the two year period for commencing suit expired prior to the filing of her complaint.

2. Grande [**9] contends that she is entitled to at least a trial on the merits on her claim for conversion because that claim is governed by the longer three year statute of limitations set forth in *G.L.c. 260, § 2A*. See *Patsos v. First Albany Corp., 48 Mass. App. Ct. 266, 270 n.6, 719 N.E.2d 882 (1999)*. Section 19 of G.L.c. 260 expressly provides, however, that "if a special provision is otherwise made relative to the limitation of any action, any provision of this chapter inconsistent therewith shall not apply." See generally *Maltz v. Smith Barney, Inc., 427 Mass. 560, 563, 694 N.E.2d 840 (1998)*. The two year limitations period of *G.L.c. 175, § 181* is a "special provision" which governs this action for the reasons outlined above, and thus the three year conversion statute of limitations does not apply. Grande's conversion claim alleges that PFL misappropriated her $13,550.00 in contributions to what she believed was an annuity, and converted the money to premiums for a life insurance policy. Once again, the gravamen of Grande's claim is the alleged misrepresentation by PFL's agent that the insurance product [**10] she purchased was an annuity. The conversion claim is thus barred by *G.L.c. 175, § 181*.

Even if the claim had been timely filed, Grande failed to advance evidence of the elements of conversion sufficient to permit a trial of her claim. The tort of conversion requires a wrongful exercise of dominion or control over the personal property of another by one who has no right of possession at the time. *Third Nat'l Bank of Hampden County v. Continental Ins. Co., 388 Mass. 240, 244, 446 N.E.2d 380 (1983); Abington Nat'l Bank v. Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507, 475 N.E.2d 1230 (1985)*. "The action cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property." *Spooner v. Manchester, 133 Mass. 270, 273 (1882)*. The record herein is devoid of any facts suggesting that PFL exercised any wrongful control over the monthly payments voluntarily made by Grande, or took any action with respect to such payments other than

providing her with the life insurance coverage which the [**11] documents establish that she purchased. Further, upon receiving Grande's notice that she was discontinuing [*264] monthly payments, PFL promptly advised her that the life insurance policy would be canceled without any additional liability, per her request. Given the absence of any specific facts demonstrating Grande's ability to establish a threshold case of conversion, therefore, PFL would have been entitled to summary judgment on this complaint count even if *G.L.c. 175, § 181* were inapplicable.

3. Grande's G.L.c. 93A claim is based on PFL's alleged violations of *G.L.c. 176D, § 3(1)(a)* (misrepresentation of insurance policy terms) and PFL's undisputed violation of the disclosure requirements of *211 CMR 31.05* (failure to provide life insurance Buyer's Guide and Policy Summary). Grande has, however, advanced no authority for the proposition that violations of *G.L.c. 176D, § 3(1)* or *211 CMR 31.05* may *per se* form the basis of an action pursuant to G.L.c. 93A. There is nothing in the Insurance Solicitation Regulations in question which references G.L.c. 93A, or which makes a violation of its provisions [**12] an unfair and deceptive act. Chapter 176D creates no private right of action for any violation of its provisions. See *Ryan v. Fallon Community Health Plan, Inc., 921 F. Supp. 34, 38 (D. Mass. 1996); Pariseau v. Albany Intern. Corp., 822 F. Supp. 843, 845 (D. Mass. 1993)*. Sections 6 and 7 afford the Commissioner of Insurance the exclusive authority to enforce G.L.c. 176D requirements.

Further, following the decision in *Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 365 N.E.2d 802 (1977)*, which held that "c. 176D does not bar application of c. 93A to unfair or deceptive insurance acts or practices," *Id. at 78*, the Legislature amended *G.L.c. 93A, § 9* to make violations of *G.L.c. 176D, § 3(9)* actionable under G.L.c. 93A. See *Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 675, 448 N.E.2d 357 (1983)*. The Legislature specified § 3(9) of G.L.c. 176D, and did not include violations of § 3(1) or any other section of that statute. Ordinary canons of construction dictate that a court will not "read into [a] statute a provision which the Legislature did not [**13] see fit to put there, whether the omission came from inadvertence or set purpose." *General Elec. Co. v. Department of Environmental Protec., 429 Mass. 798, 803, 711 N.E.2d 589 (1999)*, quoting from *King v. Viscoloid Co., 219 Mass. 420, 425, 106 N.E. 988 (1914)*. See also *Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 n.3, 494 N.E.2d 1008 (1986); Mitchell v. Mitchell, 312 Mass. 154, 161, 43 N.E.2d 783 (1942)*. We conclude, therefore, that there is no individual cause of action for an insurer's violations of *G.L.c. 176D, § 3(1)* or *211 CMR 31.05* under G.L.c. 93A.

2000 Mass. App. Div. 261, *264; 2000 Mass. App. Div. LEXIS 96, **13

As violations of the insurance statutes and regulations in question amount to misrepresentations by an insurer, they may instead form the basis for a *G.L.c. 175, § 181* action. Section 3(1)(a) of G.L.c. 176D makes it an unfair or deceptive act for an insurer to "misrepresent the benefits, advantages, conditions or terms of any insurance policy." This statutory language tracks the specific terms of *G.L.c. 175, § 181*, which is expressly applicable to actions based on "any written or oral statement misrepresenting the **[**14]** terms of any policy of insurance or any annuity." PFL's violation of *211 CMR 31.05(1)(a)* in failing to provide Grande with the life insurance Buyer's Guide and Policy Summaries mandated by the regulation also amounted to misrepresentation. Pursuant to *211 CMR 31.07*, the "failure of an insurer to provide or deliver a Buyer's Guide or a Policy Summary as provided in § 5 shall constitute an omission which *misrepresents the benefits, advantages, conditions or terms of an insurance policy* [emphasis supplied]." n3 Again, however, a *G.L.c. 175, § 181* action must be brought within two years of the date of the issuance of the insurance policy. Grande's claims are time-barred.

n3 Compare *211 CMR 34.08(3)* which expressly renders the failure to comply with regulatory requirements for the replacement of life insurance or an annuity "an unfair method of competition and unfair or deceptive acts or practices in the business of insurance." Based on the specific terms of § 34.08(3), it has been held that non-compliance with § 34.00 *et seq.* constitutes a per se violation of G.L.c. 93A which may be the basis for a private cause of action by a consumer pursuant to that statute. *Mayer v. Cohen-Miles Ins. Agency, Inc., 48 Mass. App. Ct. 435, 439, 722 N.E.2d 27 (2000).*

**[**15]**

**[*265]** The trial court's entry of summary judgment for defendant PFL Life Insurance Company is affirmed. Appeal dismissed.

So ordered.

# *Appendix 4*

LEXSEE 2001 MASS. APP. DIV. 49

**Richard O. Slingsby vs. Metropolitan Insurance Company**

**[NO NUMBER IN ORIGINAL]**

**STATE OF MASSACHUSETTS, APPELLATE DIVISION, NORTHERN DISTRICT**

*2001 Mass. App. Div. 49; 2001 Mass. App. Div. LEXIS 7*

**April 4, 2001, Decided**

**PRIOR HISTORY: [\*\*1]** Opinion (1) vacating an order of dismissal solely as to the allegation that the defendant demanded $20,000 to keep the plaintiff's policy in effect and (2) returning the case to the trial court for further proceedings. Motion to dismiss heard in the Salem Division by Anthony P. Sullivan, J.

**DISPOSITION:** Order vacated.

**LexisNexis(R) Headnotes**

**COUNSEL:** Alice J. Klein for the plaintiff.

James R. Carroll for the defendant.

**JUDGES:** Merrick, P.J., Coven & Wright, JJ.

**OPINIONBY:** Merrick

**OPINION:**

   **[\*49]** Merrick, P.J. This is a Dist./Mun. Cts. R. A. D. A., Rule 8A, appeal by the plaintiff of the allowance of a *Mass. R. Civ. P., Rule 12(b)(6)*, motion to dismiss this action.

   The complaint indicates that in the 1970s, an agent of defendant Metropolitan Insurance Company ("Metropolitan") sold the plaintiff three "whole life" insurance policies, each in the amount of $6,000.00. In May of 1985, as a result of conversations with another Metropolitan agent, the plaintiff surrendered those policies and purchased a $75,000.00 "Flexible Premium" life insurance policy. The plaintiff seeks recovery in this action for Metropolitan's alleged fraud, misrepresentations and unfair and deceptive acts in violation of G.L.c. 93A and G.L.c. 176D in connection **[\*\*2]** with the latter policy.

   The "Flexible Premium" policy, by its terms, was to remain in effect until the plaintiff-insured's 95th birthday. The policy provides that the premium paid, less adminis-

trative costs and the cost of term life insurance, shall be applied monthly to an "Accumulation Fund." The administrative costs are specified as 9% percent of the premium. The cost of the term life insurance will be set each year, but the rates may not exceed those set out on page 4 of the policy in a chart titled: "Table of Guaranteed Maximum Rates for Each $1,000.00 of Term Insurance." The annual "Planned Premium" for the policy is originally set at $1,618.00, but the policy prominently specifies that "THE PLANNED PREMIUM SHOWN BELOW MAY NEED TO BE INCREASED TO KEEP THIS POLICY AND COVERAGE IN FORCE." The policy gives the insured the option to reduce or even skip planned premium payments as long as a sufficient sum remains in the Accumulation Fund to be drawn to pay the premium to keep the policy in force.

   The policy provides that Metropolitan shall pay interest on the Accumulation Fund and add it thereto. It further provides for a guaranteed minimum interest rate of .32737% per month (about **[\*\*3]** 3.9% per year) to be paid on the Accumulation Fund. That interest is to be paid on the first $1,000.00 in the Accumulation Fund. According to the policy, a higher rate may be set by Metropolitan to be paid on the remainder of the Accumulation fund, but that rate may not be less than the guaranteed rate.

   Under the policy terms, the insured may borrow money up to the amount of the cash value of the policy. The value of the policy and the death benefit are reduced by the amount of any loan and interest thereon unless they are repaid. In 1987, **[\*50]** according to the complaint, an agent told the plaintiff that he could "borrow" money from the policy for his daughter's education. He borrowed $6,000.00, and shortly thereafter received a notice that his death benefit had been reduced by $6,000.00.

   As noted above, the policy allows the insured to reduce the premium to a lesser amount, with the difference between the planned premium and the lesser amount to be deducted from the Accumulation Fund. In 1985, the insured elected to have the premium set at $1,200.00 per annum with the result that the additional monies nec-

Case 1:05-cv-10118-GAO     Document 27     Filed 06/13/2005     Page 50 of 51

Page 2

2001 Mass. App. Div. 49, *50; 2001 Mass. App. Div. LEXIS 7, **3

essary to make up the planned premium were deducted annually from **[\*\*4]** the Accumulation Fund. As indicated in the rate chart on page 4 of the policy, the cost of the term insurance had increased annually as the plaintiff aged. Metropolitan sent the plaintiff annual statements as to the cost of the term insurance and the status of the Accumulation Fund. n1 In a letter dated July 26, 1998, the plaintiff concedes he was "remiss" in not checking the statements sent to him. When he finally reviewed his statement in June, 1998, he was distressed to discover that his Accumulation Fund consisted of only $1,568.50. The plaintiff also alleges that Metropolitan stated he would forfeit his policy unless he made a payment of $20,000.00. n2 Because he could not make that payment, the plaintiff then canceled his policy and requested disbursement of the $1,586.50. He received a lesser amount, apparently reflecting deductions for administration and/or cost of insurance.

　　　　n1 Some of the facts recited herein come from correspondence included in the Rule 8A Expedited Appeal, although it is not clear to us that they were presented to the trial judge.

　　　　n2 The documents included in the Expedited Appeal make no reference to this $20,000.00 demand at places where it would be expected to appear in the record. We treat the demand as a fact for purposes of the motion to dismiss under Rule 12(b)(6) because it is alleged in the complaint. *C.M. v. P.R., 420 Mass. 220, 221, 649 N.E.2d 154 (1995).*

**[\*\*5]**

In his complaint, the plaintiff alleges that Metropolitan's agent, at the time the "Flexible Premium" policy was sold, misrepresented to him that the policy was a "whole life" policy and that the premium, reduced from $1,618.00, would remain level at $1,200.00 for the life of the policy. The complaint also asserts that the agent failed to tell the plaintiff that the cost of the term insurance portion of the premium would increase over time and that the Accumulation Fund would be reduced by administrative costs or increases in the cost of insurance not paid in additional premium payments by the insured. The complaint recites that but for these misrepresentations and silences, the plaintiff would not have surrendered his three whole life policies, nor purchased the "Flexible Premium" policy.

This action was commenced on May 18, 2000.

The trial court allowed Metropolitan's motion to dismiss on the ground of the statute of limitations, *G.L.c. 175, § 181*, and the plaintiff appealed.

1. Metropolitan's motion to dismiss was based on the argument that the plaintiff's claims were barred by the two year statute of limitations set forth in *G.L.c. 175, § 181*. **[\*\*6]** The statute provides, in pertinent part:

　　　No company, no officer or agent thereof and no insurance broker or insurance adviser shall make, issue, circulate or use, or cause or permit to be made, issued, circulated or used, any written or oral statement misrepresenting the terms of any policy of insurance or any annuity or pure endowment insurance issued or to be issued by any company. ... The insured under any policy of life or endowment insurance or the holder of any annuity ... who was induced to procure it by an action in violation of this section by an officer or agent of the company issuing or executing it may recover from such company all premiums paid on such policy or **[\*51]** contract ... in an action brought within two years after the date of the issue thereof.

It is the gravamen of the complaint as one for such misrepresentations that governs the applicability of this statute of limitations, not the designation of the claim as one under G.L.c. 93A and c. 176D, § 3(1) (a). *Grande v. PFL Life Ins. Co., 2000 Mass. App. Div. 261, 262.* We note that in *Grande*, the two year limitations period of § 181 was enforced even though the plaintiff in **[\*\*7]** that case claimed that the insurance policy at issue had not been provided to her. In this case, the policy containing the provisions recited above was provided to the plaintiff, an assistant clerk–magistrate of the District Court at the time it was issued. It is not argued that the policy is not in compliance with *G.L.c. 175, § 2B*. See *Commerce Ins. Co. v. Koch, 25 Mass. App. Ct. 383 n. 2, 522 N.E.2d 979 (1988)* (insurance policies to be written in easily understandable form). There is no support whatsoever for the plaintiff's argument that the statute should run from the time the plaintiff "discovered" the actual policy language.

The dismissal of the complaint on statute of limitations grounds is affirmed with respect to the allegations of misrepresentations in the sale of the insurance policy.

2. A further allegation of the plaintiff's complaint is that, at the time he borrowed $6,000.00 in 1987, Metropolitan's agent failed to tell him that the amount of the loan would reduce the amount of his death benefit without any reduction in premium. The plaintiff may not claim an injury here because, in actuality, the death benefit is not **[\*\*8]** reduced; rather, a portion of it has been advanced. The use of even this bit of logic was not, however, required of the plaintiff. As we noted above, the policy specifically provides that both the value of the policy and

Case 1:05-cv-10118-GAO     Document 27     Filed 06/13/2005     Page 51 of 51

Page 3

2001 Mass. App. Div. 49, *51; 2001 Mass. App. Div. LEXIS 7, **8

the death benefit are reduced by the amount of the loan and any interest. A party who receives a policy is bound by its terms. *Mundy v. Lumberman's Mut. Cas. Co., 783 F.2d 21, 22 (1st Cir. 1986)* (applying Massachusetts law).

Therefore, the complaint was properly dismissed as to the allegations concerning the reduction of the death benefit by the amount of the loan.

3. Only one allegation in the complaint gives us pause. As we have noted, the complaint alleges that the plaintiff had to cancel his policy because Metropolitan stated in June, 1998 that he would forfeit the policy unless he made a payment of $20,000.00. However unlikely it seems, we must accept that allegation as true for purposes of this Rule 12(b) (6) review. *Schaer v. Brandeis Univ., 432 Mass. 474, 477, 735 N.E.2d 373 (2000); Warner–Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47, 691 N.E.2d 545*

*(1998).* There is nothing in the policy **[**9]** to support such a demand by Metropolitan. Neither counsel could shed any light upon the assertion at oral argument. On the present record, the issue cannot be resolved by motion. It may be that the issue could be clarified by affidavit, but, as Metropolitan itself has argued here, "[a] party is entitled to notice that a court intends to treat a Rule 12(b) (6) motion as a motion for summary judgment and to an opportunity to present further material and be heard." *Gomes v. Metropolitan Prop. & Cas. Ins. Co., 45 Mass. App. Ct. 27, 32, 695 N.E.2d 673 (1998).*

Accordingly, the order of dismissal is vacated solely as to the allegation that Metropolitan demanded $20,000.00 to keep the plaintiff's policy in effect. This case is returned to the trial court for further proceedings.

So ordered.