UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RONALD P. PASSATEMPO, Trustee of the Samuel Pietropaolo Irrevocable Trust, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> FREDERICK V. MCMENIMEN III, *et al.*, <br><br> *Defendants.* | Case No. 05-CV-10118-GAO |

## MEMORANDUM OF REASONS SUPPORTING
## MOTION OF DEFENDANT FREDERICK V. MCMENIMEN III
## FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Despite their knowledge that this Court is without authority to grant the relief for which they moved, the surviving plaintiffs, Patricia Pietropaolo ("Aunt Pat"), and Ronald Passatempo ("Attorney Passatempo") (collectively "Plaintiffs")[1] and their attorneys have persisted in going forward with their application for an illegal injunction. Even if initially ignorant of the binding precedent barring their motion, the Plaintiffs and their lawyers have since learned that it is not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," and that the motion thus violates Rule 11(b)(2) of the Federal Rules of Civil Procedure. Having declined the shelter of that Rule's "safe harbor," the offenders should be sanctioned.

---

[1] The third plaintiff, Samuel Pietropaolo ("Uncle Sam") passed away on April 1, 2005. (*See* DE #14) However, no representative has moved to be substituted for him, pursuant to FED. R. CIV. P. 25, and there has been no determination as to which, if any, of the claims alleged in the First Amended Complaint ("Complaint") might survive Uncle Sam's death.

The Plaintiffs and their counsel have known since at least May 3, 2005 that this Court may not issue preliminary injunctions of the ilk they requested. Even if such injunctions might have been available previously, the Supreme Court unambiguously precluded them in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 317-333 (1999). The Plaintiffs and their counsel could have discerned that limitation before filing their motion (DE #15), and they indisputably obtained actual knowledge of that fundamental defect when defendant Frederick V. McMenimen III ("Mr. McMenimen") filed his motion for additional time to respond to their application (DE #18), yet they persist. That stubbornness warrants sanctions.[2]

### *ARGUMENT*

In pertinent part, Rule 11(b) of the Federal Rules of Civil Procedure states that by presenting a "written motion" to the Court, an attorney certifies that

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the . . . legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

FED. R. CIV. P. 11(b)(2).[3] This is an objective standard "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." FED. R. CIV. P. 11, advisory comm. note to 1993 amnd't. *See also Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 554 (1991) ("Rule 11 imposes an objective standard of reasonable inquiry"). "If, after notice and a reasonable opportunity to respond," the Court determines that the Rule has been violated, it may "impose an appropriate sanction upon

---

[2] With this motion, Mr. McMenimen does not seek sanctions with respect to the meritless claims asserted in the Plaintiffs' First Amended Complaint ("Complaint"). However, he reserves his right to make such an application – whether pursuant to FED. R. CIV. P. 11(c) or G.L. c. 231, § 6F – at a later date.

[3] Mr. McMenimen also believes that the Plaintiffs have violated FED. R. CIV. P. 11(b)(1), but he does not base this motion on that subsection of the Rule in order to keep the necessary analysis objective.

the attorneys, law firms, or parties" that have violated Rule 11 "or are responsible for the violation."[4]  FED. R. CIV. P. 11(c).

The Rule's most recent amendments generally provide litigants "protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention." FED. R. CIV. P. 11, advisory comm. note to 1993 amnd't.  As the moving parties had done in *Silva v. Witschen,* 19 F.3d 725, 727 (1st Cir. 1994), Mr. McMenimen put the Plaintiffs and their attorneys on notice of the fundamental defects in their motion before serving a motion for sanctions.  (*See* DE #18 ¶¶ 3, 4, 8)  Service of this motion began the 21 day period in which the Plaintiffs may withdraw or appropriately correct their application for injunctive relief.  FED. R. CIV. P. 11(c)(1)(A).  It follows that if this motion is being considered by the Court, then the Plaintiffs and their lawyers have declined to seek shelter in that "safe harbor."

### I.  IT IS "BLACK LETTER" LAW THAT THIS COURT MAY NOT GRANT THE PRELIMINARY INJUNCTION SOUGHT BY THE PLAINTIFFS.

It is clear from the Complaint that the Plaintiffs seek only money damages from Mr. McMenimen.  That pleading contains no prayers for equitable relief or substantive claims sounding in equity.  The Plaintiffs do not claim any lien or equitable interest in any of Mr. McMenimen's assets.  They do not identify any specific property of Mr. McMenimen – whom they acknowledge to be a New Hampshire resident (Complaint ¶ 4) – within this Court's *in rem* jurisdiction.  Yet the Plaintiffs ask this Court to freeze Mr. McMenimen's assets in the absence of a final judgment holding him liable.  (DE #16 at 2-4, 14-16)

---

[4] To the extent persons other than the Plaintiffs' attorneys of record were involved in the violation, they should be sanctioned as well.  Indeed, although a plaintiff represented by counsel, Attorney Passatempo is certainly presumed to be aware of the strictures of Rule 11 and the potential ramifications of violations. Similarly, as the affidavit accompanying the Plaintiffs' motion indicates, Samuel F. Pietropaolo, while not yet a party to the lawsuit, is both a central figure in the litigation and admitted to the Massachusetts bar.  If either lawyer was responsible for the Rule 11 violation, he should share in the consequences.

Such patent overreaching clashes with *Grupo Mexicano*. In that case, the Supreme Court was confronted with a simple question: "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Grupo Mexicano,* 527 U.S. at 325-26. "Because such a remedy was historically unavailable from a court of equity," the Supreme Court held that the District Courts have "no authority" to issue a preliminary injunction preventing litigants from disposing of their assets pending adjudication of a pending claim for money damages." *Id.* at 339-40.

Justice Scalia, writing for the Court, observed that injunctions of the sort requested by these Plaintiffs were not available in "the English Court of Chancery at the time of the separation of the two countries." *Grupo Mexicano,* 527 U.S. at 318. Because that was when the first Congress adopted the Judiciary Act of 1789, and because that seminal statute is the source of the equity powers wielded by the Federal courts, he reasoned that authority to grant such injunctions was not included in the powers conferred by the Framers. *Id.,* 527 U.S. at 339-40. Justice Scalia thus concluded that, "[e]ven when sitting as a court in equity," a District Court cannot "craft a 'nuclear weapon' of the law" like the one sought by the Plaintiffs here. *Id.,* at 332. In reaching that conclusion, he noted that a "more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants." *Id.,* at 330 (quoting Wait, FRAUDULENT CONVEYANCES, § 73 at 110-11).

The Supreme Court's holding in *Grupo Mexicano* is binding upon this Court and its counterparts across the nation. The Plaintiffs' motion for preliminary injunction is thus unwarranted under existing law, and they have come forward with no nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. "Of course, what is 'existing law' or a 'nonfrivolous' argument for extension is sometimes debatable." *Obert v. Republic Western Ins. Co.,* 398 F.3d 138, 146 (1st Cir.

2005). However, no reasonable lawyer literate in the English language could take the position taken by the Plaintiffs and their counsel with respect to the instant motion for preliminary injunction. With *Grupo Mexicano,* the Supreme Court fulfilled its duty to declare "what the law is." *Marbury v. Madison,* 5 U.S. 137, 178 (1803). The Plaintiffs affirmed their indifference to that declaration when they persistently continued to seek, in an action for money damages, a preliminary injunction preventing Mr. McMenimen from transferring assets in which no lien or equitable interest is claimed.

### A. *Instead of Withdrawing Their Defective Motion, The Plaintiffs And Their Attorneys Attempted To Manufacture A Frivolous Distinction.*

There is no colorable basis for distinguishing this case from *Grupo Mexicano*. None of the recognized distinctions are present: the plaintiffs have no security interest in any assets of Mr. McMenimen; they identify no property within this Court's *in rem* jurisdiction; and they seek no final relief other than money damages. *See, e.g., Charlesbank Equity Fund II, LP v. Blinds to Go, Inc.,* 370 F.3d 151, 159-61 (1st Cir. 2004) (avoiding *Grupo Mexicano* analysis because of a "salient distinction" and denying injunction under usual standard); *Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc.,* 77 F. Supp. 2d 199, 206 (D. Mass. 1999) (Ponsor, J.) (*Grupo Mexicano* not controlling "because the plaintiff has an equitable interest in defendant's assets").

The putative distinction offered by the Plaintiffs – that they invoke Rule 64 and not Rule 65 of the Federal Rules of Civil Procedure (*see* DE #19 at 3-4) – is itself frivolous. After all, it was not a Massachusetts standard for issuance of prejudgment asset freeze orders they sought to apply; it was the First Circuit's test for issuance of preliminary injunctions pursuant to Fed. R. Civ. P. 65 which they invoked. (DE #16 at 6) Having had *Grupo Mexicano* brought to their attention – and recognizing that they faced the prospect

13-006-001

of sanctions if they could not concoct a plausible excuse for their actions – the Plaintiffs and their lawyers transparently seek to paint a tiger's stripes on a leopard.

That attempted transformation is of no consequence. Indeed, the party requesting an asset freeze in *Charlesbank Equity* similarly sought to re-characterize its application, arguing as the Plaintiffs do here – "that, in cases where the relief sought is in the nature of an equitable attachment, Fed. R. Civ. P. 65 should be read in light of Fed. R. Civ. P. 64 and be construed as importing state-law standards for determining the availability of relief." 370 F.3d at 159.[5] However, the Court of Appeals emphatically dismissed that contention, holding that the law of this Circuit "stands four-square for the proposition that a prejudgment freeze order is in the nature of an injunction and that, therefore, its propriety should be analyzed under the traditional four-part test." *Id.* at 160. *See also R.G. v. Hall*, 37 Mass. App. Ct. 410 (1994) (Under Massachusetts law, "[w]hen the form of an injunctive order directed against virtually all the assets of a person or involves a large sum of money ($1,000,000, we think, makes the grade), the order is subject to review according to the standards generally applicable to preliminary injunctions."). The panel reasoned:

> [T]he very nature of a freeze order counsels against commingling the jurisprudence of Rule 65 with that of Rule 64. Even though a freeze order may serve many of the same ends as an attachment, the former acts upon a party whereas the latter is directed at specific property. Restraining (or compelling) individual action is especially strong medicine, and courts should hesitate to issue such orders on an interlocutory basis without a showing of urgent need. The traditional four-part standard for preliminary injunctive relief provides a prophylaxis against the hasty or intemperate use of that power. Consequently, sound policy considerations support the imposition of that standard in connection with freeze orders.

---

[5] Significantly, *Charlesbank Equity* was a diversity action initially filed in this Court, 370 F.3d at 154-55, so the same Massachusetts standards for which the Plaintiffs now argue would have applied in that case if the First Circuit had credited the movant's contentions concerning Rule 64.

*Charlesbank Equity,* 370 F.3d at 160. In short, the Plaintiffs' motion presents "a prototypical Rule 65 case – no more and no less." *Id.* at 159-161.[6]

The sole authority on which the Plaintiffs rely for the contrary proposition, *United States v. Rachman,* 198 F.3d 489 (4th Cir. 1999), involved the very distinction noted in *Charlesbank Equity, Fairview Mach. & Tool,* and *Grupo Mexicano* (*see* 527 U.S. at 325). At issue was "whether the district court was authorized to enter a preliminary injunction freezing assets ***in furtherance of the alleged equitable relief claimed*** in an action where substantial money damages are also claimed." *Id.* at 495 (***emphasis*** added). It was "clear" to the Fourth Circuit Court of Appeals that *Rachman* did not "present the pure money damage claim addressed in Grupo Mexicano." *Id.* at 498. As discussed above, this case does present a "pure money damage claim." In any event, the Rule 64 discussion in *Rachman* was largely based upon the very decision reversed by the Supreme Court in *Grupo Mexicano.* 198 F.3d at 500. For these reasons, *Rachman* is inapposite.

Furthermore, Rule 64 applies only to "remedies providing for seizure" of specific persons or property, not generalized impingements on the freedom of litigants against whom judgment has not been entered. Prejudgment freeze orders of the ilk sought by the Plaintiffs are not "remedies" under Massachusetts law "providing for seizure," but instead represent an exercise of the equity jurisdiction granted to courts of the Commonwealth by its Legislature. *See Herman v. Home Depot, Inc.,* 436 Mass. 210, 213 n.6 (2002) (equity jurisdiction comes from G.L. c. 214). That jurisdictional grant has been construed as expansive enough to allow injunctions like the one sought by the Plaintiffs in this case.

---

[6] Not coincidentally, all of the remedies enumerated in Rule 64 – "arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies" – apply only to property over which the District Court has *in rem* jurisdiction. Certainly, if the Plaintiffs sought to attach property located within this Commonwealth, Rule 64 would apply. However, the Plaintiffs seek a generalized restraint on Mr. McMenimen, not a seizure of or encumbrance upon specific Massachusetts property

13-006-001

*See, e.g., Ottenberg v. Vanguard Fiduciary Trust Co.,* 1995 Mass. Super. LEXIS 716 *11 (authority to issue asset freeze injunctions rooted in Chapter 214's "general equity jurisdiction"). However, *Grupo Mexicano* makes clear that Congress' parallel grant of equity power to the Federal judiciary was significantly more limited. 527 U.S. at 317-333.

Rule 64 provides that "any existing statute of the United States governs to the extent to which it is applicable." The Rules Enabling Act mandates that all rules of procedure prescribed by the Supreme Court "be consistent with" existing acts of Congress. 28 U.S.C. § 2071(a). It was such a statute – the Judiciary Act of 1789 – on which the Supreme Court rested its *Grupo Mexicano* analysis. Nothing in the Rules Enabling Act purported to augment the equity powers Congress affirmatively conferred upon District Courts during the early days of the Republic. Rule 64 thus did not affect the availability of injunctive relief, which remains dependent on "traditional principles of equity jurisdiction" defined by the Judiciary Act of 1789. *Grupo Mexicano*, 527 Mass. at 318-19.

## II. THE PUTATIVE INJURIES CLAIMED BY THE PLAINTIFFS ARE NOT A PROPER BASIS FOR PRELIMINARY INJUNCTIVE RELIEF.

Even if *Grupo Mexicano* did not present a jurisdictional bar to the relief sought by the Plaintiffs, their putative injuries, by definition, are not "irreparable" and a proper basis for injunctive relief. The Plaintiffs' motion also does not satisfy the other prongs of the general standard governing issuance of preliminary injunctions, but it is the argument concerning "irreparable harm" that crosses the line and violates Rule 11(b).

It is now beyond cavil that, because the Plaintiffs seek nothing but money damages, their putative injuries do not afford a cognizable basis for injunctive relief. If that issue was ever unsettled in this Circuit, it was definitively resolved last year in *Charlesbank Equity Fund II, LP v. Blinds to Go, Inc.,* 370 F.3d 151, 162-63 (1st Cir. 2004). *See also Inkadinkado, Inc. v. Meyer,* 2003 U.S. Dist. LEXIS 17458 *8 (O'Toole, J.) (denying asset

freeze when plaintiff sought only money damages). That the Plaintiffs purport to fear they will be "left with nothing at the end of the day" (*see* DE #16 at 14-15) is an argument that "can be made by virtually every person who sues another for money damages" and its "very ubiquity indicates why it cannot conceivably be enough to justify the issuance of a prejudgment injunction of this nature." *Charlesbank Equity*, 370 F.3d at 162-63. Freeze orders like the one issued by this Court in *St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis,* 951 F. Supp. 5, 6-7 (D. Mass. 1996) (O'Toole, J.) are no longer appropriate in the First Circuit, even in cases which *Grupo Mexicano* arguably does not control, unless something other than money damages is sought as final relief.

The memorandum with which the Plaintiffs superficially attempted to avoid the impact of *Grupo Mexicano* did not purport to distinguish *Charlesbank Equity*. (*See* DE #19) Nor is there any credible basis for doing so. The Court of Appeals could not have been more clear. Consequently, because money damages are the only injury the Plaintiffs claim, their motion for a preliminary injunction runs afoul of Rule 11(b)(2).

### III.     A COMPENSATORY SANCTION WOULD BE APPROPRIATE.

Importantly for purposes of this motion, Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." FED. R. CIV. P. 11, advisory comm. note to 1993 amnd't. For the Plaintiffs and their attorneys to persist with actual knowledge of basic flaws in their motion – despite (or perhaps intending to cause) the inevitable disruption to Mr. McMenimen's personal and business affairs – cries out for an appropriate sanction.

Ordinarily, under the current version of Rule 11, "the purpose of . . . sanctions is to deter rather than to compensate. . . ." *Silva,* 19 F.3d at 729 n.5 (quoting FED. R. CIV. P. 11, advisory comm. note to 1993 amnd't). However, because the Plaintiffs unjustifiably persisted with their unlawful motion for preliminary injunction despite having actual knowledge of that motion's fundamental defects, and because they subsequently failed to avail themselves of Rule 11's "safe harbor," compensatory sanctions are "warranted for effective deterrence." FED. R. CIV. P. 11(c)(2).

Because Mr. McMenimen's counsel has not yet filed a response to the motion for preliminary injunction or orally argued against that motion, it is not yet practicable to ascertain "the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *See id.* (specifying measure of compensatory sanctions). As this Court has noted, however, a litigant in Mr. McMenimen's position is entitled to "***the fair value of response costs reasonably incurred.***" *In re 1095 Commonwealth Corp. v. Citizens Bank of Massachusetts,* 236 B.R. 530, 538 (D. Mass. 1999) (O'Toole, J.) (***emphasis*** in original) (quoting *Navarro-Ayala v. Nunez,* 968 F.2d 1421, 1427 (1st Cir. 1992)). Accordingly, if this motion is allowed, Mr. McMenimen should be able to submit proof of his response costs so the Court may fashion an appropriate sanction.

CONCLUSION

For whatever reason, the Plaintiffs and their counsel declined the shelter of Rule 11's "safe harbor" and insisted on going forward with a motion that is frivolous for two separate reasons. When the fundamental defects in their motion were illuminated, not only did the Plaintiffs refuse to withdraw it, but they also attempted to manufacture a bogus distinction to *Grupo Mexicano* in anticipation of this application for sanctions. That is precisely the sort of evil Rule 11 was intended to prevent and the Court's authority to sanction offenders was intended to deter.

Respectfully submitted,

FREDERICK V. MCMENIMEN III

By his attorney,

*/s/ William P. Corbett, Jr.*
_____
William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
 *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  May 5, 2005