UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD P. PASSATEMPO, TRUSTEE, )<br>On behalf of the Samuel Pietropaolo )<br>Irrevocable Trust, SAMUEL PIETROPAOLO, )<br>GRANTOR to the Samuel Pietropaolo )<br>Irrevocable Trust, and PATRICIA D. )<br>PIETROPAOLO, BENEFICIARY of the )<br>Samuel Pietropaolo Irrevocable Trust, )<br>)<br>    Plaintiffs, )<br>)<br>    v. )<br>)<br>FREDERICK V. McMENIMEN III, BARRY )<br>G. ARMSTRONG, NEW ENGLAND )<br>ADVISORY GROUP, LLC, 1717 CAPITAL )<br>MANAGEMENT COMPANY, NATIONWIDE )<br>PROVIDENT (f/k/a Provident Mutual Life )<br>Insurance Company), and NATIONWIDE )<br>FINANCIAL SERVICES, INC., )<br>)<br>    Defendants. )<br>) | Civil Action No.<br>05-10118-GAO |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
## AMENDED MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Ronald P. Passatempo and Patricia D. Pietropaolo respectfully submit this Reply in further support of their Amended Motion For Preliminary Injunction ("Motion"). In his Opposition thereto, Defendant Frederick V. McMenimen III suggests, *inter alia*, that Plaintiffs' "prospects for success are minimal" in light of Massachusetts General Law chapter 175, section 181, which, he argues, sets forth a "statute of repose" barring all of Plaintiffs' state law claims. (Opposition ("Opp.") at 1, 10-13.) For the reasons set forth herein, this argument is specious, belied by the case law and lacking in

any authoritative support.[1] In addition, Mr. McMenimen's Declaration in support of his Opposition (and the documents attached thereto) fails utterly to buttress his contention that, even if (as is the case) Plaintiffs' claims are not barred by statutes of repose, they were on notice of their injury as early as 1998 and thus all but one of the applicable limitation periods have run. (Opp. at 13-16.) As reflected in the accompanying Second Affidavit of Samuel F. Pietropaolo ("Second S.F.P. Aff."), and as discussed below, Plaintiffs' claims were tolled until at least April 2003 because Mr. McMenimen theretofore violated his fiduciary duty to disclose to Plaintiffs the true nature of their insurance policy and, moreover, he took proactive steps to conceal the policy's terms from them.

Finally, Mr. McMenimen continues to misconstrue <u>Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.</u>, 527 U.S. 308 (1999), and its progeny, and his argument in this regard also warrants a brief discussion herein. (As the Court is aware, Mr. McMenimen has also filed a motion for Rule 11 sanctions predicated on his misguided interpretation of <u>Grupo Mexicano</u>. Plaintiffs will vigorously oppose this motion in a separate filing.) This Court *does* have authority to issue the requested preliminary relief, and for the reasons set forth in Plaintiffs' original Motion, as well as in this Reply, such relief is urgently required to ensure that Mr. McMenimen does not transfer assets during this litigation such that Plaintiffs are unable to satisfy the judgment that will likely be entered in their favor. Mr. McMenimen's misrepresentations in his dealings with Plaintiffs are well-documented in this case; it would therefore be folly for

---

[1] As for Mr. McMenimen's argument concerning 28 U.S.C. § 1658(b), which includes a statute of repose applicable to Plaintiffs' *federal* claims (see Opp. at 16-17), Plaintiffs will address this issue in a forthcoming supplemental brief in support of their Opposition to Mr. McMenimen's Motion to Dismiss, per the Court's request at the hearing on May 31, 2005.

2

them to rely upon his mere unsupported representations that he will be able to pay when this litigation is completed.

## Argument

1. **Plaintiffs' Likelihood Of Success On The Merits Is Not Jeopardized By Massachusetts General Law Chapter 175, Section 181.**

Mr. McMenimen's argument that G.L. c. 175, § 181 is a statute of repose and thus bars all of Plaintiffs' state law claims is fatally flawed and should have no bearing on the Court's decision with respect to the instant Motion. Most fundamentally, G.L. c. 175, § 181 is simply *not* a statute of repose; rather, it is a statute of limitations.[2] The statute provides, in pertinent part:

> The insured under any policy of life or endowment insurance or the holder of any annuity or pure endowment contract who was induced to procure it by any action in violation of this section by an officer or agent of the company issuing or executing it may recover from such company all premiums paid on such policy or contract less any indebtedness to the company thereon or secured thereby and less any payments otherwise made by the company thereon, in an action brought within two years after the date of issue thereof.

G.L. c. 175, § 181 (2005). Much as he may try to downplay it, none of the cases concerning statutes of repose upon which Mr. McMenimen attempts to rely include discussion of G.L. c. 175, § 181 specifically. They all relate to other, unrelated repose statutes. See, e.g., Nett v. Bellucci, 437 Mass. 630 (2002) (concerning G.L. c. 231, § 60D and G.C. c. 260, § 4); McGuinness v. Cotter, 412 Mass. 617 (1992) (concerning G.L. c. 231, § 60D); Sullivan v. Iantosca, 409 Mass. 796 (1991) (concerning G.L. c. 260, § 2B); Nissan Motor Corp. v. Commissioner of Revenue, 407 Mass. 153 (1990) (concerning G.L. c. 62C, § 37). The more relevant cases, on the other hand – i.e., those which *do*

---

[2] Moreover, Plaintiffs do not concede that G.L. c. 175, § 181 applies to all of their state law claims. Nor do they concede that, as Mr. McMenimen contends, "the statute essentially limit[s their] monetary 'upside' to a mere fraction of what they claim in their Complaint." (Opp. at 11.)

3

concern G.L. c. 175, § 181 specifically – consistently treat it as a statute of limitations. See Slingsby v. Metro. Life Ins. Co., 2001 Mass. App. Div. LEXIS 7 at *6 (Apr. 4, 2001) (discussing "the two year limitations period of § 181"); Grande v. PFL Life Ins. Co., 2000 Mass. App. Div. LEXIS 96 at *4 (Mass. App. 2000) (discussing "the G.L.c. 175, § 181 two year statute of limitations"); Wilson Farm, Inc. v. Berkshire Life Ins. Co., 2002 Mass. Super. LEXIS 376 at *19 (Oct. 31, 2002) (Brassard, J.) ("G.L.c. 175, § 181 governs claims of misrepresentation in connection with the sale of insurance, and contains a two-year statute of limitations.").

To be sure, it is both appropriate and logical to determine whether a given Massachusetts statute is one of repose or of limitation based upon how the Courts of the Commonwealth have treated it in the past. See, e.g., Post v. Belmont Country Club, Inc., 60 Mass. App. Ct. 645, 654 (Mass. App. Ct. 2004) (citing case law referring to G.L. c. 197, § 9 as a statute of limitation in support of conclusion that it sets forth period of limitation rather than repose). Indeed, this approach is embodied in the basic and fundamental rule of *stare decisis*, which guides the adjudication of disputes in both the federal and Massachusetts courts. See, e.g., Vasquez v. Hillery, 474 U.S. 254, 265-266 (1986); Stonehill College v. Mass. Comm'n Against Discrimination, 441 Mass. 549, 562 (2004) ("[a]dherence to the principle of stare decisis provides continuity and predictability in the law"). Here, as discussed above, the case law teaches that G.L. c. 175, § 181 *is*, and therefore should be applied as, a statute of limitations.

Nevertheless, in his Supplemental Memorandum filed in connection with his Motion to Dismiss ("Supp. Memo.") (Docket No. 27),[3] Mr. McMenimen engages in a

---

[3] As indicated above, supra note 1, at the May 31, 2005 hearing in this matter the Court requested supplemental briefing on the limited issue of whether 28 U.S.C. § 1658(b) bars Plaintiffs' federal securities

4

detailed discussion of (and attaches) Judge Freedman's summary judgment decision in Loguidice v. Metro. Ins. Co., Civil Action No. 97-10060-FHF, slip op. (D. Mass. Oct. 11, 2002). (See Supp. Memo. at 14-15 & appendix 1.) In a footnote, he suggests that "[a]lthough Judge Freedman characterized G.L. c. 175, § 181 as a 'statute of limitations' ... [he] *treated* it as a statute of repose." (Id. at 15, n.10 (emphasis supplied).) What Mr. McMenimen does not mention is that, in the course of considering the plaintiffs' subsequent appeal of Judge Freedman's decision, the First Circuit both "characterized" *and* "treated" G.L. c. 175, § 181 as a statute of limitations, i.e., the Court entertained (but did not endorse, on the facts) the plaintiff's equitable tolling arguments, which it plainly would not have done had it considered the law to be a statute of repose. Loguidice v. Metro. Life Ins. Co., 336 F.3d 1, 6-7 (1st Cir. 2003); see Sullivan, 409 Mass. at 798 (tolling theories are not applicable to statutes of repose).

That the Courts have consistently treated G.L. c. 175, § 181 as a statute of limitations is no surprise given that most (although not all) Massachusetts statutes including repose periods include periods of limitation as well. See, e.g., G.L. c. 231 § 60D (medical malpractice claims brought by minors "must be commenced within three years from the date the cause of action accrues ... but in no event shall any such action be commenced more than seven years after occurrence of ... the alleged cause of the injury"); G.L. c. 260, § 2B (tort claims concerning improvements to real property "shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after" the property is either opened for use or substantially completed and occupied by the owner);

---

law claims. Mr. McMenimen devotes just 7 of 19 pages of his supplemental brief to that issue; much of the rest of his brief discusses G.L. c. 175, § 181.

5

G.L. c. 260, § 4 (medical malpractice claims "shall be commenced only within three years after the cause of action accrues, but in no event shall any such action be commenced more than seven years after … the alleged cause of injury"); see also Post, 60 Mass. App. Ct. at 654 ("There is no language in [G.L. c. 197, § 9] indicating a legislative intent to create a statute of repose, contrast G.L. c. 260, § 2B, and G.L. c. 231, § 60D … which contain the language 'but in no event shall actions be commenced more than seven years after occurrence of the act …'"). By comparison, the text of G.L. c. 175, § 181 includes only one temporal period: cases falling under the statute's ambit must be filed "within two years after the date of issue" of the subject insurance policy. G.L. c. 175, § 181.

Finally, the Court should not be swayed by Mr. McMenimen's suggestion that the statute is one of repose simply because, as he puts it, it "runs from a definitely established event" rather than from "accrual" per se. (Opp. at 11.) Not all Massachusetts statutes of limitation employ the actual word "accrual." See, e.g., G.L. c. 197, § 9(a) ("an executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased"); see also Post, 60 Mass. App. Ct. at 654 (confirming that G.L. c. 197, § 9(a) is a statute of limitation). The statute at issue here is like G.L. c. 197, §9(a) in that although it does not include the word "accrual," it is nonetheless indisputably a statute of limitations. Accordingly, its limitation period is subject to equitable tolling, as discussed below. Plaintiffs' likelihood of success in this litigation is therefore not threatened by G.L. c. 175, § 181.

6

2.  **Plaintiffs' Likelihood Of Success On The Merits Is Not Jeopardized By Any Of The Applicable Statutes Of Limitation, As Their Claims Were Tolled Until April 2003 At The Earliest And They Filed Suit In August 2004.**

Because G.L. c. 175, § 181 is a statute of limitations, rather than a statute of repose, to the extent it encompasses Plaintiffs' state law claims its two-year limitation period is subject to equitable tolling.[4] Even the cases concerning G.L. c. 175, § 181 cited by Mr. McMenimen in his Opposition acknowledge as much. See Slingsby, 2001 Mass. App. Div. LEXIS 7 at *7 (entertaining, but finding no support for, application of the "discovery rule"); Grande, 2000 Mass. App. Div. LEXIS 96 at *7-8 (same); Wilson Farm, 2002 Mass. Super. LEXIS 376 at *20-27 (denying summary judgment because fact issues remained as to whether G.L. c. 175, § 181 was equitably tolled). As discussed at pages 9 through 12 of Plaintiffs' Opposition to Mr. McMenimen's pending Motion to Dismiss (Docket No. 13), Plaintiffs' claims were tolled in this case for approximately five years as a result of Mr. McMenimen's concerted, ongoing efforts to fraudulently conceal the true nature of their policy from them. See G.L. c. 260, § 12 ("If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."); Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 519 (1997) ("When a defendant fraudulently conceals a cause of action from the knowledge of a plaintiff, the statute of limitations is tolled under G.L.c. 260, § 12, for the period prior to the plaintiff's discovery of the cause of action.").

---

[4] Again, Plaintiffs do not concede that the G.L. c. 175, § 181 statute of limitations *does* apply to all of their state law claims. See supra note 2. And as for the impact of the only applicable statute of *repose* – 28 U.S.C. § 1658(b) – Plaintiffs will address that issue in their forthcoming supplemental brief in opposition to Mr. McMenimen's motion to dismiss, as discussed supra at note 1.

7

Indeed, it has already been demonstrated that Mr. McMenimen went to great lengths to conceal Plaintiffs' injuries from them, from at least July 1998, when the policy was issued, until Plaintiffs filed this lawsuit on July 1, 2004. He completed the policy terms sections of their application forms and did not show those sections to them before filing. (Second S.F.P. Aff. ¶ 4.) Once the policy was procured, he repeatedly misrepresented to them that it included a guaranteed $500,000 death benefit. (Id. ¶ 7.) He said he would remain responsible for their policy and that they should send their premium payments directly to him, which they continued to do even after (unbeknownst to them) he had left New England Advisory Group ("NEAG") and was no longer the agent of record. (Id. ¶ 9.) Then, after NEAG agent Jesse McPhail called Plaintiff Samuel Pietropaolo ("Mr. Pietropaolo") in April 2003 and told him the policy had been "orphaned" and was worth only $200,000, Mr. McMenimen told Plaintiffs not to deal with Mr. McPhail and said he would "re-underwrite" the policy to reflect the guaranteed $500,000 originally promised. (Id. ¶¶ 10, 12.) Finally, once it became apparent in early 2004 that no such "re-underwriting" had occurred, Mr. McMenimen gave Mr. Pietropaolo's son, Samuel F. Pietropaolo ("Sam P."), certain fabricated documents in May 2004 that shifted the blame from himself to Nationwide and NEAG, and he professed to arrange a meeting with Nationwide representatives that it now seems he never actually made any effort to arrange. (Id. ¶¶ 12, 13, 15.)

Given this unfortunate chain of events, Plaintiffs had no cause to suspect that anything was at all awry until *at least* April 2003, when Mr. Pietropaolo received Mr. McPhail's phone call. Further, they only discovered that Mr. McMenimen was not being honest with them and that wrongdoing had occurred when he gave Sam P. what were

8

(and are) apparently forged documents at their meeting in April 2004. Thus, per the "discovery rule," the applicable statutes of limitation only began to run in April 2003 at the earliest,[5] when Mr. McPhail called and gave Mr. Pietropaolo information concerning his policy that contradicted what Mr. McMenimen had maintained since 1998. See Pruner v. Super. Ct., 382 Mass. 309, 312 (1981) ("a plaintiff's cause of action does not necessarily accrue when the defendant commits the negligent act, but rather accrues on the happening of any event likely to put the plaintiff on notice" (internal quotes omitted)); Friedman v. Jablonski, 371 Mass. 482, 485-486 (1976) (limitation period begins to run only "when a buyer learns of the misrepresentation or reasonably should have learned of the misrepresentation."). Since Plaintiffs filed suit less than two years later – and since the shortest applicable limitation periods (28 U.S.C. § 1658(b) and G.L. c. 175, § 181) are two years in length – Plaintiffs' claims are, in a word, timely.

Moreover, as discussed at some length in Wilson Farm, "[t]o rely upon the fraudulent concealment doctrine, plaintiffs must show that the defendants took an affirmative act of concealment of the cause of action, *or that a fiduciary relationship existed between defendants and themselves*." 2002 Mass. Super. LEXIS 376 at *20 (emphasis supplied). In other words, if Mr. McMenimen was a fiduciary to the Plaintiffs, even if (counterfactually) they "had the means to discover" their injury, that fact would not "preclude the statute of limitations from tolling until they acquired *actual knowledge*" thereof. Id. at *21 (citing Demoulas, 424 Mass. at 519) (emphasis supplied). "The 'discovery rule' ... does not apply when the defendant is a fiduciary." Id. Put another way, "[w]hen the defendant is a fiduciary, its failure to disclose the facts that would give

---

[5] Mr. McMenimen's continued fraudulent concealment thereafter arguably tolled the limitation periods well into 2004.

9

rise to knowledge of a cause of action is equivalent to fraudulent concealment." Id. at *20.

Mr. McMenimen was Plaintiffs' fiduciary. (See Motion at 9-10.) A fiduciary relationship exists between an insurance agent and his or her customer where "special circumstances of assertion, representation and reliance" are present. Clough v. Brown, 59 Mass. App. Ct. 405, 418-419 (2003) (quoting Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc., 44 Mass. App. Ct. 29, 31-32 (1997)). Here, as detailed in Sam P.'s Second Affidavit (see Second S.F.P. Aff. ¶¶ 3-7, 9-11), Mr. McMenimen "claim[ed] special knowledge" (regarding so-called "pension maximization" for municipal employees), he had "a long-standing relationship" with Plaintiffs, and they had "come to rely on [him] to help [them] procure necessary and appropriate insurance." Gonzalez ex rel. Espinal v. Arsenault, 2004 Mass. Super. LEXIS 336 at *16-17 (Sept. 8, 2004) (finding fiduciary relationship between broker and customer); see also Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 680-681 (2001) (discussing same factors as predicate for establishing fiduciary relationship); see also Bicknell, Inc. v. Havlin, 9 Mass. App. Ct. 497, 500 (1980) ("The nature and extent of the duty of care owed by an independent insurance agent to his client depends in part, at least, upon the degree of skill which he represents himself to possess"). Accordingly, he had an affirmative duty to disclose to them that their policy included a death benefit of just $200,000.

In his Opposition, Mr. McMenimen argues that he *did* make such disclosure to Plaintiffs, in the form of a July 19, 1998 Policy Illustration signed by Mr. Passatempo (the "Illustration"). (Opp. at 14-15; McMenimen Decl. Ex. A.) However, as indicated in a timeline of events prepared by Mr. McMenimen and given to Sam P. at their meeting in

April 2004 ("Timeline"), Mr. McMenimen, in his own (somewhat cryptic) words, had Mr. Passatempo sign the Illustration "to get coverage since bound," but then confirmed with Mr. Armstrong on July 31, 1998 that "[t]he initial statement would reflect the $500K benefit for the trustee." (Second S.F.P. Aff. ¶¶ 7-8 & Ex. C.) In other words, Mr. McMenimen indisputably knew at the time Mr. Passatempo signed the Illustration that Plaintiffs' policy *should* include a $500,000 guaranteed death benefit, which accords with Plaintiffs' allegation that he told them that their policy, as issued, *would* – and, after July 31, 1998, *did* – include such a death benefit. His Timeline also accords with Plaintiffs' allegations that Mr. McMenimen said the policy might include one or more riders; that he asked Mr. Passatempo to sign the Illustration and return it to him "ASAP" for processing; and that Plaintiffs did not know, and were not told, whether the Illustration related to the entire policy or to just one portion thereof. (Second S.F.P. Aff. ¶¶ 7-8.) Further, the Timeline reflects that a second policy illustration was sent to Mr. Passatempo in August 1998 showing a $483,000 death benefit. (Id. at Ex. C.) In light of all of these misrepresentations by Mr. McMenimen, Plaintiffs plainly did not have notice in 1998 that a $200,000 death benefit was all they stood to receive. They relied on Mr. McMenimen's misrepresentations that the policy he had advised them to obtain was the policy they had, in fact, received.[6]

---

[6] Sam P.'s one-year stint at John Hancock during law school and while he was studying for the bar exam does not upset this conclusion. As stated in his Second Affidavit, "I learned only enough about insurance to recognize, when my father retired, that he needed advice from an experienced professional. Mr. McMenimen held himself out as such." (Second S.F.P. Aff. ¶ 11.)

11

3.  **This Court Has Authority To Issue The Relief Requested And Should Not Be Swayed By Mr. McMenimen's Efforts To Deflect Attention From His Own Misdeeds.**

Mr. McMenimen is doing his best, in the context of Plaintiffs' request for preliminary relief, to manufacture an issue as to whether the Court even has the authority to issue the requested injunction. His goal is transparent – he seeks to create a side-show that will deflect attention from the glaring impropriety of his fabrication of documents and other various misrepresentations. By filing a motion for sanctions as one component of this effort, his overreaching has risen to the level of an abuse of the judicial process. Unfortunately, this effort is part and parcel of Mr. McMenimen's counsel's overall sharp conduct throughout the entirety of this case and, most unfortunately, echoes his conduct in connection with other cases handled by this law firm. Plaintiffs will deal with this unfortunate reality in their forthcoming opposition to Mr. McMenimen's sanctions motion. For the time being, Plaintiffs stand by their good faith and meritorious argument concerning the availability of asset freeze injunctions pursuant to Rule 64 of the Federal Rules of Civil Procedure as set forth in their Motion at pages 16 through 19.

Mr. McMenimen offers a confused rebuttal in his Opposition. (Opp. at 2-6.) He ignores the fact that the Supreme Court in Grupo Mexicano and the First Circuit in Charlesbank Equity Fund II, LP v. Blinds to Go, Inc. both explicitly declined to consider whether asset freeze injunctions are available under the law of the forum state by way of Rule 64. 527 U.S. at 318, n.3; 370 F.3d 151, 158, 161 (2004). He misapprehends Plaintiffs' reliance on the Fourth Circuit's United States ex rel. Rahman v. Oncology Associates decision, which stands for the proposition, among others, that Rule 64 encompasses state remedies for freezing a defendant's assets, and that district courts may

employ such remedies where Rule 64 is invoked. 198 F.3d 489, 501 (1999). (Rahman was decided after and with full consideration of Grupo Mexicano, id. at 494-501, and its basic conclusion in this regard remains viable (although perhaps not expressly stated) in the First Circuit.) And he asserts, falsely, that asset freeze injunctions are not available in the Commonwealth of Massachusetts where only damages are sought. See, e.g., Qwest Communications Corp. v. Cyber Access Internet Communications, Inc., 2000 Mass. Super. LEXIS 556 at *3 (Dec. 8, 2000); see also Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987) ("[E]conomic loss alone does not usually rise to the level of irreparable harm which a party must establish to obtain a preliminary injunction. On the other hand, ... monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant's business." (internal citations omitted)). Here, Mrs. Pietropaolo's entire financial future has been placed at risk by Mr. McMenimen's fraud.

Finally, Mr. McMenimen relies upon Charlesbank Equity for his claim that, regardless of whether asset freeze injunctions are available under Rule 64, Plaintiffs' Motion must be denied because they simply fear being left with no recourse at the end of the day, once judgment enters in their favor, which argument "can be made by virtually every person who sues another for money damages," and the "very ubiquity" of which "indicates why it cannot conceivably be enough to justify the issuance of a prejudgment injunction" freezing assets. 370 F.3d at 162-163; see Opp. at 7-8. But Charlesbank appropriately leaves room for the availability of such relief based upon an "independent reason," i.e., on "something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." 370 F.3d at 162. Here, Mr. McMenimen has

perpetrated a fraud upon Plaintiffs for years on end and he has forged documents in an effort to cover it up, all with the effect of leaving a widow financially insecure in a context where her husband had bargained for, and Mr. McMenimen promised, just the opposite. In this context, there is clearly "something more" here. Plaintiffs should therefore not have to rely upon Mr. McMenimen's wholly unsupported promises that he will be able to pay them when and if this litigation is resolved in their favor.

## Conclusion

For the reasons stated herein and in Plaintiffs' Memorandum of Law in support of their Amended Motion for Preliminary Injunction, the Court should grant the relief requested and endorse the Proposed Order submitted with their original motion papers (Docket No. 17).

Respectfully submitted,

Plaintiffs RONALD P. PASSATEMPO, TRUSTEE, On behalf of the Samuel Pietropaolo Irrevocable Trust, SAMUEL PIETROPAOLO, GRANTOR to the Samuel Pietropaolo Irrevocable Trust, and PATRICIA D. PIETROPAOLO, BENEFICIARY of the Samuel Pietropaolo Irrevocable Trust,

By their counsel:

/s/ David M. Burkoff
Howard M. Cooper (BBO #543842)
David M. Burkoff (BBO #657447)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

Dated: June 22, 2005