## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

RONALD P. PASSATEMPO, TRUSTEE,  )
On behalf of the Samuel Pietropaolo  )
Irrevocable Trust, SAMUEL PIETROPAOLO,  )
GRANTOR to the Samuel Pietropaolo  )
Irrevocable Trust, and PATRICIA D.  )
PIETROPAOLO, BENEFICIARY of the  )
Samuel Pietropaolo Irrevocable Trust,  )
                              )

      Plaintiffs,  )
                              )        Civil Action No.
     v.  )        05-10118-GAO
                              )

FREDERICK V. McMENIMEN III, BARRY  )
G. ARMSTRONG, NEW ENGLAND  )
ADVISORY GROUP, LLC, 1717 CAPITAL  )
MANAGEMENT COMPANY, NATIONWIDE)
PROVIDENT (f/k/a Provident Mutual Life  )
Insurance Company), and NATIONWIDE  )
FINANCIAL SERVICES, INC.,  )
                              )

      Defendants.  )
_____)

## PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANT FREDERICK V. McMENIMEN III FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Plaintiffs Ronald P. Passatempo and Patricia D. Pietropaolo ("Plaintiffs")[1]

respectfully submit this Opposition to Defendant Frederick V. McMenimen III's ("Mr.

McMenimen") Motion for Sanctions, which, as discussed herein, is frivolous, untimely

and pursued by Mr. McMenimen – and, more aptly, his counsel William P. Corbett, Jr.,

Esq. – for inappropriate purposes, namely to harass and apply undue pressure on

Plaintiffs and their counsel to withdraw their pending Amended Motion for Preliminary

---

[1] The third Plaintiff in this matter, Samuel Pietropaolo, passed away on April 1, 2005. Plaintiffs will timely substitute the person appointed as executor of Mr. Pietropaolo's estate as a party once such appointment is made

Injunction (Docket No. 21) ("PI Motion"). Mr. McMenimen's Motion for Sanctions is the latest in a long line of offensive and improper salvos by Mr. Corbett in this litigation which extend far beyond the liberal bounds of acceptable zealous advocacy. As discussed below, Mr. Corbett's approach in his defense of Mr. McMenimen is indicative of his approach in other litigations with which he and other members of Plaintiffs' counsels' law firm, Todd & Weld LLP, have been associated. The Court should not countenance his tactics.

While Plaintiffs continue to insist that they are entitled to the preliminary relief they urgently seek via their PI Motion (and that the Court has the authority to issue such relief), whether the Court ultimately allows that motion has no bearing on the propriety, or lack thereof, of Mr. McMenimen's Motion for Sanctions. Mr. McMenimen's argument that Plaintiffs are not entitled to the preliminary relief they seek is appropriate material for an opposition brief, like the one he has filed (Docket No. 24). It is not, however, appropriate material for (i.e., it does not come close to supporting) a request for sanctions. Thus, even if after due consideration the Court chooses not to endorse Plaintiffs' analysis of Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), and its progeny (and, as a result, decides to deny Plaintiffs' PI Motion), Mr. McMenimen's effort to portray that analysis as "not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," Fed. R. Civ. P. 11(b)(2) (2005), is itself plainly frivolous. For this reason, as discussed below, Plaintiffs urge the Court to order that Mr. McMenimen show cause why he has not himself violated Rule 11 by pursuing his misguided Motion for Sanctions.

### Argument

1.  **Plaintiffs' Amended Motion For Preliminary Injunction Plainly Does Not Warrant Sanctions.**

    A.  **The Applicable Standard**

    Mr. McMenimen invokes Rule 11(b)(2) of the Federal Rules of Civil Procedure in support of his sanctions request. The Rule reads, in pertinent part:

    > By presenting to the court ... a ... written motion ... an attorney ... is certifying that to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

    Fed. R. Civ. P. 11(b). Rule 11 "imposes an objective standard of reasonable inquiry." Business Guides, Inc. v. Chromatic Comm. Enterprises, Inc., 498 U.S. 533, 554 (1991). In other words, when deciding a Rule 11 motion, a Court should evaluate the "objective reasonableness of the litigant's conduct under the totality of the circumstances." Navarro-Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir. 1992).

    "Of course, in determining whether sanctions are appropriate, courts must avoid chilling an attorney's enthusiasm or creativity." EEOC v. Tandem Computers, Inc., 158 F.R.D. 224, 227 (D. Mass. 1994) (citing Cruz v. Savage, 896 F.2d 626, 631 (1st Cir. 1990)); see Fed. R. Civ. P. 11, Advisory Committee Notes (1983) (Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."). "Toward this end, under the revised rule the imposition of sanctions is discretionary rather than mandatory." Tandem Computers, 158 F.R.D. at 227. Thus, even where the motion triggering a party's request for sanctions has absolutely no chance

of success,[2] after evaluating the moving party's "objective reasonableness ... under the totality of the circumstances," <u>Navarro-Ayala</u>, 968 F.2d at 1425, the Court may legitimately conclude that sanctions are nonetheless unwarranted. As the First Circuit recently opined in <u>Obert v. Republic Western Ins. Co.</u>, "[c]ounsel every day file motions that are hopeless, just as they make hopeless objections in trials and hopeless arguments to the judge. Perhaps a court could sanction counsel under Rule 11 for many such hopeless motions, but doing so routinely would tie courts and counsel in knots." 398 F.3d 138, 146 (1st Cir. 2005).

### B.    Plaintiffs' Amended Motion For Preliminary Injunction

Plaintiffs' Amended Motion for Preliminary Injunction ("PI Motion") seeks an order pursuant to Rule 64 of the Federal Rules of Civil Procedure[3] restraining Mr. McMenimen "and all those acting in concert with him,"

> from conveying, during the pendency of this action and outside of the ordinary course of business, (*i*) any assets from any account, trust, business venture or other investment vehicle currently under his ownership or control, or of which he is a direct, indirect or contingent beneficiary; (*ii*) any real property currently under his ownership or control; and (*iii*) any other business or personal assets of any kind – except to the extent such property and assets exceed $900,000 in net value.

---

[2] Of course, Plaintiffs do not concede this here.

[3] That Rule provides, in pertinent part: "[A]ll remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held ... subject to ... any existing statute of the United States ... to the extent to which it is applicable ... The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated ..." Fed. R. Civ. P. 64 (2005).

(PI Motion at 1-2.[4])  As discussed in Plaintiffs' supporting memorandum (Docket No. 22) ("PI Memo") at pages 16 through 19, under Rule 64 federal district courts may grant such relief, in the form of a so-called "asset freeze injunction," so long as the same relief is available in the courts of the state in which the federal district court sits.  See United States ex rel. Rahman v. Oncology Assocs., 198 F.3d 489, 501 (4th Cir. 1999) ("the scope of [Rule 64] incorporates state procedures authorizing any meaningful interference with property to secure satisfaction of a judgment, including any state authorized injunctive relief for freezing assets to aid in satisfying the ultimate judgment in a case"); see also Nat'l Union Fire Ins. Co. v. Kozeny, 115 F. Supp. 2d 1231, 1239 (D. Col. 2000) ("In shaping injunctive relief which freezes assets for the purpose of securing satisfaction of any judgment ultimately obtained, pursuant to [Rule 64], I look exclusively to state law."). Cf. Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., 221 F.R.D. 300, 303 (D. Conn. 2003) ("If the injunction sought is not included within the state prejudgment remedy scheme, it must be sought under [Rule 65] and granted as consistent with this Court's exercise of general equitable powers.").

Here, the state in which the Court sits is Massachusetts, and judges in the Commonwealth do issue asset freeze injunctions in suits, such as ours, involving only

---

[4] After Plaintiffs filed their original Motion for Preliminary Injunction and supporting Memorandum (Docket Nos. 15, 16) on May 2, 2005, by which they sought precisely the same relief as that described above, Mr. McMenimen informed the Court in his May 3, 2005 Motion for Enlargement of Time to File Opposition to Motion for Preliminary Injunction (Docket No. 18) that he would soon serve Plaintiffs with a Rule 11 motion based upon his view that the relief they had requested is unavailable in light of the Supreme Court's decision in Grupo Mexicano  527 U.S. 308. Two days later, Mr. McMenimen's counsel e-mailed his sanctions motion and supporting memorandum to Plaintiffs' counsel. Thereafter, on May 16, 2005, Plaintiffs filed the amended motion papers currently pending, which vary substantively from their predecessors only in that they include a discussion of the Grupo Mexicano line of cases and an explanation as to why they do not bar the Court from granting the relief sought. Although they were aware of the case law, Plaintiffs did not include such discussion in their original motion papers because they did not (and do not) believe that Grupo Mexicano and its progeny present any impediment to the availability of the relief they seek

money damages. See R.G. v. Hall, 37 Mass. App. Ct. 410 (Mass. App. 1994) (discussing preliminary injunction freezing assets of defendant in suit for damages); Qwest Communications Corp. v. Cyber Access Internet Communications, Inc., 2000 Mass. Super. LEXIS 556 at *3 (Dec. 8, 2000) (same). It follows that the relief Plaintiffs seek should be available provided they satisfy the well-known four-part test governing issuance of preliminary injunctions. See, e.g., Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001) (movant must show likelihood of success on the merits; risk of irreparable harm; balance of harms in its favor; and benefit to the public interest).[5]

In their PI Memo, Plaintiffs discuss how they satisfy each of the four prongs of the preliminary injunction standard. (PI Memo at 7-16.) In Mr. McMenimen's Memorandum, however, he contends that only Plaintiffs' "argument concerning 'irreparable harm' … crosses the line and violates Rule 11(b)." (Sanctions Memo at 8.) Plaintiffs' argument in this regard is that Mr. McMenimen has perpetrated a fraud upon them for years on end and has forged documents in an effort to cover it up, all with the effect of leaving a widow financially insecure in a context where her husband had bargained for, and Mr. McMenimen promised, just the opposite. (PI Memo at 14-15; see also Proposed Reply in Further Support of Amended Motion for Preliminary Injunction (Docket No. 32) at 13-14.) Thus, Plaintiffs should not have to rely upon Mr.

_____

[5] When Plaintiffs amended their motion papers to include discussion of Grupo Mexicano, see supra note 4, they also changed the case cite for the four-part preliminary injunction standard from a federal decision to a Massachusetts one. From his Memorandum ("Sanctions Memo"), it is unclear whether Mr. McMenimen is attempting to shoehorn this purely cosmetic change into his theory that Plaintiffs somehow tried to "transform[]" their argument after he purportedly "brought [Grupo Mexicano] to their attention." (Sanctions Memo at 5-6.) Suffice it to say, Plaintiffs were cognizant of Grupo Mexicano before filing their original motion papers, see supra note 4, and both their original and amended papers sought relief pursuant to Rule 64.

McMenimen's wholly unsupported promises that he will be able to pay them when and if this litigation is resolved in their favor. (Id.) They will suffer irreparable harm if they prevail on the merits but cannot recover – and in light of Mr. McMenimen's history of fraud, this is both a likely outcome (absent the relief requested) and a sufficient basis for granting a preliminary injunction. While Mr. McMenimen contends that Plaintiffs' irreparable harm argument necessarily fails under Charlesbank Equity Fund II, LP v. Blinds to Go, Inc. (Sanctions Memo at 8-9), which holds that mere fear of being left with no recourse at the end of the day, once judgment enters in a plaintiff's favor, does not translate into irreparable harm, 370 F.3d 151, 162-163 (1st Cir. 2004), that case actually leaves room for granting preliminary relief based upon an "independent reason," i.e., "something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store," id. at 162. Given Mr. McMenimen's history of fraud, there is clearly "something more" here.

In any event, the Supreme Court's decision in Grupo Mexicano, 527 U.S. 308, and the First Circuit decisions interpreting Grupo Mexicano which have followed, e.g., Charlesbank, 370 F.3d 151, do not bar this Court from granting the relief Plaintiffs seek. Both Grupo Mexicano and Charlesbank expressly decline to consider whether asset freeze injunctions are available pursuant to Rule 64 as opposed to Rule 65. 527 U.S. at 318, n.3; 370 F. 3d at 158, 161. The rule of Grupo Mexicano is only that courts may not invoke *Rule 65* "to freeze a defendant's assets pending adjudication of the underlying rights." 11A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2932 (2d ed. Supp. 2005). But Plaintiffs have not invoked Rule 65, either in their original motion papers or in their amended motion papers. See supra note 5.

Rather, they have invoked Rule 64, and under *that* Rule, as discussed above, the relief

Plaintiffs seek is available.

### C.    Plaintiffs' Amended Motion For Preliminary Injunction Does Not Violate Rule 11.

As demonstrated, the relief Plaintiffs seek in their PI Motion is "warranted by

existing law." Fed. R. Civ. P. 11(b)(2).[6]  Granted, as the Court noted at the May 31, 2005

hearing in this matter, Plaintiffs' argument in its PI Memo may raise a "complex

question." (See excerpt of ASCII hearing transcript attached hereto at Exhibit 1.)  Yet,

the fact that a given motion raises difficult questions of law hardly renders it worthy of

Rule 11 sanctions.  The First Circuit's recent Obert decision bears this out emphatically,

since in that case the district court's sanctions award was *overturned* despite the fact that

the motion at issue was "hopeless." 398 F.3d at 146.  It follows that a non-"hopeless"

motion – i.e., one which raises a "complex" question – does not even approach providing

sufficient fodder for a successful request for sanctions. Cf. Thomas v. Taylor, 138 F.R.D.

614, 617 (S.D. Ga. 1991) (imposing sanctions based on plaintiff's entirely unsupportable

motion to enjoin a *non-party*).

Further, the merits of Plaintiffs' argument in its PI Memo aside, this is not a case

like Terminix Int'l Co. v. Kay, where the plaintiff in moving for injunctive relief failed to

even acknowledge, let alone distinguish, the controlling precedent. 150 F.R.D. 532, 537

(E.D. Pa. 1993) (sanction based on motion to enjoin "future libelous speech" with no

reference to controlling case law clearly prohibiting such injunctions); see also A-Abart

Electric Supply, Inc. v. Emerson Electric Co., 956 F.2d 1399, 1406 (7th Cir. 1992)

---

[6] At the very least, Plaintiffs' PI Motion raises "a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," as Rule 11(b)(2) also countenances.

(upholding sanctions where plaintiff's argument "fl[ew] in the face" of the "unambiguous doctrine set out" in controlling Supreme Court decision, quoted dissent as if it were majority, and relied upon appellate decision without mention that controlling Supreme Court case expressly rejected reasoning therein). Rather, as discussed above, Plaintiffs have made a reasoned and, at the very minimum, plausible argument that the relief they seek is not barred by Grupo Mexicano and should be awarded to them. See Fed. R. Civ. P. 11(b)(2), Advisory Committee Notes (1993) ("[T]he extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated.").

The fact that Plaintiffs rely on two decisions from other Circuits – namely Rahman, 198 F.3d at 501, and Nat'l Union Fire Ins., 115 F.Supp.2d at 1239 – for the express proposition that the relief available pursuant to Rule 64 includes asset freeze injunctions, see supra p. 5, is not to their discredit here.[7] In fact, even had they cited *no* persuasive authority at all, their argument would not justify sanctions so long as no directly contrary authority exists. See, e.g., Chaplin v. Du Pont Advance Fiber Systems, 303 F. Supp. 2d 766, 770-771 (E.D. Va. 2004) ("[A]lthough the Court has found no authoritative case law anywhere in the nation to support Plaintiffs' claim of national origin discrimination, neither has it found a single, binding case to the contrary. Thus,

---

[7] Mr. McMenimen paints a distorted picture of Plaintiffs' reliance on Rahman. Plaintiffs do not, as he contends, rely on Rahman for the proposition that *Rule 65* "should be construed as importing state-law standards for determining the availability of relief." (Sanctions Memo at 6-7 (quoting Charlesbank)). Rather, they cite Rahman for the proposition that *Rule 64* embraces asset freeze injunctions specifically where they are permitted under the law of the state in which the district court sits. (Supra p. 5; PI Memo at 17.) In addition, though Mr. McMenimen would have it otherwise (Sanctions Memo at 7), that the plaintiff in Rahman sought equitable relief in the underlying action is irrelevant to the validity of the narrow portion of Rahman upon which Plaintiffs rely. Finally, it should be noted that Rahman was decided after and with full consideration of Grupo Mexicano. 198 F.3d at 494-501.

this Court cannot say that the plaintiffs' claim is unwarranted by existing law or by a
nonfrivolous argument for the extension, modification, or reversal of existing law or the
establishment of new law. Thus, Defendants' motion for sanctions will not be granted on
that basis." (internal quotes omitted) (sanctions motion granted on other basis)). Here,
where Plaintiffs' argument is grounded in binding case law from the First Circuit, as well
as persuasive case law from other Circuits, *and* where Plaintiffs have distinguished
Grupo Mexicano, the arguably controlling Supreme Court case, its PI Motion and
supporting Memorandum are, at worst, "creative." As such, they do not violate Rule 11.
See Tandem Computers, 158 F.R.D. at 227 ("[I]n determining whether sanctions are
appropriate, courts must avoid chilling an attorney's enthusiasm or creativity.")

**2.      Regardless, Mr. McMenimen's Rule 11 Motion Is Premature.**

Mr. McMenimen's request for sanctions is based on Plaintiffs' PI Motion, a
motion which the Court has not yet heard. Plaintiffs expect that the Court will allow their
PI Motion, which would demonstrate definitively that Mr. McMenimen's Motion for
Sanctions is frivolous. Mr. McMenimen could have saved both Plaintiffs and himself the
potentially wasted expense of briefing his manufactured sanctions issue by simply
waiting to see whether the Court actually denies Plaintiffs' PI Motion in the first instance.
Instead, he chose to file his Motion on June 15, 2005, precisely two weeks prior to the
next scheduled hearing in this matter, such that pursuant to Local Rule 7.1(B)(2)
Plaintiffs must prepare this Opposition before they are afforded an opportunity to even
argue their PI Motion, let alone to benefit from the Court's decision thereupon. Mr.
McMenimen should not have forced Plaintiffs to respond to his Motion without benefit of
the Court's decision on their PI Motion. This is especially so given, for example, that

10

district courts in the First Circuit may consider Rule 11 motions as late in the day as after

dismissal of a removal petition, or after voluntary dismissal pursuant to Fed. R. Civ. P.

41. Forucci v. United States Fidelity and Guaranty Co., 153 F.R.D. 484, 485-486 (D.

Mass. 1994) (considering, without deciding, whether a district court "has jurisdiction to

entertain a Rule 11 motion after summary judgment has been granted, affirmed on appeal

and mandate has issued").

**3.      Mr. McMenimen's Rule 11 Motion Is Indicative Of His Counsel's Improper
         Tactics Throughout This Litigation And, In This Instance, His Conduct Rises
         To The Level Of A Rule 11 Violation In Its Own Right.**

        Finally, it is important for the record to reflect that Mr. McMenimen's attorney's

tactics in filing the pending Motion for Sanctions are only par for the course in terms of

how he has conducted himself during the relatively short life of this litigation. (See, e.g.,

e-mails attached to accompanying Affidavit of David M. Burkoff ("Burkoff Aff.").) He

has disregarded Plaintiffs' counsel's request that he refrain from sarcastically referring to

the now deceased Mr. Pietropaolo as "Uncle Sam," for example. (Burkoff Aff. Exs.

B&C.) He has also consistently and unnecessarily maligned Plaintiff Ronald P.

Passatempo and Mr. Pietropaolo's son, Samuel F. Pietropaolo, remarking on January 12,

for example, that this litigation simply represents their "attempt[] to insert their sticky

little fingers into my client's relatively deep pockets." (Id. Ex. B.) Indeed, Mr. Corbett

has seized upon every opportunity to burden Plaintiffs' counsel with remarks of this sort.

As another example, in connection with the PI Motion, he urged them to "[j]ust drop the

damn motion" and "[q]uit screwing around." (Id. Ex. E.) Moreover, he has not limited

such behavior to the instant case. In another matter handled by Plaintiffs' counsel's law

firm, Todd & Weld LLP, after opposing counsel objected to Mr. Corbett's threat to seek

*ex parte* relief on Christmas Eve, Mr. Corbett responded by calling him "such a disagreeable SOB," and he added that had the attorney "read my goddam e-mail" he would have understood his (Mr. Corbett's) position. (Id. Ex. A.) "The ball is in your Court, dude," he concluded. (Id.)[8]

Mr. McMenimen's (read: Mr. Corbett's) Motion for Sanctions runs counter to the very purpose of Rule 11. As the Advisory Committee stated in its notes accompanying the most recent amendment to the Rule, "Rule 11 motions [should not] be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, [or] to create a conflict of interest between attorney and client ..." Fed. R. Civ. P. 11, Advisory Committee Notes (1993). Given that Mr. McMenimen's pending Motion is itself "not warranted by existing law," Fed. R. Civ. P. 11(b)(2), one can only speculate as to which of the improper motivations cited by the Advisory Committee motivated him and his attorney to file it. As discussed above, his argument concerning Grupo Mexicano is the stuff of an opposition; thus, he appears to have at least sought sanctions in order "to emphasize the merits of [his] position." Fed. R. Civ. P. 11, Advisory Committee Notes (1993). In so doing, he has violated Rule 11(b)(1) which prohibits filing a motion "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1).

---

[8] The Court might also recall that, in this case, Mr. Corbett filed a proposed 68-page Reply in support of his Motion to Dismiss (20 pages without exhibits) on *the morning of* the Tuesday, May 31, 2005 hearing on that motion. He e-mailed a copy thereof to Plaintiffs' counsel at 7:00 p.m. the previous Friday night, at most leaving only the Memorial Day weekend for them to digest it and respond accordingly. (See Burkoff Aff. Ex. D.)

Accordingly, Plaintiffs urge the Court to enter an "Order Pursuant to Rule 11(c)(1)(B), Fed.R.Civ.P. directing the defendant and the attorney signing the motion and his law firm to show cause why, in filing the motion, they [did] not violate[] Rule 11(b), Fed.R.Civ.P," as Magistrate Judge Collings did in Tandem Computers, Inc. 158 F.R.D. at 229; see also Fed. R. Civ. P. 11, Advisory Committee Notes (1993) ("The power of the court to act on its own initiative is retained, but with the condition that this be done through a show cause order."); id. ("As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11 – whether the movant or the target of the motion – reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.").

## Conclusion

For the reasons stated above, Plaintiffs' respectfully request that the Court deny Mr. McMenimen's Motion for Sanctions and order Mr. McMenimen and his counsel to show cause why they themselves have not violated Fed. R. Civ. P. 11(b) and should not be ordered to pay Plaintiffs' costs and fees in connection herewith.

Respectfully submitted,

Plaintiffs RONALD P. PASSATEMPO,
TRUSTEE, On behalf of the Samuel
Pietropaolo Irrevocable Trust, SAMUEL
PIETROPAOLO, GRANTOR to the Samuel
Pietropaolo Irrevocable Trust, and
PATRICIA D. PIETROPAOLO,
BENEFICIARY of the Samuel Pietropaolo
Irrevocable Trust,

By their counsel:

/s/ David M. Burkoff
Howard M. Cooper (BBO #543842)
David M. Burkoff (BBO #657447)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

Dated: June 24, 2005

# Exhibit 1

MAY31PASSATEMPO.txt

1

1              UNITED STATES DISTRICT COURT

2               DISTRICT OF MASSACHUSETTS

3                    No. 1:05-CV-10118-GAO

4

5
    RONALD P. PASSATEMPO, et al.
6               Plaintiffs

7    vs.

8
    FREDERICK V. MCMENIMEN, III, et al.
9               Defendants

10

11                    *********

12

13            For Motion Hearing Before
           Honorable George A. O'Toole, Jr.
14

15

16            United States District Court
              District of Massachusetts (Boston.)
17            One Courthouse Way
              Boston, Massachusetts 02210
18            Wednesday, May 31, 2005

19

20                    ********

21
         REPORTER: RICHARD H. ROMANOW, RPR
22            Official Court Reporter
           United States District Court
23   One Courthouse Way, Room 3507, Boston, MA 02210
                 (617) 737-0370
24

25


□                                                    2

1              A P P E A R A N C E S

2

3    DAVID M. BURKOFF, ESQ.
     HOWARD M. COOPER, ESQ.
4     Todd & Weld, LLP
      28 State Street, 31st Floor

MAY31PASSATEMPO.txt

```
 5      Boston, MA 02109
        (617) 624-4775
 6      Dburkoff@toddweld.com
        For the Plaintiffs
 7

 8   WILLIAM P. CORBETT, JR., ESQ.
        The Corbett Law Firm, P.C.
 9      The Edison, Suite 326
        85 Exchange Street
10      Lynn, MA 01901
        (781) 596-9300
11      Wpc@bostonbarristers.com
        For Defendant Frederick V. McMenimen
12

13   TIMOTHY O. EGAN, ESQ.
        Peabody & Arnold, LLP
14      30 Rowes Wharf
        Boston, MA 02110
15      (617) 951-2050
        Tegan@peabodyarnold.com
16      For Defendant Barry G. Armstrong

17

18   TIMOTHY JAMES CASEY, ESQ.
        Ropes & Gray, LLP
19      One International Place
        Boston, MA 02110
20      (617) 951-7020
        Tcasey@ropesgray.com
21      For Defendants 1717 Capital Management Company,
        Nationwide Provident, and Nationwide Financial Services
22

23

24

25
```

                                                                      3

```
 1                  P R O C E E D I N G S
 2                  (Begins 2:20 p.m.)
 3                  THE CLERK:  Next up on the calendar is Passatempo
 4      versus McMenimen, 05-10118.  Would counsel please identify
 5      yourselves for the record.
 6                  MR. CORBETT:  Your Honor, William Corbett for
 7      Frederick V. McMenimen, III, who is the defendant who has
 8      brought us all together today.
 9                  MR. BURKOFF:  Your Honor, David Burkoff for the
```

Page 2

MAY31PASSATEMPO.txt

3    becomes a statute of repose.

4              THE COURT:  Okay.  Um, I am, principally, at this
5    point, interested in the Federal claims, because that's the
6    basis of your jurisdiction here.  And so I would like, I think,
7    supplemental briefing on the question whether the Federal
8    claims are barred by the Sarbanes-Oxley statute of repose or
9    not?  That particular question.  And since it's relatively
10   limited, I think, maybe -- so here's the -- just to sketch it
11   out a little further.  If you're not prepared, this afternoon,
12   to address the preliminary injunction issues, what I would
13   propose is short supplemental briefing on the issue that I've
14   just outlined and we'll set a hearing in a couple of weeks or
15   so and then we can then entertain both that question and the
16   question of the preliminary injunction, which would probably be
17   the week of the 20th.  No, the 27th.  This would be the week of
18   the 27th.

19             MR. BURKOFF:  Your Honor, if I may?  As Mr. Cooper
20   pointed out, initially we were ready today to argue our motion
21   for preliminary injunction.  And it is true that the opposition
22   --

23             THE COURT:  Well, I think they're tied together
24   anyway because, I mean, if -- I wouldn't be persuaded if the
25   statute of repose barred the Federal claims.

☐                                                                    34

1              MR. BURKOFF:  We would only ask for a TRO in the
2    interim, your Honor, restraining Mr. McMenimen from conveying
3    his assets, as we requested in our motion, just for these two
4    weeks prior to the hearing that we're discussing.

5              MR. CORBETT:  Well, your Honor, the lead argument
6    in response to their motion for preliminary injunction is that
7    the Court does not have jurisdiction to issue the injunction
                                Page 28

MAY31PASSATEMPO.txt

 8    that they're requesting based upon the 1999 decision of Grupo
 9    Mexicano --
10               THE COURT:  I understand.  It's a complex
11    question.  Um, I think not.  I'll leave things as they are for
12    now.  It would be a relatively short period of time.  And
13    nothing appears that is of an emergency nature that there's
14    immediate risk of irreparable harm.  So --
15               THE CLERK:  Wednesday, June 29th at 2:00 p.m. for a
16    hearing.
17               MR. CORBETT:  In terms of the briefing, your Honor,
18    how do you want to schedule that?
19               THE COURT:  Well, I'll entertain a suggestion.
20               MR. CORBETT:  Well, first of all --
21               THE COURT:  One way to do it, it would be -- it's
22    your argument that you could file a brief on the issue and then
23    there would be a response.  I don't think it's been well-
24    developed in the papers that I've accepted it.  And, I think,
25    for the record, just so that the things are clear, I think I'm

□                                                                35

 1    going to deny the motion to file the thing that you've
 2    proffered and we'll back up and you'll have leave to file a
 3    brief on the repose issue.  We'll take it step by step.  So
 4    whatever time period you wish to respond?
 5               MR. CORBETT:  With respect to my opposition to the
 6    motion for preliminary injunction, just as a practical concern,
 7    I may not be able to get back to my office in time to get it
 8    filed by 5:00.
 9               THE COURT:  Are you electronically filing?
10               MR. CORBETT:  Yes, your Honor.
11               THE COURT:  You have till 6:00 under the rules.
12               MR. CORBETT:  Okay, your Honor.  But if I could
                                Page 29

MAY31PASSATEMPO.txt

18

19

20

21

22

23

24

25

☐                                                                          37

1                    C E R T I F I C A T E

2

3

4

5

6

7        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do
        hereby certify that the foregoing record is a true and
8       accurate transcription of my stenographic notes on
        Wednesday, May 31, 2005 before Honorable George A.
9       O'Toole, Jr., to the best of my skill and ability.

10

11

12

13

14

15   _____
        RICHARD H. ROMANOW
16

17

18

19

20
21

22

MAY31PASSATEMPO.txt

23

24

25

☐