UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10118-GAO

RONALD P. PASSATEMPO, Trustee, on behalf of the Samuel
Pietropaolo Irrevocable Trust, SAMUEL PIETROPAOLO, Grantor to the
Samuel Pietropaolo Irrevocable Trust, and PATRICIA D. PIETROPAOLO,
Beneficiary of the Samuel Pietropaolo Irrevocable Trust,
Plaintiffs,

v.

FREDERICK V. McMENIMEN III, BARRY G. ARMSTRONG,
NEW ENGLAND ADVISORY GROUP, LLC, 1717 CAPITAL
MANAGEMENT COMPANY, NATIONWIDE PROVIDENT
(f/k/a Provident Mutual Life Insurance Company), and
NATIONWIDE FINANCIAL SERVICES, INC.,
Defendants.

MEMORANDUM AND ORDER
August 3, 2005

O'TOOLE, D.J.

This action was originally filed on July 1, 2004 in the Massachusetts Superior Court by

Ronald P. Passatempo, Samuel Pietropaolo, and Patricia D. Pietropaolo against Frederick V.

McMenimen III, Barry G. Armstrong, New England Advisory Group, LLC, 1717 Capital

Management Company, Nationwide Provident (f/k/a Provident Mutual Life Insurance Company), and

Nationwide Financial Services, Inc. alleging causes of action for negligence, fraud, negligent

misrepresentation, breach of fiduciary duty, intentional infliction of emotional distress, negligent

infliction of emotional distress, violations of Massachusetts and federal securities laws, breach of

contract, and violation of Mass. Gen. Laws ch. 93A; all relating to the sale of a variable life insurance

policy.

McMenimen removed the action to this Court on federal question grounds because of the two counts (VII and VIII) of the first amended complaint that allege violations of federal securities laws. He then moved to dismiss all of the claims asserted against him in the first amended complaint.  At oral argument on the motion to dismiss, one of the contentions made by McMenimen was that the plaintiffs' federal securities law claims are barred by the applicable statute of repose.  I requested supplemental briefing on this issue and a further hearing was held on June 29, 2005.  Having considered the parties' oral arguments and written submissions, I conclude that Counts VII and VIII of the first amended complaint are barred by the applicable statute of repose and must be dismissed.

Counts VII and VIII allege violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), and SEC Rule 10b-5, 17 C.F.R. 240.10b-5.[1]  The securities violation alleged in Count VII is that McMenimen obtained for the plaintiffs a variable life insurance policy that was inappropriate in light of the plaintiffs' investment objectives, and that he misrepresented the value of that policy.[2]  Count VIII alleges that McMenimen – for his own benefit and without regard for the plaintiffs' investment objectives, experience, and risk tolerance – engaged in churning by advising Samuel Pietropaolo to cancel his two existing life insurance policies and use the proceeds to purchase a new variable life insurance policy.

---

[1]  Although Count VIII, entitled "Churning," does not specifically allege a violation of section 10(b) or Rule 10b-5, I am required to draw all reasonable inferences in the plaintiffs' favor on a motion to dismiss.  Aldridge v. A.T. Cross Corp., 284 F.3d 72, 79 (1st Cir. 2002).

[2]  The parties do not dispute that the variable life insurance policy at issue is a security controlled by the federal securities laws and the rules of the Securities Exchange Commission because it contains an investment component. First Am. Compl. Intro., p. 2.  See also Brashears v. 1717 Capital Mgt., 02-1534-KAJ, 2004 WL 1196896, at *1-2 (D. Del. May 21, 2004) (recognizing a similar variable life insurance policy offered by 1717 Capital Management and Nationwide Provident as a security).

The plaintiffs were required to bring their federal securities claims "within one year after the discovery of the facts constituting the violation and within three years after such violation." Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991).[3] The three year period of repose establishes a cutoff point, not subject to tolling principles, after which a claim may not be filed. Id. at 363.

The allegations relevant to Counts VII and VIII, assumed for present purposes to be true, center around the July 1998 acquisition of the variable life insurance policy. Knowing that Samuel Pietropaolo did not want the value of any new policy to fall below $500,000, McMenimen had Pietropaolo cancel his two existing life insurance policies in order to fund a policy that McMenimen promised would have a guaranteed death benefit of at least $500,000 and would grow beyond $500,000 and become self-funding. The plaintiffs relied on these representations in deciding to purchase the Nationwide Provident Flexible Premium Variable Life Insurance Policy. The policy was obtained in July 1998 by McMenimen with the assistance of defendant Barry G. Armstrong, who was also an employee of defendant New England Advisory Group, LLC. But, as the plaintiffs found out in April 2003, McMenimen never requested or purchased more than $200,000 of insurance for the plaintiffs, so the policy was worth only $200,000 instead of $500,000, and was therefore unsuitable for the plaintiffs' investment needs. The plaintiffs confronted McMenimen about this, and

---

[3]    Though I am inclined to agree with numerous other courts that have concluded that the Sarbanes-Oxley Act does not revive securities fraud claims that were time barred prior to its passage, see, e.g., Ballard v. Tyco Int'l, 02-MD-1335-PB, 2005 WL 928537, at *3-4 (D.N.H. Apr. 22, 2005) (collecting cases); Swack v. Credit Suisse First Boston, 02-11943-DPW, 2004 WL 2203482, at *5 n.10 (D. Mass. Sept. 21, 2004) (same), I need not resolve this question because I conclude that the plaintiffs' claims are time barred under both Lampf's three-year repose period and Sarbanes-Oxley's five-year repose period. See Pub. L. No.107-204, 116 Stat. 801 (codified as amended at 28 U.S.C. § 1658) (requiring that securities fraud actions be brought within two years after the discovery of the facts constituting the violation, or five years after such violation, whichever is earlier).

McMenimen promised in June 2003 that he would amend the policy to bring the value up to, or close to, $500,000. McMenimen ultimately failed to fulfill that promise.

The securities violations alleged in Counts VII and VIII occurred at the time the policy was first sold to Pietropaolo in July 1998. Under Count VII, the plaintiffs claim that McMenimen violated the federal securities laws by his selection and sale of a security that was inappropriate in light of the plaintiffs' investment objectives. See Lefkowitz v. Smith Barney, Harris Upham & Co., 804 F.2d 154, 155 (1st Cir. 1986). Under Count VIII, they claim that unlawful "churning" occurred when Pietropaolo's existing policies were canceled so a new one could be issued. Under either of the plaintiffs' theories as pleaded in Counts VII and VIII, July 1998 is the starting point for purposes of calculating the repose period. Allegations that McMenimen later (in 2003) promised to do something to remedy the harm that had been done and then failed to fulfill that promise do not alter the fact that the securities law claims arose in 1998. The loss allegedly suffered – due to McMenimen's obtaining a $200,000 policy instead of a $500,000 policy – also coincides with the 1998 cancellation of Pietropaolo's existing life insurance policies and acquisition of the variable life insurance policy. The plaintiffs did not commence this action until July 1, 2004, almost six years after the claims arose.

The plaintiffs' other arguments are unpersuasive. First, they argue that McMenimen's June 2003 promise to obtain a $500,000 death benefit was a misrepresentation in connection with the purchase or sale of a security. Recognizing that there never was a 2003 purchase or sale, because McMenimen did not fulfill his promise, the plaintiffs contend that his oral promise was a contract for the purchase and sale of a security, so that it became actionable under the securities laws. The cases they rely on, however, do not support their point. Instead, those cases deal with contracts for the purchase or sale of securities that themselves constitute securities. On the facts as they are alleged,

4

there can be no claim that McMenimen's oral promise to get a $500,000 death benefit for Pietropaolo was itself a security.

The plaintiffs' other contention, that each premium payment was a separate, actionable purchase of a security, is made without reference to any supporting authority. Perhaps more to the point, it is also not alleged in the complaint. What is tested on a motion to dismiss is the complaint, not arguments in a brief.

As the action was not commenced within three years (or even five years) after the alleged securities violations, Counts VII and VIII of the first amended complaint are time barred and are dismissed as to McMenimen on his motion.

Though the other defendants have not moved to dismiss Counts VII and VIII, it appears that the same reasons that call for the dismissal of those counts as to McMenimen require their dismissal also as to the other defendants. Accordingly, Counts VII and VIII will be dismissed in their entirety unless within twenty-one days of the date of this Memorandum and Order the plaintiffs show cause why the reasons supporting dismissal of those counts as against McMenimen do not apply with equal or greater force to the other defendants.

Decision of other pending issues continues to be temporarily reserved.


August 3, 2005 _____          \s\ George A. O'Toole, Jr. _____
DATE                                      DISTRICT JUDGE