UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
RONALD P. PASSATEMPO, Trustee of the Samuel )
Pietropaolo Irrevocable Trust, *et al.*,   )
                                    )
      *Plaintiffs,*            )
                                    )   Case No. 05-CV-10118-GAO
   v.                                )
                                    )
FREDERICK V. MCMENIMEN III, *et al.*,  )
                                    )
      *Defendants.*            )
_____ )


**DEFENDANTS' MEMORANDUM OF REASONS WHY THEIR MOTION
TO VACATE OR AMEND JUDGMENT SHOULD BE GRANTED**


     Pursuant to Local Rule 7.1 and Rule 60 of the Federal Rules of Civil Procedure, the defendants jointly submit this memorandum of reasons why the Court should allow their motion to vacate or amend the Judgment in a Civil Case (DE # 44) ("Judgment") entered on August 18, 2005. In sum, the defendants state that the Court should not have remanded the case to state court, and that it should revisit its determination to do so. Furthermore, even if the Court still declines to exercise its supplemental jurisdiction over the pendent claims, it should amend its Judgment – which was inadvertently overbroad in terms of the dismissal it effected – and dismiss the pendent claims without prejudice, instead of simply remanding them to Middlesex Superior Court.

## *ARGUMENT*

I. **THE COURT WOULD BEST SERVE THE INTERESTS THAT SHOULD INFORM ITS DISCRETION BY RETAINING JURISDICTION.**

After dismissing the plaintiffs' claims under the Federal securities laws, the Court (without entertaining oral argument on the issue) elected to remand the state law claims to the Superior Court. The Court should revisit that decision and exercise its supplemental jurisdiction over those claims. As in *Curley v. North Am. Man Boy Love Ass'n,* 2003 U.S. Dist. LEXIS 12488 at *6-*7 (D. Mass.) (O'Toole, J.), "[i]t is in the interest of justice and judicial economy" for this Court to exercise its supplemental jurisdiction over the pendent state law claims".

After all, the parties and the Court have devoted considerable time and valuable resources to the substance of this case, and the Court should not "throw out the bath water with the baby" simply because it dismissed the claims alleging Federal questions. *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995). The motion of defendant Frederick V. McMenimen III to dismiss the plaintiffs' First Amended Complaint ("Complaint") remains pending – the Court having addressed only Counts VII and VIII – and the Court received extensive briefing and heard lengthy oral argument concerning the viability of the remaining claims. To return the case to state court now, before the motion to dismiss has been fully decided, would effectively send this fourteen month-old litigation back to "square one" – a tremendous waste of the parties' and judicial resources.

It is well-established that "the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 256-57 (1st Cir. 1996). When

deciding whether to decline or exercise its jurisdiction over the pendent claims, the Court "must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." *Camelio v. American Federation,* 137 F.3d 666, 672 (1st Cir. 1998). Factors to consider include "comity, judicial economy, convenience, fairness, and the like." *Roche,* 81 F.3d at 257. Those factors all weigh in favor of the Court's retaining jurisdiction, and not ceding jurisdiction to the Massachusetts Superior Court. Indeed, the Court's familiarity with this case, standing alone, would be a sufficient basis for retaining jurisdiction over the action. *Grispino v. New Eng. Mut. Life Ins. Co.,* 358 F.3d 16, 19 (1st Cir. 2004). At the very least, the Court should decide the remainder of the motion to dismiss – certifying the statute of repose issue to the Supreme Judicial Court ("SJC"), if necessary – before reaching the issue of whether it should send the case back to state court.

### A. ALTHOUGH IT DISMISSED THE FEDERAL SECURITIES LAW CLAIMS, THE COURT'S SUBSTANTIVE EXPERTISE IN THAT AREA WOULD BE USEFUL IN RESOLVING AT LEAST ONE OF THE PENDENT CLAIMS UNDER MASSACHUSETTS LAW.

Remand would not facilitate comity. As in *Roche,* the Federal and state law claims are "interconnected," and "powerful interests in both judicial economy and fairness tug[ ] in favor of retaining jurisdiction." 81 F.3d at 256-57. Indeed, although the defendants do not suggest that actions alleging violations of the Uniform Securities Act, Mass. Gen. L. c. 110A, raise Federal questions of sufficient magnitude for them to be removed pursuant to 28 U.S.C. § 1441(b), even in a case where there are no viable Federal securities law claims, the close relationship between the Massachusetts and Federal regimes should inform the Court's exercise of its discretion with respect to supplemental jurisdiction. This Court's

expertise in handling complex securities law cases militates against sending this action back to the Superior Court, where it will compete for the attention of rotating judges with divergent substantive backgrounds.

Because the Court appears not to have intended dismissal of Count VII of the Complaint to the extent it alleges violations of Mass. Gen. L. c. 110A (*see infra* at pp. 8-9), whichever forum ultimately processes the remainder of this litigation will be called upon to consider Federal statutes and precedents. The Legislature and SJC have both made clear that the Commonwealth coordinates its securities laws with Federal authorities:

> The legislature has directed that we interpret the act in coordination with the Securities Act of 1933. *See* St. 1972, c. 694 (enacting Mass Gen. L. c. 110A, § 415, and directing court "to coordinate the interpretation and administration of this chapter with the related federal legislation"). *See also Adams v. Hyannis Harborview, Inc.,* 838 F. Supp. 676, 684 n.9 (D. Mass. 1993) (Massachusetts securities laws "are substantially similar to the Federal securities laws and therefore decisions construing the Federal statutory language are applicable to the state statute as well"). General Laws c. 110A, § 410(a)(2), "is almost identical with § 12(2) of the Securities Act of 1933, 15 U.S.C. § 771(2)." L. Loss, *supra* at official comment to § 410(a), at 146, *See id.* at draftsmen's commentary to § 410(a), at 147 ("The resemblance to § 12[2] of the Securities Act of 1933 will once more make for an interchangeability of federal and state judicial precedence in this very important area"). Accordingly, we look to Federal decisions under § 12(2), as well as to the plain language of the statute and decisions of our appellate courts, for our interpretation of Mass. Gen. L. c. 110A, § 410(a)(2).

*Marram v. Kobrick Offshore Fund, Inc.,* 442 Mass. 43, 51 (2004). *See also Silvia v. Secretary of the Commonwealth,* 61 Mass. App. Ct. 350, 357 (2004) (deferring to "most recent and authoritative Federal statements" on definition of "security" instead of applying test previously applied in Massachusetts courts). In that respect, this case is not unlike *Belini v. Washington Mut. Bank, NA,* 412 F.3d 17, 28-29 (1st Cir., 2005), where the First Circuit determined that "application of the relevant state law," which is substantively identical to a corresponding Federal statute, "implicate[d] important federal concerns" and constituted a reason why supplemental jurisdiction should have been exercised.

By declining jurisdiction, this Court would shift to rotating justices of the Superior Court the burden of analyzing complex securities law issues. Though the Superior Court is certainly competent to undertake such analysis, this Court – which has ample experience in that field – is certainly more competent to synthesize precedents decided under the Federal securities laws, just as the expertise of a Massachusetts court makes it more competent to handle issues arising under the laws of the Commonwealth. Furthermore, there is no certification mechanism under which a court of the Commonwealth might obtain definitive answers on Federal issues, but (as discussed more fully below) this Court could utilize such a procedure if some aspect of Massachusetts law were too unclear for it to make a principled decision.

**B.  TO THE EXTENT THIS ACTION INVOLVES AN ISSUE OF MASSACHUSETTS LAW NOT PREVIOUSLY ADDRESSED BY THE SJC, CERTIFICATION WOULD AFFORD THE SPEEDIEST AND MOST INEXPENSIVE PATH TO A DEFINITIIVE DECISION.**

This Court would not "step on the toes" of the Massachusetts judiciary by addressing Mass. Gen. L. c. 175, § 181, nor would any purpose "be served by . . . prolonging this doomed litigation by sending it back to the state court to be dismissed there." *Sullivan v. Conway,* 157 F.3d 1092, 1095 (7th Cir. 1998) (Posner, J.). Rather, because the pendent claims are futile, this Court would needlessly burden the Commonwealth and the parties by requiring them to restart this fourteen month-old case in the Superior Court.

In one forum or another, Mass. Gen. L. c. 175, § 181 – a statute of repose that should affect the pendent claims of this case in the same way as *Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson,* 501 U.S. 350 (1991), extinguished the Federal statutory claims – will mandate dismissal of the pendent claims. This

Court is as capable as the Superior Court to order that dismissal – just as another judge in this District did in a similar case[1] – and its disposition of those claims would materially shorten the time it takes to resolve the parties' dispute. As in *Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266, 275 (5th Cir. 1976) (cited with approval in *Bi-Rite Enterprises, Inc. v. Bruce Miner Co., Inc.,* 757 F.2d 440, 443 n.3 (1st Cir. 1985)), "[t]his clearly is not a case" where the Court would be "required to 'guess' state law from one or two questionable precedents." 526 F.2d at 275. *Cf. Choroszy v. Wentworth Inst. of Tech.,* 915 F. Supp. 446, 453 n.4 (D. Mass. 1996) (O'Toole, J.) (denying request for certification and citing *Bi-Rite* for proposition that "it is inappropriate for a federal court to use such a procedure when the course state courts would take is reasonably clear"). Nor is it a case like *Anderson v. R.J. Reynolds Tobacco Co.,* 1999 U.S. Dist. LEXIS 22261 at *8-*9 (D. Mass.) (O'Toole, J.), where the plaintiff sought to manufacture a new state law cause of action. The SJC might not have addressed this dispositive question previously, but this Court has ample ability to decide the issue in a principled manner, and an established certification procedure exists to allay any comity concerns the Court might harbor – without "throw[ing] out the bath water with the baby."

If concerns about comity give the Court pause about addressing the effect of Mass. Gen. L. c. 175, § 181 on the pendent claims, the most expeditious course would be to retain jurisdiction and certify the dispositive question of whether it is a statute of repose. *See Dahill v. Boston Police Dep't,* 2000 U.S. Dist. LEXIS 21932

---

[1] Importantly, the question of whether G.L. c. 175, § 181 should be applied in situations like this is not one of first impression in this District. Indeed, it was that statute which led Judge Freedman to grant summary judgment in *Loguidice v. Metropolitan Ins. Co.,* Civil Action No. 97-10060-FHF, slip op. at 4-6 (D. Mass. Oct. 11, 2002), *aff'd* 336 F.3d 1, 4-6 (1st Cir. 2003). Like this case, *Loguidice* involved numerous contract, tort and statutory theories. This Court should follow Judge Freedman's precedent and dismiss the time-barred state law claims asserted by the plaintiffs.

at *30-*31 (D. Mass.) (Woodlock, J.) (exercising supplemental jurisdiction and certifying state law question to SJC). "Certification of a question of Massachusetts law to the Supreme Judicial Court is proper when the question is 'determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the [SJC].'" *United States Steel v. DeMatteo Constr. Co.,* 315 F.3d 43, 53 (1st Cir. 2002) (quoting SJC R. 1:03). Unsettled questions concerning Massachusetts statutes of repose have repeatedly been certified to and answered by the SJC. *See, e.g., Nett v. Bellucci,* 269 F.3d 1, 8 (1st Cir. 2001) (certifying questions concerning application of statutes of repose); *Nett v. Bellucci,* 437 Mass. 630, 631 (2002) (answering certified questions); *Protective Life Ins. Co. v. Sullivan,* 89 F.3d 1, 4 (1st Cir. 1996) (certifying question involving 2-year incontestability statute); *Protective Life Ins. Co. v. Sullivan,* 425 Mass. 615, 617 (1997) (answering certified questions).

Finally, this is not a case where delay would be "an inevitable side effect of certification." *Shevin,* 526 F.2d at 275-76. The contrary is true. Given the dispositive nature of Mass. Gen. L. c. 175, § 181, a final resolution of the dispute between the parties would be hastened significantly if the case were certified.[2] On the other hand, the clarity to be achieved by certification would be several years away if this action were left to wend its way through the Commonwealth's judicial system. By sending this action back to "square one", this Court would ensure that the parties must slog through expensive, time-consuming discovery, motion practice, and trial before receiving any definitive consideration of the repose issues

---

[2] In *Nett,* for example, the SJC answered the First Circuit's questions less than eleven months after they were certified. In *Protective Life Insurance,* the SJC took only 50 weeks to resolve the certified issues. If a similar turnaround were possible in this case, the SJC would address the dispositive repose issue – and effectively dispose of the time-barred state law claims – long before the case could even be reached for trial in the Superior Court.

– thus defeating a salutary purpose of such a statute.  Concomitantly, the Superior Court would be compelled to reopen its file, administer the case, oversee discovery battles and other pretrial activity, and conduct a trial.  Certification could eliminate any need for such expensive and time-consuming activity.

In sum, continued exercise of the Court's supplemental jurisdiction – coupled with certification of the dispositive issue concerning Mass. Gen. L. c. 175, § 181 – would result in economies maximizing the prospects for the prompt but fair resolution which should be this Court's lodestar when considering whether to decline its supplemental jurisdiction.[3]  See Fed. R. Civ. P. 1 (rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

## II.   EVEN IF THE COURT DOES NOT RETAIN JURISDICTION OVER THIS ACTION, IT MUST AMEND ITS JUDGMENT TO ELIMINATE AN UNINTENDED ERROR.

The Court's Memorandum and Order dated August 3, 2005 (DE #42) ("Decision") and the ensuing Judgment effected the outright dismissal of Counts VII and VIII of the Complaint.  To the extent they caused Count VII to be dismissed in its entirety, the Decision and Judgment appear to have gone beyond what the Court intended.  After all, the Decision focused exclusively on the plaintiffs' allegations that the defendants violated the Federal securities laws, and it contained no substantive analysis of the state law claims.  However, one of the state law claims – the plaintiffs' allegations that the defendants violated the Uniform Securities Act, Mass. Gen. L. c. 110A – had been lumped into Count VII with the

---

[3] If the SJC responds by stating that it is not a statute of repose, then the Court might revisit the supplemental jurisdiction issue.  However, it is highly likely that the SJC would adopt Mr. McMenimen's construction and precipitate dismissal with prejudice of the pendent claims.

Federal statutory claim, so the unqualified dismissal of that Count also caused the state securities claim to be dismissed with prejudice.

The Decision suggests that such a dismissal was not intended. Although the defendants believe the Uniform Securities Act claim also should have been dismissed, and although the correction for which the defendants move would benefit the plaintiffs to the defendants' detriment, the defendants believe they have an obligation to bring this apparent error to the Court's attention. The Court can give effect to its seeming intention by amending the Judgment. "Counts VII and VIII of the first amended complaint" could be deleted and the phrase "Counts VII (to the extent it does not allege violations of the Uniform Securities Act, Mass. Gen. L. c. 110A) and VIII of the first amended complaint" could be substituted for that text. Even if the Court does not vacate its Judgment and revisit its decision to decline supplemental jurisdiction, it is in the interest of justice for the Court to make this necessary correction.

### III.    IF THE COURT DECLINES JURISDICTION, IT SHOULD DISMISS THE PENDENT CLAIMS, INSTEAD OF REMANDING THEM.

If the Court, after weighing the considerations discussed above, nonetheless reaffirms its declination of its supplemental jurisdiction, it has the power to dismiss the pendent claims without prejudice, rather than simply remanding the action to Superior Court. It should do so in this case.

In properly removed civil actions like this one, when the federal claims on which removal was based are dismissed, "the option exists to dismiss the action in favor of one to be commenced in the state courts." *Curley,* 2003 U.S. Dist. LEXIS 12488 at *6. *See also Roche,* 81 F.3d at 257 ("dismissal may sometimes be appropriate if the federal-question claim is eliminated early in the proceedings").

- 9 -

Indeed, even before Congress adopted the supplemental jurisdiction statute, District Courts had the option of dismissing or remanding pendent claims. *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 356-57 (1988). *See also United Mine Workers v. Gibbs,* 383 U.S. 715, 729 (1966) (seminal pendent jurisdiction decision considered dismissal without prejudice of pendent claims). The current statute – enacted two years after the Supreme Court decided *Carnegie-Mellon* – speaks only of dismissal when supplemental jurisdiction is declined in properly removed actions, and it is silent with respect to remand of properly removed actions. *See* 28 U.S.C. § 1367(d) (tolling limitations periods for pendent claims dismissed when supplemental jurisdiction declined) *but see* 28 U.S.C. § 1447(c) (expressly providing for remand when removal is defective).

In any event, although the Court may yet have the inherent authority to remand the pendent claims, dismissal without prejudice would be the better course in this litigation. The parties and the Court have expended 8 months and considerable resources on several substantive motions in this Court. Although the Court did not rule on the lion's share of the most significant motions – Mr. McMenimen's motion to dismiss and the plaintiffs' request for injunctive relief – the extensive briefing and oral argument have caused the issues to come into sharper focus. Indeed, several of the plaintiffs' arguments no longer relate to allegations in their pleadings. *See* Decision at 5 (rejecting contention not alleged in Complaint).

Dismissal without prejudice of the pendent state law claims would enable the plaintiffs to re-plead their claims more carefully, in the names of the current real parties in interest, without any need for additional motion practice. Dismissal without prejudice also would permit the defendants to synthesize the significant development of the legal issues in this case – most significantly, the issue of

whether Mass. Gen. L c. 175, § 181 barred the plaintiffs' untimely claims, notwithstanding any "discovery rule" or other tolling principle they might assert – and seek appropriate rulings in the Commonwealth's courts.[4] The plaintiffs would not be prejudiced, because 28 U.S.C. § 1367(d) would toll applicable limitations periods, to the extent the plaintiffs' state law claims are not already time-barred.

### *CONCLUSION*

For the foregoing reasons, the defendants respectfully request that the instant motion be allowed and that the Court vacate its Judgment and exercise its supplemental jurisdiction over the pendent claims. Alternatively, the defendants ask the Court to amend the Judgment as follows:

a. Substituting for "Counts VII and VIII of the first amended complaint . . ." the phrase "Counts VII (to the extent it does not allege violations of the Uniform Securities Act, Mass. Gen. L. c. 110A) and VIII of the first amended complaint"; and

b. Substituting for "and the action is remanded to the Massachusetts Superior Court" the phrase "and, the Court having declined to exercise its supplemental jurisdiction over the state law claims alleged in the first amended complaint, the remaining claims are dismissed without prejudice.

---

[4] It also might facilitate their re-filling in the most appropriate Massachusetts forum, the Business Litigation Session of Suffolk Superior Court. The pendent claims certainly fall within the substantive jurisdiction of that forum, and plaintiff Patricia Pietropaolo is domiciled in Suffolk County.

Respectfully submitted,

FREDERICK V. MCMENIMEN, III

By his attorney,

*/s/ William P. Corbett, Jr.*
_____
William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
  *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300


NATIONWIDE LIFE INSURANCE COMPANY OF AMERICA, 1717 CAPITAL MANAGEMENT COMPANY, AND NATIONWIDE FINANCIAL SERVICES, INC.,

By their attorneys,

*/s/ Timothy J. Casey*
_____
Harvey J. Wolkoff (BBO #532880)
Timothy J. Casey (BBO #650913)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000


BARRY G. ARMSTRONG

By his attorneys,

*/s/ Timothy O. Egan*
_____
Robert T. Gill (BBO #192080)
Timothy O. Egan (BBO #637992)
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, Massachusetts 02110
(617) 951-2100


Dated:  September 1, 2005